On Behalf Of The Non-Violent Federal
Detainees'/ Inmates That Are Held In
Essex County Corr. Fac.
354 Doremus Avenue
Newark, New Jersey 07105

RECEIVED

APR 08 2020

AT 8:30_____ M
WILLIAM T. WALSH
CLERK

March 25, 2020

President Donald J. Trump,
Vice President Mike Pence,
All the Supreme Court Justices of
Supreme Court Of the United States,
William P. Barr, United States Attorney General,
Senator Corey Booker of the District of New Jersey,
Senator Robert Menendez of the District of New Jersey,
Hon. Freda L. Wolfson, Chief Judge U.S.D.J.,
Hon. Stanley R. Chesler, Senior, U.S.D.J.,
Craig Carpenito, U.S. Att. District of New Jersey,
Jessica Taminski, U.S.M.,
Jim McGreevy & Brendan Grill, Civilian Prison Task Force,
Among other Official(s) or Entities.

### RE: EMERGENCY MOTION DUE TO THE EMERGED THREAT IN THE EXPOSURE OF THE COVID-19 VIRUS.

Dear Mr. Trump, Mr. Barr, Hon. Wolfson, Hon. Chesler, Mr. Carpenito, Senators, and Officials:

    Please accept this letter in lieu of a formal Motion under Exigent circumstances for the release of the detainees' out on bail pending the outcome of the COVID-19 Pandemic.

    During the last few weeks a deadly global pandemic has emerged and is spreading rapidly worldwide. As result, President Trump declared a National Emergency over the concerns of the virus[1]. Unfortunately, the health risks of the non-violent-offenders – poses a lethal threat. Once a contagious illness enters in a Correctional facility it becomes highly conducive to the spreading of the catastrophic disease. United States v. Stephens, 2020 U.S. Dist. Lexis 47846, at*4 (S.D.N.Y. 2020); inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop.

    The lives of the detainees' are imminently endangered with the virus. In violation of the 8th amendment of the U.S. Constitution. As the Third Circuit has expressed, an inmate's health is of such importance that the Constitution protects it. Young v. Quinlan, 960 F.2d 351, 361-62 (3d

---

[1] Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/(Mar. 13, 2020).

Cir. 1992); confirming that the Eighth Amendment protects prisoner's health and well-being while incarcerated by placing an affirmative duty upon prison officials to protect those within its control.

We cannot comply with the recommendations of Center of Disease Control. The Essex County Jail houses two detainees' per cell therefore, there is absolutely no way to engage in social distancing and self-quarantine to comply with CDC recommendations. Consequently, hand-sanitizer is contraband and it is not given to the detainees'. Also, we have not been provided with gloves or masks, it was only given to the Correction Officers and 99% of the time they do not have neither on. The detainees' cannot follow the CDC's guidance to take the preventive measures to kill the virus[2]. The common area bathroom does not have a soap dispenser to wash our hands, we also have to share i.e., toilets, sinks, showers, phones, and tablets in the housing units with other individuals. We are involuntarily waiting to be infected with this deadly virus in the Jail.

It is abundantly clear that the officials in Essex County **fail** to realize that a communicable disease – spreads fast like a wild fire – in silence, like an assassin. The speed in the transmission of the COVID-19 virus would not be contained in a pale scope. They are only worrying about the weekly and monthly operating expenses. Because, the primary goal in trying to prevent the virus in the jails is to minimize the population that are in the Jails. Most recently, the Sheriff in Essex County, Kevin Coppingers, arrested thirty men that were in the prerelease Community Sober Homes. With the ruse that he wanted the individuals to be closely monitored by the medical staff at the facility. Putting in grave danger the health of the Care-worker(s), Correctional Officer(s), and the detainees'/inmate(s) – and most importantly all their families and our families. Wouldn't it be more logical – **not** to bring in any more individuals to the jail—in order to prevent the spread of the deadly virus? Especially, individuals that have not committed any crimes or violated their prerelease conditions. Just recently an elderly ICE detainee went to the hospital on **unrelated** medical issues. The exceptional Doctors in UMD Hospital, sprang into action and tested the detainee for the virus – **the test results came back positive for the virus.** In which the ICE detainees went on hunger and work strike and many of them are suing for their release. The Jail **masqueraded** the ICE detainees' refusal to work or eat. With the falsity that they removed the ICE detainees' from the kitchen out of an abundance of caution[3]. Days prior or after another inmate that was detained in Delaney Hall tested positive, potentially infecting others. Also unnamed Correctional Officer(s) have tested positive for the virus and an inmate that was housed in 4 building had the symptoms of the virus. The question is not if there will be a COVID-19 outbreak – it is when? The County Jail in Cook County in Chicago as of the writing of this letter, has 89 detainees' and 12 Staff tested positive for the virus. In a FDC Camp, in Okdale, Louisiana, 9 inmates and 8 staff tested positive for the virus. **Subsequently, Patrick Jones, inmate died days later after testing positive for the virus.** There is 24 Federal inmates and 24 staff in the BOP tested positive for the virus. The health, food, and safety conditions has been a serious ongoing concern in Essex County Correctional Facility. The Department of Homeland security in July 24, 2018, did an unannounced inspection and found countless of violations[4]. Our lives are in danger

