**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

**United States of America,**
**v.**
**Jobadiah Weeks,**
Defendant

**Case No. 19-cr-877-CCC**
**Hon. Claire C. Cecchi**

# DEFENDANT'S DEMAND TO COMPEL DISCOVERY

**NOW COMES Defendant, Jobadiah Weeks,** acting **pro se,** and respectfully requests this Court for an order compelling the United States Attorney's Office for the District of New Jersey to provide the outstanding discovery materials requested in Defendant's letters to AUSA Anthony Torntore dated **September 5, 2024, and February 13, 2025.**

On **February 18, 2025**, the Government filed a letter opposing Defendant's ex parte rescission of autograph and demand for dismissal (hereinafter "plea withdrawal") and requested that sentencing proceed as scheduled on March 12, 2025 (**Docket Entry #399**). However, this filing was made after the Government received Defendant's **February 13, 2025**, discovery request, raising serious concerns about whether the prosecution is actively seeking to suppress evidence that is material to the pending plea withdrawal notice. **The timing of this opposition, without first addressing the discovery violations raised in this demand, underscores the urgent need for transparency and Court intervention** to ensure that exculpatory materials are produced before any recognition of the plea withdrawal notice.

Despite these formal requests, the government has failed to respond, necessitating judicial intervention.

## I. INTRODUCTION

Defendant **Jobadiah Weeks**, acting **pro se**, moves this Court to **compel the United States Attorney's Office for the District of New Jersey** to produce outstanding discovery materials **requested in letters dated September 5, 2024, and February 13, 2025**. Despite repeated formal requests, the government has failed to comply, necessitating judicial intervention.

Additionally, on **February 26, 2025**, Defendant sent a formal letter to **AUSA Anthony Torntore** demanding the immediate return of seized assets, including **cryptocurrency and precious metals**. The letter, attached as **Exhibit K**, exposes significant discrepancies in the government's reporting of the **Bitcoin seizures**, which do not align with the actual **Bitcoin transactions**.

On **December 10, 2019**, when the assets were seized, the government prepared a **Crypto-Seizures Memorandum** (Exhibit L). However, this memo **fails to account for 4.99995661 BTC** that were taken during the seizure. This discrepancy raises serious concerns about **the integrity of the government's asset reporting** and further supports Defendant's allegations of **misconduct and improper handling of evidence**.

On **January 7, 2020**, Attorney **Michael Yaeger** entered an appearance as defense counsel (Docket Entry 15, Exhibit H). Despite this, the **DOJ and U.S. Marshals transferred Defendant without notifying his legal counsel**, placing him in proximity to a **government witness** without attorney consultation. Furthermore, the **absence of an arraignment or detention hearing** constitutes a **violation of Defendant's Sixth Amendment right to counsel** and raises serious concerns of prosecutorial misconduct.

Defendant has reason to believe that the **government has engaged in fraud and perjury**, including but not limited to:

- **Altering or fabricating the Streamlined SAR (Exhibit G)** to align with its prosecution strategy.
- **Providing false statements** about the existence and date of the SAR, thereby misleading the defense and the Court.
- **Withholding exculpatory evidence** in violation of **Brady v. Maryland, 373 U.S. 83 (1963)**, including documents critical to **plea negotiations and tax calculations**.
- **Failing to disclose grand jury and prosecutorial records** related to **plea coercion** and **internal DOJ discussions** on pressuring Defendant into a guilty plea.
- **Manipulating witness placement and transport conditions** to facilitate interactions between Defendant and key government witnesses (**Goettsche & Abel**) without legal counsel.
- **Orchestrating repeated transfers between different prisons** to **interfere with legal representation** and **apply psychological pressure** to induce a guilty plea.
- **Submitting false or misleading representations to the Court in Docket Entry 399 to obstruct Defendant's ability to withdraw his plea.** The Government's letter opposing plea withdrawal, filed on February 18, 2025, after receiving Defendant's February 13, 2025, discovery request, **fails to acknowledge the suppressed SAR materials, grand jury records, and Brady violations.** By falsely asserting that Defendant's guilty plea was voluntary while continuing to withhold exculpatory evidence that could prove otherwise, the Government has engaged in **fraud on the court and perjury in violation of 18 U.S.C. § 1001 (False Statements) and 18 U.S.C. § 1519 (Obstruction of Justice).**
- **Producing selective or incomplete discovery** while withholding critical evidence to **misrepresent facts before the Court**.

These **acts of fraud and perjury deprived Defendant of his constitutional right to due process, obstructed access to exculpatory evidence, and misled both the defense and the Court** regarding the true nature of the case.

Furthermore, the government's misconduct violates **multiple legal precedents** that safeguard due process and fair trial rights:

- **The plea agreement was coerced,** rendering it involuntary under United States **v. Ruiz, 536 U.S. 622 (2002),** as evidenced by the **Weeks Plea Agreement & Grand Jury Expansion Memo (CT-122627-20, October 8, 2020) (Exhibit C).**
- The government engaged in **prosecutorial misconduct by withholding or altering evidence**, violating **United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993)**.
- The **government failed to comply with Rule 16(a)(1)(E)** of the **Federal Rules of Criminal Procedure**, which **mandates the disclosure of any evidence material to the defense**.
- In **Brady v. Maryland, 373 U.S. 83 (1963)**, the Supreme Court held that **failure to disclose exculpatory evidence violates due process**.
- In **United States v. Bagley, 473 U.S. 667 (1985)**, the Court clarified that **suppressing impeachment evidence, even if not intentionally malicious, is a due process violation**.
- The **government's failure to disclose grand jury records and Special Agent reports** suggests a **violation of these well-established precedents**, necessitating judicial scrutiny.


Given the **government's deliberate misrepresentations and constitutional violations**, this Court must intervene through **evidentiary hearings and appropriate sanctions**.

Since **AUSA Anthony Torntore has failed to respond**, Defendant respectfully requests that this Court **compel immediate compliance** to uphold fundamental due process rights and prevent further prosecutorial misconduct.

