1                    IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF NEW JERSEY
2                      Criminal No. 2:19-cr-877-CCC-5


3


4    UNITED STATES OF AMERICA,    :
                                  :   TRANSCRIPT OF PROCEEDINGS
5             v.                  :      - Plea Hearing -
                                  :
6    JOBADIAH SINCLAIR WEEKS,     :   TELE-CONFERENCE HEARING
                                  :          VIA ZOOM
7            Defendant.           :
     - - - - - - - - - - - - - - x
8
                                      November 5, 2020
9                                     Commencing 9:05 a.m.

10   B E F O R E:

11              THE HONORABLE CLAIRE C. CECCHI,
                   UNITED STATES DISTRICT JUDGE
12

13   A P P E A R A N C E S:

14       UNITED STATES ATTORNEY'S OFFICE
         BY:  ANTHONY P. TORNTORE
15            JAMIE L. HOXIE
              Assistant U.S. Attorneys
16       For the Government

17       CARLTON FIELDS LAW
         BY:  SIMON A. GAUGUSH, ESQ.
18            MICHAEL YAEGER, ESQ.
              ERIN J. HOYLE, ESQ.
19       For the Defendant

20
     Pursuant to Section 753 Title 28 United States Code, the
21   following transcript is certified to be an accurate record as
     taken stenographically in the above entitled proceedings.
22
     S/WALTER J. PERELLI
23

24   WALTER J. PERELLI, CCR, CRR
     Official Court Reporter
25

```
 1    ALSO IN ATTENDANCE:

 2         FBI Special Agent Hannah Yang
           FBI Special Agent Stephanie Talamantez
 3         IRS Special Agent Leo Rovensky
           IRS Special Agent Jonathan Helmstetter
 4         IRS Special Agent Ven Aaravchuk

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURT:   We are on the record in the matter of the

2     United States of America versus Jobadiah Sinclair Weeks.

3          Let's have appearances, please.

4          MR. TORNTORE:   Good morning, your Honor.  Assistant

5     United States Attorney Anthony Torntore, on behalf of the

6     Government.

7          THE COURT:   Thank you.

8          MS. HOXIE:   Good morning, your Honor.  Assistant

9     United States Attorney Jamie Hoxie, also representing the

10    Government.

11         THE COURT:   Thank you very much.

12         MR. TORNTORE:   And, your Honor, joining the Government

13    today are Special Agents Stephanie Talamantez and Hannah Yang

14    with the Federal Bureau of Investigation, and Special Agents

15    Leo Rovensky, Jonathan Helmstetter and Ven Aaravchuk with the

16    Internal Revenue Service.

17         THE COURT:   Thank you so much.

18         MR. GAUGUSH:   Good morning, your Honor.  This is Simon

19    Gaugush on behalf of Jobadiah Sinclair Weeks, also accompanied

20    by Michael Yaeger and Erin Hoyle with my law firm, Carlton

21    Fields.  Also in attendance is Mr. Weeks' wife, Stephanie

22    Weeks.

23         THE COURT:  All right.  Thank you so much.  And we

24    have Ms. Hoyle on who is with?

25         THE DEPUTY CLERK:  She is with Simon's firm, Judge.

1          MR. GAUGUSH:  She's with my firm, Judge.  She works in
2     the Tampa office with me.
3          THE COURT:  Good morning.  Nice to have you with us.
4          I think we've gotten everyone then who is at least
5     appearing on the screen.
6          Let us have the Defendant sworn in.
7
8     J O B A D I A H   S I N C L A I R   W E E K S, the Defendant,
9          duly affirms:
10
11         THE DEPUTY CLERK:  Please state your name for the
12    record.
13         THE DEFENDANT:  Jobadiah Sinclair Weeks.
14         THE DEPUTY CLERK:  Thank you.  You can put your hand
15    down.
16         THE COURT:  The Defendant is sworn.  So let us begin.
17         Before we commence today, I'd like to state for the
18    record that we are in the midst of the COVID-19 pandemic, and
19    I'm conducting this proceeding pursuant to Standing Orders
20    issued by our Chief Judge.  Now, counsel are appearing by video
21    conference and the Defendant is also appearing by video
22    conference.  I also note that we have a video conference line
23    that is open to the public/press on a listen-only basis.
24         Is there anyone else that was expected to actually be
25    present with us and participate that we need to wait for?

1            MR. GAUGUSH:  Not for the Defense, your Honor.

2            THE COURT:  Okay.  For the Government?

3            MR. TORNTORE:  No, your Honor.

4            THE COURT:  Okay.  And I do note that we also have

5     with us Mr. Weeks' wife.  Is that correct?  Stephanie

6     Stabla-Weeks.  Is that correct?

7            MRS. WEEKS:  Yes.

8            MR. GAUGUSH:  That's correct, your Honor.

9            THE COURT:  All right.  And with respect to Ms. Weeks,

10    I just want to make sure that she understands and is in

11    compliance and intends to consent to Local Civil Rule 401.1,

12    which prohibits broadcasting, photographing, recording or

13    otherwise transmitting court proceedings, and Amended Standing

14    Order 2020-06 reminding of the general prohibition against

15    photographing, recording, live streaming on the internet and

16    rebroadcasting of court proceedings.

17           So, Ms. Weeks, do you understand those rules and are

18    you consenting to them?

19           MRS. WEEKS:  I'm in agreement.

20           THE COURT:  Thank you so much.

21           Moving forward.  I'd like to also ensure that everyone

22    can hear and see.  So are you all able to hear and see?  And if

23    you are, could you please answer verbally, everyone?  Are you

24    able to hear and see?

25           MRS. WEEKS:  Yes, your Honor.

```
 1                 MS. HOYLE:  Yes, your Honor.

 2                 MR. GAUGUSH:  Yes, your Honor.

 3                 MR. TORNTORE:  Yes, your Honor.

 4                 THE COURT:  Excellent.  Now, counsel, where is the

 5      Defendant currently located?

 6                 MR. GAUGUSH:  Your Honor, Mr. Weeks is currently at

 7      the Essex County Correctional Facility.

 8                 THE COURT:  Thank you.  And turning now to Mr. Weeks.

 9                 Sir, is there anyone who is present with you,

10      physically present with you there in the room?

11                 THE DEFENDANT:  No.

12                 THE COURT:  Thank you.  And again to Mr. Weeks.  If at

13      any point in time you wish to ask your attorney a question or

14      confer with him, please know that I'm able to place you both in

15      a private video room where you can remain until you feel ready

16      to resume with this hearing.  Should you not wish to continue

17      in this manner, please know that I will end today's session

18      upon notification.

