**UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY**

**United States of America,**
Plaintiff,

v.

**Jobadiah Weeks,**
Weeks Pro Se.

**Crim. No. 19-cr-877 (CCC)**
**Hon. Claire C. Cecchi**

Honorable Claire C. Cecchi
United States District Judge
District of New Jersey
Martin Luther King Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

Re: United States v. Jobadiah Weeks, 19-cr-877 (CCC)

**Dear Judge Cecchi:**

In preparation for the May 8, 2025 hearing and in response to the Government's April 22 letter (Dkt. 417), Weeks respectfully submits the following list of unresolved factual and legal questions. These questions arise from the pending discovery motions (Dkts. 401 and 403), prior correspondence, and the Reply brief filed concurrently with this letter.

They are offered to help focus the upcoming hearing and provide the Government with an opportunity to respond on the record to several critical matters that remain unaddressed. Weeks respectfully requests that the Court direct the Government to be prepared to answer these questions at the hearing.

## I. Non-Compliance with Court Orders

1. The prosecution has failed to answer any of the discovery-related questions for over three months. This lack of response suggests either a failure to comply with court orders or an attempt to suppress exculpatory evidence. If it is not one of these two, can the Government explain why it has failed to comply with the Court's direct order of March 11, 2025, which required a response to Weeks's motions before April 22, 2025?

1

## II. Pro Se Access to Discovery

2. As noted in Weeks's March 31, 2025 letter, former counsel Carlton Fields refused to provide correspondence with the Government or answer key discovery questions. Given the Government was informed of this, what justifies its continued withholding of materials? Or does this correspondence fall under the work-product doctrine, and if so, on what basis?

    **Relates to Sections XII, XIV**

## III. Discovery and Rule 16/Brady Violations

3. For over three months, the prosecution has failed to produce the following critical discovery materials, which are essential for proving fraud and perjury, establishing selective prosecution, and addressing the Government's misleading of the Grand Jury:
    a. Do the documents referenced in the October 8, 2020 Grand Jury Evaluation Memo—including those listed in Footnote 7—actually exist?
    b. If the documents were never created, why were they referenced in an official evaluation memo? If they were not created, why were they not produced retroactively, as was done with the Streamlined SAR — especially considering the Government's legal obligation under *Brady* and Rule 16?

    **Relates to Sections II, VI, XII**

4. Does the video recording of the December 10, 2019 interrogation still exist, or has it been deleted? If it exists, on what basis is the Government claiming that it falls under the work-product doctrine?

    **Relates to Sections II, VI**

## IV. Proffer Authentication and Hoxie Memo

5. The August 17 and August 25, 2020 IRS-CI proffer memoranda were not signed or certified by either of the AUSAs involved. Were these memoranda ever formally adopted by the Department of Justice or submitted to the Tax Division or the Grand Jury, including the documents referenced within them?

    **Relates to Section VII**

2

6. Special Agent Helmstetter's August 17, 2020 memorandum attributes to AUSA Jamie Hoxie an instruction that Weeks should not communicate with co-Weeks Abel and Goettsche. Yet Weeks had no contact with Hoxie prior to that date.
    a. Was this attribution independently verified or authorized by AUSA Hoxie, or was it unilaterally inserted by the agent to justify the memo's contents retroactively?
    b. If no contemporaneous evidence can be provided, will the Government concede that the agent's claim was an after-the-fact fabrication or otherwise without prosecutorial foundation?
    c. Was any such statement ever formally adopted by DOJ or communicated to Weeks or his counsel before the proffer session?

    **Relates to Section VII**

## V. Victim Evidence and Policy Compliance

7. The Government claims there are "*thousands of victims.*" Why were these alleged victim claims not referenced in Beckstead's plea agreement or used to seek restitution from him?

    **Relates to Sections II, VIII, and XIII**

8. Has the Government submitted any victim impact statements, loss calculations, or harm assessments to the Court or Tax Division?

    **Relates to Section VIII**

## VI. DOJ's April 7, 2025 enforcement directive limiting prosecution

9. As the Government is aware, DOJ's April 7, 2025 enforcement directive limits digital asset prosecutions to cases involving demonstrable financial harm or the use of cryptocurrency to facilitate other crimes. In light of the DOJ's April 7, 2025 directive, can the Government provide the specific factual basis and evidentiary material demonstrating that this prosecution involves either identifiable victim harm or the use of cryptocurrency in further criminal conduct?

    **Relates to Section X and Exhibit C**

## VII. Selective Prosecution: Taxes

10. BitClub Network reportedly generated over $700 million in revenue, resulting in substantial profits. Why did BCN itself not face any tax enforcement actions? Why were its central figures — including Matthew Goettsche, Russ Medlin, Joseph Fairclough, and Joby Hidalgo — not charged with tax-related offenses despite their direct role in the company's operations and profit-taking? What justifies charging Weeks with tax crimes while exempting these key actors?

   **Relates to Sections II, IV, VII**

## VIII. Selective Prosecution

11. Russ Medlin was the founder and principal architect of the BitClub Network, yet he was not indicted until nearly a year after Weeks — and to date, he has never been arrested.
    a. Why did the Government delay Medlin's indictment despite his leadership role and the magnitude of the alleged fraud?
    b. Why was he never taken into custody, even though he was central to BitClub Network's creation and operations?
    c. What explains the disparity in timing and enforcement compared to Weeks?

