# Exhibit A

Government's Motion to Revoke Bail (Nov. 14, 2024)

*Confirms timing and scope of alleged violations*



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

_____

*970 Broad Street, 7ᵗʰ floor*                     973-645-2700
*Newark, New Jersey 07102*

November 14, 2024

**<u>Filed Under Seal</u>**

The Honorable Michael A. Hammer
United States Magistrate Judge
Martin Luther King Building
and U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

     *Re:*    *United States v. Jobadiah Sinclair Weeks*, Crim. No. 19-cr-877

Dear Judge Hammer:

     The Government moves to revoke Defendant Jobadiah Sinclair Weeks' bail because Weeks has failed to comply with the conditions of pre-trial release imposed by this Court. Specifically, Weeks has continued to use internet-connected electronic devices, including encrypted chat applications, and has promoted investments, all of which is prohibited by the current conditions of his pre-trial release.

**I.    Procedural History**

     On December 5, 2019, a federal grand jury returned a two-count Indictment (the "Indictment") charging Weeks and four other defendants with crimes related to the BitClub Network ("BCN")—a bitcoin fraud scheme that Weeks promoted beginning in 2015. Count One charged Weeks and others with a wire fraud conspiracy that took at least approximately $722 million of investor money in bitcoin, in violation of 18 U.S.C. § 1349. Count Two charged Weeks and others with conspiring with others to offer or sell unregistered securities in BCN, contrary to 15 U.S.C. §§ 77e and 77x, in violation of 18 U.S.C. § 371.

     On December 10, 2019, Weeks was arrested in Florida and was detained following a bail hearing in the Southern District of Florida on December 17, 2019. Weeks' detention was continued following a lengthy bail hearing before this Court on February 13 and 14, 2020 (Dkt. 45 and 48) and was continued yet again after Weeks moved for release due to COVID-19 (Dkt. 68 and 79).

On November 5, 2020, Weeks entered a guilty plea to (a) Count Two of the Indictment, charging him with conspiring with others to offer or sell unregistered securities, contrary to 15 U.S.C. §§ 77e and 77x, in violation of 18 U.S.C. § 371; and (b) an Information charging him with one count of tax evasion, in violation of 26 U.S.C. § 7201. Dkt. 149.

On November 6, 2020, Weeks was released by this Court on a $2 million bond secured by various property. Dkt. 153. In addition to the secured bond, Weeks was subjected to home incarceration with electronic monitoring, restricted travel, and was directed to provide a full accounting of all financial holdings, including domestic and foreign bank accounts and any and all cryptocurrency holdings. *Id.* During the November 6 hearing, the Government consented to Weeks' release, citing a diminished flight risk resulting from Weeks' guilty plea and the dismissal of Count One of the Indictment.

On March 19, 2021, the conditions of Weeks' release were modified from home incarceration to home detention to allow Weeks to secure employment. Dkt. 189.

On August 6, 2021, the Government moved to revoke Weeks' bail based on Weeks' promotion of certain unregistered securities.

On September 22, 2021, in lieu of revocation proceedings, the parties agreed to modified bail conditions, which included the following restrictions, among others: (1) Weeks shall not possess a smart phone; (2) Weeks shall not use the internet to communicate with others except through certain email addresses approved by Pre-Trial Services; and (3) Weeks shall not directly or indirectly promote or otherwise encourage others to invest in any cryptocurrency or ***other investment vehicle***; (4) Weeks shall not direct any other person to engage in any restricted activity on his behalf.

On February 22, 2024, Pre-Trail Services ("PTS") petitioned this Court for a violation of Weeks' supervised release based on the following: (1) Weeks' attendance, without the knowledge of PTS, at an event in Florida titled '*The Past, Present, and Future of Cryptocurrency'*; (2) Weeks' use of electronic devices, including his use of the encrypted messaging application Signal; and (3) Weeks engaging in certain financial transactions, including cryptocurrency liquidation, without PTS' knowledge or consent. Dkt. 320. The Government joined in PTS' application.

On March 21, 2024, this Court held a bail revocation hearing and, following argument, denied PTS' and the Government's request for revocation. Dkt. 329. In denying the application, the Court ordered that the following conditions, among others, be continued or added to the existing conditions of Weeks' release:

(10)    The defendant may possess a phone that has call and text capabilities, but no access to or capability to access the internet (i.e., the defendant shall not possess a "smart" phone).

(14)    The defendant shall continue to not directly or indirectly promote or otherwise encourage others to invest in any cryptocurrency or other investment vehicle, including those that employ a multi-level marketing strategy.  For purposes of this condition, the defendant shall be deemed to be promoting or otherwise encouraging investment if, among other things, he stands to benefit financially from the investment of a third party, such as through a referral fee.

(15)    The defendant shall not direct any other person to engage in any restricted activity on his behalf.

Dkt. 331.

## II.    Factual Summary

In or around October 2024, members Internal Revenue Service ("IRS") received information from an individual ("Individual-1") regarding Weeks.  According to Individual-1, in early-2024 Individual-1 was hired by an investment fund (the "Fund") to analyze investment deals related to real estate and technology. Individual-1 stated that after he joined the Fund, the Fund brought on a "partner fund" called "Liberty" (the "Liberty Fund") which, according to Individual-1, was being run by Weeks.  Individual-1 stated that the Liberty Fund used a frontman, but Weeks was known by all involved to be behind the investment vehicle.

Individual-1 further stated that Weeks communicated with Individual-1 and others through the encrypted messaging app Signal under the name of Weeks' wife and, later, using the moniker "the Visionary."  Individual-1 provided law enforcement with numerous screenshots of what purport to be several different Signal group chats in which Weeks uses "the Visionary" moniker (the "Signal Chats").

The Signal Chats span from in or around January 2024 through at least as recently as August 2024.  Throughout the Signal Chats, Weeks and others discuss various investment opportunities, their terms, and how the opportunities should be pitched to potential investors.  For example, on or about July 25, 2024, a member of a Signal group chat entitled "Liberty general chat" asked, "Do we have an official description of how we are telling people about liberty fund?"  Weeks, using the Visionary moniker, replied with a 42-second voice message.  A review of that voice message, which was also provided by Individual-1, revealed Weeks explaining an apparent pitch for the Liberty fund.  In another voice message sent by Weeks on or

about June 20, 2024, Weeks stated, "I'll be on radio silence for about three hours since [Weeks' wife] is here I can't have a phone now."

A review of the content of the Signal Chats further confirms that Weeks was behind "the Visionary" moniker. For example, on or about February 22, 2024, in another group chat entitled "Liberty/(the Fund)", Weeks, again using "the Visionary" moniker, wrote: "Hey. I'm back in denver…I'm back on house arrest…Court March 11[1]." Weeks also provided his address in Arvada, Colorado where he was residing at the time.

Further, on or about April 17, 2024, in a group chat entitled "Liberty doc review" one member of the chat (Individual-2) asked, "you guys available for a call?" Individual-1, who was a member of the chat, responded "yes" and Individual-2 then asked, "Joby?" "The Visionary" then responded, "hey guys…I'm back". This chat occurred approximately three weeks following Weeks' March 21, 2024 bail review hearing before this Court at which Weeks was ordered by this Court to not use or possess a smartphone.

## III.    Argument

The Court should revoke Weeks' bail because Weeks has continued to: (a) promote investments; (b) surreptitiously use unauthorized electronic devices, including encrypted chat applications, contrary to the conditions of his pre-trial release.

Pursuant to 18 U.S.C. § 3148(b)(1)(B) and (b)(2)(B), this Court shall enter an order of revocation and detention if, after a hearing, the Court finds: (1) clear and convincing evidence that the person has violated any other condition of release; and (2) that the defendant is unlikely to abide by any condition or combination of conditions of release.

Here, there is clear and convincing evidence that Weeks has, again, violated the conditions of his release through (1) his use of an internet-connected cell phone and encrypted chat application; and (2) his involvement in soliciting investment in an investment fund. It is similarly clear that Weeks does not intend to abide by any condition or combination of conditions of release. As this Court observed at Weeks' March 2024 bail revocation hearing, the "common thread among [Weeks' prior violations] is, really, deception of Pretrial Services." *U.S. v. Weeks Bail Revocation Transcript* at 10, 19-20. Unfortunately, that deception has continued despite repeated admonishments and warnings by this Court.

---

[1] March 11, 2024 was the originally scheduled date for the bail revocation hearing that took place on March 21, 2024.

Weeks will likely argue that his conduct, while in clear violation of the conditions of his release, was not otherwise illegal.  But that is beside the point. Weeks has – again – flouted this Court's orders and demonstrated that he will continue to deceive PTS Service unless and until his bail is revoked and he is in custody.

## IV.    Conclusion

Based on the foregoing, the Court should revoke Weeks' bail and order him detained pending sentencing in this matter.

Respectfully Submitted,

PHILIP R. SELLINGER
United States Attorney

*/s/ Anthony P. Torntore*

By:    ANTHONY P. TORNTORE
        Assistant U.S. Attorney

# Exhibit B

Judge Hammer's March 2024 transcript denying revocation

*Shows Court already addressed alleged violations*

# UNITED STATES DISTRICT COURT

for the

District of New Jersey

## MAGISTRATE'S COURTROOM MINUTES

UNITED STATES OF AMERICA

*Plaintiff*

v.

JOBADIAH SINCLAIR WEEKS

*Defendant*

MAGISTRATE JUDGE: Michael A. Hammer

CASE NO. 19-877

DATE OF PROCEEDINGS: 3/21/2024

DATE OF ARREST: _____

**PROCEEDINGS:** Bail Violation Hearing

- ☐ COMPLAINT
- ☐ ADVISED OF RIGHTS  ☐ ADVISED OF CHARGES AND PENALTIES
- ☐ WAIVER OF COUNSEL
- ☐ APPT. OF COUNSEL: ☐____AFPD  ☐____CJA
- ☐ WAIVER OF HRG: ☐____PRELIM  ☐____REMOVAL
- ☐ CONSENT TO MAGISTRATE'S JURISDICTION
- ☐ PLEA ENTERED: ☐____GUILTY  ☐____NOT GUILTY
- ☐ PLEA AGREEMENT
- ☐ RULE 11 FORM
- ☐ FINANCIAL AFFIDAVIT EXECUTED  ☐ FINANCIAL COLLOQUY
- ☐ Brady Order
- ☑ Counsel will submit a proposed order that includes the Court's modified conditions
- ☐
- ☐

- ☐ DETAINED W/O PREJUDICE TO MAKE A BAIL APPLICATION LATER
- ☐ CONSENT TO DETENTION WITH RIGHT TO MAKE A BAIL APPLICATION AT A LATER TIME
- ☐ BAIL DENIED - DEFENDANT REMANDED TO CUSTODY
- ☐ BAIL SET:_____
  - ☐ UNSECURED BOND
  - ☐ SURETY BOND SECURED BY CASH/PROPERTY
- ☐ TRAVEL RESTRICTED_____
- ☐ REPORT TO PRETRIAL SERVICES
- ☐ DRUG TESTING AND/OR TREATMENT
- ☐ MENTAL HEALTH TESTING AND/OR TREATMENT
- ☐ SURRENDER AND/OR OBTAIN NO PASSPORT
- ☐ SEE ORDER SETTING CONDITIONS OF RELEASE FOR ADDITIONAL CONDITIONS

**HEARING SET FOR:**

- ☐ PRELIMINARY/REMOVAL HRG.
- ☐ DETENTION/BAIL HRG.
- ☐ TRIAL: ☐____COURT ☐____JURY
- ☐ SENTENCING
- ☐ OTHER:_____

DATE:_____
DATE:_____
DATE:_____
DATE:_____
DATE:_____

**APPEARANCES:**

AUSA: Anthony Torntore

DEFT. COUNSEL: David Stone, Eric Cohen and John Zach

PO/PTS: David Hernandez and Barbara Hutchinson

INTERPRETER_____
Language:_____

TIME COMMENCED: 2:56
TIME TERMINATED: 3:36
CD NO: ECR

J. Baker

DEPUTY CLERK

# Exhibit C

Defendant's Letter to AUSA Torntore (Feb. 27, 2025)

*Demonstrates good-faith effort to address bail issues*

**27 February 2025**

**VIA EMAIL**
AUSA Anthony Torntore
United States Attorney's Office
District of New Jersey
970 Broad Street, 7th Floor
Newark, New Jersey 07102
Anthony.Torntore@usdoj.gov

## Subject: Bail Conditions and Related Requests – U.S. v. Jobadiah Weeks (19-cr-877-CCC)

Dear AUSA Torntore,

I am formally requesting **disclosure of records and clarifications** regarding the **bail conditions imposed in my case**, referring to the **email of February 19** regarding the **scheduling of a date for my bail violation hearing**, which was **forwarded by Ernesto Cerimele**. Given the **legal significance** of these concerns, I request your **prompt attention and full cooperation** in providing the requested materials.

## 1. Justification for Bail Conditions and Pretrial Restrictions & DOJ Delays

The bail conditions imposed on me were **notably severe compared to similarly situated BCN defendants**. I request records explaining:

1. The **criteria used** to justify my pretrial restrictions.
2. Any **internal DOJ, FBI, or BOP communications** regarding my risk assessment and classification.
3. Any records detailing **why less restrictive alternatives** were not considered.
4. All **DOJ and Pretrial Services discussions** regarding potential alternative release conditions considered for me but not granted.
5. Why **COVID-related trial delays** ([Docket Entry 95]) did not warrant reconsideration of my pretrial detention.

Additionally, **DOJ sought extended time for case preparation**, citing **extensive discovery delays** ([Docket Entry 118]). This resulted in **prolonged detention without trial**, despite the government taking additional time to process evidence. I request records confirming:

- Whether this delay **similarly impacted other BCN defendants** or if my continued detention was inconsistent with DOJ's handling of similarly situated individuals.
- Whether **DOJ considered the impact of these delays** on my constitutional right to a **fair and speedy trial**.

1

**Legal Basis:** Restrictions on pretrial detention must comply with **United States v. Salerno, 481 U.S. 739 (1987)**, which requires that conditions be **narrowly tailored and not excessive**. **Disparities in bail decisions** may constitute **selective enforcement** and **due process violations** under **United States v. Armstrong, 517 U.S. 456 (1996)**.


## 2. Comparison of Pretrial Conditions Among BCN Defendants & Selective Pretrial Treatment

The **PSI Report** suggests that:

- **Other BCN defendants**—including those with **greater control over the platform**—were granted **more favorable bail conditions**.
- I was **detained under stricter conditions** despite having a **lesser managerial role** in BCN.
- DOJ **may have overstated risk factors** in my case while **treating similarly situated co-defendants differently**.

For example, **Russ Medlin**, who had a **greater managerial role**, had his identity kept under seal until June 2020 ([Docket Entry 99]). Additionally, **Silviu Catalin Balaci was approved for international travel** while I remained in custody ([Docket Entry 302]).

I request the following records:

6. Any **DOJ and Pretrial Services communications** regarding the **bail conditions of other BCN defendants**, particularly those justifying:
   - **International travel for Silviu Catalin Balaci** while I remained in custody.
   - **The sealed status of Russ Medlin's case** despite his greater managerial role.
7. All **DOJ memoranda and risk assessments** used to justify these pretrial decisions.
8. Any documentation **explaining DOJ's criteria** for determining pretrial conditions among BCN defendants, including whether DOJ considered:
   - **Cooperation agreements**
   - **Managerial roles within BCN**
   - **Financial exposure** in assessing pretrial restrictions.

**Legal Basis:** Equal treatment in bail decisions is required under the **Fifth and Sixth Amendments**. **Selective enforcement of bail conditions** could violate **United States v. Bass, 536 U.S. 862 (2002)**, which mandates **equal application of pretrial release criteria**.

