# EXHIBIT A – DOJ STANDARDS & VIOLATIONS IN USA v. WEEKS

**Attachment to Post-Hearing Statement of Position – May 20, 2025**
**Submitted to: Hon. Michael A. Hammer & AUSA Vinay S. Limbachia**

This summary outlines nine areas in which the Government's conduct in *United States v. Weeks* has deviated from mandatory Department of Justice (DOJ) standards or basic prosecutorial fairness. The first eight violations correspond to explicit provisions of the DOJ Justice Manual (JM), while the ninth addresses conduct that, although not codified in formal policy, would be impermissible in any professional context and is particularly troubling in the administration of criminal justice.

These violations are not merely theoretical — they have directly impacted Defendant's ability to receive a fair pretrial process, including the bail proceedings addressed at the May 20, 2025 hearing. The issues raised here are integral to understanding the structural imbalance that has undermined adversarial fairness throughout the course of this case.

## 1. Duty to Disclose Exculpatory Evidence

**JM 9-5.001 | Brady & Giglio Compliance**
 *See also: Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150 (1972)*

The prosecution must timely disclose all evidence favorable to the accused that is material to guilt, punishment, or credibility.

**Violations:**

- The April 19, 2019 Special Agent's Report — a Brady exhibit — was never produced.
- The Government failed to produce the video and MOI from the December 10, 2019 interrogation, suppressing crucial context around crypto seizures.
- IRS Criminal Investigation reports and internal audit workpapers were withheld until after the plea, impairing forensic review.

## 2. Duty to Ensure Voluntary and Informed Pleas

**JM 9-16.300 | Rule 11 Compliance**
 *See also: Brady v. United States, 397 U.S. 742 (1970); Hill v. Lockhart, 474 U.S. 52 (1985)*

The prosecution must ensure pleas are entered knowingly, voluntarily, and supported by full disclosure of material facts.

8

**Violations:**

- The Government used post-dated investigative reports to justify the plea after it was signed, undermining its voluntariness.
- Multiple plea negotiations and non-prosecution deals with co-defendants were concealed, depriving Defendant of critical comparative leverage.
- Continued bail restrictions (GPS, crypto ban) applied coercive pressure in the absence of complete discovery.

### 3. Duty to Avoid Selective Prosecution

**JM 9-27.260 | Equal Justice and Fair Treatment**
*See also: United States v. Armstrong, 517 U.S. 456 (1996)*

Prosecutorial decisions must be based on objective criteria and applied consistently.

**Violations:**

- Defendant was uniquely charged with tax offenses, despite prior DOJ knowledge and despite higher known tax exposure by others like Joseph Abel, who received a lighter plea.
- Russ Medlin, the alleged BCN mastermind, was indicted nearly a year later and never detained in the U.S.
- The **Scanlon case (Crim. No. 24-682 (CCC)), prosecuted by the same office, involved less restriction, quicker bail relief, and full dismissal**.

### 4. Duty to Seek Justice, Not Merely Convictions

**JM 9-27.010 | Ethical Role of the Prosecutor**
*See also: Berger v. United States, 295 U.S. 78, 88 (1935)*

The prosecutor's role is to serve justice, not to win at any cost.

**Violations:**

- In a February 2025 court filing, the Government misstated its discovery compliance and **exaggerated flight risk to oppose relief**.
- The Government knowingly presented **post-dated evidence to reinforce plea justifications** — without ever disclosing their retroactive origin.

9

## 5. Duty to Disclose Material to Plea Discussions

### JM 9-16.000 | Plea Agreements & Material Evidence
 *See also: United States v. Ruiz, 536 U.S. 622 (2002)*

Evidence that materially affects a plea's fairness must be disclosed.

**Violations:**

- **No victim list or restitution** figures were produced prior to or even after the plea, despite repeated defense requests — impairing Defendant's ability to evaluate sentencing exposure and plea risks.
- Internal **IRS valuation documents were concealed until late 2024**, limiting defense ability to contest loss theories during plea discussions. Failure to produce **IRS CI Reports, internal audit workpapers**. The **Withholding IRS Memorandum until December 2024**, despite defense requests and no record of prior disclosure to successor counsel, impaired the defense's ability to contest loss theories during plea discussions.