---

[2] Centers for Disease Control and Prevention, Coronavirus (COVID-19) https://www.cdc.gov/coronavirius/2019-ncov/index.html (updated frequently).

[3] Memo from the Warden Effective immediately, out of the abundance of caution the kitchen will only be staffed by GD Correctional Serves employees.

[4] Department of Homeland Security, Office of Inspector General, Issues Requiring Action at the Essex County Correctional Facility in Newark, New Jersey, at p 2, (Feb. 13, 2019), available at https://www.oversight.gov/sites/default/files/oig-reports/OIG-20-Feb19.pdf.

and we are constantly living in fear, anxiety and depression due to the deadly virus. However, no Federal detainees' are being released out on bail in the District of New Jersey to combat this deadly virus and be reunited with their families.

The COVID-19 Virus in Jails are endangering the lives of many inmate(s) across the Country. Most recently, on March 22, 2020, the Honorable Chief Justice, Stuart Rabner of the New Jersey State Supreme Court – **ordered the release** of approximately one-thousand-inmates from the New Jersey State County Jails. Along, and in agreement with the Chief Justice order, was the Governor Phil Murphy as well as the acting Attorney General, Gurbir S. Grewal. Accordingly, these Official(s) understand that prison(s) are the perfect incubators for an outbreak of the virus tantamount to the death sentence of countless of detainees'.

State and Nation wide the Judge(s), Governor(s), and the Attorney General(s)., and Official(s) all have one common goal – is to save lives. United Sates v. Barkman, 2020 U.S. Dist. Lexis 45628 at* 4 (D. Nev. 2020); officials nation-wide are releasing inmates Iran released 54,000 inmates through furlough and the Secretary of State Mike Pompeo has called for the release of Americans detained in Iran. They, have all unified in an agreement in the release of low-risk-offenders from the County Jails across the Country i.e., New York released eight-hundred plus inmates, Los Angeles released seven-teen-hundred. Hopefully many other States will likely follow suit. Despite, all the hysteria and the concerns in the preventive measures of this horrible virus that the officials are undertaking for the State detainees'. As of the writing of this letter I have not heard or read anywhere of the release of any Federal pretrial-detainee in the District of New Jersey. Why are Federal detainees' who are nonviolent not being released?

Senator Mr. Corey Booker has proposed a Bill to Congress for the release of pretrial-detainees' that are low-risk-offenders and the compassionate release of the elderly inmates that are held in the BOP. In addition, Mr. David Patton the Executive Director of the non for profit Federal Defenders of New York. Wrote a letter to the William P. Barr, U.S. Att. Gen., as well as Michael Carvajal the BOP Director – for the release of pretrial-detainee at the Metropolitan Detention Center in Brooklyn, due to numerous detainees' that tested positive for the virus at MDC. These officials are fully aware that prisons are vulnerable to contagion of the virus. Animating, a dire urgency for actions to be taken and the release of detainees'/ inmate(s) that do not pose a threat to society or that are not a flight risk to be release to their families.