On February 21, 2025, Defendant filed a Notice to Withdraw Plea (Docket Entry 401), asserting that the plea agreement was involuntary due to prosecutorial misconduct, **Brady violations, and suppressed exculpatory evidence, including the Special Agent's Report (SAR) and grand jury materials**. Despite receiving Defendant's February 13, 2025, discovery request, the Government **deliberately ignored these missing records** and instead rushed to file its opposition to plea withdrawal (Docket Entry 399) on February 18, 2025. This **strategic omission of exculpatory materials** demonstrates the Government's **continued effort to obstruct access to discovery before a ruling on plea withdrawal**. The Court **must resolve these Brady violations and evidentiary disputes before ruling on the validity of the plea agreement**, ensuring that all withheld materials are disclosed and properly reviewed. **This Court should not rule on the plea withdrawal motion without first resolving these outstanding discovery violations.**

Given the legal significance of these issues, I respectfully request your prompt attention and full cooperation in providing the requested materials.

# II. RELEVANT BACKGROUND

On September 5, 2024, Defendant's legal counsel submitted a formal records request (Exhibit A) to AUSA Torntore, specifically requesting the **Streamlined Special Agent's Report (SAR)**. However, the Government has acknowledged that a traditional SAR was never created (see Footnote 7, Exhibit C), and instead, a **Streamlined SAR supplemented with additional documents was produced**. While this Streamlined SAR was disclosed, it is still incomplete, as it does not include all underlying exhibits and referenced materials."

**The SAR provided by the government (Exhibit G**) and referenced to in Weeks **Plea Agreement & Grand Jury Expansion Memo (CT-122627-20, October 8, 2020)** (Exhibit C) under footnote 7.:

> We note that a traditional Special Agent's Report (SAR) with exhibits attached was not created for this case. A streamlined SAR was created and supplemented with documents which corroborate the allegations in the SAR. Therefore, the Weeks interviews are not officially identified as evidentiary exhibits or attached to the report. Our office requested copies of these interviews from the Special Agent and they were provided. We would advise including these interviews with the plea recommendation when it is sent to the Tax Division.

This **Streamlined SAR** lacks a date but references Weeks' guilty plea, which was signed on September 24, 2020. **This proves the document was created in 2021 or later.** This discrepancy is legally significant because it suggests that the government **either fabricated or retroactively altered** the SAR to align with its prosecution strategy, thereby misleading the defense and the court, **which constitutes prosecutorial misconduct.** The provided SAR cannot be the one referenced in the plea agreement, meaning the government has either withheld the original SAR or created a post-plea SAR to justify its actions retroactively.

The **government's refusal to provide the original SAR suggests not just negligence, but a deliberate effort to suppress or falsify evidence, constituting fraud on the court.** The post-dating of the SAR indicates an **intentional misrepresentation** designed to support the prosecution's case, raising serious concerns about prosecutorial integrity.

Additionally, Defendant was **repeatedly transferred between different prison facilities under suspicious circumstances, limiting his ability to coordinate his defense with legal counsel and creating psychological pressure to accept a plea deal.** These unexplained transfers, combined with the DOJ's refusal to disclose related records, suggest that **the government engaged in intentional misconduct to weaken Defendant's ability to challenge its case.**

The government has not disclosed **who authorized these transfers, why they were necessary, or whether DOJ officials deliberately used them as a coercion tactic.** False

4

statements regarding the justification for these transfers may constitute **perjury under 18 U.S.C. § 1621 and § 1001** and **obstruction of justice under 18 U.S.C. § 1519**.

These violations **are not procedural oversights but calculated acts meant to deprive Defendant of a fair trial and due process.**

This misconduct parallels the issues in **United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993)**, where the court condemned prosecutorial deception, and **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)**, where the court sanctioned prosecutors and dismissed an indictment due to prosecutorial misconduct in failing to disclose Brady materials.

**On February 13, 2025, Defendant submitted a formal Request for Clarification Letter (Exhibit B) to AUSA Torntore**, reiterating the demand for the SAR and other key records. **The Plea Agreement (Docket Entry 148, Nov. 5, 2020) and Weeks Plea Agreement & Grand Jury Expansion Memo, CT-122627-20 October 8, 2020 (Exhibit C) confirms that the government had access to the SAR but failed to disclose it.**

The Treasury August 17 & 25, 2020 Proffer Memos (**Exhibit D**) and the April 19, 2019, meeting notes (**Exhibit F**) contain statements by Weeks that contradict key elements of the government's Weeks Plea Agreement & Grand Jury Expansion Memo, CT-122627-20 October 8, 2020. Defendant has made **multiple good-faith efforts to obtain discovery through formal requests**, including the **September 5, 2024, Records Request** (**Exhibit A**) and the February 13, 2025, **Request for Clarification Letter (Exhibit B)**. **The Certificate of Service (Exhibit E) confirms these requests were properly served, yet the government has failed to respond or justify the omission of critical evidence.**

# III. LEGAL BASIS FOR DISCOVERY

## 1. Rule 16 Discovery Obligations (Federal Rules of Criminal Procedure)

Under Rule 16(a)(1)(E), the government **must disclose any evidence that is material to the preparation of the defense**. The records sought—including **DOJ communications about plea negotiations, charging decisions, and witness interactions**—are material because they bear directly on whether the prosecution's actions **deprived Defendant of due process and Brady rights**.

## 2. Brady v. Maryland: The Government Must Disclose Exculpatory Evidence

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the **prosecution must disclose evidence that is favorable to the accused**. This includes:

- **DOJ and FBI internal records evaluating the government's charging rationale.**
- **All documents discussing the placement of Defendant near key witnesses (Goettsche and Abel).**
- **The original Special Agent's Report (SAR), which was either altered or withheld by the prosecution.**

Furthermore, these violations directly impact Defendant's Motion to Withdraw Plea, as they demonstrate that the plea was entered without full knowledge of material evidence. **Under Brady v. Maryland, 373 U.S. 83 (1963)** and **United States v. Ruiz, 536 U.S. 622 (2002)**, a plea agreement must be based on full disclosure of all material facts. The government's suppression of key exculpatory and impeachment evidence directly undermines the voluntariness of Defendant's plea, reinforcing the need for immediate disclosure of the requested materials before the plea withdrawal motion is ruled upon.