19                 Do you understand that, sir?

20                 THE DEFENDANT:  I do.

21                 THE COURT:  And do you agree to -- well actually, to

22      the Defendant.  Do you agree to continue with this proceeding

23      by video conference, sir?

24                 THE DEFENDANT:  Yes, I do.

25                 THE COURT:  And to defense counsel:  Have you had an
```

1    opportunity to consult with the Defendant about proceeding with

2    this matter via video conference?

3              MR. GAUGUSH:  I have, your Honor, and we're agreeable

4    to it.

5              THE COURT:  Excellent.  And as I indicated, under

6    normal circumstances everyone participating in this proceeding

7    would be physically present with me in the courtroom, but to

8    ensure the safety of everyone and avoid the spread of COVID-19,

9    and having assured myself that everyone can hear and see the

10   proceeding, I will now move forward with the next phase of this

11   hearing by video conference.  I want to assure myself that the

12   Defendant fully consents to proceeding in this fashion.

13             So now to the Defendant.  Sir, have you discussed with

14   your attorney the issue of you participating in today's guilty

15   plea proceeding by video conference?

16             THE DEFENDANT:  Yes.

17             THE COURT:  And how did those conversations take

18   place?  Were they in person, by telephone conference, or by

19   video conference?

20             THE DEFENDANT:  By telephone.

21             THE COURT:  Okay.  And turning to counsel.  Is that

22   correct, they were by telephone conference?

23             MR. GAUGUSH:  That's correct, your Honor.

24             THE COURT:  Okay.  Although it is unclear when this

25   pandemic will end, you do have the right, Mr. Weeks, to wait

1    until it is safe and permissible to conduct this proceeding in

2    the courthouse.  Do you still wish to proceed by video

3    conference?

4              THE DEFENDANT:  I do.

5              THE COURT:  Are you satisfied that you've had enough

6    time to confer with your attorney about your decision to

7    proceed by video conference?

8              THE DEFENDANT:  I am.

9              THE COURT:  Again, as noted earlier, please know that

10   I will give you all the time you need to discuss this matter or

11   any matter with your attorney.  Do you understand that, sir?

12             THE DEFENDANT:  I do.

13             THE COURT:  And do you consent to proceed by video

14   conference?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And, sir, do you understand that a felony

17   guilty plea hearing normally must be conducted in person?

18             THE DEFENDANT:  I do.

19             THE COURT:  Okay.  And again, just going forward again

20   with the same type of questioning.  Do you understand that

21   because of the national emergency that was declared in light of

22   the COVID-19 pandemic, the Court may, after making specific

23   findings that the hearing cannot be delayed without serious

24   harm to the interests of justice, conduct the plea hearing by

25   video conference with the Defendant's consent?

1           THE DEFENDANT:  Yes.

2           THE COURT:  And once again, have you consulted with

3    counsel about conducting the plea hearing by video conference?

4           THE DEFENDANT:  I have.

5           THE COURT:  And after consultation with counsel, do

6    you consent to proceeding with this plea hearing by video

7    conference?

8           THE DEFENDANT:  Yes.

9           THE COURT:  All right.  And turning to counsel for the

10   Defendant.  Do you consent to the proceeding going forward by

11   video conference as well?

12          MR. GAUGUSH:  Yes, your Honor.

13          THE COURT:  And turning to the Government.  Do you

14   consent to this proceeding going forward by video conference?

15          MR. TORNTORE:  Yes, your Honor.

16          THE COURT:  I find that the Defendant has knowingly

17   and voluntarily agreed to participate in this conference by

18   video after consultation with counsel.  I am formally accepting

19   this consent by the Defendant.  And I do note also that the

20   parties have forwarded to me a proposed order regarding the use

21   of video conferencing for this felony plea, and it states:

22          (Reading) The Defendant has consented to the use of

23   video conferencing to conduct the proceeding held today after

24   consultation with counsel.  And it also indicates that the

25   proceeding to be held today cannot be further delayed without

1    serious harm to the interests of justice for the following

2    reasons:  Speedy resolution of the charges against the

3    Defendant here -- let me just go off record for one moment.

4                (Off the record discussion.)

5                THE COURT:  Going back on the record.

6                It indicates:  A speedy resolution of the charges

7    against Weeks; permitting the guilty plea will help narrow the

8    scope of the case and will preserve the Court's and the

9    parties' resources; these specific circumstances are such that

10   this hearing cannot be further delayed without serious harm to

11   the interests of justice.

12               So I am making findings that it is appropriate to

13   proceed in this matter.  I am signing that Order and

14   incorporating the Order into the record as Exhibit A.

15               And I feel that all applicable standards have been met

16   for proceeding by video conference.  And Attachment A has been

17   corrected to indicate charges against Weeks as opposed to Abel.

18               Are we all in agreement with that?  Let me hear from

19   the Government.

20               MR. TORNTORE:  Yes, your Honor.

21               THE COURT:  Let me hear from the Defendant.

22               THE DEFENDANT:  Yes, your Honor.

23               MR. GAUGUSH:  Yes, your Honor.

24               THE COURT:  Okay.  Thank you.

25               And that's from counsel and the Defendant himself.  So

1    I heard from both.  Thank you.

2           So, moving along with this then.  It's my

3    understanding that the Government and the Defendant have agreed

4    upon the terms of a guilty plea.  Is that correct?

5           MR. TORNTORE:  Yes, your Honor.

6           MR. GAUGUSH:  Yes, your Honor.

7           THE COURT:  Let's have the Government state the terms

8    of the plea.

9           MR. TORNTORE:  Your Honor, thank you.

10          It's the Government's understanding that Mr. Weeks

11   will be entering a plea of guilty to Count 2 of the Indictment

12   which charges him with conspiring to offer and sell

13   unregistered securities, contrary to title 15 United States

14   Code, Section 77e and 77x, in violation of Title 18 United

15   States Code, Section 371; and a one-count Information which

16   charges Weeks with tax evasion, contrary to Title 26 United

17   States Code, Section 7201.

18          Your Honor, it's the Government's understanding that

19   if Mr. Weeks enters a guilty plea and is sentenced on the

20   Indictment count and the Information count and otherwise fully

21   complies with all the terms of the agreement, the United States

22   Attorneys' Office will not initiate any further criminal

23   charges against Mr. Weeks based upon his involvement in the

24   BitClub Network as further delayed in the Indictment or his

25   nonfiling of taxes during the taxable periods 2015 through

1    2018.  Additionally, if Mr. Weeks fully complies with all terms

2    of the agreement, at the time of the sentencing in this matter,

3    your Honor, the Government will move to dismiss Count 1 of the

4    Indictment.

5          The proposed Plea Agreement, your Honor, also contains

6    a Schedule A.  It's a guidelines plea.  And the Schedule A

7    contains guideline stipulations which obviously are not binding

8    upon this Court.  These stipulations yield an agreed total

9    guidelines offense level of 25, it also contains a restitution

10   provision that requires Mr. Weeks to make full restitution in

11   an amount to be determined by the Court.

12         Mr. Weeks has also agreed, your Honor, to sign and

13   complete several forms related to the Information count

14   charging him with tax evasion with the IRS.

15         That's the Government's understanding, your Honor, of

16   the Plea Agreement.

17         THE COURT:  Thank you very much.  And then just to

18   reiterate and summarize.  We have Count 2 of the Indictment,

19   which the Defendant is intending to plead guilty to as well as

20   a one-count Information.  Is that correct?

21         MR. TORNTORE:  Yes, your Honor.

22         THE COURT:  Okay.  Now turning to Defense Counsel,

23         Let me ask you:  Is there anything that you would add

24   or clarify to that, or is that an accurate recitation?

25         MR. GAUGUSH:  Your Honor, that's an accurate

1    recitation.

2              THE COURT:  Very well.

3              At this point now I have a series of questions to ask

4    directly to Mr. Weeks.  Let me ask counsel:  Do you take any

5    issue with me asking those questions directly?

6              MR. GAUGUSH:  Not at all, your Honor.

7              THE COURT:  Thank you.

8                      EXAMINATION BY THE COURT:

9    Q    Sir, do you understand that you are presently under oath

10   and that if you answer any questions falsely your answers may

11   be used against you later in another prosecution for perjury or

12   making a false statement?

13   A    (No response).

14   Q    To Mr. Weeks, sir.

15   A    Everybody froze.  I said "I do, yes."

16   Q    All right.  You know what, just to make sure, because it's

17   an important question, let me just make sure we have it on the

18   record in it's clear.

19             You said you froze for a moment, only for this last

20   question.  Correct?  Is that correct, Mr. Weeks?

21   A    It's correct, yes.  It's just that internet is an unstable

22   connection and all of a sudden the screen froze.

23   Q    Not a problem at all.  I'm happy to repeat it.

24   A    Do I understand I'm under oath?  Yes.

25   Q    I'll go through it one more time.

1          Sir, do you understand that you are presently under

2    oath and that if you answer any questions falsely your answers

3    may be used against you later in another prosecution for

4    perjury or making a false statement?

5    A    Yes.

6    Q    What is your full name, sir?

7    A    Jobadiah Sinclair Weeks.

8    Q    What is your age?

9    A    (No response).

10          THE COURT:  I think we might have had him freeze

11   again.

12          MR. YAEGER:  Yes, he's frozen.

13          THE DEPUTY CLERK:  We may have to get him to come out

14   and have the Sheriff's Officer bring him back in.

15          Mr. Weeks, would you ask the Sheriff's Officer to come

16   in so we can tell him to turn you off and back in?

17          He's frozen.

18          THE COURT:  He's frozen.

19          We can go off the record for a moment.

20          (Off the record discussion.)

21          THE COURT:  Okay.

22   BY THE COURT:

23   Q    What is your full name, sir?

24   A    My name is Jobadiah Sinclair Weeks, and I'm 39 years old.

25   Q    All right.  Great.  What is the extent of your education;

1    the highest level of education that you have attained?

2    A    High school.

3    Q    And where did you attend high school?

4    A    Pomona High School in Arvada, Colorado.