   **Relates to Sections II, IV, and IX**

12. Facebook communications from co-Weeks Joseph Abel identify several individuals as central figures in BCN's financial operations and recruitment efforts, including:

    - Federico Hidalgo (BCN recruiter and financial strategist);

    - Keith Fairclough, Jason Vause, Francisco Rojo, and Ayodele Onesiumus (all actively promoting and recruiting for BCN).

   a. Given their roles, why were these individuals never indicted or charged — particularly in light of their visibility in Government-reviewed communications?
   b. Does the Government consider their conduct materially different from that of Weeks, and if so, on what factual basis?

   **Relates to Sections II and X**

4

## IX. Asset Seizure

13. In light of Weeks's February 26, 2025 letter identifying a 4.99 BTC discrepancy in the Government's 2019 seizure reports, has the Government conducted any investigation or forensic audit to determine whether these missing BTC were misappropriated, lost, or indicative of broader systemic failures in digital asset handling by the DOJ or IRS?

    **Relates to Sections II, VI, X**

14. Since February 5, 2025 — the date Weeks elected to proceed pro se — the Government has not provided an itemized list of discovery previously sent to former counsel. Does the Government acknowledge that this failure obstructs Weeks's ability to prepare his defense and constitutes a violation of Rule 16, as well as the Fifth and Sixth Amendments?

    **Relates to Sections II, IIX, XIV**

## X. Judicial Consequences

15. Does the Government believe that continued withholding of proffer materials, plea exhibits, cooperation agreements, plea offers, and other deals with BCN members allows the plea to stand under Rule 11(b)(3), which requires that a factual basis support the plea?

    **Relates to Sections I, V, VII, VI, IX**

## XI. Plea Coercion & Hidden Deals

16. Why was Weeks not fully informed of all evidence, including exculpatory material, before pleading guilty?

    **Relates to Sections I, V, VI, IX**

17. The so-called "Streamlined SAR" contains no date but references a guilty plea signed on September 21, 2020, indicating it was created in 2021 or later — well after the plea. Why was this SAR retroactively fabricated to align with the Government's prosecution narrative? And why was it withheld from Weeks until December 2024, despite its materiality to the plea and Rule 11(b)(3) analysis?

    **Relates to Section VIII**

5

18. Weeks was transferred approximately 20 times during pretrial detention, often housed near Government witnesses.
    a. Who authorized these transfers?
    b. What was the justification for each transfer, and were they used as pressure tactics to compel Weeks into accepting a plea?
    c. Why were Weeks´ attorneys not notified of these transfers? Does the Government acknowledge that this custodial strategy, including repeated placements near cooperating witnesses, had a coercive effect that undermines the voluntariness of the plea?

    **Relates to Section II**

## XII. Bail: Liberty Restrictions and Equal Protection

19. Has the Government updated its risk assessment or consulted Pretrial Services about Week's release conditions since 2020, especially in light of Weeks's more than five years of full compliance with all liberty-restrictive conditions?

    **Relates to Section IX**

20. Why did the Government ignore Weeks' March 27, 2025 motion to modify bail (Dkt. 411), his February 27 letter raising specific questions about bail conditions, and the April 12, 2025 letter requesting termination of prosecution? The Government's April 22 letter fails to address any of the questions raised across these filings, despite dedicating four paragraphs to bail without offering substantive answers.

    **Relates to Section IX**

21. Why were Weeks bail conditions significantly more restrictive than those imposed on BCN founders?

    For example:

    ● Silviu Catalin Balaci was permitted international travel;

    ● Matthew Goettsche was subject only to a curfew;

    ● Joseph Abel was on home detention with fewer restrictions.

    What was the legal or factual basis for imposing harsher pretrial conditions on Weeks, and has this treatment ever been reevaluated in light of his five years of full compliance?

6

**Relates to Section IX**

### XIII. Grand Jury Oversight and Due Process

22. Why is the Government still withholding the full record of materials presented to the Grand Jury? Does the Government dispute that such withholding affects the validity of the plea under Rule 11(b)(3)?

    **Relates to Sections II, VIII**

23. Exculpatory evidence was withheld from the Grand Jury, does the Government acknowledge that such conduct constitutes prosecutorial misconduct and a violation of due process under established constitutional standards?

    **Relates to Sections II, XII, XIII, XIV**

### XIV. Good faith and Fairness

24. Does the Government maintain that it has complied in good faith with all discovery obligations under *Brady v. Maryland, Giglio v. United States*, Rule 16 of the Federal Rules of Criminal Procedure, and applicable local rules? If so, why has it not produced a formal certification or a complete inventory of all disclosures made to Weeks and former counsel?

    **Relates to Section II, IX of Reply Brief**

### XV. Dismissal Consideration

25. If the Court determines that selective prosecution, coercion, sustained discovery violations, misrepresentations to the Court, prosecutorial misconduct, violations of constitutional rights, and fraud on the court have occurred, does the Government agree that dismissal of the indictment would be warranted under Rule 48(b) or the Court's supervisory authority, given the cumulative impact on due process, fairness, and judicial integrity?

    **Relates to Sections IV, VIII, XIII**

### XVI. Sovereign citizen

26. In its April 22, 2025 letter, the Government characterized Weeks's filings, letters, and motions as "*unintelligible*" and containing "*frivolous sovereign citizen-style rhetoric.*"

7

In light of Weeks's April 25, 2025 letter and the detailed constitutional and evidentiary questions presented here, does the Government maintain that characterization?

**Relates to Section II and Reply Brief**

## XVII. Requested Relief and Anticipated Order

In light of the contested issues, what specific outcome does the Government expect the Court to order today — and on what basis?

**Respectfully submitted,**
**Jobadiah Weeks**
*Defendant Pro Se*
Electronically Signed via DocuSign
**Date:**  April 25 2025
**Address:**
11627 West 74th Way, Arvada, Colorado 80005



8