2

## References

1. **Docket Entry 302 (Sept. 8, 2023)** – Balaci's international travel permission during pretrial release, with unclear justification compared to my denied bail.
2. **Docket Entry 118 (July 16, 2020)** – DOJ's request for trial delays due to case complexity, prolonging my pretrial detention and affecting my ability to contest my bail conditions.
3. **Docket Entry 95 (May 28, 2020)** – Court order suspending trials due to COVID-19, affecting pretrial detention.
4. **Docket Entry 99 (June 17, 2020)** – Medlin's unsealing delay and selective pretrial treatment.
5. **Pre-Sentencing Investigation (PSI) Report** – Government assessment regarding bail conditions and defendant risk classifications.
6. **United States v. Salerno, 481 U.S. 739 (1987)** – Establishing that bail conditions must be narrowly tailored and not excessive, particularly in cases involving pretrial detention based on perceived risk rather than proven danger.
7. **United States v. Armstrong, 517 U.S. 456 (1996)** – Right to equal enforcement in prosecutorial and pretrial decisions.
8. **United States v. Bass, 536 U.S. 862 (2002)** – Ensuring equal application of pretrial release criteria.

## Conclusion & Request for Response

Given the **critical nature of these concerns** and their **direct impact on my due process rights**, I respectfully request a **formal written response by Wednesday, March 5, 2025**, detailing the requested disclosures or the specific **legal grounds for refusal**.

**Respectfully submitted,**
**Jobadiah Weeks**

# Exhibit D

Government's April 22, 2025 Letter (Dkt. 417)

*Establishes conclusory opposition and failure to rebut*



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Anthony Torntore*
*Assistant United States Attorney*

*970 Broad Street, 7th floor*
*Newark, New Jersey 07102*    *Direct dial: (973) 645-2700*

April 22, 2025

Honorable Claire C. Cecchi
United States District Judge
District of New Jersey
Martin Luther King Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

      Re:    <u>United States v. Jobadiah Sinclair Weeks</u>
             Crim. No. 19-877 (CCC)

Dear Judge Cecchi:

The Government submits this letter brief in opposition and in response to the various motions and filings submitted by Defendant Jobadiah Sinclair Weeks (*see* Dkt. Nos. 396, 400, 401, 402, 403, 404, 406, and 407) in which Weeks seeks various relief, including: (1) "recission of autograph" on Weeks' plea agreement;[1] (2) dismissal of the charges contained in the Indictment and Information as they relate to Weeks; (3) production of certain discovery materials; and (4) modification of pretrial conditions.  For the reasons set forth herein, Weeks' motions are without merit.  Accordingly, the Government requests that the Court deny Weeks' motions and proceed to sentencing.

**I.      Factual and Procedural Background**

This case involves Weeks' participation in the BitClub Network ("BCN"), a worldwide fraud scheme predicated on cryptocurrency mining that took place between 2014 and 2019.  BCN was co-created in 2014 by Matthew Goettsche ("Goettsche"), Russ Medlin ("Medlin"), and Silviu Catalin Balaci ("Balaci").  Medlin helped Goettsche create BCN's compensation plan for its recruiters and was also the

---

[1] For the purpose of this response, the Government is considering Weeks' motion for "recission of autograph" as a motion to withdraw his guilty plea.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 2

public face of BCN's sales pitches.  Balaci, a computer programmer, worked at Goettsche's direction as the programmer for BCN's web platforms.

Weeks and another co-defendant, Joseph Abel ("Abel"), among others, promoted BCN to prospective investors around the world, both online and in person, and sold shares in BCN knowing that hopeful investors were purchasing those shares based on various misrepresentations.  Through the efforts of the co-conspirators, including Weeks, BCN took in hundreds of millions of dollars from investors.  Weeks' involvement in BCN also largely involved Weeks attempting to thwart U.S. regulation, tax liabilities, and detection, and encouraging others to do the same. Throughout the course of the conspiracy, Weeks encouraged potential U.S.-based investors to utilize virtual private networks ("VPNs") to access BCN's website to avoid detection by U.S. law enforcement and to promote the anonymity of the scheme.

Despite making millions of dollars through his promotion of BCN, Weeks (a U.S. citizen) did not report any of that income to the Internal Revenue Service, including: (a) commissions and mining payments awarded to Weeks' BCN account and withdrawn by him, and (b) commissions earned by Weeks through the brokerage of bitcoin mining contracts with third-parties on behalf of BCN, for tax years 2015 through, and including, 2018.  This resulted in Weeks avoiding the payment of more than $7 million in taxes.

On December 5, 2019, a federal grand jury returned a two-count Indictment (the "Indictment") charging Weeks, Goettsche, Medlin, Abel, and Balaci with various crimes related to the BCN scheme.  Count One of the Indictment charged Weeks with wire fraud conspiracy, in violation of 18 U.S.C. § 1349.  Count Two of the Indictment charged Weeks with conspiring to offer or sell unregistered securities, namely, shares in BCN, contrary to 15 U.S.C. §§ 77e and 77x, in violation of 18 U.S.C. § 371.

 On December 10, 2019, Weeks was arrested in Florida and detained following a bail hearing in the Southern District of Florida on December 17, 2019.  Weeks' detention was continued following a bail hearing before United States Magistrate Judge Michael A. Hammer on February 13 and 14, 2020 (Dkt. 45 and 48) and was continued yet again after Weeks moved for release due to COVID-19 (Dkt. 68 and 79).

On November 5, 2020, Weeks entered a guilty plea to (a) Count Two of the Indictment (conspiracy to offer or sell unregistered securities); and (b) an Information charging him with one count of tax evasion, in violation of Title 26, United States Code, Section 7201.  Dkt. 149.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 3

On November 6, 2020, Weeks was released on a $2 million bond secured by various property. Dkt. 153. In addition to the secured bond, Weeks was subjected to home incarceration with electronic monitoring, among other conditions. *Id.* During the November 6 hearing, the Government consented to Weeks' release, citing a diminished flight risk resulting from Weeks' guilty plea and the dismissal of Count One of the Indictment, which carried a 20-year maximum sentence.

On August 6, 2021, the Government moved to revoke Weeks' bail based on Weeks' promotion of investment in a cryptocurrency smart contract. In lieu of a revocation proceeding, the parties agreed to modified bail conditions, which included: (1) Weeks shall not possess a smart phone; (2) Weeks shall not use the internet to communicate with others except through certain email addresses approved by Pre-Trial Services ("PTS"); (3) Weeks shall not directly or indirectly promote or otherwise encourage others to invest in any cryptocurrency or other investment vehicle; and (4) Weeks shall not direct any other person to engage in any restricted activity.

On February 22, 2024, PTS petitioned for a violation of Weeks' pre-trial conditions based on the following: (1) Weeks' attendance, without the knowledge of PTS, at an event in Florida titled 'The Past, Present, and Future of Cryptocurrency'; (2) Weeks' use of electronic devices, including his use of the encrypted messaging application Signal; and (3) Weeks engaging in certain financial transactions, including cryptocurrency liquidation, without PTS' knowledge or consent. Dkt. 320. The Government joined in PTS' application.

On March 21, 2024, Judge Hammer held a bail revocation hearing and, following argument, denied PTS' and the Government's request for revocation. Dkt. 329. In denying the application, the Court continued Weeks' conditions and specifically admonished Weeks regarding his use of the internet and smart devices.

On November 14, 2024, the Government again moved to revoke Weeks' bail based, in part, on Weeks' continued use of a smart phone (including the Signal application) without the knowledge of PTS and in direct contravention of the Court's March 21, 2024 Order.

On February 5, 2025, Judge Hammer held a hearing at which Weeks moved to proceed *pro se*. Following a *Faretta* colloquy, the Court granted Weeks' motion and continued the hearing regarding the Government's motion to revoke, which remains pending as of the date of this letter.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 4

Between February 11, 2025 and March 7, 2025, Weeks filed several motions seeking the relief set forth above.

## II.   Legal Argument

### a.   Weeks' Motion to Withdraw

Before a court accepts a guilty plea, a defendant may withdraw it "for any reason or no reason." *See* Fed. R. Crim. P. 11(d)(1).  But "[o]nce accepted, a guilty plea may not automatically be withdrawn at the defendant's whim." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001).  The "withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice," *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985), and "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty," *United States v. Siddons*, 660 F.3d 699, 703 (3d Cir. 2011) (quoting *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003)).

Instead, Federal Rule of Criminal Procedure 11(d)(2)(B) allows Weeks to withdraw his guilty plea only if he can articulate a "fair and just reason" for doing so. Fed. R. Cim. P. 11(d)(2)(B).  "The burden of demonstrating a fair and just reason falls on the defendant and is substantial." *Jones*, 336 F.3d at 252.

Specifically, the Third Circuit has prescribed a three-factor analysis governing a district court's review of motions to withdraw a guilty plea under Rule 11(d)(2)(B). As the Third Circuit explained in *Jones*, these three factors are: (1) "whether the defendant asserts his innocence"; (2) "the strength of the defendant's reasons for withdrawing the plea"; and (3) "whether the government would be prejudiced by the withdrawal." *Id.*

Because each of these three factors weigh decisively in the Government's favor, this Court should deny the motion.

#### i.   *Weeks Has Proffered No Sufficient Assertion of Innocence, Much Less a Credible One.*

The first factor, "whether the defendant asserts his innocence," *Jones*, 336 F.3d at 252, weighs decisively in the Government's favor.  Weeks' filings fail to make any legitimate profession of innocence.  Rather, Weeks' arguments, which are far from original, are replete with legal-sounding but meaningless verbiage commonly used by

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 5

adherents to the so-called "sovereign citizen" movement, which Courts throughout the country have consistently rejected. *See, e.g.*, *Murakush Caliphate of Amexem Inc. v. New Jersey*, 790 F. Supp. 2d 241 (D.N.J. 2011) (declaring that similar sovereign citizen arguments are legally frivolous); *accord United States v. Gerads*, 999 F.2d 1255, 1257 (8th Cir. 1993) (rejecting appellants' contention that they are not citizens of the United States and thus not subject to taxation); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993) (describing taxpayer's assertion that he is a citizen of the "Indiana State Republic" and not a citizen of the United States as "incorrect" and a "shop worn argument of the tax protester movement"); *United States v. Jagim*, 978 F.2d 1032, 1036 (8th Cir. 1992) (characterizing a taxpayer's claim he is not subject to federal tax laws as citizen of "Republic of Idaho" as "patently frivolous" and rejecting the contention "without expending anymore of this Court's resources" on the discussion); *see also United States v. Wankel,* 475 F. App'x 273 (10th Cir. 2012) (dismissing a taxpayer's assertion that he possessed immunity from taxation because he was a "living man" and separate from the entity to whom summons had been issued); *Bendeck v. U.S. Bank Nat'l Ass'n*, No. 17-00180, 2017 WL 2726692, at *6 (D. Haw. June 23, 2017) (noting that courts have roundly dismissed the argument that a name rendered in all caps refers to a legal entity separate from the individual designated).

As the Third Circuit has further explained, "[b]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea." *Jones*, 336 F.3d at 252. Instead, "assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Brown*, 250 F.3d at 818 (internal citation omitted). And beyond buttressing a claim of innocence, a movant must also "give sufficient reasons why contradictory positions were taken before the district court" at the plea hearing. *Jones*, 336 F.3d at 253 (internal quotation omitted). Weeks has failed to do so here.

Weeks states, "I am innocent of the charges" (Weeks Brief dated 2/2/25, at 15) but fails to point to a single fact or sworn statement in support of a claimed defense. This bald assertion of innocence, which is tangled up with Weeks' sovereign citizen-type arguments, is nothing more than that—a bald assertion. The only potential argument raised by Weeks amidst pages of biblical verses and unintelligible arguments regarding standing is that Weeks could not have offered unregistered securities because bitcoin is not a security. But this assertion, of course, is beside the point because Weeks is not charged with promoting bitcoin. He is charged with

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 6

promoting and offering shares in BCN, which *are* securities, a fact that Weeks admitted to during his plea colloquy while under oath and penalty of perjury:

| The Government | Defendant | Plea Tr.[2] |
|---|---|---|
| Mr. Weeks, do you agree that at various points from the time period that includes April 2014 through December 2019, you agreed with Matthew Brent Goettsche, Russ Albert Frank Medlin, Joseph Frank Abel, and others to devise a scheme to offer and sell securities without filing a registration statement with the U.S. Securities and Exchange Commission? | "Yes." | 36:6-12 |
| Did you understand that the securities to be shares of Bitcoin mining pools purportedly owned by an entity called the BitClub Network? | "Yes." | 36:13-16 |
| Do you agree that these BitClub Network shares were, in fact, securities? | "Yes." | 36:17-19 |
| As part of the promotion of the BitClub Network, did you and others take money from investors in exchange for membership in the BitClub Network? | "Yes." | 36:20-23 |
| Did you also take money from investors as an investment for shares of mining pools that the BitClub Network purported to own and operate? | "Yes." | 36:24-25; 37:1-2 |
| And during the course of the conspiracy, do you agree that you and others promoted the sale of shares in the BitClub Network through discussions with potential investors via the internet? | "Yes." | 37:3-7 |
| And did this include creating and posting videos on the internet? | "It does." | 37:8-10 |
| Do you agree that you promoted the sale of the BitClub Network shares by giving speeches and making presentations in the United States? | "I did." | 37:11-14 |

---

[2] Weeks Plea Transcript, November 5, 2020, Attached as Exhibit A.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 7

| | | |
|---|---|---|
| And did you and others also promote the sale of the BitClub Network shares by giving speeches and making presentations at numerous countries overseas? | "Yes." | 37:15-18 |
| As part of the conspiracy and the promotion of the BitClub Network shares, did you and others encourage U.S. investors to utilize a virtual private network, or "VPN," to obscure their true US-based IP addresses? | "Yes." | 37:19-23 |
| Did you do this so that you, as well as your co-conspirators and the BitClub Network, could avoid detection and regulation by U.S. law enforcement? | "Yes." | 37:24-25; 38:1-2 |
| And to your knowledge, did the BitClub Network file a registration statement with the U.S. Securities and Exchange Commission? | "They did not." | 38:3-6 |
| Do you also agree that you knew at the time you and others were selling these shares that the sale of those shares was wrongful? | "Yes." | 38:7-10 |

Weeks similarly acknowledged his tax evasion conduct as charged in the Information:

| The Government | Defendant | Plea Tr. |
|---|---|---|
| With respect to the Information count. From in or about January 2015 through in or about April of 2019, did you willfully attempt to evade and defeat income taxes due and owing by you to the United States of America for the calendar years 2015, 2016, 2017, and 2018? | "Yes." | 39:7-12 |
| And during that time period, did you fail to file tax returns with the Internal Revenue Service? | "Yes." | 39:13-15 |

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 8

| | | |
|---|---|---|
| Do you agree that during that time period you earned in excess of $10 million in income, including millions of dollars in cryptocurrency? | "Yes." | 39:16-19 |
| Do you agree that you did not report any of that income to the Internal Revenue Service? | "Yes." | 39:20-22 |
| Did you commit several affirmative acts in order to evade or defeat the income taxes due by you? | "Yes." | 40:1-3 |
| Specifically, did you use a virtual private network, or "VPN," to obscure your true US-based IP addresses? | "Yes." | 40:4-7 |
| And did you do this so you could avoid detection and regulation by law enforcement? | "Yes." | 40:8-10 |
| Did you also apply for citizenship in the Federation of Saint Christopher and Nevis, also known as Saint Kitts and Nevis, in an effort to evade tax reporting requirements? | "Yes." | 40:11-15 |
| Do you agree that you also concealed income and other assets through the use of private cryptocurrency wallets? | "Yes." | 40:16-19 |

And beyond Defendant's allocutions, he signed, under penalty of perjury, an Application for Permission to Enter Plea of Guilty at the time he entered his guilty plea. Dkt. 147. In that Application, Weeks made multiple representations further acknowledging his guilt. For example, Weeks acknowledged that by pleading guilty, he would waive his right against self-incrimination, that "the judge will ask me what I did and I will have to acknowledge my guilt as charged by setting forth my actions so that the judge is satisfied that I am, indeed, guilty," and that "any statements I make at the time I plead GUILTY, if untrue and made under oath, can be the basis of a perjury prosecution against me." *Id.* at Page 3, Paragraph 22. Weeks also acknowledged that "the judge will not permit anyone to plead GUILTY who claims to be innocent, and with that in mind and because I am GUILTY, I respectfully request that the Court accept my plea of GUILTY." *Id.* at Page 6, Paragraph 43.