## 6. Duty to Avoid Fraud on the Court

### JM 1-1.100 | Institutional Integrity & Candor to the Court
 *See also: Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)*

Prosecutors may not knowingly submit false or materially incomplete information to the Court.

**Violations:**

- In its discovery status letters, the Government falsely assured the Court that materials had been produced, while **critical Brady items remained withheld**.
- The Government relied on a **fabricated claim** that AUSA Hoxie told Defendant not to speak to co-defendants — no such instruction occurred.
- The April 25 letter identified **multiple frauds on the court**, including:
    - Misrepresentation of Pretrial Services' knowledge,
    - Use of a fabricated timeline around crypto transactions,
    - Revival of previously addressed claims without legal or factual support.

## 7. Duty to Avoid Coercive Plea Negotiations

### JM 9-27.420 | Voluntariness & Fairness in Resolutions
 *See also: Brady v. United States, 397 U.S. 742 (1970); Hill v. Lockhart, 474 U.S. 52 (1985)*

Defendants should not be pressured into pleading through incomplete discovery, excessive constraints, or economic coercion.

10

**Violations:**

- Defendant was **transferred approximately 20 times** while in pretrial detention, often placed near Government witnesses — creating a coercive and psychologically destabilizing environment.

- **Co-defendants were offered favorable plea deals** without tax charges, while Defendant alone faced escalating charges. Tax charges were added only after the fraud indictment, despite the Government's possession of the relevant tax information as early as 2019.

- **The Government withheld information about its plea negotiations with other BitClub Network defendants** and failed to disclose the terms or cooperation of those agreements until after Defendant's plea, depriving him of meaningful comparative context.

These combined practices — **layered pressure through detention, nondisclosure of discovery and plea disparities, and charging escalation — undermined the fairness and voluntariness of Defendant's plea in violation of DOJ policy and constitutional norms.**

## 8. Failure to Account for Seized Assets and Comply with DOJ Property Rules

**Justice Manual §§ 9-119.000, 9-111.000, 3-12.000**
*The DOJ must ensure prompt inventory, transparent handling, and return of property not subject to lawful forfeiture.*

**Violations:**

- **Missing 4.99995661 BTC from the seizure record**, with no explanation or accounting provided to date.

- **No forensic audit or tracing** performed on any of the seized cryptocurrency wallets, despite repeated defense requests.

- **No accounting of seized gold, silver, or other tangible assets**, including items documented in the original search and seizure inventory.

- **$7,500 in cash seized from Defendant's belt** has never been returned and the amount was not logged only as having been sent to prison.

- **No disclosure of any post-seizure digital asset audit** conducted on hardware devices (e.g., wallets, cold storage) taken from Defendant.

11

## 9. Conduct That Falls Outside DOJ Standards Entirely

Certain Government conduct in this case falls so far outside professional norms that no DOJ policy standard even contemplates it — because it is categorically **unethical, unlawful, and institutionally corrosive**.

These are not mere oversights or judgment calls. They constitute active misrepresentation, post-hoc document creation, and procedural manipulation incompatible with the rule of law.

**Examples:**

- **Creation of undated investigative documents** after the plea agreement was signed, which were later inserted into discovery as if contemporaneous, purporting to justify pre-plea conduct or establish loss theories that had not previously existed.
- **Inclusion of a fictitious "Hoxie statement"** — never transcribed, recorded, or formally memorialized — yet cited by the Government to imply Defendant was told not to contact co-defendants. This misstatement created a false factual predicate for restrictive bail and misled both defense and the Court.
- **Presentation of retroactively produced seizure and asset-tracking documents** that omit 4.9999 BTC, later partially "acknowledged" without explanation. This conduct is compounded by the Government's **refusal to provide forensic audit records** or return known assets including hardware, gold, and $7,500 in cash.
- **February 18, 2025 misrepresentation to the Court** claiming compliance with discovery orders, while omitting known Brady violations and overstating flight risk — misleading the Court on both bail and plea withdrawal proceedings.

These actions would be impermissible in a civil contract dispute. In a criminal prosecution brought by the United States Government, they represent a **failure of institutional integrity**.

They violate the foundational protections of:

- **Due Process** under the Fifth Amendment,
- The obligation of **truthful, candid presentation to the Court**, and
- The public's expectation that prosecutors operate as **officers of justice, not adversarial tacticians.**

They are not simply policy violations — they are **systemic breaches of ethical and constitutional duty**.