The detainees'/inmates detained at the Essex County Correctional Facility humbly request that the detainees'/inmates mentioned in this letter be released out on bail. We implore to the Officials aforementioned above for the review and the release of these detainees' that are non-violent-detainees'. Some detainees'/inmates have one-year or less to be reunited with their families. Others are pretrial detainees', with preexisting medical conditions awaiting to possibly go to trial or possibly plead guilty, and few are elderly and awaiting sentencing and it could be a death sentence for them if they stay detained. However, each and every one of these detainees' do not pose any threats to society or are a flight risk. They are the perfect individuals to be released, to be with their families on house arrest. As the District Court of Connecticut held in United States v. Fellela, 2020 U.S. Dist. Lexis 49198 (D. Con. 2020)(citation omitted); that Fellela's motion requires me to consider whether he has established by clear and convincing evidence that he will not flee or pose a danger to any other person or to the community. See; 18 U.S.C §3143(a)(1); Fed. R. Crim. P. 32.1(a)(6). Therefore, the detainees' that are in this letter are the perfect individuals to be released on bail. They are not flight risks and do not pose a danger to the community.

Because of travel restrictions and noncontact visits with our attorneys, as well as the jail being closed on Sundays due to the Covid-19, it is a violation of our 6th Amendment rights. Specifically, the pretrial-detainees' that must review voluminous amount of discovery and discuss factual and legal issues with their lawyers. Barker v. Wingo, 407 U.S. 514, 533(1972); the Supreme Court held, that a pretrial-detainee is hindered in his ability to prepare his defense. Under normal conditions when the detainee, is detained his ability to prepare a defense is hindered. Moore v. Arizona, 414 U.S. 25, 27, 94 S. Ct. 188, 38 L. Ed. 2d 183 (1973) (per curiam); recognizing that delay may seriously interfere with the defendant's liberty, whether he is free on bail or not, and may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends Therefore, in the interest of justice the non-violent offenders should be release to prepare a defense for trial. In order not to violate the 5th and 6th amendment right to prepare a defense that is mandated by the United States Constitution. Due to the ongoing contact restriction that the facility has implemented because of the COVID-19 virus.

In addition, the District Court of New Jersey in Newark allows the speedy-trial-clock to elapse. Under the guise that some cases are "complex" to support an "ends of justice" continuance. And now that the Covid-19 is a threat, numerous detainees' speedy-trial-rights are going to be violated. The Government is going to request for continuances due to the virus – in which they are going to be granted. Hindering the defense of the pretrial-detainees', that has been incarcerated more than a year. Therefore, the detainees' should be released from detention until the Covid-19 threat is under control. Especially those detainees' who have asthma and other preexisting health conditions which make them susceptible to the infection or the detainees' that have no prior convictions.

Please review any other individuals that I have not mentioned in this letter because there is a high possibility that there are others – due to the new contract that the facility has with the Marshals to hold any detainee with a sentence under two years.

Due to the potential retaliation in this bold step that I am taking in trying to get my fellow detainees'/inmates released out on a bracelet I would rather be an anonymous writer.

Respectfully Submitted
From the Essex County Jail
Federal detainees'/inmates

## DETAINEES' AND INMATES THAT SHOULD BE PLACED ON A BRACELET PENDING THE OUTCOME OF COVID-19 VIRUS

1. Armani Torres, 2:19-cr-00781-1
2. Tawan Grier, SBI:2676774G
3. Reimon Genao-Rosario, J-2019-04-205
4. Raegan Romantico, SBI: 406363GA
5. Yashi Tiwari, J-2019-09-575
6. Jesse Powell, Mag. No. 20-9007
7. Raheem Rogers, Mag. No. 20-9007
8. Afzal Khan, AKA Bobby, Mag. No. 19-8080
9. Myles Dacres, Crim. No. 19-cr-832
10. Kraig M. Trotter, Mag. No. 19-3879
11. Patricio Hernández, Crim. No. 19-150
12. Narciso Ramírez, 2:18-mj-07074-CLW and Case No. 2:220-cr-00089
13. Asher Conn, 19-cr-370
14. Duwann Elliott, Mag. No. 19-8364
15. Jazmar Boyd, Mag. No.10-8080
16. Rodgerick Garrett, Mag. No. 19-4234
17. Angel Morales, 2020-660-714
18. Jobadiah Sinclair Weeks, Crim. No. 19-cr-877
19. Christopher Montalvo-Flores, Crim. No. 20-080
20. Fuquan Bunn, SBI: 232021
21. Isaac Porter, Crim. No. 18-753
22. Isalas Pérez, J-2018-06-135
23. Fuquan Bunn, SBI:232021
24. Elijah Cabbagestalk Mag.19-08226
25. Raymond Petway, Crim.No.17-534