The Government's motion (**Docket Entry 399**) (**Exhibit I**) opposing plea withdrawal further underscores the urgency of resolving these discovery disputes. The prosecution's opposition is based on the claim that Defendant's guilty plea was voluntary, yet it continues to withhold key exculpatory materials that would inform the Court's ruling on voluntariness. The Supreme Court has held that **a guilty plea is involuntary if material exculpatory evidence was withheld at the time the plea was entered** (see **Brady v. United States, 397 U.S. 742 (1970)**; **United States v. Ruiz, 536 U.S. 622 (2002)**). Defendant respectfully submits that the **Government's opposition brief should not be considered until these missing records are disclosed and reviewed.**

The Government's acknowledgment in Footnote 7 that a traditional Special Agent's Report (SAR) was never created, but instead supplemented with additional documents, raises serious concerns of evidentiary suppression. Defendant separately requests the disclosure of the **April 19, 2019 SAR**—or any related Special Agent reports or investigative summaries drafted before the plea agreement—to determine whether material exculpatory information was withheld prior to plea negotiations. The existence of an April 19, 2019 SAR is evidenced by internal Government communications discussing Weeks' interviews and their intended use in plea recommendations. If this report exists, it is **highly relevant to both Brady disclosures and the pending Motion to Withdraw Plea (Docket Entry 401)**, as it may contain statements or evidence that contradict the prosecution's case or plea agreement representations. Under **Brady v. Maryland, 373 U.S. 83 (1963)** and **United States v. Bagley, 473 U.S. 667 (1985)**, the Government must disclose all evidence that is favorable to the defense. By withholding Weeks' interviews and failing to disclose all SAR-related materials, the Government has deprived Defendant of evidence that could have been critical in evaluating the strength of the prosecution's case at the time of plea negotiations. The Court should compel full production of these materials before ruling on the pending Motion to Withdraw Plea (Docket Entry 401).

**The government's refusal to provide the original SAR suggests suppression of exculpatory evidence and constitutes prosecutorial misconduct. As stated in**

**United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993), the withholding of key evidence warrants judicial sanctions, including dismissal of charges in cases of egregious misconduct.**

The DOJ's failure to disclose these materials violates *Brady* obligations, as well as *United States v. Bagley*, 473 U.S. 667 (1985), which requires full disclosure of **exculpatory and impeachment evidence**.

## 3. United States v. Nixon: Limits on Government Privilege Claims

Given the government's **failure to comply with formal discovery requests**, Defendant respectfully **requests that this Court compel immediate disclosure** of the requested records and impose **judicial remedies** for the **government's failure to comply with discovery obligations**. The Supreme Court in **United States v. Nixon, 418 U.S. 683 (1974)** ruled that **government privilege claims must meet strict judicial scrutiny before being upheld in withholding material evidence**. Additionally, in **United States v. Zolin, 491 U.S. 554 (1989)**, the Court **approved in-camera reviews** of government records **to assess the validity of privilege claims and prevent the suppression of evidence**. Furthermore, if government officials **knowingly misrepresented facts or suppressed material evidence**, **United States v. Aguilar, 515 U.S. 593 (1995)** establishes that **such conduct may constitute obstruction of justice under 18 U.S.C. § 1519**.

Under *United States v. Nixon*, 418 U.S. 683 (1974), the government **cannot withhold evidence without demonstrating a compelling justification**. If the DOJ claims privilege over any withheld discovery, it must:

- **Produce a privilege log** identifying the documents withheld and the legal basis for each exemption.
- **Allow an in-camera review** by the Court to determine whether the privilege claims are valid under *United States v. Zolin*, 491 U.S. 554 (1989).

## 4. Sixth Amendment Violations & Prosecutorial Misconduct by AUSA Hoxie

The government's **deliberate placement of Defendant near key witnesses**, as well as **AUSA Justin Hoxie's involvement in instructing Defendant regarding communications with co-defendants**, raises **serious constitutional concerns**. The repeated **unexplained transfers of Weeks between multiple detention facilities** further **obstructed his ability to coordinate with legal counsel**, violating his due process rights.

Under **Miranda v. Arizona, 384 U.S. 436 (1966)**, the government is **obligated to inform the defendant of legal rights**, and placing him in uncertain conditions **without legal counsel** may constitute a **violation of constitutional protections**. Additionally, in **United States v. Olsen, 737 F.3d 625 (2013)**, the court ruled that **a pattern of suppression and delay in evidence disclosure demands heightened judicial scrutiny**. Furthermore, **United States v. Aguilar, 515 U.S. 593 (1995)** establishes that **government misrepresentations about procedural actions may constitute obstruction of justice under 18 U.S.C. § 1519**.

7

The Supreme Court has repeatedly ruled that **government interference with a defendant's access to legal counsel is unconstitutional**:

- **United States v. Henry, 447 U.S. 264 (1980)** – Placing a defendant near a **government witness** with the **intent to elicit information without counsel's knowledge** violates the **Sixth Amendment**.
- **Massiah v. United States, 377 U.S. 201 (1964)** – A defendant's **statements obtained outside the presence of legal counsel, when facilitated by government action, are inadmissible**.

Defendant seeks records that would clarify:

- **Whether AUSA Hoxie or other DOJ officials coordinated Defendant's placement with key witnesses.**
- **Whether Hoxie or other officials instructed Defendant to engage or avoid discussions with co-defendants.**
- **Whether defense counsel was properly notified of these interactions before plea negotiations took place.**

The DOJ's **refusal to provide this information**, along with its **failure to produce the original SAR**, suggests **deliberate suppression of evidence**. Any **false statements made regarding the SAR's existence and contents** may constitute **perjury under 18 U.S.C. § 1621 and § 1001**, reinforcing the **need for judicial intervention**.


## 5. Fraud on the Court & Government Misconduct Warrants Sanctions

The government's **intentional misrepresentation of SAR evidence** constitutes **fraud on the court**, justifying **sanctions or dismissal** under **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** and **Bank of Nova Scotia v. United States, 487 U.S. 250 (1988)**. The **Supreme Court in Hazel-Atlas** ruled that **fraud on the court, including the use of altered evidence, warrants immediate judicial intervention**.

The **February 26, 2025, letter to AUSA Torntore (Exhibit K)** further exposes fraudulent government conduct. This letter provides evidence that **4.99995661 BTC** was transferred from Defendant's seized wallets but was not accounted for in the government's official reports. The DOJ's refusal to acknowledge or correct this discrepancy constitutes material misrepresentation, reinforcing the need for immediate judicial intervention and evidentiary hearings to determine whether prosecutorial misconduct has tainted these proceedings.