5    Q    Did you graduate?

6    A    I did.

7    Q    Do you have any difficulty in understanding or reading the

8    English language?

9    A    (No response).

10           (The Defendant's computer freezes.)

11           THE DEPUTY CLERK:   Unfortunately it's not in our

12   control, we just have to wait.  We could try to all get out and

13   come back in.

14           There he is.

15   A    I'm trying.  I clicked STOP VIDEO and then START VIDEO

16   again.  Am I there?

17   Q    Yes.  Perfectly.

18           Let me ask the last question again.

19           Do you have any difficulty in understanding or reading

20   the English language?

21   A    No difficult at all, I'm fluent.

22   Q    Are you under the influence of either alcohol or drugs?

23   A    No.

24   Q    Have you received a copy of the Indictment?

25   A    Yes.

1    Q    Have you received a copy of the Information?

2    A    Yes.

3    Q    Have you read both the Information and the Indictment?

4    A    I have.

5    Q    Have you discussed the Indictment and the Information with

6    your attorney?

7    A    Yes.

8    Q    Has your attorney answered all of your questions about the

9    charges contained in the Indictment and the Information?

10   A    They have.

11   Q    And have they actually explained the charges to you?

12   A    Yes.

13   Q    Has your attorney explained your rights and

14   responsibilities in connection with the Indictment and the

15   Information as well as the nature of these proceedings?

16   A    Yes.

17            THE COURT:   We are going to append to the record as

18   Exhibit B the Indictment; and Exhibit C, the Information.

19            Thank you.

20   Q    And you heard your attorney and the United States Attorney

21   discuss the Plea Agreement in this case.  Is that correct?

22   A    Yes.

23   Q    Do you agree with their statements?

24   A    Yes.

25   Q    Did the U.S. Attorney correctly state the terms of the Plea

1    Agreement?

2    A    Yes.

3    Q    And did your attorney also correctly state the terms?

4    A    Yes.

5    Q    I show you now what's been identified to me as the written

6    Plea Agreement (displaying document).  And we have it up on the

7    screen for your convenience as well.

8         I direct your attention to page 9 of that document,

9    and more specifically, to the signature that is directly above

10   your typewritten name.

11        Is that your signature, sir?

12   A    Yes.

13   Q    When did you sign this document?

14   A    September 24th.

15   Q    And is that 2020?

16   A    Correct.

17   Q    Did you read it before you signed it?

18   A    I did.

19   Q    Did you understand what you read?

20   A    Yep.

21   Q    Is the document a complete recitation of the terms of the

22   plea agreement?

23   A    It is.

24   Q    Does it set forth the Plea Agreement in its entirety?

25   A    Yes.

1  Q   Does it omit anything, leave anything out of the Plea
2  Agreement as you understand it?
3  A   No.
4  Q   Before you signed the document, did you confer with your
5  attorney?
6  A   I did.
7  Q   Did your attorney answer all of your questions about the
8  document and explain its purpose to you?
9  A   Yes.
10 Q   Other than the representations which may be set forth in
11 the Plea Agreement and in court today, did anyone offer you any
12 inducement or make any promise to you in order to get you to
13 sign the document?
14 A   No.
15 Q   Have you or has anyone on your behalf made any arrangement
16 with anyone concerning the sentence you'll receive if your
17 guilty plea is accepted?
18 A   No.
19 Q   Has anyone told you or promised you that you might get a
20 specific sentence if you plead guilty?
21 A   No.
22 Q   Other than a discussion between you and your attorney, has
23 anyone given you any suggestion, indication, or promise if you
24 plead guilty today what sentence I will impose upon you?
25 A   No.

1    Q    Did anyone physically threaten you, verbally threaten you

2    or threaten you in any way in order to have you sign the Plea

3    Agreement and enter a plea of guilty?

4    A    No.

5    Q    Did you sign the document voluntarily?

6    A    I did.

7         THE COURT:  I will append the Plea Agreement to the

8    record as Exhibit D.

9    Q    I now would like you to turn your attention to the document

10   that has been identified to me as the Rule 11 form.  It states

11   in the upper right hand corner:  "Application for Permission to

12   Enter Plea of Guilty."  And I direct your attention on that

13   document to the signature directly above the word "Defendant"

14   on page 7 of that document.

15        Is that your signature, sir?

16   A    It is.

17   Q    When did you sign this document?

18   A    Yesterday, November 4th, 2020.

19   Q    Thank you.  Did you read it before you signed it?

20   A    I did.

21   Q    Do you understand what you read?

22   A    I do.

23   Q    And if you take a look at the document, certain information

24   has been filled in, certain boxes have been checked off.  Was

25   it you or was it your attorney who filled in the information?

1   A    My attorney read it to me and filled in the information on

2   his computer.

3   Q    All right.  Is the information contained in the document

4   true and correct?

5   A    It is.

6   Q    Before you signed the document did you confer with your

7   attorney?

8   A    I did.

9   Q    Did your attorney answer all of your questions about the

10  document and explain its purpose to you?

11  A    Yes.

12  Q    Other than the representations which may have been set

13  forth in the written Plea Agreement and in court today, has

14  anyone offered you any inducement or made any promise to you in

15  order to get you to sign the Rule 11 form?

16  A    No.

17  Q    Did anyone threaten you in order to have you sign the Rule

18  11 form?

19  A    No.

20  Q    Did you sign it voluntarily?

21  A    Yes.

22  Q    Do you have any questions or concerns which you feel your

23  attorney has not satisfactorily answered?

24  A    No.

25  Q    Are you satisfied with your attorney's representation?

1    A    Yes.

2    Q    Is the decision to enter a plea of guilty your decision or

3    is it your attorney's decision?

4    A    It's my decision.

5    Q    All right.  I understand that you wish to enter a plea of

6    guilty to Count 2 of the Indictment as well as the Information.

7    Is that correct?

8    A    Yes.

9    Q    Is your plea of guilty a voluntary plea?

10   A    Yes.

11   Q    Has your attorney explained the elements of the crimes

12   charged?

13   A    Yes.

14            THE COURT:  I am going to append the Rule 11 form to

15   the record as Exhibit E.

16            And I am going to turn now to the Government and ask

17   you to indicate whether the charges here are felony offenses,

18   and to also detail once more the charges pending against the

19   Defendant in the Indictment and also in the Information.   Thank

20   you.

21            We have a little difficulty hearing you.

22            MR. TORNTORE:  I apologize, your Honor.

23            THE COURT:  Go right ahead.  Thank you.

24            MR. TORNTORE:  Both charges, both the Count 2 of the

25   Indictment and the charge contained in the Information are both

1    felony charges.  Count 2 of the Indictment charges Mr. Weeks

2    with conspiring to offer and sell unregistered securities,

3    contrary to Title 15 United States Code, Sections 77e and 77x,

4    in violation of Title 18 United States Code, Section 371; and

5    the Information charges Mr. Weeks with tax evasion, contrary to

6    Title 26 United States Code, Section 7201.

7             Your Honor, would you like me to go over the statutory

8    penalties involved in both of those offenses?

9             THE COURT:  You might as well do that.  Go ahead.

10            MR. TORNTORE:  Your Honor, with respect to Count 2 of

11   the Indictment, that carries a statutory maximum penalty of

12   five years imprisonment and a statutory maximum fine of the

13   greater of $250,000, or twice the gross profits or other

14   proceeds to Mr. Weeks.  With respect to the Information count,

15   your Honor, the statutory penalties are a statutory maximum

16   penalty of five years imprisonment and a statutory maximum fine

17   of up to $100,000.

18            THE COURT:  All right.  Thank you so much.

19   Q    All right.  Turning now to the Defendant then.

20            Sir, do you understand the charges that are pending

21   against you, both in the Information and in the Indictment?

22   A    Yes.

23   Q    Do you understand the maximum penalties that are pending

24   against you both in the -- or arising out of the Information

25   and the Indictment?

1      A    Yes.

2      Q    Do you understand that you're being charged with felony

3      offenses?

4      A    I do.

5            THE COURT:  And turning now to Mr. Torntore, is it

6      correct that the Defendant is being charged with felony

7      offenses in both the Information and the Indictment?

8            MR. TORNTORE:  That's correct, your Honor.  And if you

9      would like me to go over the essential elements of the offense

10     now, I could do that.

11           THE COURT:  You could do that.  Go right ahead.

12           MR. TORNTORE:  With respect to the Indictment count,

13     your Honor, the essential elements of a violation of Title 18

14     United States Code, Section 371 are as follows:

15           First, that two or more persons agreed to commit an

16     offense against the United States; namely, the offer and sale

17     of unregistered securities;

18           Second, that Mr. Weeks was a party to or member of

19     that agreement;

20           Third, that Mr. Weeks joined the agreement or

21     conspiracy knowing of its objectives to commit the unregistered

22     securities offense and intending to join together with at least

23     one other alleged conspirator to achieve that objective; that

24     is, that each of the defendants and at least one other alleged

25     conspirator shared a unity of purpose and the intent to achieve

1    a common goal or objective to commit the offenses against the
2    United States; and

3         Fourth, at some time during the existence of the
4    agreement or conspiracy at least one of its members performed
5    an overt act in order to further the objectives of the
6    agreement.

7         With respect to the elements of the underlying
8    violation of Title 15 United States Code, Section 77e and 77x
9    are related to Count 2 of the Indictment, your Honor.  The
10   first is that the securities which the Defendant sold were not
11   registered with the Securities and Exchange Commission;

12        That the securities sold were required to be
13   registered with the Securities and Exchange Commission; that
14   is, that the transactions were not exempt from registration;

15        Third, knowing that the securities were not registered
16   and not exempt, that the Defendant willfully sold them or
17   caused them to be sold to the public; and

18        Fourth, that the Defendant used or caused to be used
19   the mails or the means and instrumentalities of interstate
20   commerce to sell the securities.

21        With respect to the Information count, your Honor, the
22   essential elements of that offense, which again is a felony
23   offense, are:

24        First, that Mr. Weeks had a substantial income tax
25   deficiency;