The factual record overwhelmingly establishes Weeks' guilt, and Weeks has not even attempted to contest anything in this record. He has furnished no

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 9

supplemental factual record establishing a "credible profession of actual innocence," *Sgarlat*, 705 F. Supp. 2d at 355, nor even requested leave to do so. Weeks' profession of innocence is not merely deficient—it is entirely nonexistent. The first *Jones* factor, therefore, weighs decisively in the Government's favor.

> ii. *None of Defendant's Proffered Reasons Justify Withdrawal.*

The second Jones factor, "the strength of the defendant's reasons for withdrawing the plea," *Jones*, 336 F.3d at 252, also weighs decisively in the Government's favor. Weeks submits that his plea of guilty was not made knowingly, intelligently, and voluntarily because it was submitted "under duress so that I could get bail (which was denied to me several times), have the cruel and unusual punishment end, be reunited with my family, and not die of Covid!" Weeks Brief dated 2/21/25 at 16. According to Weeks, this duress caused him to lie to this Court while under oath during his plea hearing and "falsely admit[] that 2+2=5." *Id.* at 17.

But Weeks' contention that he was forced under duress to enter a guilty plea is belied by the record. Indeed, Weeks stated the opposite under oath during his plea hearing:

| The Court | Defendant | Plea Tr. |
|---|---|---|
| Did anyone physically threaten you, verbally threaten you or threaten you in any way in order to have you sign the Plea Agreement and enter a plea of guilty? | "No." | 18:1-4 |
| Did you sign the document voluntarily? | "I did." | 18:5-6 |

At the conclusion of the hearing, the Court again asked Weeks why he was pleading guilty:

| The Court | Defendant | Plea Tr. |
|---|---|---|
| Why did you decide to enter the plea of guilty, because you're, in fact, guilty or for some other reason? | "Because I'm guilty." | 42:7-10 |

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 10

The Court made the same inquiry of Weeks' counsel who was perhaps best positioned to know whether Weeks was entering his plea under duress:

| The Court | Counsel | Plea Tr. |
|---|---|---|
| Let me turn to Defense Counsel.  Are you satisfied that the plea is entered entirely voluntarily, is entered by the Defendant with full knowledge of his rights and his responsibilities? | "Yes, your honor." | 42:15-18 |

Additionally, Weeks declared in his Application for Permission to Enter Plea of Guilty that he was not "forced coerced or threatened in any manner by any person to plead GUILTY to these charge(s)," Dkt. 147 at Page 5, Paragraph 36, and that he "freely and voluntarily" offered his plea of guilty, *Id.* at Page 6, Paragraph 44.

Perhaps most enlightening, Weeks engaged in a proffer session[3] with the Government on August 12, 2020, more than a month before signing a plea agreement and nearly three months prior to entering his guilty plea before this Court. *See* Exhibit D to Weeks Brief dated 2/21/25. During that proffer session, Weeks acknowledged—again—having promoted and offered shares in BCN to investors in the United States. *Id.* Weeks further acknowledged knowing that BCN was not registered with the SEC at the time he promoted investment in BCN. Weeks recalled a dinner where he introduced Goettsche and Medlin to an individual named Brock Pierce, who was at the time a member of the board of directors of the Bitcoin Foundation, a non-profit organization founded in 2012 to boost the reputation of cryptocurrency. *Id.* According to Weeks, Pierce advised Goettsche and Medlin that he (Pierce) believed that "the SEC would see BCN as selling securities" based on recent litigation regarding a similar cryptocurrency mining pool. *Id.* Weeks further stated that following this conversation, BCN began to block U.S.-based IP addresses from accessing BCN's website. *Id.* Weeks nevertheless encouraged investors to use a VPN to avoid this restriction and continued to promote BCN even after learning that it would likely be considered a security by the SEC under the *Howey* test. *Id.*

---

[3] Weeks attached a report of the August 12, 2020 proffer to his brief dated February 21, 2025.  Nevertheless, per the parties' proffer agreement, the Government is permitted to use Weeks' proffer statements to rebut any arguments made by him, including, as here, that his plea colloquy was given under duress.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 11

Weeks' admissions during his proffer in August 2020 are consistent with the admissions he made under oath in November 2020. Weeks' claims of duress and actual innocence are therefore severely undercut by the timing and nature of his proffer.

As this Court is aware, Weeks has also moved for a dismissal of the charges against him. However, because Weeks has pled guilty and been convicted on those charges, this Court can not address Weeks' motion to dismiss unless it were to allow Weeks to withdraw his plea. However, this Court can and should consider Weeks' motion to dismiss in the context of the second *Jones* factor. Specifically, this Court should consider whether Weeks' motion to dismiss would potentially have any merit so as to serve as a reason to allow Weeks to withdraw his guilty plea. But it does not. Much like his motion to withdraw, Weeks' motion to dismiss is riddled with unintelligible and frivolous sovereign citizen-style rhetoric. Accordingly, nothing in Weeks' filings could be viewed as a legitimate basis for dismissal (e.g., an authentic argument regarding the constitutionality of the statutes under which Weeks has been charged. *See Class v. United States*, 538 U.S. ____ (2018)).

Based on the foregoing, none of the proffered reasons put forth by Weeks justify allowing a withdrawal of his guilty plea. Accordingly, the second *Jones* factor weighs in favor of denying Weeks' motion.

### iii. *The Government Would Suffer Prejudice.*

Because Defendant is "unable to support claims of actual innocence or present adequate reasons for withdrawal of [his] guilty plea[], the government is not required to show prejudice." *United States v. Schwartz*, 403 F. App'x 781, 786 (3d Cir. 2010) (citing *United States v. Wilson*, 429 F.3d 455, 460 n.5 (3d Cir. 2005)); *Jones*, 335 F.3d at 255. But because the Government would be prejudiced by the withdrawal of Defendant's guilty plea, this factor also supports denial of Weeks' motion.

The offense conduct in this case happened between six and ten years ago. Witnesses' memories have certainly faded and certain witnesses are no longer available. While preparation for every trial requires a significant amount of time and resources, preparing for a trial in this matter—which involved thousands of victims located around the world, among other complexities—would be particularly arduous. The passage of time therefore impairs the Government's ability to try this case and would cause undue cost and inconvenience to the Government. *See United States v. Tulu,* 535 F. Supp. 2d 492, 505 (D.N.J. 2008) (likelihood of fading memory of Government witnesses works a prejudice on the Government); *see also Feliz*, 2019 WL 6496932, at *24 ("One form of prejudice is, of course, the simple passage of time.");

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 12

*United States v. Cox*, No. 11-99 (JLL), 2012 WL 3079177, at *9 (D.N.J. July 30, 2012), *aff'd*, 553 F. App'x 123 (3d Cir. 2014) ("Increased cost and inconvenience to the government are grounds for finding prejudice, as are the diminished memory and incentive to cooperate of Government witnesses.") (citation omitted).

Because Weeks has failed to support any claims of innocence and has not provided a fair and just reason to withdraw his guilty plea, prejudice to the Government is not a determinative factor. If the Court considers it at all, it is one more reason to deny the motion.

###### b.  Weeks' Motions to Compel Discovery

Weeks has additionally moved to compel the Government to provide certain discovery to which he is not entitled under the Rules of Criminal Procedure. Specifically, Weeks has made requests for such records as "DOJ communications about plea negotiations, charging decisions, and witness interactions" as well as "DOJ and FBI internal records evaluating the government's charging rationale; [and] all documents discussing the placement of [Weeks] near key witnesses." Such materials are specifically excepted under Rule 16(a)(2). *See United States v. Armstrong*, 517 U.S. 456, 463, 116 S.Ct. 1480, 1485, 134 L.Ed.2d 687 (1996) ("under Rule 16(a)(2), [a criminal defendant] may not examine Government work product in connection with his case."); *see also* *221 *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249, 257 (3d Cir.2005) ("The exception in Rule 16(a)(2) applies to work product.").

The Court should therefore deny Weeks' motion to compel discovery as it relates to Government work product to which Weeks is not.

###### c.  Weeks' Motion for Modification of Pretrial Conditions

Weeks has further requested that this Court eliminate the current conditions of Weeks' pretrial release. The Court should deny Weeks' motion. On November 14, 2024, the Government moved to revoke Weeks' bail based on his continued violation of pretrial conditions, namely his use of smart phones and the internet and his promotion of investments, all in contravention of Judge Hammer's previous Orders. While the Government's motion remains pending, the Government maintains that Weeks' bail should be revoked—his continued flouting of the Court's Orders and deception towards Pre-Trial Services shows that Weeks has no intention of abiding by any conditions of release and will continue to violation whatever conditions are put in place. At a minimum, Weeks' conditions should be continued and his motion to eliminate all conditions of release should be denied pending sentencing.

Hon. Claire C. Cecchi, U.S.D.J.
April 15, 2025
Page 13

## III.    <u>Conclusion</u>

For the foregoing reasons, the Court should deny each of Weeks' pending motions and schedule this matter for sentencing.

Respectfully submitted,

ALINA HABBA
United States Attorney

By: _____
ANTHONY TORNTORE
Assistant United States Attorney

cc:    Jobadiah Sinclair Weeks, *pro se*
Ernesto Cerimele, Esq., standby counsel

# Exhibit E

Defendant's April 25, 2025 Reply (Response to Dkt. 417)

*Provides constitutional and factual counterarguments*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**United States of America,**
*Plaintiff,*
v.
**Jobadiah Weeks,**
*Defendant Pro Se*

**Case No. 19-cr-877-CCC**
**Hon. Claire C. Cecchi**

April 25, 2025

Honorable Claire C. Cecchi
United States District Judge
District of New Jersey
Martin Luther King Jr. Building & U.S. Courthouse
50 Walnut Street
Newark, NJ 07101

**Re: United States v. Jobadiah Weeks, 19-cr-877 (CCC)**

Dear Judge Cecchi:

Defendant respectfully submits this reply in response to the Government's April 22, 2025 letter brief (Dkt. 417) and in advance of the May 8, 2025 hearing. It addresses the Government's failure to respond to critical discovery requests, explain evidentiary omissions, or justify its continued use of unverified materials in opposition to Defendant's motions. The reply summarizes factual inconsistencies, procedural defects, and constitutional violations that now require judicial intervention.

## Preliminary Note on the Government's Characterization

In its April 22, 2025 letter, the Government describes the Defendant's request as one for "*recission of autograph*" [sic] on the plea agreement (Dkt. 417 at 1). The phrase — which contains a spelling error in the word rescission — reflects both a dismissive tone and a lack of precision in addressing the constitutional issues raised. The Defendant is not simply seeking to undo a signature, but rather asserting that the plea agreement must be **rescinded and treated as void ab initio**, due to structural due process violations, suppression of material evidence, and coercive pretrial conditions. The Government's rhetorical framing does not cure these defects, nor does it meaningfully engage with the substance of the Defendant's arguments. **This response sets the record straight** and demonstrates why full rescission — not just withdrawal — is the appropriate and constitutionally mandated remedy.

1

## Executive Summary

This reply identifies four overarching legal and constitutional failures:

1. **The Government's continued withholding of discovery** — including Brady and Rule 16 materials — even after Defendant formally elected to proceed pro se on February 5, 2025;

2. **The lack of a verified factual basis for the plea agreement**, including missing proffer authentication, undisclosed discovery, and the unconfirmed instruction allegedly given by AUSA Hoxie;

3. **The imposition of unconstitutional pretrial restrictions**, which remain unjustified by the Government and unaddressed by the Court, despite multiple formal motions and correspondence;

4. **The Government's repeated failure to respond** to Defendant's motions and letters — a sustained pattern that now constitutes procedural default, waiver, and structural prejudice requiring redress.

Together, these failures support Defendant's requests for:

- **Withdrawal of the plea** under Rule 11(d)(2)(B);

- **Production of all withheld discovery**, including materials previously provided to former counsel;

- **Termination of unconstitutional pretrial restrictions**, consistent with Due Process and Equal Protection;

- **Return of seized assets**, including 8.67 BTC, in the absence of lawful forfeiture justification;

- **Dismissal of the indictment** or other sanctions, where warranted under Rule 48(b) or the Court's supervisory authority; and

- **Suppression or exclusion of any materials not disclosed** prior to the May 8 evidentiary hearing, in accordance with Rule 16 and Brady.

## Table of Contents

- **I. Preliminary Clarification**
- **II. Factual Misstatements in the Government's April 22 Letter**

    - A. Mislabeling Weeks as a Founder
    - B. Inaccurate Role and Timeline Assertions
    - C. Misattribution of Intent and Culpability
    - D. Promotional Activity
    - E. Plea Timeline vs. Grand Jury Memo
    - F. Count One Dismissal and Risk Context
    - G. Pro Se Acknowledgment, But Continued Withholding
    - H. Omission of Detention and Grand Jury Issues
    - I. Discovery Violations and DOJ Policy Silence
    - J. Consequences of Narrative Distortion
    - K, Misrepresenting Plea Withdrawal Standard
    - L. Misuse of Plea Language to Block Review
    - M. Ignoring Grounds for Plea Withdrawal
    - N. Misuse of August 2020 Proffer
    - O. Dismissive Framing of Legal Arguments
    - P. Misstating Prejudice and Delaying Strategically
    - Q. Prejudice Claim Undermined by Disclosure Failures
    - R. Misstating Rule 16 and Brady Duties
    - S. Misleading Bail Compliance Argument
    - T. False Florida Event Claim (Concluding the List)


- **III. Mischaracterization of Motion Scope**
- **IV. Misuse of Plea Language to Avoid Review**
- **V. Rescission of the Plea Agreement Is the Appropriate Remedy**
- **VI. Brady and Rule 16 Failures**
- **VII. Hoxie Statement Issues**
- **VIII. Unsupported Victim Impact Claims**

- **IX. Bail Justification Failures**
- **X. April 12 Letter and DOJ Policy**
- **XI. Discovery Issues Raised**
- **XII. Pro Se Discovery Withholding and Constitutional Violations**
- **XIII. Government Silence as Waiver**
- **XIV. Pro Se Discovery Withholding**
- **XV. Conclusion**
- **XV! Hearing Framework**

# I. Procedural Clarifications and Filing Irregularities

Before addressing the Government's factual and legal misstatements, Defendant respectfully clarifies procedural and recordkeeping issues that are material to the Court's evaluation of the motions before it.

The Government's opposition mischaracterizes both the substance and the legal foundation of the relief sought. By reducing Weeks' motion to four oversimplified categories — including a vague reference to "*recision of autograph*" [sic]— the Government fails to address the constitutional violations, evidentiary inconsistencies, and due process failures raised.

Specifically, the motion is grounded in:

- **Rule 11(d)(2)(B):** Withdrawal of plea due to constitutional violations, including coercion and a lack of factual basis.

- **Brady and Giglio violations:** Withholding of material exculpatory evidence (e.g., SARs, plea deals, MOIs, crypto seizure memos).

- **Selective prosecution and unequal bail treatment:** Supported by clear disparities with co-defendants.

- **Prosecutorial misconduct:** Including failure to disclose Grand Jury materials, misrepresentations to the Court, and pressure tactics via prison transfers.

- **Violation of DOJ policy:** The April 7, 2025 directive restricts digital asset prosecutions to cases involving identifiable harm — which the Government has not substantiated here.

- **Remedy considerations:** Including not only discovery and bail relief, but potential **dismissal of the indictment** under **Rule 48(b)** or the Court's **supervisory authority** due to cumulative misconduct.