Additionally, in **United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993)**, the Ninth Circuit held that **prosecutorial deception, particularly in withholding key documents, justifies judicial sanctions**. Likewise, in **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)**, the court reaffirmed that **concealment of material evidence can warrant dismissal of charges**.

8

If the prosecution **falsified documents or presented misleading evidence**, this Court has the **authority to suppress tainted evidence, impose sanctions, or dismiss charges as necessary to preserve judicial integrity**.

# IV. RELIEF REQUESTED

Given the direct impact of this discovery on Defendant's pending Notice to Withdraw Plea (**Docket Entry 401**) **(Exhibit J)**, Defendant respectfully requests that this Court **expedite the ruling** on this Motion to Compel Discovery. Failure to resolve these discovery issues prior to deciding the plea withdrawal notice would result in severe prejudice, as Defendant cannot effectively argue for plea withdrawal without access to exculpatory and material evidence suppressed by the government.

The Government's opposition brief (**Docket Entry 399**) strategically ignores the discovery violations raised in Defendant's **February 13, 2025**, letter, further reinforcing the need for judicial oversight. Defendant respectfully requests that this Court compel the immediate disclosure of all withheld records before determining the validity of the guilty plea, ensuring that all Brady materials and grand jury records are fully reviewed in light of potential prosecutorial misconduct.

**Defendant respectfully requests that this Court issue an order compelling the government to produce the following records immediately:**

Given the government's failure to comply with formal discovery requests (**Exhibits A, B, and E**), Defendant respectfully requests that this Court order immediate disclosure of the requested records.

## 1. DOJ, SEC, IRS, and FBI Communications

Furthermore, these violations directly impact Defendant's Notice to Withdraw Plea, as they demonstrate that the plea was entered without full knowledge of material evidence. Under **Brady v. Maryland, 373 U.S. 83 (1963)** and **United States v. Ruiz, 536 U.S. 622 (2002)**, a plea agreement must be based on full disclosure of all material facts. The government's suppression of key exculpatory and impeachment evidence directly undermines the voluntariness of Defendant's plea, reinforcing the need for immediate disclosure of the requested materials before the plea withdrawal motion is ruled upon.

1.1 **DOJ Internal Communications** – All emails, memos, and notes discussing why the **Special Agent's Report (SAR)** was not disclosed in Weeks' discovery. The SAR is crucial because it contains **exculpatory evidence** related to BCN's operations and Weeks' role.

1.2 **Plea Negotiations and Charging Decisions** – Compel the production of all DOJ, SEC, IRS, and FBI communications related to the **SAR (Exhibit G), Plea Agreement (Docket Entry 148, Nov. 5, 2020) and Weeks Plea Agreement & Grand Jury Expansion Memo, CT-122627-20 October 8, 2020 (Exhibit C), plea negotiations,**

**and the timing of tax charges** against Defendant.

1.3 Full Special Agent's Report (SAR) from April 19, 2019 – Defendant requests the immediate disclosure of the **April 19, 2019 SAR**—or any related Special Agent reports, interview summaries, or investigative records drafted before the plea agreement. The existence of this SAR is evidenced by internal Government communications referencing Weeks' interviews and their intended use in plea recommendations. If this document was used to supplement the Streamlined SAR or inform plea negotiations, it must be disclosed under **Brady v. Maryland, 373 U.S. 83 (1963)** and **Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure**. To date, this SAR has not been provided, and its absence raises serious concerns of evidentiary suppression. Defendant requests all versions, drafts, supplements, or references to this SAR, including any DOJ and Treasury records discussing its use in plea negotiations.

These materials are particularly relevant to Defendant's pending Motion to Withdraw Plea. The government's failure to disclose grand jury materials and investigative reports before Defendant's plea agreement suggests that key exculpatory evidence was withheld, preventing an informed decision. Under United States v. Armstrong, 517 U.S. 456 (1996), selective prosecution claims require discovery when evidence suggests discriminatory enforcement, and under United States v. Williams, 504 U.S. 36 (1992), prosecutors cannot mislead a grand jury by omitting exculpatory material. If this suppressed evidence contains proof that the government selectively prosecuted Defendant or manipulated the charging process, it strengthens the plea withdrawal argument and demands full disclosure before the Court rules on the matter.

1.4 **Grand Jury Materials** – All grand jury transcripts and exhibits related to **tax enforcement decisions** against Defendant, including records on the government's **delay in bringing tax charges**.

1.5 **In-Camera Review** – Order an **in-camera review of DOJ and IRS records** to determine whether an earlier SAR existed but was not disclosed.

1.6 **Judicial Remedies for Noncompliance** – If the government **fails to comply**, Defendant requests that this Court:

- **Suppress any evidence** derived from the altered SAR.
- **Preclude the prosecution from relying on plea statements influenced by suppressed evidence.**
- **Issue monetary sanctions or other deterrent measures to prevent further misconduct.**
- **Dismiss charges if the evidence establishes intentional prosecutorial misconduct.**

1.7 **Missing SAR Exhibits & Interviews**
Footnote 7 of the **Weeks Plea Agreement & Grand Jury Expansion Memo**

**(CT-122627-20, October 8, 2020)** (Exhibit C) reveals that a **traditional Special Agent's Report (SAR) was never created for this case**. Instead, a **streamlined SAR** was supplemented with **additional documents that allegedly corroborate the allegations**. Furthermore, the footnote acknowledges that **Weeks' interviews were not officially identified as evidentiary exhibits or attached to the SAR**.

The Government **requested and received copies of these interviews from the Special Agent**, demonstrating that these materials exist and are in the Government's possession. Under **Brady v. Maryland, 373 U.S. 83 (1963), Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, and United States v. Bagley, 473 U.S. 667 (1985),** all documents supplementing the SAR and all Weeks-related interviews must be disclosed immediately. The Government cannot selectively produce only portions of the SAR while withholding attached or referenced documents.

**Defendant requests the immediate production of the following materials:**

- **All supplemental documents referenced in the SAR, including any exhibits, reports, memos, or corroborating materials.**
- **All Defendants interviews that were requested and received by the Government.**
- **All communications between the Special Agent and the Government regarding the creation, modification, or supplementation of the SAR.**


## 2. Bureau of Prisons (BOP) and U.S. Marshals Service Records

2.1 **Transport Logs** – All records documenting **Defendant's prison transfers and placement near key government witnesses**.