```
 1              Second, that Mr. Weeks made an affirmative attempt to
 2    evade or defeat the assessment of the income tax; and
 3              Third, that Mr. Weeks acted willfully.
 4              THE COURT:  Thank you so much.
 5              So turning back to Mr. Weeks.
 6    Q    Do you understand elements of the offenses charged both in
 7    the Indictment and the Information?
 8    A    Yes.
 9    Q    Okay.  And then so at this point then you understand the
10    charges, the maximum penalties, and the elements of the charges
11    against you.  Correct, sir?
12    A    Yes.
13    Q    I have certain rights I would like to explain to you so
14    please listen to me very carefully.
15              You have a constitutional right to be charged by an
16    indictment of a grand jury -- actually, this is only with
17    respect to the Information.  Okay?  To the extent you're
18    charged with certain crimes in the Information, the following
19    instructions are relevant to that.  Do you understand, sir?
20    A    Yes.
21    Q    Okay.  So dealing with the charges that are pending against
22    you in the Information, let me just clarify.
23              You have a constitutional right to be charged by an
24    indictment of a grand jury, but you can waive that right and
25    consent to being charged by information of the United States
```

1    Attorney.  Instead of an indictment, the felony charge in the

2    Information has been brought by the United States Attorney, as

3    I indicated, by the filing of an Information.  Unless you waive

4    indictment you may not be charged with a felony unless a grand

5    jury finds, by a return of an indictment, that there is

6    probable cause to believe that a crime has been committed and

7    that you have committed it.  If you do not waive indictment the

8    Government may present the case to the grand jury and request

9    it to indict you.

10          A grand jury is composed of at least 16 and not more

11   than 23 persons, and at least 12 grand jurors must find that

12   there is probable cause to believe you committed the crime with

13   which you are charged before you may be indicted.

14          The grand jury might or might not indict you.  And if

15   you waive indictment by the grand jury, the case will proceed

16   against you on the United States Attorney's Information just as

17   though you had been indicted.

18          Do you understand those rights, sir?

19   A    Yes.

20   Q    Okay.  And again, in terms of this recitation of your

21   rights, it pertains to the Information that is pending against

22   you.

23          Do you understand -- or let me go back.  Have you

24   discussed the matter of waiving your right to indictment by the

25   grand jury with your attorney?

1   A   Yes.

2   Q   Do you understand your right to indictment by the grand

3   jury?

4   A   Yes.

5   Q   Have any threats or promises been made to induce you to

6   waive your right to indictment?

7   A   No.

8   Q   Do you wish to waive your right to indictment by the grand

9   jury?

10  A   Yes.

11          THE COURT:  Let me turn to Defense Counsel.  Do you

12  see any reason why Defendant should not waive his right to

13  indictment?

14          MR. GAUGUSH:  No, your Honor.

15          THE COURT:  And I know that counsel have provided a

16  form to the Court.  It's a Waiver of Indictment and Venue, and

17  it has been signed by the Defendant.

18          Let me turn to the Defendant.

19  Q   Is that correct?  Is that your signature on the Waiver of

20  Indictment and Venue?

21  A   Yes, your Honor.

22  Q   Okay.

23          THE COURT:  And, Mr. Gaugush, you've signed it as

24  well, as counsel.  Is that correct?

25          MR. GAUGUSH:  That's correct, your Honor.