These are not minor procedural issues. They are systemic violations that go to the heart of fairness, due process, and the legitimacy of this prosecution.

4

# II. Factual Misstatements in the Government's April 22 Letter

**Preliminary Note on Filing Date:** Although the Government's letter is dated April 22, 2025, it was filed with the Court on April 21, 2025 (Dkt. 417). This discrepancy is noted for the record, particularly given the timeline sensitivities and the ongoing discovery issues detailed below.

## A. Mischaracterization of Weeks as a Founding Member

The Government's factual summary misleadingly conflates Defendant Weeks with the founding architects of the BitClub Network ("BCN"). By stating, *"Through the efforts of the co-conspirators, including Weeks,"* the Government implicitly suggests that Weeks was part of the founding core of BCN, alongside Matthew Goettsche, Russ Medlin, and Silviu Catalin Balaci—individuals who launched and designed BCN in 2014. This is factually inaccurate, legally misleading, and prejudicial.

This mislabeling skews the plea's factual foundation under Rule 11(b)(3) and elevates Weeks' alleged culpability beyond what the record supports.

## B. Misstatement of Weeks' Timing and Role

Weeks did not join BCN until after 2016—more than two years after its founding—and had no role in its creation, corporate structuring, compensation scheme, or technical development. He held no executive or decision-making position and had no involvement in the initial launch or strategy. The Government's framing creates a false equivalency that erases meaningful distinctions between a late-joining participant and the original architects of the scheme.

As further detailed in **Section III.**, this mischaracterization of Weeks' role undermines the entire basis of the Government's narrative and must be corrected before considering the motion's merits.

This distinction is critical in evaluating not just guilt, but prosecutorial fairness and proportionality in charging decisions.

## C. Improper Attribution of Central Intent and Culpability

This distinction is not academic. It directly impacts the fairness of proceedings, particularly in how culpability, intent, and sentencing exposure are assessed. Misrepresenting Weeks as a central figure distorts the narrative and risks improperly influencing the Court's interpretation of his role, especially in the context of a motion to withdraw his plea and challenge selective prosecution.

## D. Misleading Description of Promotional Activity and Tax Exposure

The Government further asserts that *"[d]espite making millions of dollars through his promotion of BCN,"* Weeks failed to report this income to the IRS. This phrasing—"*through his promotion of BCN*"—is likewise misleading. It implies that Weeks was the primary or exclusive promoter, when in fact, as the record shows, BCN relied on a wide network of promoters, including but not limited to F. Hidalgo, A. Fairclough, R.J. Oh, J. Vause, F. Rojo, and A. Onesimus, and others, many of whom engaged in similar or more extensive promotional conduct and were not charged.

This selective language amplifies a narrative of disproportionate culpability. It ignores the broader promotional infrastructure used by BCN and falsely isolates Weeks as a uniquely blameworthy figure. This mischaracterization undercuts the legitimacy of the Government's position and further supports the defense's claim that **the prosecution has employed a distorted and unfair presentation of facts.**

The selective enforcement reflected here undermines equal protection and supports Defendant's selective prosecution claims under Armstrong.

## E. Misleading Timeline and Suppression of the Grand Jury Memo

The Government states, *"On November 5, 2020, Weeks entered a guilty plea to (a) Count Two of the Indictment (conspiracy to offer or sell unregistered securities); and (b) an Information charging him with one count of tax evasion, in violation of Title 26, United States Code, Section 7201."* However, this account omits a crucial detail: the plea agreement itself was signed on September 21, 2020—several weeks before the October 8, 2020 Grand Jury Evaluation Memorandum (hereinafter, the 'Memo') was prepared. This raises significant concerns regarding the Government's timing and transparency.

The October 8 memo, which contains key factual assessments and characterizations relevant to discovery, plea considerations, and prosecutorial framing, was not available to the defense at the time of plea signing. Its creation after the agreement but before the formal plea hearing suggests a strategic delay in material production, potentially implicating Brady obligations and Rule 11(b)(3), which requires that a plea have a factual basis.

The Government's failure to disclose this Memo prior to the plea deprived Defendant of material evidence necessary to assess the merits and fairness of the plea — a core concern under Brady.

## F. Government Admission of Reduced Risk and Count One Dismissal

*"During the November 6 hearing, the Government consented to Weeks' release, citing a diminished flight risk resulting from Weeks' guilty plea and the dismissal of Count One of the Indictment, which carried a 20-year maximum sentence."* This acknowledgment is significant. Count One—wire fraud conspiracy—was the most serious charge in the

indictment, and its dismissal substantially altered both the sentencing exposure and the perceived necessity of pretrial detention.

The Government's failure to highlight this in its recent filings contributes to an inaccurate portrayal of the defendant's risk profile and legal posture at the time of the plea. This context is critical for assessing whether the plea was knowingly and voluntarily entered and whether the prosecution's narrative continues to overstate Weeks' alleged centrality and threat.

## G. Government Admission of Pro Se Status and Continued Withholding

*"On February 5, 2025, Judge Hammer held a hearing at which Weeks moved to proceed pro se. Following a Faretta colloquy, the Court granted Weeks' motion and continued the hearing regarding the Government's motion to revoke, which remains pending as of the date of this letter."* This statement reflects the Government's admission that Weeks has been representing himself since February 5, 2025.

Despite that acknowledgment, the Government has failed to provide Weeks with direct access to discovery materials that were previously in the possession of his former attorneys. Moreover, it has not responded to any of the motions Weeks filed after invoking his right to self-representation, nor to the numerous letters submitted (Exhibit B) in support of or requesting clarification and relief on those filings. As the Government itself notes, *"Between February 11, 2025 and March 7, 2025, Weeks filed several motions seeking the relief set forth above."* What the Government omits, however, is that Weeks also submitted multiple supporting letters during this period, requesting clarification and enforcement of his rights. **These, too, were disregarded.** The consistent refusal to acknowledge or address these filings reflects a broader neglect of the obligations owed to a pro se defendant and the Court.

This pattern of disregard not only undermines Weeks' ability to defend himself but also violates his due process rights. The selective and inconsistent treatment of Weeks' pro se status further supports the broader claim that the Government has adopted a narrative and prosecutorial strategy that distorts both legal standards and factual context.

## H. Imbalanced Emphasis on Bail Issues and Omission of Material Facts

Four of the thirteen paragraphs in the Government's Factual and Procedural Background are dedicated exclusively to alleged violations of bail conditions. This disproportionate emphasis attempts to frame the narrative around Weeks' pretrial conduct while omitting critical facts essential to a fair and complete understanding of the case.

Most notably absent is any acknowledgment of Weeks' transfer through approximately 20 detention facilities before entering a plea agreement—a pattern of custodial disruption that raises serious questions about coercion and plea voluntariness. Equally absent is any reference to the Government's failure to inform legal counsel of critical developments, including plea negotiations, strategic decisions surrounding pretrial conditions, or discovery issues raised in contemporaneous correspondence. **These failures are well documented** in the memoranda and filings submitted by the defense and represent a material omission from the Government's account. These custodial transfers are detailed further in Sections M

and N, which outline how the Government's manipulation of detention placement and pre-proffer conditions coerced a plea and tainted subsequent statements.

Additionally, the Government fails to address its misrepresentations to the Grand Jury, including the omission of key exculpatory material and inaccurate portrayals of Weeks' role and involvement.

The selective inclusion of procedural history, limited almost entirely to pretrial release and bail condition violations, reflects a continued strategy to sideline the central constitutional issues raised in Weeks' filings. These omissions are not accidental; they reinforce a prosecution narrative built on distortion and exclusion. Section IX. The Government and Court Have Failed to Justify Continued Bail Restrictions: **Serious Constitutional and Factual Objections Remain Unanswered**

## I. Omission of Discovery Violations and Policy Constraints

The Government's factual narrative also omits two additional categories of material significance: discovery violations and the Department of Justice's own prosecutorial policy on digital assets. Nowhere in its background does the Government acknowledge its delayed production of key materials, including Suspicious Activity Reports (SARs), Memoranda of Interview (MOIs) from April and December 2019, or the December 2019 Crypto Seizure Memo—documents that speak directly to Brady and Giglio obligations and that were not disclosed until years after the plea agreement was signed. This policy oversight is fully addressed in Section X: *April 12, 2025 Letter to AUSA Torntore: Policy Grounds and Constitutional Failures Warrant Immediate Termination of Prosecution,* which outlines the DOJ's April 7, 2025 directive and the Government's failure to comply with its digital asset prosecution policy.

Equally absent is any mention of the Department of Justice's April 7, 2025 Digital Asset Enforcement Framework (Exhibit C), which mandates that prosecutions of digital asset offenses be limited to cases involving demonstrable harm or misuse. The Government's silence on its own policy constraints suggests a continued effort to litigate this case under outdated standards no longer endorsed by Main Justice.

These omissions further erode the reliability of the Government's account and reinforce the defense's position that the factual and procedural summary advanced is not only incomplete—it is legally and ethically insufficient.

## J. Consequences of Narrative Distortion

Recasting facts, omitting exculpatory context, and selectively emphasizing minor issues while ignoring constitutional violations has become typical of the Government's approach in this matter. **This includes its refusal to engage with more than 65 questions posed in post-hearing letters and motions**—none of which have been substantively addressed. The Government's failure to respond meaningfully to these filings from a pro se defendant—while simultaneously fabricating a procedural history that omits key facts and distorts the evidentiary record—is not merely negligent; **it is emblematic of a prosecution willing to ignore constitutional safeguards in favor of narrative control.** This conduct reflects not

8

an isolated oversight, but a consistent posture of evasion and strategic misrepresentation that has defined the Government's handling of this case.

Weeks' motion does not merely challenge the evidentiary sufficiency of the Government's case; it exposes a prosecutorial strategy built on omission, exaggeration, and distortion. **Correcting the record**—factually and procedurally—is essential to ensuring that further proceedings are rooted not in inference or delay, but in truth, fairness, and constitutional compliance.

## K. The Government Misrepresents the Legal Standard for Plea Withdrawal

The Government asserts that *"[b]ald assertions of innocence are insufficient to permit a defendant to withdraw his guilty plea,"* citing United States v. Jones, 336 F.3d 245, 252 (3d Cir. 2003). But this framing distorts both the facts and the law. Weeks has not simply claimed innocence. He has supported his motion with an extensive factual record: including the late disclosure of exculpatory materials, the failure to inform defense counsel of key developments, custodial coercion through repeated transfers, and demonstrable prosecutorial misconduct. These are not "*b]ald assertions.*" **They are documented constitutional violations.**

The Government further argues that because Weeks *"admitted to promoting and offering shares in BCN"* during his plea colloquy, withdrawal is precluded. This, too, misstates the standard. Under Rule 11(d)(2)(B), a plea may be withdrawn if it was not knowing or voluntary, or if it lacked a sufficient factual basis. Here, the Government failed to disclose materials essential to Weeks' decision-making, fabricated a factual narrative to induce the plea, and failed to correct misrepresentations before the Rule 11 hearing. **That renders the plea legally unsustainable**—not merely regrettable.

## L. The Government Misuses Formal Plea Language to Preclude Constitutional Review

The Government repeatedly cites the capitalized assertions in the plea application—e.g., *"I am GUILTY"*—as if these preprinted affirmations can foreclose constitutional inquiry. But this argument misstates the law. Rule 11(d)(2)(B) permits withdrawal of a guilty plea when it was not knowingly or voluntarily made or lacks a factual basis. That standard is not satisfied merely by the defendant signing boilerplate plea paperwork, especially where—as here—the record reflects systemic coercion, incomplete discovery, and misrepresentations by the prosecution.

The Government's argument goes further, suggesting that any attempt to challenge the plea could expose the defendant to perjury. This is not only legally unsupported; it chills the exercise of constitutionally protected rights. **Courts routinely permit plea withdrawal** where Brady material was withheld or where new evidence undermines the plea's factual basis—even when the defendant initially swore to guilt under oath.

9

Moreover, Weeks' filings do not simply assert innocence. They detail specific factual grounds for withdrawal, including the suppression of the October 8 Grand Jury Memo, undisclosed investigative materials, strategic custodial transfers near cooperating witnesses, and the use of falsified or post-dated SARs. This is more than sufficient to meet the threshold for withdrawal under controlling law.

## M. The Government Ignores the Defendant's Stated Grounds for Withdrawal and the Misconduct That Preceded the Plea

One of the most egregious examples of fraud on the court is the Government's effort to retroactively justify the plea using documents that were either not disclosed or not even created until after the plea was signed. This includes the October 8, 2020 Grand Jury Evaluation Memo and other key materials that should have been disclosed beforehand under Brady and Rule 16. The Government's use of these materials post hoc not only undermines the voluntariness of the plea, but also misleads the Court by constructing a post hoc factual narrative unsupported by contemporaneous evidence that did not exist at the time the plea was entered.

The Government claims that Weeks *"lied to this Court while under oath during his plea hearing and falsely admitted that 2+2=5,"* citing his reference to duress, including threats to his health and safety, denial of bail, and separation from family. However, this framing mischaracterizes and grossly understates the actual basis for Weeks' Motion. The Government has not meaningfully addressed any of the legal or factual arguments presented in Weeks' Motion and supporting letters, including Brady violations, custodial coercion, and the fabrication of evidence.

This statement not only overlooks the broader context of duress and undisclosed information that led to the plea, but also ignores the substantial allegations of **fraud on the court** committed by the prosecution. The Government's assertion that Weeks "*lied to this Court*" — without addressing the withheld evidence, strategic coercion, and procedural irregularities that shaped the plea agreement — is itself an act of misrepresentation. **Fraud on the court is, at its core, lying to the court** — whether through false statements, omissions, or the suppression of material facts. As documented in Weeks' submissions, this includes, but is not limited to:

- **The suppression of the October 8 Grand Jury Evaluation Memo**, a document central to discovery and plea evaluation that was withheld until long after the plea was signed;
- **The presentation of a misleading factual basis for the plea**, omitting key context and overstating Weeks' role;
- **Failure to inform defense counsel of critical developments**, including custodial transfers and witness proximity;
- **Strategic manipulation of detention conditions**, including the use of repeated transfers and unsupervised placement near cooperating witnesses, designed to coerce a plea.

Each of these failures ties directly into the discovery violations and structural prejudice addressed in Sections XI and XII. (see, e.g., Motion to Compel, Exhibits A–C; Letter to

Court, Feb. 13, 2025). See also Section R for the specific categories of suppressed discovery materials that further support these claims.

The Government concludes its April 22 letter by urging the Court to "deny each of Weeks' pending motions and schedule this matter for sentencing." However, this position ignores the very foundation of the Defendant's objections: the plea was entered under conditions of **incomplete discovery, withheld exculpatory material, and coercive custodial tactics**.

As shown in Weeks' Motion to Compel and reinforced by the Government's own admissions in Dkt. 399, the **February 18, 2025 letter** was filed **after** the Government received Weeks' formal discovery request on **February 13, 2025**, and yet made **no effort to address those violations** before pushing for sentencing.

This timing—opposing plea withdrawal while remaining silent on known Brady and Rule 16 obligations—**raises serious Rule 11(b)(3) concerns** and falls squarely within the Court's **supervisory authority** to correct. The Government's insistence on sentencing without first curing these constitutional failures **only compounds the structural prejudice** already at issue.

## N. The Government's Use of the August 12, 2020 Proffer Ignores Its Own Misconduct in Securing It

The Government emphasizes, *"Perhaps most enlightening, however, is that Weeks made admissions about his knowledge of BCN's fraudulent activities during a proffer session on August 12, 2020, shortly  after his arrest,"* and uses this as a cornerstone of its opposition. (Gov't Letter, Apr. 22, 2025, at 9.)

However, **no documentation of an August 12, 2020 proffer session has ever been disclosed to the defense**. The only known record is the **August 17, 2020 Memorandum of Interview** prepared by IRS-CI agents. If the Government did in fact conduct a session on August 12, its **omission from discovery constitutes a further Brady and Rule 16 violation**, as discussed in Section R.