2.2 **Use of Transport to Pressure Defendant** – These records are relevant because **transport placements were used to pressure Defendant by exposing him to government witnesses or co-defendants**. *Massiah v. United States*, 377 U.S. 201 (1964), prohibits **government interference with legal representation**.

## 3. Unanswered Questions from the Bureau of Prisons (BOP) September 5, 2024 Letter

3.1 **IRS and BCN Tax Correspondence** – Records of **third-party information or reports used to determine Defendant's tax obligations**.

3.2 **Proffer Session Transcripts** – Any and all **interview transcripts or summaries of proffer sessions from co-defendants** in this matter.


3.3 **Written Explanation for Withholding** – If the government withholds any of these documents, Defendant requests a **detailed written explanation** stating the legal

basis for doing so. *United States v. Olsen*, 737 F.3d 625 (9th Cir. 2013), reinforces that **failure to disclose exculpatory financial records violates due process**.

## 4. Questions from the Seized Assets Letter February 26, 2025

Defendant demands the immediate disclosure of all records related to seized assets, as outlined in **Exhibit K (February 26, 2025, Letter to AUSA Torntore).** The Court should compel the government to:

4.1 **Provide full transaction records** detailing all movements of seized cryptocurrency assets, including the missing **4.99995661 BTC.**

4.2 **Conduct an independent forensic audit** to verify whether seized cryptocurrency was misappropriated or unlawfully transferred.

4.3 **Issue a judicial order** requiring the government to return all unlawfully seized property, including gold, silver, and stock certificates, within **ten (10) business days.**

Failure to comply will warrant sanctions, as continued refusal to return non-forfeitable assets constitutes a **violation of due process and obstruction of justice.**

## 5. Government-Orchestrated Witness Interactions & Sixth Amendment Violations

5.1 **Intentional Placement Near Government Witnesses** – The government **deliberately placed Defendant in proximity to key witnesses**—Matthew Goettsche and Joseph Abel—raising **significant due process and Sixth Amendment concerns**.

5.2 **Records of Government Coordination** – Defendant seeks discovery on whether **government officials facilitated or monitored these interactions and whether his legal counsel was notified**.

5.3 **Legal Basis** – *United States v. Henry*, 447 U.S. 264 (1980), held that **deliberate government action placing a defendant near a cooperating witness without counsel's knowledge** constitutes a constitutional violation. Likewise, *Massiah v. United States*, 377 U.S. 201 (1964), prohibits the **government from eliciting statements from a defendant outside the presence of legal counsel**.

5.4 **Discovery Requests** – Defendant requests:

- **Any instructions given to Defendant regarding discussions with co-defendants while in detention.**
- **Internal DOJ, FBI, or Bureau of Prisons (BOP) communications** discussing the decision to **place Defendant near key witnesses**.

- **Records showing whether Defendant's legal counsel was informed of these interactions before plea negotiations**.
- **Any documentation confirming that Defendant was properly advised of his rights in relation to these interactions**.

## 6. Demand for Government Justification on Attorney Non-Notification

6.1 **Denial of Arraignment & Detention Hearing Violated Due Process** – Unlike co-defendants Goettsche and Abel, Defendant Weeks was never given an arraignment or detention hearing. This omission violated Defendant's due process rights and denied him the opportunity to contest pretrial detention, request bail, or raise constitutional violations.

The DOJ must explain why Weeks was treated differently and why his attorney was never informed of these proceedings.

This omission **denied Defendant the opportunity to contest pretrial detention, request bail, or raise constitutional violations**. The **DOJ must explain why Weeks was treated differently, and why his attorney (Docket Entry 15) was never informed of these proceedings**.

6.2 **Violation of Right to Counsel & Failure to Notify Defense Counsel** – Internal **DOJ or FBI communications regarding Weeks' transport and attorney notification must be disclosed**, as failure to notify counsel constitutes a **Sixth Amendment violation under Brewer v. Williams, 430 U.S. 387 (1977)**.

6.3 **Potential Miranda Violation** – Any **records confirming whether Defendant was informed of his right to counsel before transport and detention**. The government's failure to notify Defendant's attorneys about his placement near a witness raises concerns under *Miranda v. Arizona*, 384 U.S. 436 (1966).

6.4 **Bureau of Prisons & U.S. Marshals Service Communications** – All **internal government instructions on restricting Defendant's communication with his attorneys**.

6.5 **Written Justification for Due Process Violations** – If the government contends that no wrongdoing occurred, it must provide a **written justification** explaining:

- **Why Defendant was not given an arraignment and detention hearing** like co-defendants.
- **Why Defendant's attorney was not informed of transport conditions**.
- **Why Defendant was placed near a government witness without prior defense notification**.

## 7. Fraud and Perjury Determinations and Criminal Liability for False Statements by the Government

**Fraud and Perjury Claims Warrant an Evidentiary Hearing & Criminal Referral**
The **Government's Letter Opposing Plea Withdrawal (Docket Entry 399)**, filed on **February 18, 2025**, is **further evidence of fraud on the court and perjury**. This motion was submitted **after the Government received Defendant's February 13, 2025, discovery request**, yet it **fails to acknowledge the missing SAR materials, grand jury records, and Brady violations** raised by Defendant. The **Government is actively misrepresenting the voluntariness of Defendant's plea while continuing to withhold exculpatory evidence** that could support plea withdrawal.

This directly violates:

- **Brady v. Maryland, 373 U.S. 83 (1963)** – **Failure to disclose exculpatory evidence**.
- **Giglio v. United States, 405 U.S. 150 (1972)** – **Concealment of impeachment evidence affecting witness credibility**.
- **18 U.S.C. § 1001 (False Statements)** – **Knowingly making false statements in court proceedings**.
- **18 U.S.C. § 1519 (Obstruction of Justice)** – **Altering or concealing documents to impede legal proceedings**.

Furthermore, the **Government's refusal to disclose these materials before the Court rules on plea withdrawal** constitutes **fraud on the court** under **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** and **obstruction of justice** under **18 U.S.C. § 1519**.