```
 1                THE COURT:  All right.  I'm making a finding here in
 2     open court that the waiver is knowledgeable and it is
 3     voluntarily made, and it is accepted.
 4                I am going to append the Waiver of Indictment to the
 5     record as Exhibit F.
 6                And again just to clarify.  I recognize that in this
 7     matter the charges pending are in both an Indictment and the
 8     Information, but to the extent we have an Information, I have
 9     gone through a recitation of the relevant rights regarding the
10     Information and, of course, I've accepted his waiver of
11     indictment and venue.
12                All right.  Any questions before I move forward?
13                MR. GAUGUSH:  No, your Honor.
14                MR. TORNTORE:  No, your Honor.
15                THE COURT:  Thank you.
16                Now turning back to the Defendant.
17     Q    Sir, is your plea of guilty a voluntary plea?
18     A    Yes.
19     Q    Has your attorney explained the elements of the crime
20     charged?
21     A    Yes.
22     Q    Has your attorney explained to you that the Government must
23     prove each and every element of the crime charged or the crimes
24     charged against you beyond a reasonable doubt?
25     A    Yes.
```

1    Q    Has your attorney explained to you that the offenses to

2    which you seek to offer a plea of guilty are felony offenses?

3    A    Yes.

4    Q    Has your attorney explained to you that if your plea of

5    guilty is accepted, you will be adjudicated guilty of the

6    offenses and the adjudication may deprive you of valuable civil

7    rights, such as the right to vote, the right to hold public

8    office, the right to serve on a jury, and the right to possess

9    a firearm of any kind?

10   A    Yes.

11   Q    Do you realize at this point I do not know what sentence I

12   shall impose and I shall not know that until I've reviewed the

13   presentence report about you?

14   A    Yes.

15   Q    Have you and your attorney discussed how the Sentencing

16   Commission guidelines might apply to you and to your case?

17   A    We have.

18   Q    Do you understand that I'm unable to determine the

19   guideline sentence for your case until after the presentence

20   report has been completed and you and the Government have had

21   an opportunity to review the report of the Probation Officer

22   and comment upon it?

23   A    Yes.

24   Q    Do you understand that after it has been determined which

25   guidelines apply to your case, I'm required to consider those

1    applicable Sentencing Guidelines.  However, I may depart from

2    those guidelines under certain circumstances; that is, I have

3    the authority in some circumstances to impose a sentence that

4    is more severe or less severe than the sentence called for by

5    the guidelines?

6    A    Yes.

7    Q    Do you understand that under some circumstances you or the

8    Government, or both, may have the right to appeal any sentence

9    I impose?

10   A    Yes.

11   Q    Thank you.

12           THE COURT:   Let us now turn to the Government, and if

13   you could go through the terms of the appellate waiver, that

14   would be helpful.  Thank you.

15           MR. TORNTORE:   Yes, your Honor.

16           THE COURT:   Thank you.  And then I will be prepared to

17   go through the relevant questions pertaining to the appellate

18   waiver.

19           MR. TORNTORE:   So, your Honor, in terms of the

20   appellate waiver -- I'm sorry, I'm bringing it up.

21           THE COURT:   No worries.  Take your time.

22           MR. TORNTORE:   Your Honor, I apologize.  My screen is

23   freezing.  Give me one second.  I apologize.

24           THE COURT:   No problem.  We are good.

25           MR. TORNTORE:   Your Honor, as set forth in the

1    Schedule A of the Plea Agreement, Mr. Weeks and the Government
2    are waiving certain rights to file an appeal, collateral
3    attack, writ, or motion after sentencing, including but not
4    limited to an appeal under Title 18 United States Code, Section
5    3742, or a motion under Title 28 United States Code, Section
6    2255.

7              And I know that your Honor will go through the
8    specific terms of the appellate waiver, but Mr. Weeks knows and
9    he has, and except as noted in the Plea Agreement, voluntarily
10   waives the right to file any appeal, any collateral attack, or
11   any other writ or motion, including but not limited to an
12   appeal under Title 18 United States Code, Section 3742 or a
13   motion under Title 18 United States Code, Section 2255, which
14   challenges the sentence imposed by the sentencing Court if that
15   sentence false within or below the guidelines range that
16   results from the agreed total guidelines offense level which is
17   set forth in the Plea Agreement.

18             The Government agrees not to file and will not file
19   any appeal, motion or writ which challenges the sentence
20   imposed by this Court if that sentence falls within or above
21   the guidelines range that results from the agreed total
22   guidelines offense level.  Both parties, your Honor, pursuant
23   to the Plea Agreement, reserve any right that they may have
24   under Title 18 United States Code, Section 3742 to appeal the
25   sentencing Court's determination of the criminal history

1    category.

2            These provisions, your Honor, that I've gone through

3    are binding on the parties even if the Court employs a

4    guidelines analysis different from that stipulated to within

5    the Plea Agreement.

6            THE COURT:   Thank you so much.

7            All right.

8    Q   Do you understand that in the absence of a waiver the law

9    permits every defendant, such as yourself, to file an appeal of

10   a conviction or sentence if you believe there has been an

11   error?

12   A   Yes.

13   Q   Do you understand that in the absence of a waiver, you have

14   a right, if you believe there has been an error, to file a

15   collateral challenge to your conviction or sentence under

16   28 U.S.C., Section 2255?

17   A   Yes.

18   Q   Do you understand that as set forth in your Plea Agreement,

19   if I accept the factual stipulations in Schedule A, neither you

20   nor the Government can file an appeal, Section 2255 petition,

21   writ, motion, or any collateral attack challenging that it was

22   in error for me to accept the factual stipulations?

23   A   Yes.

24   Q   Do you understand that no provision of the Plea Agreement

25   shall preclude you from pursuing in an appropriate forum, when

1    permitted by law, an appeal, collateral attack, writ, or motion

2    claiming that you received constitutionally ineffective

3    assistance of counsel?

4    A    Yes.

5    Q    Did you discuss the effect of this waiver of appeal and

6    waiver of your right to file for post-conviction relief with

7    your attorney?

8    A    I did.

9    Q    Are you satisfied with the explanation that your attorney

10   has provided?

11   A    I am.

12   Q    And once again, sir, do you understand the terms of your

13   appellate waiver?

14   A    Yes, I do.

15   Q    Do you understand your appellate rights?

16   A    I do.

17   Q    And in terms of citizenship, sir, are you a citizen of the

18   United States?

19   A    Yes.

20            THE COURT:    Nonetheless, I will ask the relevant

21   questions regarding immigration consequences to the extent the

22   Defendant was not a citizen of the United States.

23   A    Okay.

24   Q    Sir, do you understand that if you are not a citizen of the

25   United States, your guilty plea to the charged offenses will

1    likely result in your being subject to Immigration proceedings

2    and removed from the United States?

3    A    Yes.

4    Q    Have you consulted with counsel about the possible

5    immigration consequences of your plea?

6    A    Yes.

7    Q    Are you satisfied with the explanation that counsel has

8    provided?

9    A    Yes.

10    Q    Do you understand that parole has been abolished and that

11    if you're sentenced to prison you will not be released on

12    parole?

13    A    Yes.

14    Q    Do you understand that if you receive a sentence which is

15    more severe than you expect, you will still be bound by your