If no such session occurred, then the Government's reliance on it is a **material misstatement to the Court**, calling into question the accuracy of its entire factual narrative. Defendant respectfully requests that the Government confirm whether any August 12, 2020 proffer session took place and, if so, **produce the full record thereof**.

The Government emphasizes that Weeks made admissions during an August 12, 2020 proffer session. What it omits, however, is how this session was tainted from the outset. Weeks had been moved through approximately 20 detention facilities prior to this session, and—most critically—**was placed in strategic proximity to BCN co-founders without court approval or defense counsel's knowledge.** This placement violated clear custodial separation norms and was used to facilitate unsupervised contact and information collection.

Furthermore, the proffer session was arranged and conducted while material discovery was still being withheld, and without ensuring that defense counsel had full awareness of Weeks'

placement or the facts to which he was being asked to respond. **To now use that proffer as dispositive evidence while ignoring the environment in which it was obtained is both legally and ethically indefensible.**

These omissions further demonstrate the Government's selective recitation of the record and its ongoing efforts to deflect from its own procedural misconduct. See also Section R, where these withheld materials are itemized in detail and shown to fall outside the protection of Rule 16(a)(2).

## O. The Government's Dismissive Framing of Defendant's Legal Arguments Is Unsupported and Improper

The Government's assertion that Weeks' motion is *"riddled with unintelligible and frivolous sovereign citizen-style rhetoric"* is not only inflammatory—it is false. **Weeks has consistently grounded his arguments in established constitutional doctrine**, including Rule 11(d), Brady, Giglio, and Department of Justice policy memoranda. This rhetoric serves to distract from the substance of the motion and avoid engagement with the factual and legal grounds presented. **Mislabeling serious legal claims as fringe ideology is itself a form of prosecutorial overreach and reflects the broader pattern of narrative distortion** addressed throughout this reply.

The Government asserts that *"nothing in Weeks' filings could be viewed as a legitimate basis for dismissal (e.g., an authentic argument regarding the constitutionality of the statutes under which Weeks has been charged)."* This language is not only inaccurate—it is offensive to the constitutional protections afforded to all criminal defendants.

Weeks has raised serious constitutional violations, including Brady violations, prosecutorial misconduct, improper custodial coercion, and suppression of exculpatory and impeachment material. He has also invoked statutory misapplication in the context of digital asset policy reforms and the DOJ's own internal charging criteria. To characterize these as "*inauthentic*" is to sidestep the Government's obligation to engage with the substance of the claims. **It is not for the prosecution to decide what is or is not "*authentic*" when the record clearly demands judicial review:**

- As the Supreme Court held in Class v. United States, 138 S. Ct. 798 (2018), a guilty plea does not bar later constitutional challenge where due process or structural error is raised.
- As the Supreme Court confirmed in *Class v. United States*, 138 S. Ct. 798 (2018), a defendant may raise constitutional challenges post-plea if the underlying process was flawed or rights were violated.

## P. The Government Misstates the Prejudice Standard and Ignores Its Own Strategic Delay

The Government argues that *"[b]ecause Defendant is 'unable to support claims of actual innocence or present adequate reasons for withdrawal of [his] guilty plea[], the government is not required to show prejudice.'"* This misstates both the law and the record. The

Government relies on a narrow reading of *United States v. Jones* and related cases while ignoring the broader standard set by Rule 11(d)(2)(B), which allows for plea withdrawal if the plea was not knowing or voluntary or lacked a factual basis—regardless of a formal showing of innocence.

Along with stating for the record his innocence with evidence 22 times in his Motion, Weeks has also provided detailed and well-supported grounds for withdrawal, including coercion via custodial manipulation, suppression of material discovery, misrepresentation of key plea facts, and strategic withholding of evidence. These raise serious constitutional concerns. To ignore those issues and lean on a procedural presumption of prejudice avoidance is to sidestep the Government's obligation to uphold due process.

Moreover, the Government's invocation of prejudice is undermined by its own conduct. It has engaged in delays, failed to address discovery obligations, ignored pro se filings, and strategically withheld information—behavior that prejudices both the defense and the integrity of the proceedings. If any party has been disadvantaged, it is Weeks, not the prosecution. **Prejudice caused by prosecutorial delay cannot be used to shield that same misconduct. The Government cannot now invoke trial prejudice from delays it created through its own failure to produce timely and complete discovery.**

## Q. The Government's Claim of Prejudice from Delay Ignores Its Own Recordkeeping and Disclosure Failures

The Government asserts that trial preparation would now be unduly burdensome, stating:
 *"The offense conduct in this case happened between six and ten years ago. Witnesses' memories have certainly faded and certain witnesses are no longer available. While preparation for every trial requires a significant amount of time and resources, preparing for a trial in this matter—which involved thousands of victims located around the world, among other complexities—would be particularly arduous."* (Gov't Letter, Apr. 22, 2025, at 11).

However, the Government's invocation of time-based prejudice ignores its own responsibility for the delays and evidentiary gaps it now cites — including late disclosures, custodial disruptions, and the failure to preserve or produce critical discovery when requested.

The Government had years to preserve evidence, maintain witness access, and disclose relevant materials. Instead, it suppressed key documents, delayed critical disclosures—including the Grand Jury Memo and digital asset seizure records—and refused to respond to multiple discovery demands and motions. If witnesses are now unavailable or evidence is incomplete, it is due not to the passage of time, but to prosecutorial neglect and strategic withholding.

It is inconsistent for the Government to claim prejudice while simultaneously benefiting from the delay it helped create. If anything, the prejudice runs in the other direction: Weeks has been denied full discovery, procedural fairness, and a timely opportunity to challenge the narrative that underpinned his plea.

## R. The Government Misstates the Scope of Rule 16 and Brady Obligations in Opposing the Motion to Compel

The Government asserts that "*Weeks has additionally moved to compel the Government to provide certain discovery to which he is not entitled under the Rules of Criminal Procedure.*" (Gov't Letter, Apr. 22, 2025, at 12.) But this claim **mischaracterizes the nature of the materials sought and misstates the scope of Rule 16(a)(2)**. Weeks does not request speculative work product or internal deliberations. Instead, his requests target **factual records**: DOJ communications related to **plea negotiations, charging decisions, custodial placements**, and other procedural matters central to his claims of **selective prosecution, coercion, and Brady violations**.

These categories are not shielded by Rule 16(a)(2). Courts have repeatedly held that **where factual documents support constitutional claims — particularly those involving prosecutorial misconduct, due process violations, or improper inducement of a plea — they are subject to disclosure**. Further, as a pro se litigant, Weeks is entitled to direct access to discovery previously shared with counsel, especially where such materials inform the **voluntariness and factual basis of his plea**.

The Government's blanket reliance on Rule 16(a)(2) — without identifying specific materials it deems protected or providing a privilege log — **precludes meaningful judicial review and fails to satisfy its Brady and due process obligations**. This pattern is further addressed in **Section XIV**, which outlines how the continued withholding of such records impairs Weeks' right to self-defense and undermines the integrity of the May 8 hearing.

The Government's blanket invocation of the work-product doctrine ignores the narrow exceptions for Brady material and the due process rights of a pro se litigant. It is not enough to recite the text of Rule 16; the Government must show that withholding these materials does not impair the defendant's right to a fair hearing on the Motion of withdrawal of the plea agreement. See also Section M, which outlines how these omissions contribute to an overall fraud on the court.

The Government also fails to specify which exact items fall within the Rule 16(a)(2) work-product exemption. General references to categories like 'DOJ communications' or 'charging rationale' are insufficient. If the Government wishes to assert privilege, it must do so with specificity and transparency. Without that, blanket denials cannot be meaningfully tested for compliance with Brady, Giglio, or due process standards.

To properly assess the voluntariness of Defendant's plea and the legality of the Government's conduct leading up to and following that plea, several outstanding discovery items remain necessary:

- **April 19, 2019 Meeting – Missing SAR and Related Records:** No SAR or contemporaneous memorandum has been produced despite the significance of this Ritz-Carlton meeting. Defendant requests any SAR, internal memoranda, emails, or field notes documenting this meeting and an explanation for the lack of Miranda warnings.

- **December 10, 2019 Interrogation – Missing SAR, MOI, and Video:** Defendant requests:
  - The full video recording of the interrogation;
  - The complete Memorandum of Interview (MOI);
  - Any SAR or FD-302 documenting the interaction;
  - Chain-of-custody records for any seized devices.
- **Other Critical Categories of Missing Discovery:**
  - Grand Jury expansion letters and communications related to tax charges;
  - All communications between prosecutors and former defense counsel;
  - Digital forensics reports related to wallet activity and deletions;
  - Full inventory logs and chain-of-custody documentation for all seized property.

These items are indispensable to assessing whether Weeks' plea was knowing and voluntary. They are factual records, not attorney work product, and the Government cannot lawfully shield them with a vague invocation of Rule 16(a)(2).

## S. The Government's Bail Argument

The Government states that "*Weeks has further requested that this Court eliminate the current conditions of Weeks' pretrial release. The Court should deny Weeks' motion.*" (Gov't Letter, Apr. 22, 2025, at 13.) But this conclusory dismissal **ignores the substantial constitutional and factual objections** raised by Defendant in his prior submissions, including the February 27 and March 27, 2025 letters and Motion to Modify Bail (Dkt. 411).

As addressed in **Section IX**, Weeks has presented **compelling evidence of disproportionate restrictions**, lack of individualized risk assessment, and ongoing hardship — none of which are acknowledged or rebutted in the Government's filing. Rather than engaging with the substance of Defendant's arguments, the Government **recycles generalized claims of noncompliance**, relying on outdated orders and **failing to address the intervening facts, DOJ policy shifts, or evidence of selective treatment compared to co-defendants**.

The continued reliance on Judge Hammer's earlier rulings — without acknowledging **the change in posture, the shift in DOJ policy on digital asset enforcement, and the lack of any new violations** — renders the Government's opposition **incomplete, unsupported, and constitutionally inadequate**.

## T. False Claim Regarding Florida Event (to conclude the foregoing list)

To conclude the foregoing list of misrepresentations and misconduct, the Government's April 2025 letter falsely alleges that "Weeks' attendance, without the knowledge of PTS, at an event in Florida titled '*The Past, Present, and Future of Cryptocurrency*'" constituted a violation of release conditions. This event did not occur. Mr. Weeks was never present — physically or virtually — at any such event in Florida, and no supporting evidence has been offered to justify the Government's claim.

This invented narrative exemplifies the Government's ongoing pattern of misstatements presented to the Court as fact. The inclusion of a fabricated event to justify increased

restrictions or justify the denial of relief is not a benign error — it is part of a sustained effort to distort the record and mislead the Court.

Accordingly, this latest falsehood reinforces the Defendant's position that the Government's conduct rises to the level of **fraud on the court**, and supports the need for both interim sanctions and long-term remedial action.

# III. The Government's Response Mischaracterizes the Scope and Legal Foundation of Defendant's Motion

The Government's response materially mischaracterizes the substance of Defendant Weeks' Motion by reducing it to four oversimplified categories, stating:

*"Weeks requests (1) recission of autograph on plea agreement; (2) dismissal of the charges contained in the Indictment and Information; (3) production of certain discovery materials; and (4) modification of pretrial conditions."* (Gov't Letter, Apr. 22, 2025, at 1.)

This reductive framing minimizes the legal gravity of the issues raised and obscures the broader constitutional and procedural violations at the core of this case. These include not only **Rule 11(d)(2)(B)** defects but also **sustained Brady and Giglio violations**, **selective enforcement**, **fraud on the court**, and the Government's **disregard of DOJ's April 7, 2025 enforcement guidance** on digital asset prosecutions.

The Government attempts to collapse a complex record into generic procedural categories. This fails to account for the substantive legal and constitutional basis of Defendant's filings, which include:

- **Rule 11(d)(2)(B):** A motion to withdraw the plea based on violations of constitutional rights, including a lack of factual basis, coercion, and misleading or withheld information from the Government.
- **Brady and Giglio Violations:** The Government has failed to produce critical exculpatory and impeachment materials, including MOIs, SARs, internal DOJ correspondence, the Crypto Seizure Memo, and information related to undisclosed plea deals with co-defendants.
- **Selective Prosecution and Disparate Treatment:** The motion provides detailed comparisons to similarly situated co-defendants who were afforded leniency, international travel, or minimal conditions while Weeks has remained under heavy pretrial restrictions.
- **Prosecutorial Misconduct and Due Process Violations:** These include the withholding of materials presented to the Grand Jury, misrepresentations to the

Court, potentially falsified or post-dated SARs, and an orchestrated pattern of coercion through excessive prison transfers.

- **Violation of Current DOJ Policy:** The April 7, 2025 directive from Main Justice makes clear that digital asset cases should be pursued only when involving identifiable harm or criminal misuse. The Government has not substantiated any such threshold in this case.
- **Judicial Remedies Beyond Discovery:** In addition to requesting discovery, Weeks seeks relief in the form of bail modification and potential dismissal of the indictment, either under Rule 48(b) or the Court's inherent supervisory powers due to cumulative misconduct.

The Government's oversimplification is not merely rhetorical—it strategically conceals patterns of misconduct that render the plea void and the continued prosecution constitutionally infirm.

These are not isolated issues. They reflect a systematic breakdown of constitutional protections and prosecutorial fairness. The Court should not accept the Government's characterization at face value. Instead, it must consider the full factual and legal record that supports Defendant's right to relief, including the withdrawal of plea and the imposition of judicial remedies where warranted.

# IV. The Government Misrepresents Defendant's BCN Role to Inflate Culpability

The Government's factual summary misleadingly conflates Defendant Weeks with the founding architects of the BitClub Network ("BCN"). Specifically, the Government states that the BCN scheme operated *"through the efforts of the co-conspirators, including Weeks,"* a formulation that **implicitly groups Weeks** with Matthew Goettsche, Russ Medlin, and Silviu Catalin Balaci — the individuals who **founded, funded, and structurally designed** BCN in 2014.

This implication is **factually inaccurate, legally misleading, and prejudicial**. Weeks **did not join BCN until after 2016**, over **two years after its founding**. He had **no role in its creation**, **corporate structuring**, **compensation model**, or **web development**. He held **no executive or managerial title**, and had **no participation** in the decision-making bodies that implemented or maintained the platform's alleged fraud mechanisms.

By erasing these distinctions, the Government improperly portrays Weeks as a founding actor when in fact he was a **later-joining member** — a difference with direct relevance to **culpability**, **sentencing exposure**, and **selective prosecution analysis**.

This misrepresentation is significant, particularly in a case where the Government seeks to attribute substantial investor losses, strategic intent, and alleged obstruction to Weeks personally. Grouping Weeks with the founders creates a false equivalence that may improperly influence sentencing, plea validity, and the assessment of prosecutorial conduct.

Weeks' motion explicitly challenges not only the evidentiary sufficiency of the Government's case but the selective and exaggerated narrative being advanced. Correcting the timeline and nature of Weeks' involvement is essential to ensuring any further proceedings are grounded in truth, not inference.

These mischaracterizations are not harmless; they misled prior counsel, distorted the plea record, and now serve as an unjust basis for ongoing liberty restrictions. A corrected factual record is essential for any fair determination on plea withdrawal and pretrial relief.

# V. Rescission/Withdrawal of the Plea agreement

In its April 22, 2025 letter, the Government asserts that "*bald assertions of innocence are insufficient*" to justify plea withdrawal and claims that Weeks "*pled under duress so that [he] could get bail… and not die of Covid*" (Dkt. 417 at 6–7). It argues that his guilty plea was knowing, intelligent, and voluntary, relying on the signed **Application to Plead Guilty**, the **plea colloquy transcript**, and a standard **waiver of rights form**. But this framing **reduces the motion to emotion** and **ignores the substantial legal defects** that rendered the plea involuntary and constitutionally invalid.