Defendant respectfully requests that the Court:

1. **Hold an evidentiary hearing** to determine the extent of the **Government's material misrepresentations** in **Docket Entry 399** and their impact on **plea withdrawal**.
2. **Recognize that Docket Entry 399 contains false statements** and deliberate omissions intended to **mislead the Court**.
3. **Refer responsible DOJ officials for criminal investigation** under **18 U.S.C. § 1001 and 18 U.S.C. § 1519**.
4. **Order the immediate disclosure** of the **suppressed April 19, 2019 SAR, and all grand jury materials** relevant to **plea withdrawal**.
5. **Impose sanctions** against DOJ officials for **willful misrepresentations that obstruct Defendant's right to a fair legal process**.

**Legal Basis:**

If government officials knowingly provided false statements or altered evidence, this Court has the authority to impose sanctions and refer individuals for prosecution. See **United States v. Aguilar, 515 U.S. 593 (1995)** (false statements by officials can constitute obstruction of justice) and **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** (fraud on the court warrants judicial intervention).

Docusign Envelope ID: BEA39B7E-2E9A-42DB-9827-7CE98ADZB595

# V. CONCLUSION & REQUEST FOR RESPONSE

**The DOJ has failed to respond to Defendant's good-faith request for clarification and discovery.** This Court should therefore **compel immediate disclosure** of the requested records within **seven (7) days**. The **DOJ's repeated failure to disclose exculpatory evidence, coupled with the fabrication of the SAR and suppression of legal counsel notification, constitutes prosecutorial misconduct, fraud on the court, and a violation of Defendant's due process rights.**

**WHEREFORE, Defendant respectfully requests that this Court:**

## 1. Immediate Production of Outstanding Discovery

**Order the government to immediately produce all outstanding discovery** no later than March 3, 2025, including DOJ, BOP, and IRS records, and all materials related to:

- Any **instructions given by AUSA Hoxie or any other government official** regarding Defendant's interactions with co-defendants Goettsche and Abel.
- **Prosecutorial communications** about plea negotiations and tax charges.
- The **original Special Agent's Report (SAR) and related grand jury materials.**

**If any records are withheld, require the DOJ to provide a privilege log** within **seven (7) days**, specifying the legal basis for each exemption.

**If necessary, conduct an in-camera review** to determine whether any privilege claims are improperly asserted.

## 2. Immediate Evidentiary Hearing to Determine Government Misconduct

**Schedule an evidentiary hearing no later than March 10, 2025**, to resolve disputed factual issues directly impacting **Defendant's Notice to Withdraw Plea (Docket Entry 401)** and the Government's opposition (**Docket Entry 399**). The hearing should determine the extent of **prosecutorial misconduct, Brady violations, and fraud on the court**, including:

1. Whether the Government's **suppression of exculpatory evidence, including the April 19, 2019 SAR, the Streamlined SAR, grand jury materials, and Brady disclosures, directly impacted Defendant's ability to make an informed plea decision, thereby warranting plea withdrawal.**
2. Whether the Government **deliberately withheld SAR-related interviews, exhibits, and investigative records supplementing the Streamlined SAR that could have influenced the plea decision, and whether this warrants an adverse inference.**
3. Whether the Government withheld exculpatory evidence in violation of **Brady v. Maryland, 373 U.S. 83 (1963)**, and whether its failure to disclose such

15

evidence warrants **sanctions or dismissal of charges** under **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)**.

4. Whether the **Streamlined SAR was altered, fabricated, or post-dated** to justify prosecution strategies, constituting **fraud on the court** under **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)**, and whether DOJ officials knowingly made false statements to the Court in violation of **18 U.S.C. § 1001 (False Statements)**.

5. Whether the **Government's placement of Defendant near key witnesses (Goettsche & Abel) without attorney consultation** constituted **deliberate witness manipulation**, violating Defendant's **Sixth Amendment right to counsel** under **United States v. Henry, 447 U.S. 264 (1980)** and **Massiah v. United States, 377 U.S. 201 (1964)**.

6. **Whether the Government's opposition to plea withdrawal (Docket Entry 399) contained material misrepresentations regarding the voluntariness of Defendant's plea while evidence remained undisclosed, thereby constituting fraud on the court.**

7. Whether DOJ officials engaged in **obstruction of justice** by **knowingly suppressing material discovery** and providing selective evidence to the defense in violation of **18 U.S.C. § 1519 (Obstruction of Justice)**.

8. **Whether the withheld evidence supports Defendant's selective prosecution claim, justifying expanded discovery under United States v. Armstrong, 517 U.S. 456 (1996).**

9. Whether the Government intentionally **suppressed the April 19, 2019 SAR, grand jury materials, and tax records that could prove prosecutorial misconduct or undermine the plea agreement.**

10. Whether the Government submitted **a fraudulent asset seizure report, Crypto-Seizures Memorandum (Exhibit L) on December 10, 2019 as outlined in Exhibit K (February 26, 2025, Letter to AUSA Torntore).**

**Given that the evidentiary hearing will resolve disputed factual issues essential to plea withdrawal, this Court must rule on discovery compliance before proceeding with sentencing.** The Supreme Court has long held that sentencing must be based on **full disclosure of material exculpatory evidence** *(see Brady v. Maryland, 373 U.S. 83 (1963); United States v. Bagley, 473 U.S. 667 (1985))*. If the withheld evidence proves that Defendant's plea was **induced through coercion or misinformation**, sentencing before resolving these violations would result in **irreparable prejudice**.

## 4. Impose Sanctions & Refer DOJ Officials for Criminal Investigation

**Impose sanctions if fraud, perjury, or prosecutorial misconduct is established, including:**

- **Preclusion of key government evidence** related to plea negotiations, tax calculations, and cryptocurrency seizures.

- **An adverse inference against the prosecution** regarding witness interactions, SAR alterations, and withheld discovery.
- **Dismissal of charges** if the misconduct is deemed sufficiently egregious under *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993).

**Make a formal judicial determination that:**

- The **Streamlined SAR was either altered, fabricated, or post-dated**, constituting **fraud on the court**.
- DOJ officials knowingly provided **false statements** or withheld **exculpatory evidence**, violating *Brady v. Maryland*, 373 U.S. 83 (1963).
- The **repeated, unexplained transfers of Defendant between multiple prison facilities constituted prosecutorial misconduct** intended to interfere with Defendant's right to legal representation and due process.

**Make a formal finding of prosecutorial misconduct** and immediately refer all responsible DOJ officials for **criminal investigation** under **18 U.S.C. § 1001 (False Statements)** and **18 U.S.C. § 1519 (Obstruction of Justice)**.