16    plea and you will have no right to withdraw your plea on that

17    basis?

18    A    Yes.

19    Q    Do you understand that you have the right to a trial by a

20    jury, or by a court without a jury, and you would be presumed

21    innocent until proven guilty beyond a reasonable doubt, and by

22    entering this plea of guilty you are giving up that right?

23    A    Yes.

24    Q    Do you understand that at trial the Government is required

25    to prove each and every element of the crimes charged beyond a

1    reasonable doubt, and that by entering this plea of guilty you

2    are giving up that right?

3    A    Yes.

4    Q    Do you understand that you or your attorney has the right

5    to confront and cross-examine your accusers in open court, and

6    by entering this plea of guilty you are giving up that right?

7    A    Yes.

8    Q    Do you understand that if you wish to go to trial you have

9    the right to be represented by an attorney?

10   A    Yes.

11   Q    Do you understand that you have the right to remain silent

12   and not incriminate yourself, and that you would not have to

13   testify in your own defense unless you desired to do so, and if

14   you do not do so the Government may not comment on your failure

15   to testify, and by entering this plea of guilty you are giving

16   up that right?

17   A    Yes.

18   Q    Do you understand that you have the right to force

19   witnesses to appear on your behalf, and by entering this plea

20   of guilty you are giving up that right?

21   A    Yes.

22   Q    Do you understand that if you have confessed or made a

23   statement to the Government concerning the offenses charged,

24   you may have a right to a hearing to determine the

25   voluntariness and admissibility of such statement or

1    confession, and by entering this plea of guilty you are giving

2    up that right?

3    A    Yes.

4    Q    Do you understand that by entering a plea of guilty, if

5    that plea is accepted, there will be no trial and you will have

6    waived or given up your right to a trial as well as those other

7    rights associated with a trial as I've just described to you?

8    A    Yes.

9    Q    Thank you.

10             THE COURT:  Let me now turn to the Government to

11   present the factual basis questions.

12             MR. TORNTORE:  Yes, your Honor.  And before I do that,

13   and with the Court's permission, I would just like to ask Mr.

14   Weeks the questions set forth in the plea memo regarding the

15   filter process in this matter.

16             THE COURT:  Yes, you may do so.  Thank you.

17             MR. TORNTORE:  Your Honor, thank you.

18             Mr. Weeks, have you spoken with your attorney about

19   the filter process that was applied in this matter?

20             THE DEFENDANT:  I have.

21             MR. TORNTORE:  And are you satisfied with the

22   explanation that counsel provided regarding that process?

23             THE DEFENDANT:  I am.

24             MR. TORNTORE:  And do you still wish to plead guilty,

25   understanding that if you plead guilty you will not be able to

1    challenge that filter process and it will not be a basis to

2    change your guilty plea?

3              THE DEFENDANT:  Yes.

4              MR. TORNTORE:  With respect to the Indictment count,

5    your Honor, which I'll go through first:

6              Mr. Weeks, do you agree that at various points from

7    the time period that includes April 2014 through December 2019,

8    you agreed with Matthew Brent Goettsche, Russ Albert Medlin,

9    Joseph Frank Abel, and others to devise a scheme to offer and

10   sell securities without filing a registration statement with

11   the U.S. Securities and Exchange Commission?

12             THE DEFENDANT:  Yes.

13             MR. TORNTORE:  Did you understand that the securities

14   to be shares of Bitcoin mining pools purportedly owned by an

15   entity called the BitClub Network?

16             THE DEFENDANT:  Yes.

17             MR. TORNTORE:  Do you agree that these BitClub Network

18   shares were, in fact, securities?

19             THE DEFENDANT:  Yes.

20             MR. TORNTORE:  As part of the promotion of the BitClub

21   Network, did you and others take money from investors in

22   exchange for membership in the BitClub Network?

23             THE DEFENDANT:  Yes.

24             MR. TORNTORE:  Did you also take money from investors

25   as an investment for shares of mining pools that the BitClub

1    Network purported to own and operate?

2              THE DEFENDANT:  Yes.

3              MR. TORNTORE:  And during the course of the

4    conspiracy, do you agree that you and others promoted the sale

5    of shares in the BitClub Network through discussions with

6    potential investors via the internet?

7              THE DEFENDANT:  Yes.

8              MR. TORNTORE:  And did this include creating and

9    posting videos on the internet?

10             THE DEFENDANT:  It does.

11             MR. TORNTORE:  Do you agree that you promoted the sale

12   of the BitClub Network shares by giving speeches and making

13   presentations in the United States?

14             THE DEFENDANT:  I did.

15             MR. TORNTORE:  And did you and others also promote the

16   sale of the BitClub Network shares by giving speeches and

17   making presentations at numerous countries overseas?

18             THE DEFENDANT:  Yes.

19             MR. TORNTORE:  As part of the conspiracy and the

20   promotion of the BitClub Network shares, did you and others

21   encourage U.S. investors to utilize a virtual private network,

22   or "VPN," to obscure their true US-based IP addresses?

23             THE DEFENDANT:  Yes.

24             MR. TORNTORE:  Did you do this so that you, as well as

25   your co-conspirators and the BitClub Network, could avoid

1   detection and regulation by U.S. law enforcement?

2           THE DEFENDANT:  Yes.

3           MR. TORNTORE:  And to your knowledge, did the BitClub

4   Network file a registration statement with the U.S. Securities

5   and Exchange Commission?

6           THE DEFENDANT:  They did not.

7           MR. TORNTORE:  Do you also agree that you knew at the

8   time you and others were selling these shares that the sale of

9   those shares was wrongful?

10          THE DEFENDANT:  Yes.

11          MR. TORNTORE:  Did you understand Matthew Goettsche

12  and Russ Medlin to be owners and operators of the BitClub

13  Network?

14          THE DEFENDANT:  Yes.

15          MR. TORNTORE:  And during the course of the

16  conspiracy, was it your understanding that Matthew Goettsche

17  was living and working in the United States?

18          THE DEFENDANT:  Yes.

19          MR. TORNTORE:  And do you agree that you communicated

20  with Goettsche through the email accounts:  mattgetch -- and

21  I'll spell that -- m-a-t-t-g-e-t-c-h -- @gmail.com and

22  bitclubemail@gmail.com?

23          THE DEFENDANT:  Yes.

24          MR. TORNTORE:  And do you agree that you communicated

25  with Medlin through the email accounts russminvegas@gmail.com

1    and bitclubruss@gmail.com?

2              THE DEFENDANT:  Yes.

3              MR. TORNTORE:  Are you pleading guilty to Count 2 of

4    the Indictment because you are, in fact, guilty of the charged

5    offense?

6              THE DEFENDANT:  Yes.

7              MR. TORNTORE:  With respect to the Information count.

8    From in or about January 2015 through in or about April of

9    2019, did you willfully attempt to evade and defeat income

10   taxes due and owing by you to the United States of America for

11   the calendar years 2015, 2016, 2017, and 2018?

12             THE DEFENDANT:  Yes.

13             MR. TORNTORE:  And during that time period, did you

14   fail to file tax returns with the Internal Revenue Service?

15             THE DEFENDANT:  Yes.

16             MR. TORNTORE:  Do you agree that during that time

17   period you earned in excess of $10 million in income, including

18   millions of dollars in cryptocurrency?

19             THE DEFENDANT:  Yes.

20             MR. TORNTORE:  Do you agree that you did not report

21   any of that income to the Internal Revenue Service?

22             THE DEFENDANT:  Yes.

23             MR. TORNTORE:  I'm sorry.  I didn't hear the answer to

24   that question.

25             THE DEFENDANT:  Yes.