A plea's voluntariness must be evaluated in context — not just through ritualized courtroom procedures, but against the full **factual and constitutional landscape**. This includes:

- The **Government's suppression of Brady material**;

- The **failure to authenticate or disclose proffer-related evidence**;

- **Misrepresentations regarding defendant's role and exposure**;

- And the **coercive effect of prolonged, strategically manipulated detention**.

As established in *Brady v. United States*, 397 U.S. 742 (1970), and reaffirmed in *United States v. Ruiz*, 536 U.S. 622 (2002), **a guilty plea is not knowing or voluntary if entered under circumstances of government misconduct, misrepresentation, or material omission**. This legal deficiency is **fatal** to the plea's validity.

Moreover, in light of the **DOJ's April 7, 2025 digital asset enforcement directive**, which limits such prosecutions to cases involving identifiable harm or criminal use, the continued pursuit of this case **raises serious constitutional and policy concerns** that must be factored into the Court's analysis. The plea cannot be separated from the **prosecutorial strategy that shaped it**.

**Under Rule 11(d)(2)(B), a defendant may withdraw a guilty plea if it was not entered knowingly or voluntarily.** This standard is not satisfied by the existence of a signed plea form or the mechanical completion of a plea colloquy. The U.S. Supreme Court in *Brady v. United States*, 397 U.S. 742 (1970), and *United States v. Ruiz*, 536 U.S. 622 (2002), made clear that a plea must be evaluated in light of the totality of the circumstances—including whether material facts were withheld or the plea was entered under improper pressure.

Here, the record shows that Defendant's plea was tainted by structural violations and prosecutorial omissions that denied him the opportunity to make an informed decision. Taken together, these circumstances strip the plea of constitutional integrity and violate the standards set by Brady, Ruiz, and Rule 11(b)(3). Specifically:

- Defendant was **never arraigned under Rule 10** on the tax charge that was introduced during plea negotiations;

- The Government **withheld material proffer evidence**, including the August 17 and 25, 2020 interview memos, which were never authenticated, signed by DOJ, or attached to the SAR submitted to the Tax Division;

- The Government **escalated charges mid-negotiation**, without a superseding indictment or Motion to the grand jury, depriving Defendant of due process;

- Defendant was **denied timely access to discovery**, including Brady material, forensic reports, and custody documentation critical to the defense (see Dkt. 403);

- Defendant remained under **coercive pretrial detention** for over a year without sentencing, repeatedly denied bail, and subjected to documented hardship conditions that placed unlawful pressure on the decision to plead;

- And he was represented by **ineffective counsel who failed to challenge the late-added tax charge, failed to preserve discovery objections, and failed to ensure the plea was supported by a complete evidentiary record**.

These procedural and factual violations directly support Defendant's request under Rule 11(d)(2)(B) and warrant an evidentiary hearing to resolve outstanding material disputes before any sentencing proceeds.

The Government's response does not meaningfully address these defects. It cites *United States v. Stewart*, 977 F.3d 381 (3d Cir. 2020), but ignores that Stewart requires courts to consider whether the plea was the product of "misunderstanding, misinformation, or misrepresentation" — all of which are present here. Moreover, the Government omits entirely that the SAR submitted with the plea was a **streamlined version** lacking any verified attachments. The very proffer statements the Government now relies on to oppose withdrawal were not included in the record the Court used to assess voluntariness and factual basis under **Rule 11(b)(3)**.

While the Government emphasizes the plea colloquy and Defendant's signed waiver forms, this reliance is misplaced. **A plea colloquy cannot cure a fundamentally flawed process**. The Supreme Court has held that **suppressed evidence, withheld Brady material, or ineffective assistance of counsel can render a plea involuntary and invalid**, even if the plea was formally accepted. See *Brady v. United States*, 397 U.S. 742 (1970); *Hill v. Lockhart*, 474 U.S. 52 (1985); *United States v. Ruiz*, 536 U.S. 622 (2002). Where, as here, the Government withheld material proffer documents, failed to authenticate the evidentiary basis, and presented the plea under coercive conditions, **no Rule 11 proceeding can retroactively make that plea knowing or voluntary**.

Defendant's Motion is not based on post hoc regret. It is grounded in the procedural reality that at the time of the plea:

- He lacked access to core evidence;

- He had not been formally charged or arraigned on one of the key allegations;

- He was under pressure resulting from unconstitutional pretrial conditions;

- And he was represented by **ineffective counsel who failed to challenge the Government's procedural shortcuts or protect Defendant's access to material discovery**.

### Requested Relief:

Defendant respectfully requests that the Court to grant his motion to **withdraw the plea agreement pursuant to Rule 11(d)(2)(B)**.

# VI. The Government Misapplies Rule 16 and Brady to Avoid Producing Critical Evidence

The Government argues that "*the majority of what Defendant seeks is internal Government material protected by Rule 16(a)(2)*" (Dkt. 417 at 9) and that it is under no obligation to produce internal notes, strategy documents, or charging communications. This argument fails to distinguish between **deliberative internal materials**, which may be protected, and **factual, exculpatory, or material records**, which are plainly discoverable under **Rule 16(a)(1)** and **Brady v. Maryland**, 373 U.S. 83 (1963).

Defendant's discovery requests are not aimed at protected opinion work product. They are focused on **factual records**, many of which the Government has either produced in part or relied upon elsewhere (e.g., in the Grand Jury Evaluation Memo, proffer summaries, plea exhibits). These include:

1. The August 17 and August 25, 2020 proffer interview summaries and any signed memoranda by DOJ officials (see Dkt. 403; March 31, 2025 letter see Exhibit B);

2. Forensic reports related to cryptocurrency analysis, wallet activity, and the supposed tax loss calculation cited in the plea;

3. The complete video and memoranda of the December 10, 2019 interrogation;

4. Custodial chain-of-custody records, device inventories, and SARs for April 19 and December 10, 2019;

5. Communications with former counsel regarding discovery, cooperation, and plea formation.

Courts have recognized that Brady applies pre-plea where suppressed evidence would be material to the defendant's decision. See *United States v. Nelson*, 979 F.3d 901 (2d Cir. 2020).

The Government's categorical refusal to produce these items — many of which were referenced in the **Grand Jury Evaluation Memo**, cited in the **IRS streamlined SAR**, or used to justify the plea's factual basis — undermines the legitimacy of both the plea and the post-plea proceedings.

Moreover, **Rule 16(a)(1)(E)** requires disclosure of any document "material to preparing the defense." This includes evidence relevant to:

- Whether the plea was voluntary,

- Whether Defendant was misled or misinformed,

- Whether the loss amount or factual basis was accurate, and

- Whether certain communications were fabricated or falsely attributed to Defendant.

The Government's reliance on Rule 16(a)(2) ignores that the **work product exception does not cover factual materials or communications with third parties**, especially where those materials are being used to support contested claims or sentencing enhancements.

Additionally, Defendant's repeated Brady-based requests for:

- A verified victim list,

- Internal evaluations of harm and restitution,

- and evidence that undermines the credibility or voluntariness of the plea,

have been left unanswered. The Government cites *United States v. Armstrong*, 517 U.S. 456 (1996), in passing, but Armstrong only bars discovery of selective prosecution claims without threshold showing. It does not allow the Government to withhold factual evidence tied to voluntariness, custody conditions, or prosecutorial misrepresentation.

Defendant has met his burden under **Brady**, **Rule 16**, and **Rule 11(b)(3)** to demonstrate that these materials are material to both his defense and the integrity of the plea. Their continued withholding — despite letters dated February 13, 21, 26, and 27; March 9, 12, 19, and 31; and motions filed under Dkt. 403 and 411 — is **both a constitutional violation and a structural defect** that demands remedy.

The Government's refusal to produce these non-privileged factual records undermines the plea's factual foundation under Rule 11(b)(3) and should result in exclusion of undisclosed materials at the May 8 hearing, or withdrawal of the plea.

While Rule 11(d)(2)(B) provides the procedural basis for plea withdrawal, the scope and nature of the Government's misconduct in this case warrant a more foundational remedy: **rescission** of the plea agreement. This is not a matter of post-plea regret, but of a plea entered under conditions that **void the agreement ab initio**. The Government's suppression of material evidence, misrepresentation of facts, escalation of charges without indictment, and coercive use of pretrial detention cumulatively render the plea **constitutionally invalid from the outset**.

In contract terms, rescission is appropriate when a party's consent was obtained by fraud, duress, or material nondisclosure — precisely the circumstances present here. This plea cannot be enforced because it was never knowingly and voluntarily made. As such, the Court should not merely allow withdrawal, but declare the plea agreement **null and void**, and restore the parties to their pre-plea positions.

The Defendant respectfully requests that the Court treat the plea as **void ab initio**, and grant all necessary relief, including full access to discovery, an evidentiary hearing, and the opportunity to proceed to trial or resolution without the taint of an unlawfully obtained plea.

### Requested Relief:

Defendant respectfully requests that the Court:

- Compel the Government to produce the specific categories of discovery detailed in Exhibits A;

- Order the Government to confirm which items remain withheld or unavailable, and on what basis;

- And bar the Government from relying on any document or factual assertion that has not been timely disclosed in compliance with Rule 16 and Brady.

# VII. The Government's Reliance on the Hoxie Statement Is Unsupported, Misleading, and Constitutionally Deficient

The Government's opposition centers on an unverified claim attributed to AUSA Jamie Hoxie—yet there is no authenticated record confirming this instruction was ever given, and repeated discovery requests have gone unanswered.

Crucially, neither memo was authored, signed, or certified by AUSA Hoxie or any DOJ official. Despite three separate and formal discovery demands for records confirming whether AUSA Hoxie issued this instruction — February 13, 2025, February 26, 2025 (Dkt. 403), and March 31, 2025 (Exhibit B) — the Government has not produced a single communication, declaration, email, or memorandum confirming that this advisement was ever given.

**Timeline of Discovery Requests Specifically Related to the Hoxie Instruction:**

- **February 13, 2025 (Clarification Letter):** Defendant formally requested any records confirming whether AUSA Hoxie or any other government official issued instructions regarding interactions with Goettsche and Abel. No response was received.

- **February 26, 2025 (Motion to Compel Discovery, Dkt. 403):** Defendant formally requested:
  "Any instructions given by AUSA Hoxie or any other government official regarding Defendant's interactions with co-defendants."
- **March 31, 2025 (Letter to AUSA Torntore):** Defendant again requested:
  "Records, reports, memoranda, or emails addressing the instructions allegedly issued by AUSA Hoxie, including the basis and timing of those instructions."

None of these requests were answered. The Government's failure to produce the requested documentation — even in the face of specific demands — supports the inference that no such instruction exists. This silence has serious implications for the validity of the proffer record, the integrity of the plea agreement, and the Government's narrative surrounding Defendant's cooperation and intent.

The timeline is telling: Weeks was housed with Goettsche and Abel in January 2020, following his arrest. The instruction attributed to Hoxie appears only in an IRS memo written in August 2020, more than seven months later, with no corroboration in contemporaneous DOJ records and no mention in the August 25 follow-up memo. There is no evidence that any warning was provided to Defendant or to his counsel at the time he was placed in contact with co-defendants. The Government's failure to document such an instruction — and its later reliance on that undocumented claim to deny cooperation or color Defendant's statements — constitutes a Brady violation, a Rule 16 violation, and an abuse of prosecutorial discretion.

In light of this defect, the Court should:

- **Suppress all statements derived from the August 17 and 25 proffer sessions** as unreliable and improperly documented;
- **Disregard any Government arguments that rely on the alleged Hoxie instruction** to discredit Defendant's cooperation or intent;
- **Compel immediate production of all records** relating to the alleged Hoxie instruction, including any DOJ communications, emails, and notes.

# VIII. The Government's Claimed Victim Impact Is Unsupported by the Record

The Government's reference to '*thousands of victims*' is both factually unsupported and procedurally misleading. **Despite repeated requests, it has failed to produce any verified evidence of actual victim harm attributed to Weeks.**

In its April 22, 2025 response, the Government asserts that preparing for trial would be burdensome because the alleged conduct occurred "*between six and ten years ago,*" and that "*thousands of victims located around the world*" would make preparation "*particularly arduous*" (Dkt. 417 at 10). However, this claim is both **factually unsupported** and **contradicted by the procedural record** of this case.

## 1. No Verified Victim List Has Been Produced

Despite multiple formal requests—made in Defendant's letters dated February 13, 26, and March 31, 2025, and referenced in the Motion to Compel (Dkt. 403)—the Government has failed to produce a single verified victim statement, report, or restitution request tied to Defendant specifically.

Notably:

- **No victim affidavits** were submitted in support of the Information or plea.

- **No restitution worksheet or victim impact memorandum** has been disclosed under Rule 32.

- **No Brady disclosures** have been made related to alleged victim identities, statements, or losses.

If "*thousands of victims*" exist, the Government has had over **five years** to document and disclose their identities. Instead, it has relied on generalized language, repeated across several filings, without evidentiary support.

## 2. Victim-Related Evidence Was Not Presented to the Grand Jury or Tax Division

The October 8, 2020 Grand Jury Evaluation Memo and the August 2020 IRS proffer memoranda contain **no victim-specific information**, restitution analysis, or evidence of individualized harm caused by Defendant. In fact, the memo includes only a vague reference to "*downline payouts*" and speculative associations with crypto transfers—not verified losses or complaints.

This omission further undermines the Government's opposition, particularly in light of its refusal to:

- Confirm whether any alleged victims were contacted or offered restitution;

- Provide victim complaint files submitted via the DOJ's BitClub Network website;

- Or explain why these materials were withheld in the lead-up to the plea and sentencing process.

## 3. The Government Ignored Defendant's April 12, 2025 Letter Requesting Victim Disclosure

On April 12, 2025, Defendant submitted a formal letter (**Exhibit C**) requesting that the Government confirm whether any victim-based restitution claims existed at the time of the plea and, if so, produce a verified list of individuals who submitted complaints to the FBI or DOJ. That letter specifically cited the DOJ's public victim intake process related to BitClub Network, requested confirmation by April 22, 2025, and included a formal demand that the Government either identify verified victims or return the 8.67 Bitcoin seized from Defendant

24

— as no victim-based claim or restitution obligation had been shown. The Government did not respond. As of this filing, the Government has failed to respond. This silence reinforces the inference that **no such victim disclosures or claims exist**, and that the Government's references to widespread victimization are **unsubstantiated**.

### 4. The Government's Trial Burden Argument Does Not Supersede Defendant's Constitutional Rights

The Government attempts to argue that preparing for trial now would be difficult due to the age of the case and the number of witnesses. But **this argument cannot override Defendant's constitutional right to withdraw a plea that was unlawfully or involuntarily entered**.

As the Supreme Court made clear in *Brady v. United States*, 397 U.S. 742 (1970), and reaffirmed in *United States v. Hyde*, 520 U.S. 670 (1997), courts must weigh the voluntariness and factual foundation of a plea **before procedural efficiency or convenience to the prosecution**.

If trial preparation is difficult now, that is a consequence of the Government's **charging decisions and delays**, not Defendant's request for relief.

## Requested Relief:

Given the absence of verified victim evidence, Defendant respectfully requests the Court to treat generalized claims of harm as inadmissible and unsupported.

Accordingly, Defendant further requests that the Court:

- Require the Government to confirm whether any verified victim statements, reports, or restitution materials exist and were ever disclosed;

- Exclude all generalized claims of victim harm from further opposition arguments absent proper documentation;

- Acknowledge the Government's failure to respond to Defendant's April 12, 2025 letter and treat this omission as a concession that no verified victim evidence was presented at the time of plea;

- And treat the absence of verified victim evidence as material to Defendant's claim that the plea was unsupported by a factual basis under Rule 11(b)(3).

# IX. The Government and Court Have Failed to Justify Continued Bail Restrictions: Serious Constitutional and Factual Objections Remain Unanswered

In its April 22, 2025 opposition, the Government claims that Defendant's bail conditions remain appropriate based on allegations of post-release conduct, including smartphone use, encrypted messaging, and cryptocurrency activity. However, these claims are unsupported by the record, untested in court, and fail to respond to Defendant's well-documented constitutional objections and motion practice.