**Issue sanctions** and consider **contempt proceedings** against DOJ officials who knowingly participated in the **suppression of exculpatory evidence, falsification of records, or obstruction of these judicial proceedings**.

Failure to hold an evidentiary hearing would allow the Government to evade accountability for its **fraudulent representations to the Court** and deprive Defendant of his **constitutional right to due process**.

## 5. Show Cause Hearing for AUSA Anthony Torntore

If fraud, perjury, or prosecutorial misconduct is established, the Court should order a **show cause hearing** requiring **AUSA Anthony Torntore** to explain why the government failed to disclose the requested materials and whether this failure constitutes prosecutorial misconduct.

This hearing is necessary because Defendant has been incarcerated for over **5 years** based on **fraudulent and perjured representations** made by the prosecution. AUSA Torntore must be required to **justify why these materials were withheld** and whether this constitutes **intentional misconduct**.

There is clear legal precedent for holding prosecutors accountable when they fail to disclose exculpatory evidence and mislead the court:

- **United States v. Stevens (2008):** The court **vacated Senator Ted Stevens' conviction** after it was revealed that prosecutors withheld exculpatory evidence. U.S. District Judge Emmet G. Sullivan ordered a **contempt hearing** to investigate the misconduct.

- **Michael Morton Case (2011):** A **court of inquiry** found that prosecutor Ken Anderson **intentionally suppressed exculpatory evidence**, leading to a wrongful conviction. Anderson was held in **contempt of court, jailed, and disbarred**.
- **Richard Glossip Case (2025):** The Supreme Court **overturned Glossip's conviction and death sentence** after it was revealed that prosecutors **suppressed exculpatory evidence and relied on false testimony**.

These cases demonstrate that courts have a **legal duty** to hold prosecutors accountable when they engage in **misconduct, Brady violations, and fraudulent representations**.

Accordingly, this Court should **order a show cause hearing** for AUSA Torntore **only after the immediate evidentiary hearing**, ensuring that all **relevant misconduct findings** have been fully established before requiring his response.

## 6. Asset Return & Government Accountability

The Government has unlawfully retained Defendant's **seized assets, including cryptocurrency and physical property**, despite multiple formal requests for their return. These assets, confiscated on **December 10, 2019**, have not been subject to forfeiture proceedings, and the Government has failed to provide any legal justification for continued possession. The fraudulent **Crypto-Seizures Memo** and the **unaccounted 4.99995661 BTC transfer** further indicate misconduct and require immediate corrective action.

Accordingly, this Court must **order the Government to produce all records related to the seizure, storage, and handling of these assets and compel their full return within ten (10) business days**.

Failure to act would **constitute an unlawful deprivation of property**, violating **Rule 41(g) of the Federal Rules of Criminal Procedure** and due process protections under the **Fifth Amendment**.

## 7. Defer Rulings Until Discovery Violations Are Resolved

**Defer ruling on the pending Motion to Dismiss** until after the government complies with the outstanding discovery requests and the Court determines whether the withheld evidence impacts Defendant's plea withdrawal motion and due process rights. The resolution of these discovery disputes is necessary before the Court considers dismissal to ensure a just and complete adjudication.

**Defer ruling on the pending Notice to Withdraw Plea** until after a decision on the Motion to Compel is taken. The resolution of the discovery disputes is essential before considering the voluntariness and validity of Defendant's plea withdrawal Notice.

## 8. Stay of Sentencing Proceedings Until Discovery Issues Are Resolved

Given these **substantial due process violations**, Defendant **cannot fairly proceed to sentencing on March 12, 2025**, without first resolving the **fraudulent suppression of evidence and material perjury** in the Government's filings. The Government has **deliberately withheld exculpatory materials**, misrepresented facts in **Docket Entry 399**, and engaged in conduct that constitutes **fraud on the court**. Proceeding with sentencing under these conditions would violate **Defendant's constitutional rights** and undermine the **integrity of these proceedings**. Accordingly, this Court must **compel the immediate production of the requested discovery, schedule an evidentiary hearing** to determine the extent of prosecutorial misconduct, and **stay sentencing** until these issues are fully resolved.

Notably, the Government, in **Docket Entry 397**, has moved for **sentencing to proceed despite these unresolved discovery disputes**. This motion reflects a **deliberate attempt to finalize sentencing** without first addressing Defendant's **valid claims of suppressed Brady materials, fraudulent SAR records, and grand jury irregularities**. Such an approach **disregards due process** and obstructs Defendant's ability to present **exculpatory evidence in support of his Notice to Withdraw Plea (Docket Entry 401)**. Given the **Government's own request** to move forward, it is **critical that this Court first resolve the outstanding discovery violations** before allowing sentencing to proceed.

## 9. Bail Conditions Review & Modification Request Due to Government Misconduct

Defendant respectfully requests that this Court **review and reconsider the current bail conditions** due to **prosecutorial misconduct, fraud on the court, and perjury**. The **severe pretrial restrictions** imposed on Defendant are **legally unjustifiable** and stand in **stark contrast to the treatment of similarly situated co-defendants**.

Defendant has remained under strict **pretrial bail conditions for over 5 years**, despite:

- **The Government's suppression of exculpatory evidence** that would have impacted pretrial release considerations.
- **The Government's fraudulent representations to the Court** regarding risk assessments and selective enforcement of bail conditions.
- **Perjured statements** by the prosecution regarding Defendant's alleged flight risk and danger to the community.

### Request for Immediate Bail Termination or Modification

Given the **misconduct surrounding Defendant's pretrial treatment**, Defendant requests that the Court:

1. **Terminate Bail Conditions Entirely** – The prosecution has repeatedly **misrepresented evidence**, failed to disclose exculpatory material, and selectively enforced **harsher** pretrial restrictions on Defendant compared to co-defendants. Defendant requests **immediate termination of all bail conditions** due to these violations.
2. **Alternatively, Modify Bail Conditions** – If full termination is denied, Defendant requests a **reduction of restrictive measures**, including but not limited to:
   - **Removal of the ankle bracelet (GPS monitoring)**
   - **Elimination of travel restrictions**
   - **Reduction of reporting requirements**

## Legal Basis for Bail Modification Request

- **Fraud on the Court & Perjury:** The Government has **knowingly made false representations** regarding Defendant's bail conditions, violating **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** (fraud on the court).
- **Brady Violations & Prosecutorial Misconduct:** The failure to disclose exculpatory evidence justifies reconsideration of bail restrictions under **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)**.
- **Excessive & Unjustified Bail Conditions:** Prolonged pretrial restrictions violate **United States v. Salerno, 481 U.S. 739 (1987)**, which requires bail conditions to be **narrowly tailored and not excessive**.
- **Selective Enforcement of Bail Restrictions:** The DOJ has imposed **disproportionately severe conditions** on Defendant compared to other BCN defendants, violating **United States v. Armstrong, 517 U.S. 456 (1996)** and **United States v. Bass, 536 U.S. 862 (2002)**.