```
 1              MR. TORNTORE:  Did you commit several affirmative acts
 2       in order to evade or defeat the income taxes due by you?
 3              THE DEFENDANT:  Yes.
 4              MR. TORNTORE:  Specifically, did you use a virtual
 5       private network, or "VPN," to obscure your true US-based IP
 6       addresses?
 7              THE DEFENDANT:  Yes.
 8              MR. TORNTORE:  And did you do this so you could avoid
 9       detection and regulation by law enforcement?
10              THE DEFENDANT:  Yes.
11              MR. TORNTORE:  Did you also apply for citizenship in
12       the Federation of Saint Christopher and Nevis, also known as
13       Saint Kitts and Nevis, in an effort to evade tax reporting
14       requirements?
15              THE DEFENDANT:  Yes.
16              MR. TORNTORE:  Do you agree that you also concealed
17       income and other assets through the use of private
18       cryptocurrency wallets?
19              THE DEFENDANT:  Yes.
20              MR. TORNTORE:  And are you pleading guilty to Count 1
21       of the Information because you are, in fact, guilty of tax
22       evasion?
23              THE DEFENDANT:  Yes.
24              MR. TORNTORE:  Your Honor, the United States
25       represents to the Court that it would be prepared to prove at
```

1    trial beyond a reasonable doubt all of the essential elements

2    of Count 2 of the Indictment and Count 1 of the Information.

3         The United States further represents that it would be

4    prepared to prove beyond a reasonable doubt at trial the

5    following:

6         That the securities in the BitClub Network were not

7    registered with the U.S. Securities and Exchange Commission;

8         That the securities were not exempt from registration;

9         That at least some of the sales of the BitClub Network

10   securities occurred with individuals located within the United

11   States; and

12        That at least one overt act during the course of the

13   conspiracy in furtherance of the conspiracy was undertaken by a

14   co-conspirator in the District of New Jersey.

15        Coupled with these representations, your Honor, the

16   United States believes that Defendant's affirmative responses

17   to the questions asked of him today provide a sufficient

18   factual basis for the Court to accept this guilty plea to Count

19   2 of the Indictment and to Count 1 of the Information.

20        THE COURT:  Thank you so much.

21        So even in the absence of the Defendant's responses to

22   the factual basis questions, if the Government were to proceed

23   to trial it would be prepared to prove each and every element

24   of the crimes charged beyond a reasonable doubt?  Is that

25   correct?