Defendant has consistently raised **serious constitutional and factual objections** to the continuation of restrictive bail conditions that have now persisted for over five years. These objections are based on both legal principles and specific harms — including documented disparities with similarly situated defendants, due process violations, and physical and family hardship.

A letter submitted on **February 27, 2025**, Defendant formally requested disclosure of all records justifying his bail status, including:

- Internal DOJ, FBI, and BOP communications regarding Defendant's risk assessment and classification;

- Pretrial Services' rationale for denying alternative release options;

- Comparisons with BCN co-defendants such as **Silviu Balaci**, who was approved for international travel (Dkt. 302), and **Russ Medlin**, whose identity remained sealed for months (Dkt. 99);

- Legal justification for maintaining heightened restrictions in light of Government-initiated trial delays (Dkt. 118) and COVID-related postponements (Dkt. 95).

These issues were reinforced in follow-up correspondence dated **March 12** and **March 19, 2025** (**Exhibits B**), which emphasized:

- The lack of equal treatment in bail decisions;

- The coercive nature of Defendant's repeated prison transfers and proximity to witnesses;

- The adverse impact of continued restrictions on Defendant's **ability to proceed pro se** and prepare his defense;

- And the absence of any record showing that the Government or Pretrial Services conducted a comparative risk assessment.

On **April 12, 2025**, Defendant reiterated these concerns in a final memorandum (**Exhibit C**) requesting removal of the ankle bracelet, relief from geographic restrictions, and return of seized assets to support basic living and legal needs.

These concerns are not speculative; they are grounded in specific and **well-established constitutional principles**:

- **Fifth Amendment due process**, which prohibits continued deprivation of liberty without justification;

- **Sixth Amendment rights**, which guarantee meaningful access to counsel and preparation of one's own defense;

- **Equal protection principles**, under *United States v. Armstrong* and *United States v. Bass*, which forbid selective enforcement and arbitrary application of pretrial conditions.

Additionally, they were supported by **detailed factual evidence**, including:

- Documented health harms caused by the ankle monitor;

- Medical needs of Defendant's pregnant wife;

- Longstanding compliance with all court orders;

- The absence of any flight or danger concerns;

- And the contrast between Defendant's restrictions and those of other defendants with more direct roles in BCN.

On **March 27, 2025**, Defendant also filed a formal motion with the Court (**Dkt. 411**) requesting temporary bail modification to relocate with his family and remove the ankle bracelet. That motion included a sworn letter from Defendant's wife detailing the health risks, family hardship, and irreparable damage caused by the restrictions — and specifically invoked **Judge Hammer's February 5th invitation** for Defendant to submit his requests in writing. The **"Ex Parte"** requests was filed on Feb 11th, **(Dkt 396)** Judicial inaction on a fully briefed and uncontested motion is inconsistent with the due process obligations owed to any pretrial detainee—particularly a pro se litigant. Despite being properly docketed and unopposed by the Government, **the Court has not responded.**

## Court Inaction Further Reinforces the Absence of Any Lawful Justification

The Court's failure to respond to **Dkt. 411**, despite a complete record and time-sensitive personal and constitutional concerns, is not a neutral omission. It **further reinforces the conclusion that no lawful, factual, or policy-based justification exists** for the continued restrictions. Courts have a duty to promptly evaluate constitutional challenges to pretrial conditions, especially when raised by a self-represented defendant in an ongoing prosecution. When both the Government and the Court remain silent in the face of repeated, specific, and well-supported objections, that silence becomes **affirmative evidence that no valid basis exists** to continue depriving Defendant of his liberty under such conditions.

**Relief Requested**

Defendant respectfully requests that the Court:

- **Immediately terminate all pretrial supervision and monitoring requirements**, including removal of the ankle bracelet and travel restrictions;

- Find that the Government's failure to respond to the letters submitted as **Exhibit B**, and the Court's inaction on **Dkt. 411**, confirm that there is no continuing legal basis for these restrictions;

- And in the alternative, **schedule a hearing on bail conditions prior to or in conjunction with the May 8, 2025 hearing**, to address the constitutional and practical harm posed by ongoing restrictions.

This relief is necessary to ensure fairness, protect Defendant's constitutional rights, and restore confidence in these proceedings.

# X. April 12, 2025 Letter to AUSA Torntore: Policy Grounds and Constitutional Failures Warrant Immediate Termination of Prosecution

Defendant incorporates by reference his **April 12, 2025 letter** to **AUSA Anthony Torntore**, which is attached as **Exhibit C**. That letter requests **immediate termination of prosecution** based on (1) the **Department of Justice's April 7, 2025 enforcement directive**, and (2) the **cumulative constitutional violations, prosecutorial misconduct, and due process failures** already documented in this matter.

The **April 7 DOJ memorandum** (**Exhibit C**) explicitly limits federal prosecution of digital asset activity to cases that involve either (a) demonstrable financial harm to victims, or (b) the use of digital assets to facilitate other criminal conduct. Defendant's case falls into neither category. No verified victim reports have been submitted in connection with Defendant, and no evidence has been produced showing that cryptocurrency was used to further trafficking, terrorism, or other criminal activity. These facts were presented in full in the April 12 letter and are now part of the record.

The letter also raised critical factual and legal discrepancies, including:

- The absence of a verified victim list, despite five years of Government solicitation for such claims;

- The DOJ's failure to disclose exculpatory victim information before or during plea negotiations;

- The selective nature of the tax charges brought against Defendant — charges not pursued against other, more central BitClub Network figures;

- The introduction of new tax charges during plea negotiations, rather than through a superseding indictment or grand jury process;

- And the continued failure to return **8.67 Bitcoin** that was acknowledged as seized, with no forensic audit or reconciliation to date.

The Government's silence in the face of these issues — particularly after being explicitly asked to respond by **April 22, 2025** — is telling. It confirms that the DOJ cannot identify victims, substantiate willfulness, or justify this case under its own revised enforcement policy. This inaction compounds the underlying due process and discovery violations already pending before the Court.

### Requested Relief:

Defendant respectfully requests that the Court:

- Take judicial notice of the **April 12, 2025 letter** and the **DOJ's April 7, 2025 policy**;

- Consider the Government's failure to rebut the April 12 letter as **tacit confirmation that it cannot identify victims, prove willful intent, or justify continued prosecution** under DOJ policy;

- Grant Defendant's motion to withdraw the plea; and

- Consider whether dismissal of the indictment, suppression of tainted evidence, or other appropriate sanctions are warranted — not only based on the Government's failure to respond to the April 12 letter, but also in light of the **totality of violations across this case**, including:

  - The unverified and improperly used proffer interview summaries;

  - The absence of a traditional SAR with evidentiary attachments;

  - The fabricated or undocumented Hoxie instruction;

  - The undisclosed victim records;

  - And the consistent pattern of selective enforcement, plea coercion, major constitutional and due process violations and withheld discovery.

# XI. Discovery Issues Raised and Unanswered

As detailed in Defendant's prior filings — including the **Motion to Compel Discovery (Dkt. 403)**, the **Supplemental Motion to Compel (Dkt. 401)**, and multiple letters dated **September 5, 2024; February 13, 21, 26, and 27, 2025; and March 9, 12, 19, 31, and April 12, 2025** — the Government was placed on clear and repeated notice of its discovery obligations under **Federal Rule of Criminal Procedure 16** and **Brady v. Maryland**, 373 U.S. 83 (1963). Despite this, a substantial number of discovery questions remain unanswered, and the Government's April 22, 2025 opposition fails to meaningfully engage with these requests.

## 1. Unanswered Discovery by Letter: A Pattern of Nonresponse

The following chart summarizes, by date, the number of formal discovery questions raised by Defendant and the number answered by the Government. These inquiries were specific, material, and tied directly to motions already filed and issues central to the upcoming May 8, 2025 hearing.

| Letter Date | Questions Raised | Questions Answered |
|---|---|---|
| September 5, 2024 | 23 | 3 |
| March 9, 2025 | 3 | 0 |
| March 12, 2025 | 16+ | 0 |
| March 19, 2025 | 6 | 0 |
| March 31, 2025 | 7 | 0 |
| April 12, 2025 | ~10 | 0 |

**Total Discovery Questions Raised:** 65+
**Total Questions Answered:** 3

The **March 12, 2025 letter**, in particular, grouped discovery requests into categories directly tied to Defendant's pending motions — yet received no response. Similarly, the **April 12, 2025 letter** included a formal deadline for response (April 22), which was ignored. At no point did the Government object, narrow the scope, or offer any form of clarification.

## 2. The Government Has Not Distinguished Between Work Product and Factual Discovery

Rather than substantively addressing the discovery requests, the Government relies on **Rule 16(a)(2)** to suggest that the majority of requested materials are protected internal documents. But **Defendant has not requested strategic memoranda or internal deliberations**. The letters and motions request:

- Factual materials such as proffer recordings, tax loss documents, audit workpapers, forensic reports, inventory records, and interview summaries;

- Communications with former defense counsel regarding withheld evidence and cooperation status;

- BOP, USMS, and DOJ communications on co-defendant placement and post-arrest transfers.

Under **Rule 16(a)(1)(E)**, and as required by **Brady**, these items must be disclosed if they are material to the defense — especially where they impact plea voluntariness, factual basis, or sentencing exposure.

### 3. Material Prejudice and Constitutional Impact

The Government's continued failure to answer or clarify these discovery questions — despite multiple opportunities — has materially impaired Defendant's ability to:

- Understand what evidence was withheld or misrepresented during plea negotiations;
- Assess whether cooperation was falsely discredited;
- Prepare for the May 8 hearing in a meaningful and constitutionally protected way;
- And assert his rights pro se under **Faretta v. California**, 422 U.S. 806 (1975).

As of the filing of this reply, the Government has not produced:

- A privilege log,
- A single written objection,
- Or any declaration certifying that discovery is complete.

### Requested Relief:

Defendant respectfully requests that the Court:

- Direct the Government to respond, line by line, to the discovery categories outlined in Exhibits A and B;
- Compel the immediate production of all factual materials raised in the March 5 Supplemental Motion (Dkt. 401) and related letters;
- Require the Government to confirm what remains withheld or unavailable, and on what basis;
- And preclude the Government from relying on any undisclosed material during or after the May 8 hearing.

# XII. Categories of Withheld or Incomplete Discovery and Expected Hearing Outcomes

The outstanding discovery violations outlined above are not isolated oversights — they represent a **systematic failure to meet constitutional, statutory, and procedural disclosure obligations** that have directly impacted Defendant's ability to evaluate the plea, prepare for the hearing, and assert his defense pro se.

To ensure a productive and fair hearing on May 8, Defendant has compiled a detailed **Overview of Discovery and Procedural Violations (Exhibit A)**. These materials document the scope and nature of the Government's noncompliance, and track the relevant legal authority under **Brady**, **Rule 16**, **Rule 11(b)(3)**, and constitutional due process principles.

The withheld or incomplete categories fall into the following areas:

- **Brady Violations**: Failure to disclose exculpatory materials, including non-seized assets, rejected restitution claims, and withheld records concerning alleged victim reports;

- **Rule 16 Violations**: Failure to disclose forensic records, wallet tracing, chain-of-custody logs, device-level activity, and proffer session recordings or transcripts;

- **Fraud on the Court**: Use of post-dated SARs and unauthenticated proffer summaries to establish plea basis and willfulness, without confirming Tax Division review;

- **Selective Prosecution Evidence**: Omission of charging memoranda or declinations involving central BitClub Network figures, including Medlin, Fairclough, and Hidalgo;

- **Due Process Violations**: Coercive plea environment created by custodial threats, delayed arraignment on tax charges, and fabricated Government narratives regarding cooperation;

- **Denial of Effective Assistance of Counsel**: Prior counsel's failure to demand Brady material, challenge plea fact-finding, or secure discovery preserved under Rule 16(d)(2).

Each of these categories is supported by citations in Exhibits A and B..

# XIII. The Government's Repeated Failure to Respond Must Be Treated as a Concession or Waiver

Throughout this litigation, Defendant has submitted detailed motions and formal discovery letters requesting clarification, production, or confirmation from the Government on a wide range of legal, factual, and constitutional issues. These include (but are not limited to):

- Bail justification;

- Discovery compliance under Rule 16 and Brady;

- Clarification on plea-related evidence and post-dated materials;

- Victim disclosures, proffer authentication, and selective enforcement.

Despite these submissions — many of which included specific deadlines and were formally docketed or emailed to the prosecution — the Government has repeatedly failed to respond. It has not filed written objections, sought extensions, or provided privilege logs. Nor has it offered any explanation for withholding or delay.

This pattern of silence has become especially acute since **February 5, 2025**, when Defendant began representing himself pro se. At that point, the Government's duty to provide access to all discovery materials previously given to counsel became both procedural and constitutional under *Faretta v. California*, 422 U.S. 806 (1975). Yet despite that, and despite multiple follow-up letters and motions (including Dkts. 401, 403, and 411), the Government has failed to respond, object, or seek judicial clarification.

## This silence has two legal consequences:

### 1. It Constitutes a Concession of the Issues Raised

Under well-established legal principles, when a party fails to oppose or answer a material claim or discovery request — particularly after being placed on formal notice — courts may treat that silence as a **tacit admission or waiver of objection**. This is especially true when:

- The issue is central to constitutional fairness (e.g., plea validity, bail status);

- The Government bears the burden (e.g., to justify detention or prove compliance);

- The Defendant is pro se and has acted diligently.

### 2. It Prejudices Defendant's Right to Prepare and Litigate

Every unanswered request — from the missing proffer documentation, to the motion to lift bail restrictions, to the repeated calls for authenticated plea materials and victim disclosure — limits Defendant's ability to:

- Prepare his defense;

- Challenge the plea;

- Seek release or dismissal based on unequal treatment;

- And fully brief the Court ahead of the May 8, 2025 hearing.

The Government's silence must therefore be treated not as harmless delay, but as a **prejudicial failure to engage with critical, constitutionally grounded objections**. This undermines the integrity of the plea, the hearing process, and the prosecution's evidentiary standing.

**Requested Relief:**

Defendant respectfully requests that the Court:

- **Treat the Government's continued silence as a waiver of objection** and a **concession of the key factual disputes raised**;

- **Preclude the Government from introducing any materials not produced before the May 8 hearing**;

- **Order immediate clarification from the Government** on the status of all withheld or undisclosed materials identified in Exhibit A;

- And **impose appropriate remedies** including suppression of tainted evidence, discovery sanctions, and plea withdrawal under **Rule 11(d)(2)(B)**.

# XIV. Government's Withholding of Discovery Violates Pro Se Rights and Due Process

Despite that obligation, the Government has continued to **withhold key evidence** already in its possession. This includes not only materials previously disclosed to former defense counsel but also additional case-critical documents central to Defendant's pending motions. On **March 5, 2025**, Defendant submitted a **Supplemental Motion to Compel Discovery (Dkt. 401)**, formally requesting:

- Access to all discovery and case files previously provided to Carlton Fields, Stone Magnanini, and Boies Schiller;

- Communications between the Government and former counsel relating to withheld evidence or strategic decisions;

- Delivery of all such materials in usable digital format to enable Defendant to prepare for the May 8 hearing.

As of the filing of this reply, the Government has neither complied with that request nor provided any justification for its continued obstruction. **This is not merely a Rule 16 violation — it is a constitutional breach** of Defendant's rights under:

- **Brady v. Maryland**, 373 U.S. 83 (1963) – by withholding evidence material to the defense;

- **Faretta v. California**, 422 U.S. 806 (1975) – by interfering with the right to represent oneself meaningfully;

- **The Fifth and Sixth Amendments** – by denying due process and the effective ability to prepare for trial or evidentiary hearing.