Defendant's continued **pretrial restrictions are no longer legally justified** due to:

- **The prosecution's fraud on the court and Brady violations**, which undermine all prior representations regarding bail risk.
- **The disparate treatment of Defendant compared to co-defendants**, many of whom were granted **more favorable pretrial conditions despite greater managerial roles in BCN**.
- **The lack of a sentencing date**, resulting in a de facto **pretrial punishment rather than supervision**.

## Request for Immediate Bail Hearing & Deadline for Court Action

If the Court does not immediately terminate or modify the bail conditions, Defendant **requests an immediate hearing** on whether continued restrictions are legally permissible. The DOJ's pattern of **misconduct, selective enforcement, and perjury warrant immediate judicial intervention**. The **burden must now shift to the Government** to justify why these excessive and disparate restrictions should remain in place.

**Defendant respectfully requests that this Court issue a ruling on the bail modification request no later than March 15, 2025. If the Court does not rule on the request by this**

date, Defendant requests that a bail modification hearing be scheduled no later than March 20, 2025.


# VI. LEGAL BASIS

**Due Process & Brady Violations**

- **Brady v. Maryland, 373 U.S. 83 (1963)** – The government must disclose exculpatory evidence.
- **United States v. Bagley, 473 U.S. 667 (1985)** – Failure to disclose impeachment or exculpatory evidence violates due process.
- **Giglio v. United States, 405 U.S. 150 (1972)** – Requires disclosure of any evidence affecting witness credibility.
- **Kyles v. Whitley, 514 U.S. 419 (1995)** – Suppression of material evidence affects fairness.
- **United States v. Ruiz, 536 U.S. 622 (2002)** – Plea agreements must be based on full disclosure.
- **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)** – Indictment dismissed due to Brady violations.
- **United States v. Olsen, 737 F.3d 625 (9th Cir. 2013)** – Failure to disclose exculpatory evidence violates due process.
- **Strickler v. Greene, 527 U.S. 263 (1999)** – Clarifies standards for Brady violations.
- **Napue v. Illinois, 360 U.S. 264 (1959)** – Prohibits the use of false testimony.
- **Youngblood v. West Virginia, 547 U.S. 867 (2006)** – Even negligent Brady violations warrant relief.

**Fraud on the Court & Prosecutorial Misconduct**

- **United States v. Agurs, 427 U.S. 97 (1976)** – Misconduct that affects fairness warrants overturning convictions.
- **Mooney v. Holohan, 294 U.S. 103 (1935)** – Fraudulent evidence violates due process.
- **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** – Fraud on the court occurs when evidence is falsified.
- **United States v. Bundy, 968 F.3d 1019 (9th Cir. 2020)** – Charges dismissed due to egregious Brady violations.
- **Berger v. United States, 295 U.S. 78 (1935)** – Prosecutors must seek justice, not just convictions.

**Asset Return & Government Misconduct in Property Seizures**

- **Luis v. United States, 578 U.S. 5 (2016)** – Defendants have the right to retain non-forfeitable assets.
- **United States v. Chambers, 192 F.3d 374 (3d Cir. 1999)** – Courts can order return of unlawfully seized property.

- **United States v. $8,850, 461 U.S. 555 (1983)** – Delays in forfeiture proceedings violate due process.
- **United States v. Rodriguez-Aguirre, 264 F.3d 1195 (10th Cir. 2001)** – The government must justify delays in asset return.

**Selective Prosecution & Grand Jury Integrity**

- **United States v. Armstrong, 517 U.S. 456 (1996)** – Right to discovery in selective prosecution claims.
- **Wayte v. United States, 470 U.S. 598 (1985)** – The burden is on the government to justify selective prosecution.
- **United States v. Williams, 504 U.S. 36 (1992)** – Prosecutors cannot mislead a grand jury.
- **Bank of Nova Scotia v. United States, 487 U.S. 250 (1988)** – Dismissal warranted if prosecutorial misconduct taints grand jury proceedings.
- **United States v. Mechanik, 475 U.S. 66 (1986)** – Government misconduct affecting a grand jury is grounds for challenge.
- **Costello v. United States, 350 U.S. 359 (1956)** – Grand jury indictments must be based on legitimate evidence.

**Respectfully submitted,**

**Jobadiah Weeks, Pro Se**



Electronically Signed via DocuSign

Date: February 26, 2025

**Address:**

11627 West 74th Way
Arcada, Colorado 80005

**E-mail:** silenceweeks1@gmail.com

# Exhibits Attached:

- **Exhibit A:** September 5, 2024, Records Request
- **Exhibit B:** February 13, 2025, Request for Clarification Letter
- **Exhibit C:** Plea Agreement (Docket Entry 148, Nov. 5, 2020) and Weeks Plea Agreement & Grand Jury Expansion Memo, CT-122627-20 October 8, 2020
- **Exhibit D:** Treasury August 17 & 25, 2020, Proffer Memos
- **Exhibit E:** Certificate of Service (Filed February 26, 2025)
- **Exhibit F:** Meeting Notes April 19, 2019
- **Exhibit G:** Streamlined SAR (no date)
- **Exhibit H:** Docket Entry 15: Attorney Notice of Appearance (January 7, 2020)
- **Exhibit I:** Docket Entry 399: Government's Motion Opposing Plea Withdrawal (Filed February 18, 2025)
- **Exhibit J:** Docket Entry 401: Defendant's Motion to Withdraw Plea (Filed February 20, 2025)
- **Exhibit K:** February 26, 2025, Letter to AUSA Regarding Seized Assets
- **Exhibit L:** December 10, 2019: Crypto-Seizures Memo