```
 1              MR. TORNTORE:  Yes, your Honor.

 2              THE COURT:  Thank you.

 3              Now turning to Mr. Weeks.  Sir, in light of all the

 4    questions that I've asked you, is it your wish to enter a plea

 5    of guilty?

 6              THE DEFENDANT:  It is.

 7              THE COURT:  Why did you decide to enter the plea of

 8    guilty, because you're, in fact, guilty or for some other

 9    reason?

10              THE DEFENDANT:  Because I'm guilty.

11              THE COURT:  How do you plead to the charge, sir, or

12    the charges rather:  Guilty or not guilty?

13              THE DEFENDANT:  Guilty.

14              THE COURT:  Let me turn to Defense Counsel.

15              Are you satisfied that the plea is entered entirely

16    voluntarily, is entered by the Defendant with full knowledge of

17    his rights and his responsibilities?

18              MR. GAUGUSH:  Yes, your Honor.

19              THE COURT:  Thank you.

20              And then does counsel advise the Court to accept the

21    guilty plea of the Defendant?

22              MR. GAUGUSH:  Yes, your Honor.

23              THE COURT:  Thank you.  And again, just so everyone is

24    clear, the Defendant is pleading guilty to Count 2 of the

25    Indictment and to the one-count Information as well.  Is that
```

1     correct?  Let me ask counsel.

2              MR. GAUGUSH:  That's correct, your Honor.

3              THE COURT:  For both sides.  The Government as well?

4              MR. TORNTORE:  Yes, your Honor.

5              THE COURT:  Okay.  And to the Defendant as well.  Is

6     that correct, sir?

7              THE DEFENDANT:  That's correct.

8              THE COURT:  Okay.  Based upon the responses from the

9     Defendant I make the following findings:

10             The Defendant is competent to enter the plea; the

11    Defendant is adequately represented by counsel; the Defendant

12    is aware of the charges contained in the Information and in the

13    Indictment; the Defendant understands the elements of the

14    offenses charged; the Defendant entered the plea on a voluntary

15    basis; the Defendant knows of the existence and understands and

16    agrees to the terms of the Plea Agreement; the Defendant

17    understands his constitutional rights; the Defendant knowingly,

18    voluntarily and intentionally waived his constitutional rights;

19    the Defendant understands the penalties which may attach as a

20    result of this plea; the Defendant understands the Sentencing

21    Guidelines, how they apply to him, how they apply to his case;

22    the Defendant understands the consequences of his plea; the

23    Defendant understands he is bound by his statements in court;

24    the Defendant has given an adequate factual basis for his plea;

25    and there has been an adequate and public record made of the

1    plea.  Accordingly, the plea of the Defendant is accepted and
2    the Defendant is adjudged guilty of the offenses.

3          The sentencing shall take place on March 17th, 2021 at
4    10 a.m.  And again, that's March 17th, 2021 at 10 a.m.

5          In connection with that I wish to inform the Defendant
6    of the following:  A written plea sentence report will be
7    prepared by a probation officer to assist at the time of
8    sentencing.  You will be required to give Information for the
9    report and your attorney may be present if you wish.  You and
10   your attorney on your behalf will be afforded an opportunity to
11   speak at the sentencing hearing, and the Court will permit you
12   and counsel the opportunity to read the presentence report and
13   make appropriate comments or corrections concerning the report
14   before the sentencing hearing.

15         And with that, I believe we are reaching a close on
16   this matter for today.  But let me ask counsel for both sides:

17         Is there anything additional that we need to address
18   or clarify on the record?  Let me start with the Government.

19         MR. TORNTORE:  Nothing from the Government, your
20   Honor.

21         THE COURT:  Thank you.

22         Let me go to Defense Counsel now.

23         MR. GAUGUSH:  Nothing further from the Defense, your
24   Honor.

25         THE COURT:  All right.  And then I will actually ask

1    Mr. Weeks as well.  Anything further, Mr. Weeks?

2              THE DEFENDANT:  All set.  Thank you, your Honor.

3              THE COURT:  All right.  Excellent.

4              Well, thank you, everyone, for appearing today.  And

5    obviously we have another date on the calendar, so I will be

6    seeing you all again.  If there's any issue coming up certainly

7    you can let us know and you can contact Ms. Lambiase, our

8    Deputy, if there's any issue with respect to scheduling.  All

9    right?

10             So with that, I'd like to thank you all.  Everyone, be

11   well, be safe, take care, and we'll be talking again.

12             MR. GAUGUSH:  Thank you, your Honor.

13             MR. TORNTORE:  Thank you, your Honor.  Have a good

14   morning.

15             (Conclusion of proceedings.)

16                          ooOoo

17

18

19

20

21

22

23

24

25