The Government's refusal to provide access to its own previously shared materials—particularly after it became aware of Defendant's pro se status—cannot be

34

excused as administrative delay or oversight. It is a **tactical and unconstitutional impairment of Defendant's right to prepare his defense**.

This failure supports both:

- Defendant's pending **Motion to Compel**, and
- His broader claim that the **plea process was structurally tainted by the denial of evidence, misrepresentation of facts and many due process violations**.

### Requested Relief:

Defendant respectfully requests that the Court:

- **Order immediate production** of all discovery previously provided to former counsel;
- **Require certification from the Government** that no categories of evidence remain withheld;
- And **treat the Government's continued failure to provide these materials as a due process violation** relevant to both the plea withdrawal motion and any future sanctions.

# XV. Conclusion

For the reasons detailed in Sections I through VIII of this Reply, the Government's April 22, 2025 response fails to address — and in many cases, affirmatively avoids — the core legal and constitutional violations raised by Defendant's motions and discovery correspondence.

The Government has not:

- Verified the authenticity or evidentiary use of proffer interview summaries;
- Addressed the Hoxie instruction or its post hoc introduction into the plea narrative;
- Provided a victim list, restitution claim, or evidence of financial harm to support its opposition;
- Responded to the March 27 bail modification motion (Dkt. 411) or to multiple pro se discovery letters;
- Or complied with its Brady, Rule 16, or Rule 11 obligations — either before or after Defendant's pro se election on February 5, 2025.

The cumulative impact of these failures is structural. They undermine the factual basis for the plea, obstruct Defendant's ability to prepare for the May 8 hearing, and reflect a pattern of prosecutorial conduct that warrants judicial correction. Silence is not a defense; it is prejudice.

## Requested Relief

Defendant respectfully asks the Court to:

- **Grant Defendant's Motion to Withdraw Plea** under Rule 11(d)(2)(B) based on due process violations, incomplete discovery, and a materially defective factual basis;

- **Compel the Government to immediately produce all discovery materials** requested in Dkts. 401 and 403, and those identified in the letters (Exhibit B);

- **Preclude the Government from relying on any undisclosed or unauthenticated material** at or following the May 8 hearing;

- **Terminate all pretrial supervision and bail restrictions**, including the ankle bracelet, based on the Government's waiver of opposition to Dkt. 411 and ongoing failure to justify continued restraint;

- **Order the immediate return of all seized assets**, including 8.67 BTC, in the absence of any lawful forfeiture basis or substantiated victim claims;

- **Consider dismissal of the indictment** pursuant to Rule 48(b) or the Court's supervisory authority, in light of the cumulative pattern of prosecutorial misconduct and constitutional violations; and

- **Enter any further relief or sanctions the Court deems necessary** to restore fairness and ensure the integrity of these proceedings.


### Referral for Disciplinary Review

In light of the cumulative misconduct, discovery violations, and misrepresentations documented throughout these proceedings, Defendant respectfully requests that the Court consider referring the Government's conduct to the **Department of Justice Office of Professional Responsibility (OPR)** and/or the relevant **state bar disciplinary authorities**. Such a referral is warranted to ensure appropriate review of potential ethical violations, including:

- The suppression of exculpatory materials in violation of *Brady v. Maryland* and *Giglio v. United States*;

- Repeated failure to comply with *Rule 16* and constitutional disclosure obligations;

- Misleading statements made to the Court in opposition to Defendant's motions;

- Disregard of DOJ's April 7, 2025 digital asset enforcement directive.

This step is necessary to protect the integrity of the judicial process and to deter future prosecutorial misconduct.

# XVI. Proposed Hearing Framework and Judicial Relief

## Expected Hearing Outcomes

To ensure a focused and efficient evidentiary hearing on **May 8, 2025**, Defendant proposes that the Court require the Government to:

- **Identify** on the record which categories of discovery it intends to produce post-hearing, including **specific delivery timelines**;
- **Disclose** which materials are **unavailable or intentionally withheld**, and the **legal or policy basis** for doing so;
- **Clarify** whether it intends to rely on any **undisclosed evidence**, and if so, **produce it in advance** or be barred from doing so;
- **Address** whether the **proffer summaries** cited were **formally adopted** by the Department of Justice or reviewed by the **Tax Division**;
- **Confirm** whether any **victim statements, affidavits, restitution claims, or tax loss declarations** were submitted to the Court or former defense counsel during plea review.

These steps will clarify contested facts, reduce ambiguity, and safeguard the integrity of the hearing.

Additional **itemized discovery issues**—including missing SARs, interrogation footage, grand jury materials, and forensic reports—are detailed in **Exhibit A** and incorporated by reference.

## Requested Relief:

Defendant respectfully asks that the Court:

- **Adopt the above categories** as a framework for evaluating discovery compliance during the May 8 hearing;
- **Direct the Government** to submit a written roadmap responding to **Exhibits A and B**;
- **Preclude post-hearing submissions** unless accompanied by full production or a certified explanation justifying any withholding under applicable law.

Defendant stands ready to assist the Court in preparing for the May 8, 2025 hearing and to answer any procedural or evidentiary questions necessary to resolve the outstanding constitutional and factual issues.

Docusign Envelope ID: 49E22687-9B9C-461D-8A0D-050DF5B9AA81

The standards of prosecution have long since been abandoned in this case. The only just outcome now is rescission, restitution, release, and dismissal of the indictment.

**Referral for disciplinary review is warranted and should be initiated.**

**Respectfully submitted,**
**Jobadiah Weeks**
*Defendant Pro Se*
Electronically Signed via DocuSign
**Date:** April 24 2025
**Address:**
11627 West 74th Way, Arvada, Colorado 80005



**Attached Exhibits:**

- **Exhibit A** – Overview of Discovery and Procedural Violations
- **Exhibit B** – March 2025 Letters to the Government (March 5, 12, 19, 31)
- **Exhibit C** – April 12, 2025 Memorandum to AUSA Torntore with attached the **DOJ April 7, 2025 Policy Memorandum** (Digital Asset Enforcement Directive)

# Exhibit F

Selected docket entries from United States v. Scanlon (Dkts. 23, 28, 35, 38, and 72)

*Illustrates more lenient treatment of similarly situated defendant*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA     :     Mag. No. 23-10168

    :

    :

vs.     :    **CONSENT ORDER MODIFYING**
       **BAIL CONDITIONS**

    :

CHRISTOPHER J. SCANLON,     :

    :

    Defendant.     :

    :

     **THIS MATTER** having come before the Court on the application of defendant Christopher J. Scanlon by his attorney, Jonathan F. Bolz, Esq. of Krieger Lewin LLP, for modification of the conditions of bail; and Assistant United States Attorney Anthony P. Torntore and United States Pretrial Services (Andrew Dziopa) consenting to the entry of the Order; and for good cause shown;

     **IT IS** on this __17__ day of April, 2024;

     **HEREBY ORDERED** that Mr. Scanlon's bail be modified as follows:

- Defendant's Home Detention condition is amended to a curfew, enforced by location monitoring, with hours as directed by Pretrial Services.

- Defendant's conditions pertaining to the use of computers or internet access are removed.

- Defendant is prohibited from creating any Corporate Entities, Limited Liability Corporations, or businesses without the approval of Pretrial Services and the United States Attorney's Office.

All other conditions of Release to remain unchanged.

_____

Hon. Michael A. Hammer, U.S.M.J.

4/17/2024

KRIEGER LEWIN LLP

By:

/s/ Jonathan F. Bolz
Jonathan F. Bolz, Esq.


/s/ Anthony P. Torntore
Anthony P. Torntore, AUSA

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : Case No. 23-10168 |
| Plaintiff, | : |
|  | : **CONSENT ORDER MODIFYING** |
| vs. | : **BAIL CONDITIONS** |
| CHRISTOPHER J. SCANLON | : |
| Defendant. | : |

**THIS MATTER** having come before the Court on the application of defendant Christopher J. Scanlon by his attorney, Jonathan F. Bolz, Esq. of Krieger Lewin LLP, for modification of the conditions of bail; and Assistant United States Attorney Anthony P. Torntore consenting to the entry of the Order and upon notice to United States Pretrial Services, Florida and New Jersey (Ivette Suárez and Andrew Dziopa); and for good cause shown;

**IT IS** on this ___7th___ day of March, 2024;

**HEREBY ORDERED** that the defendant's bail be modified as follows:

- Defendant is permitted to travel to and remain at ███████████ Port St. Lucie, FL 34986 from March 9, 2024 through March 11, 2024 for his grandfather's birthday.

All other conditions of Release to remain unchanged.

s/Michael A. Hammer      3/7/2024

Hon. Michael A. Hammer, U.S.M.J.

KRIEGER LEWIN LLP

By: /s/ Jonathan F. Bolz
        Jonathan F. Bolz, Esq.

/s/ Anthony P. Torntore
Anthony P. Torntore, AUSA

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | : Case No. 23-10168 |
| Plaintiff, | : **CONSENT ORDER MODIFYING** |
| | **BAIL CONDITIONS** |
| vs. | : |
| CHRISTOPHER J. SCANLON | : |
| Defendant. | : |

**THIS MATTER** having come before the Court on the application of defendant Christopher J. Scanlon by his attorney, Edward Kim, Esq. of Krieger Kim & Lewin, LLP, for modification of the conditions of bail; and Assistant United States Attorney Sophie Reiter consenting to the entry of the Order and upon notice to United States Pretrial Services, Florida and New Jersey (Ivette Suárez and Andrew Dziopa); and for good cause shown;

**IT IS** on this 22nd day of November, 2023;

**HEREBY ORDERED** that the defendant's bail be modified as follows:

- Defendant is permitted to travel to and remain at ▮▮▮▮▮▮▮ Port St. Lucie, FL 34986 from November 23, 2023 through November 24, 2023 for the Thanksgiving holiday.

All other conditions of Release to remain unchanged.

_____

Hon. Michael A. Hammer, U.S.M.J.

KRIEGER KIM & LEWIN , LLP

By:  /s/  
    Edward Kim, Esq.

_____

Sophie E. Reiter, AUSA

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA       :     Mag. No. 23-10168

     v.                           :

CHRISTOPHER JAMES SCANLON     :     **ORDER**

The Court, upon application for modification of the Order setting forth the conditions of release dated June 9, 2023 by defendant Christopher James Scanlon (the "Defendant"), the Court having heard and considered the arguments of the parties on August 31, 2023; for the reasons stated and for good cause shown:

It IS, therefore, on this 5th day of September, 2023:

ORDERED the defendant's conditions of release be modified to provide for the following:

1. The defendant is permitted the use of one pre-approved connected device. Any approved device is subject to the installation of computer monitoring software and/or search by Pretrial Services to assure compliance. The defendant shall pay all or part of the cost of any monitoring software based upon his ability to pay as determined by Pretrial Services.

2. By consent of other residents in the home, any devices in the home utilized by other residents shall be approved by Pretrial Services, password protected, and subject to search for compliance by Pretrial Services.

3. The defendant's computer/internet usage shall be limited for the sole purpose of reviewing and drafting case-related documentation, communication with Defense Counsel and his designees in connection with the pending criminal case, and otherwise preparing the defense of this case, as well as communicating with his wife and

children and Pretrial Services. Any other internet/website access must be approved in advance by the Court, through modification of this order.

4. The connected device may not be used by anyone but the Defendant.

5. Counsel will provide Pretrial Services with a list of designees on or before September 8, 2023.

IT IS FURTHER ORDERED, all other terms and conditions of release shall remain in full force and effect.

_____
HON. MICHAEL A. HAMMER
United States Magistrate Judge

# Exhibit G

Defendant's Email to AUSA Trombly (May 15, 2025)

*Offering to resolve the matter jointly*

Case 2:19-cr-00877-CCC   Document 435-1   Filed 05/16/25   Page 76 of 80 PageID: 5571



≡  **M** Gmail

🔍  in:sent

**Compose**

Inbox                     21
Starred
Snoozed
**Sent**
Drafts                    16
More

Labels

# Bail Hearing – May 20, 2025 (Dkt. 411) – Request for Partial Relief

**S**   **Silence Weeks** <silenceweeks1@gmail.com>                     May 15, 2025, 4:49 PM (21 hours ago)
to Andrew.Trombly, Ernesto, bcc: Wim

Dear Mr. Trombly,

I am writing regarding the upcoming bail hearing scheduled for **May 20, 2025**, concerning my motion to modify pretrial release conditions (Dkt. 411). I have attached a one-page summary outlining my position and requested relief for your review.

While I understand that the Government is not presently interested in broader settlement discussions, I respectfully ask whether you would be open to discussing **partial relief in advance of the hearing**, particularly on the following points:

1. **Permission to reside with my pregnant wife in Florida**, and

2. **Domestic travel within the United States upon notice, without pre-approval**.

While I recognize there were issues earlier in the case, I have been in full compliance with all conditions for several years. There is currently no claim of flight risk or danger, and there are no identified victims. The requested relief would allow me to support my family during a critical moment and return to lawful work.

**If the Government is open to consenting to this limited relief, I would be glad to submit a joint notice to the Court so the matter may be resolved without the need for a hearing.** This would allow me to travel in time to be present for the birth of my child and assist my wife in the coming weeks.

Thank you for your consideration.

Respectfully,

# Exhibit H

Special Agent Rovensky Memorandum of Activity



**DEPARTMENT OF THE TREASURY**
**Internal Revenue Service**
**Criminal Investigation**

## Memorandum of Activity

**Investigation #:** ▮▮▮▮▮▮                    **Location:**     **Phone Call**
**Investigation Name:** JOBADIAH WEEKS
**Date:** October 16, 2024
**Time:** Appx 1:15 pm ET
**Participant(s):** ▮▮▮▮▮▮

Leo Rovensky, IRS-CI Special Agent

On the above date and approximate time, IRS-CI Special Agent Leo Rovensky (S/A Rovensky) contacted ▮▮▮▮▮▮ via telephone at phone number ▮▮ ▮▮▮▮▮▮ to follow up on a previous call with ▮▮▮▮ dated October 9, 2024. Lockwood provided the following information:

1.  ▮▮▮▮▮ was introduced to WEEKS as part of ▮▮▮▮▮ employment with Malika around April 2024.
2.  ▮▮▮▮▮ believes that WEEKS would have been involved with Malika a little bit earlier than when ▮▮▮▮▮ was introduced to him, possibly earlier in April or in March.
3.  WEEKS has been actively working with Malika and Liberty Fund from the time ▮▮▮▮▮ met him through the present day.
4.  ▮▮▮▮▮ has been taken off the calendar events for Malika, but believes that the trip to the Hamptons, NY, took place in either late August or early September of 2024.
5.  The Hamptons event was hosted by a company called Dunhill Ventures and Liberty paid around $10-12 thousand dollars to sponsor the event.
6.  ▮▮▮▮▮ believes WEEKS attended the Hamptons event with Michelle Chen, another Liberty associate named Xander Squibb, and WEEKS's current girlfriend.
7.  ▮▮▮▮▮ confirmed that WEEKS used the moniker "The Visionary" on the encrypted messages that ▮▮▮▮▮ provided to the government.

The phone call was concluded at approximately 1:21 pm ET.

Leo Rovensky
Special Agent

# Exhibit I

AUSA Andrew Trombly was officially terminated from this case and replaced by AUSA Vinay S. Limbachia

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Claire C. Cecchi, U.S.D.J. |
| v. | : | Crim. No. 19-877 |
| MATTHEW GOETTSCHE, et al. | : | <u>SUBSTITUTION OF ATTORNEY</u> |

PLEASE TAKE NOTICE that ALINA HABBA, United States Attorney for the District of New Jersey, has reassigned the above-captioned matter to Vinay S. Limbachia, Assistant United States Attorney (vinay.limbachia@usdoj.gov), in substitution for Andrew M. Trombly, Assistant United States Attorney, who previously appeared in this matter.

ALINA HABBA
United States Attorney

*/s/ Vinay S. Limbachia*

By: Vinay S. Limbachia
Assistant United States Attorney

Dated: May 16, 2025