# Exhibit A

March 22, 2024 letter from David Stone.

# STONE ▪M▪ MAGNANINI

## COMPLEX LITIGATION

March 22, 2024

**<u>VIA EMAIL</u>**
AUSA Anthony Torntore
United States Attorney's Office
  for the District of New Jersey
970 Broad Street, 7th Floor
Newark, New Jersey 07102
Anthony.Torntore@usdoj.gov

David Hernandez
Senior U.S. Pretrial Services Officer
United States Pretrial Services Agency
District of New Jersey
50 Walnut Street, Room 1018
Newark, New Jersey 07102
David_Hernandez@njpt.uscourts.gov

> Re:    <u>United States v. Jobadiah Weeks</u> (19-cr-877-CCC)

Dear AUSA Torntore and Sr. PTS Officer Hernandez:

Yesterday the Court imposed certain conditions on Mr. Weeks's release and I made clear to Mr. Weeks that any violation would almost certainly result in his bail being revoked. The Court also set forth a process by which we should address any ambiguities, confusion or disagreement between the Government, Pretrial Services, and Mr. Weeks about those conditions. The Court explained that the process was to first disclose to the Government and Pretrial Services our interpretation of the conditions in light of what actions Mr. Weeks intends to take in order to determine whether the Government and Pretrial Services agree that the intended actions would not violate the release conditions. Should the parties not agree on whether the intended action would violate the release conditions, Mr. Weeks shall file a motion with the Court to resolve the dispute. We intend to follow that process.

Consistent with that, we have represented to the Government, Pretrial Services and the Court that Mr. Weeks needs to pay for usual and customary expenses, including the mortgage on the ranch where his wife and daughter reside. We also pointed out that the Government has seized all of Mr. Weeks' liquid assets, including cash, silver, coins, jewelry and other property. We also pointed out that the counts to which Mr. Weeks pleaded guilty to do not include forfeiture. As you know, we asked AUSA Jamie Hoxie for a return of such property almost six months ago.

We were told that the Government would be returning much of that property although it might take the position that some of that property would not be returned. At this point, no property has been returned and none of that property is available to Mr. Weeks to pay his ordinary expenses.

The government represented to the Court yesterday in chambers that it knows where Mr. Weeks' property is and that Mr. Weeks' property has not been lost. We propose that the government return such property within the next ten (10) days. To the extent that the Government believes that certain property should not be returned, please identify that property so that we can consider whether to make a motion to the Court to compel the return of such property.

In the meantime, Mr. Weeks' only potential source of liquid funds remains his stock in BitFury-related entities and a relatively small amount of cryptocurrency that was not seized by the Government. Since Mr. Weeks is not permitted by his release conditions to directly or indirectly access the Internet, liquidating this cryptocurrency poses a difficult problem. In order to permit Mr. Weeks to access his remaining cryptocurrency funds, we propose the following.

Mr. Weeks' has an associate who created a "crypto wallet" for him which contains approximately $17,000 of Mr. Weeks' cryptocurrency. This associate also applied for a "crypto credit card" that is backed by the cryptocurrency. We propose that, in the short term and until other funds become available to Mr. Weeks, that Mr. Weeks will utilize a physical copy of that credit card to pay his basic expenses such as food delivery, grocery delivery, utility bills, etc. Mr. Weeks' associate will also provide a virtual crypto credit card to one or more of Mr. Weeks' custodians and, at Mr. Weeks' request, the custodian(s) will pay for certain of Mr. Weeks' expenses that he cannot pay for himself using his physical credit card (*i.e.*, Uber Eats, Fresh Direct, etc.). It is impractical to give 72 hours' advance notice to Pretrial Services before these types of routine expenses are incurred.

We further propose that Mr. Weeks' custodians will provide counsel with a monthly statement of charges on this crypto credit card. Counsel will retain the monthly statements and will provide them to the Government or Pretrial Services at their request. We believe that this satisfies the intent of the conditions that require that the Government and Pretrial Services be notified as to Mr. Weeks' use of cryptocurrency. As you are aware, Mr. Weeks does not have a bank account and this would be the only way that Mr. Weeks can pay for many of his basic expenses as many vendors will only accept online payments (*i.e.*, Uber Eats). Please advise whether the Government and PTS approve of these procedures.

Further, Mr. Weeks intends to liquidate certain stock as previously disclosed to, and discussed with, the Government and Pretrial Services. Part of that stock is in a subsidiary of BitFury called "Hut 8." Mr. Weeks previously attempted to send the physical stock certificates to a broker to sell his interest, but that transaction was blocked by some government agency. We ask the Government to remove the block on this transaction so that Mr. Weeks can sell that stock to obtain funds needed to pay his basic expenses, particularly the mortgage on the ranch where his wife and daughter reside.

**STONE ☗ MAGNANINI**

COMPLEX LITIGATION

Anthony Torntore & David Hernandez
March 22, 2024
Page 3

As you are aware, Mr. Weeks also intends to sell other stock shares (maintained by this firm) which has not yet occurred. In the event that we intend to sell those shares, we will promptly let the Government and Pretrial Services know. As we previously advised you, it is expected that the company will issue a dividend on those shares, which this firm will receive, but that dividend has not yet been issued by the company or received by this firm.

We also discussed with Pretrial Services our goal to find a reasonable way to communicate with Mr. Weeks in order to provide legal advice to him in this case. It is our understanding that Pretrial Services has agreed that we can send emails and documents to one of Mr. Weeks' custodians, who can then print out physical copies of those communications and provide them to Mr. Weeks. We presume and expect that the Government will not later take the position that this procedure in any way waives Mr. Weeks' privilege to not disclose attorney-client communications would otherwise be privileged but for the disclosure to Mr. Weeks' custodians.

We would appreciate it if the Government and Pretrial Services would promptly respond to our questions and proposals so we can ensure that Mr. Weeks' continues to comply with his release conditions and to ensure that there are no misunderstandings about whether he is complying properly.

Respectfully submitted,

 _/s/ David Stone_
David S. Stone
Managing Partner

cc:    John Zach, Esq.
       Eric Cohen, Esq.

# Exhibit B

September 5, 2024 letter from David Stone to AUSA Torntore requesting information about the seized assets.

# STONE ▪ MAGNANINI

## COMPLEX LITIGATION

September 5, 2024

**VIA EMAIL**
AUSA Anthony Torntore
United States Attorney's Office
  for the District of New Jersey
970 Broad Street, 7th Floor
Newark, New Jersey 07102
Anthony.Torntore@usdoj.gov

Re:    United States v. Jobadiah Weeks (19-cr-877-CCC)

Dear AUSA Torntore:

As you are aware, we are currently preparing to meet with you to discuss our position on Mr. Weeks' sentencing matters, including reaching an amicable resolution regarding restitution. To that end, we are investigating the underlying calculations referenced in Mr. Weeks' plea agreement pertaining to the relevant loss amounts as well as investigating the value of Mr. Weeks' assets that were seized by the government that remain in its possession.

On July 22, 2024, you emailed me an IRS memorandum, dated October 8, 2020, described as "[e]valuation of grand jury expansion request and special agent's report." Page 6 of the memorandum explains in a footnote that "[a] streamlined SAR was created and supplemented with documents which corroborate the allegations in the SAR…" which includes "copies of… interviews…." A footnote on page 8 references a "tax loss appendix." We respectfully request that you kindly produce to us a copy of the following items referenced in the October 8 memorandum:

1.    The "streamlined SAR."

2.    The tax loss appendix.

3.    "[C]opies of… interviews" in whatever form, including, but not limited to, transcripts, summaries or other reports.

To gain an understanding of the IRS's interpretation of the transfers and payments reflected in the cryptocurrency wallets owned by Mr. Weeks we respectfully further request the following information:

**STONE ■ MAGNANINI**

COMPLEX LITIGATION

1.    A detailed transaction history for the cryptocurrency wallets identified as belonging to Mr. Weeks, specifically "1Joby" and "19rFx." We believe that this should include all incoming and outgoing transactions, along with corresponding dates, transaction amounts and the parties involved.

2.    Among the items seized by the government is a computer containing a JAXX wallet. Please provide us with all records that set forth the current status of the cryptocurrency stored in the JAXX wallet and other wallets and hardware seized by the government (*e.g.*, Trezor and Ledger), including the wallet addresses associated with the seized hardware.

3.    All records documenting the results of "blockchain tracing analysis" conducted on the transactions involving Mr. Weeks' cryptocurrency wallets.

4.    On the day of Mr. Weeks' arrest two wallets on Mr. Weeks' computer were seized. The first, beginning "1Bzq5" had a balance of approximately 3.67 BTC. The second, beginning "1A9D3" had a balance of 5.00 BTC. It appears that on November 17, 2022, approximately 8.67 BTC was transferred from Mr. Weeks' wallets to a wallet beginning with "14YyA." Could you kindly indicate if this is a government controlled crypto-wallet and, if so, please provide any documents setting forth the procedures followed by the government to transfer these funds and, if the Bitcoin was liquidated, please provide us with the amounts recovered.

In order to determine the validity and the underlying basis for the analysis in the IRS memorandum, we request documents sufficient to show the following:

1.    BCN membership list.

2.    BCN membership agreements.

3.    Records indicating how the IRS viewed the relationship between BCN leadership and its members in terms of tax liability and responsibility.

4.    Records indicating how the IRS classified BCN and on what basis.

5.    Records that BCN applied for or organized under a specific tax classification, such as a for-profit or non-profit organization.

6.    Records that indicate how the IRS determined the tax obligations of BCN, particularly in relation to its business activities.

7.    Records indicating whether the IRS classified earnings from BCN as wages, commissions, or other forms of taxable income for its members.

**STONE ◆ MAGNANINI**

COMPLEX LITIGATION

AUSA Anthony Torntore
September 5, 2024
Page 3

8.      Records related to any audits or other reviews of BCN before Mr. Weeks was arrested.

9.      Records indicating whether the IRS considered Mr. Weeks an employee, independent contractor, or other classification, within BCN.

10.     Records that support the classification of Mr. Weeks' earnings from BCN as taxable income.

11.     Records indicating whether the IRS determined that BCN was responsible for withholding and payment of employment taxes for individuals such as Mr. Weeks.

12.     Records relating to BCN policies or practices for paying employment taxes or classifying its members and leadership correctly for tax purposes.

13.     Underlying records used to support the IRS assessment of Mr. Weeks' tax liability.

14.     Correspondence or other communications between the IRS and BCN, or its members, discussing their tax obligations or the IRS's expectations.

15.     Third party information or reports used to determine the tax obligations of BCN and its members.

We also request the following records:

1.      Any and all interview (*e.g.*, proffer sessions) transcripts and/or interview summaries or reports from any co-defendant in this matter.

Thank you for your attention to this matter and please do not hesitate to contact me if you require any additional information to assist us with this request.

Respectfully submitted,

*/s/ David Stone*
David S. Stone
Managing Partner

# Exhibit C

December 10, 2019 Report of Activity provided on December 6, 2024.



**DEPARTMENT OF THE TREASURY**
**Internal Revenue Service**
**Criminal Investigation**

# Memorandum of Activity

---

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000293264 | **Location:** | Residence of Jobadiah Weeks |
| **Investigation Name:** | Jobadiah Weeks | | 11627 W. 74th Way |
| | | | Arvada, CO |

| | |
|---|---|
| **Date:** | December 10, 2019 |
| **Time:** | Various |
| **Participant(s):** | Adam Rutkowski, Special Agent |
| | Victor Vanacore, Special Agent |

Attached are documents containing screenshots representative of the cryptocurrency seizures Special Agent Vanacore (witnessed by SA Rutkowski) were able to affect at the Weeks' Residence during the Search Warrant on December 10, 2019.  This document and its related attachments should be preserved as an official account of the activities associated with these seizures:

1. There were multiple assets left in the Exodus Wallet, which were not seized, as there were no seizure wallet addresses which had been provided to send the funds to.  Additionally, the dollar amounts were deemed to be below the threshold after speaking with the Command Post.
   a. A Final Screenshot showing the balances in these accounts is included in the .pdf file.
   b. The Exodus wallet was restored based upon a .png picture file located on an SD card which was found during the Search Warrant on the room which had been identified as belonging to Joby Weeks.  The .png file was a picture of the backup seed phrase.
   c. The seed phrase was used to restore the Exodus Wallet onto a cold computer.
   d. After the transfers were affected by SA Vanacore, the Exodus Wallet was deleted from the Cold Computer.
   e. Any further access to the remaining funds on the Exodus Wallet can only be gained by using the .png seed phrase picture.
2. One Bitclub Club Coin Ledger Nano S was located.  Two hand-written seed phrase cards, manufactured by Ledger, were located.
   a. Attempts were made to restore the Ledger Nano S using the seed phrase.  Agents were successful in that they could see the device potentially contained Bitcoin, Ethereum, Club Coin, and possibly two other assets.  However, the agents were unable to determine the quantity of these assets using the device without plugging the device into the cold computer.
   b. Agents attempted to plug the device into a cold computer using the required software, Ledger Live.
   c. It was determined that the firmware on the device needed to be updated.  Agents were unsuccessful in upgrading the firmware.

    d. Therefore, agents used the wallet software, Electrum, to attempt recovery of the Bitcoin assets associated with each of the two seed phrases. This attempt only provides potential access to the Bitcoin. Access to the other potential cryptocurrencies associated with these wallets was not attempted.

    e. For one of the two seed phrases, agents were successful in finding bitcoin. Agents transferred this bitcoin to the seizure addresses provided in advance of the enforcement action.

3. Access to the Bitcoin using Electrum has to be conducted by creating three separate wallets – One Legacy Wallet, a P2SH SegWit Wallet (containing bitcoin addresses starting with the number 3), and a bech32 SegWit Wallet (containing bitcoin addresses starting with "bc1".

    a. Given time constraints while on site, agents are unsure if they tried all three methods using each seed phrase. Also, there are additional configuration settings which must be used in order to properly gain access to any of these assets. If the configuration settings are not put in place correctly, the assets would not appear, even if they are actually present.

    b. Therefore, it is recommended that at a later date in time, the government use another Ledger Device to restore each of the seed phrase cards to. Once the restore has occurred successfully, all assets available that are connected with that seed phrase (which represents a private key) should become viewable and accessible.

4. Other potential physical cryptocurrency assets were seized. Most of these were things like actual physical coins which contained either public or private Bitcoin keys, or both. Because of time constraints involved with the search, these items were physically seized, and no attempt was made to quantify their value, or to seize any potential funds which may be present. As such, a separate attempt should be made at a later date to determine whether there are any funds associated with these physically seized items.

5. Each of the aforementioned seizures was conducted by the Seizing Agent at our Site – SA Vanacore. SA Rutkowski and SA Vanacore were each present and watching during the entire analysis and seizure process.

6. The attached screenshots are considered to be the evidence of the activities conducted related to the items discussed in this memorandum.


Adam Rutkowski
Special Agent


Victor Vanacore
Special Agent





Exodus Aragon Private Keys

PRIVATE KEYS

| Address | Path | Balance | Private Key |
|---|---|---|---|
| 0x0707CDe737426 9BC45074c79840 92CF8D4dbe43B | m/0/0 | 492.6939984 | 02a5ab16e98eb3dd1fde25b8a5281e6b0ed03ed2aff507da6daa5a205 67d90d |

Close

Close





Exodus Basic Attention Token Private Keys

| Address | Path | Balance | Private Key |
|---|---|---|---|
| 0x0707CDe7374269BC45074c7984092CF8D4dbe43B | m/0/0 | 4922 | 02a5ab16e98eb3dd1fde25b8a5281e6b0ed03ed2aff507da6daa5a20567d904d |











# Exodus Bitcoin Private Keys

Close

| Address | Path | Balance | Private Key |
|---|---|---|---|
| 14uKvjJAYPWHXCn8SyR7k8Px7dWXTTjGaB | m/0/0 | 0 | Ky797MHpvu7Ar1eN7LhuVsEBSwrFqomip8zgJzaka1hp5gSHgrPoc |
| bc1qqad2mvfn2wewd8cavn7602h9g06r6hfk0g5n6c | m/0/0 | 0 | KwVs4krgY78p81rfzn3b4ssK3KQf23ZjzCcpUhaDTVnDxpFYcvuw |
| 12UhenKVdMzkAHewusS3rBHENJjZEK8ook | m/1/0 | 0 | L2rSz6Yu7PRa3JCLmxSqMvq87Aq5ihsKmwBzNKmQfDcLUdEGEc8s |
| 13g5vsZd42uwTwsQc18dCzJ9cgxXmBCsXg | m/1/1 | 0 | L5aTKjk8FUba9VDP9bWfA9DTVEtK4imBLzYe8zghSkQtPf7KGtXS |
| 1AFZqnSRdsWmn95NHGja8kJteihmCnwJdb | m/1/2 | 0 | KwDos6dx5Vh33MVVoB6AxitkEBwMwr6ackSCcynagePaZa8ACmvM |
| 1tsjQDq1QgGjt1DVe5y9QFLJBv1RsLHg6 | m/1/3 | 0 | L2cpAXQkZmb7dU7KuaCVDCi3WMGWZmjVoYKWJppc7N8SBtafUtBq |
| 14jzSRGaXDkoUWKA99gPDJ4vSmCVD1TBTB | m/1/4 | 0 | Kyt21dydc68zg3qUrZL5W2kEUwdw6bxxck3kU1LHPNqkZMJMpur7 |
| 1F8MiVcaPM74MBaCVJAbWBTgHFYeGYf6o | m/1/5 | 0 | L1WEQECwg5wYDzyE1WXpsxHhjQLP5bucEwufUW7MCusZtCzxj8TZ |
| 1JVTnkccSo9F1ho3qcm589nPsmx7S8gwZe | m/1/6 | 0 | KxcNNbMvNszcjmPbPGWGLZoKYrWswKcS7JRFv9nSwxrMZN5RP4gg |
| 1PcG5ndUUCpu7977PRHM8AJPv1D3BsocAG | m/1/7 | 0 | L4QWNEj8HcrBSViMmfN8TjFDoRDZE41gxKhECSFBNRDoSPrT8Hxe |
| 1NDq3gnpx71gXhhiFKCR7x3eWKbfhcc1t | m/1/8 | 0 | L4eTYbQES3KPZHzUDJMGzmEyVxEvZR8otxXqsrw1KUvxc5FvpD4 |
| 17rwZ7mZHT1zhnnppDqTgMvSRnMRFVtuEF | m/1/9 | 0 | KxKKXmQriqNUsS3MHTBmxakGLkmDVFZVMShWPGozfzxKqrRCToRh |
| 1Bzq5h94BHK32awJchuAjWP3EtGKyEnCqf | m/1/10 | 3.67046219 | L4AcAu2Bpot5dgCmwg8PwzPm5uUAnxhvFEhGCEbc6NrDvVz2GANa |

Close















# Send 7,115.68 USD?

Are you sure you want to

**Sending:** 48.9164048984694 ETH

**Value:** 7,115.68 USD

**Address:** 0x09d0FDb66e815F33A2133315dDeC9F0C2922e250

**Send**

**Back**

## Ethereum Token Warning

You have tokens that require Ethereum. Sending this will not leave enough Ethereum to send or exchange your tokens. Are you sure you want to proceed?

CONTINUE

LEARN MORE

EXODUS 19.12.5



















Tron (old)
79 TRX

Binance Coin

Help









Transaction

Transaction ID:

Unknown

Description:

Status: Unsigned

Amount sent: 4.99995661 BTC

Size: 192 bytes

Fee: 0.00004339 BTC ( 22.6 sat/byte )

LockTime: 607544

Inputs (1)

f880c6e99117&cbc9044d875cb14697c6e9637fac550f7b8186ca4c283391172e:0
1A9pD3wx764NRiA4avR6mA4KhiroSbLVzwS
5.

Outputs (1)

14YyAfHJRgv8TkoHfzuHDLQcnZGGx8aRZi        4.99995661

Copy    Export    Save    Sign    Broadcast    Close







# Exhibit D

Email of February 20, 2025 from Eric Cohen referencing the follow-up efforts on January 14, 2025.



**From:** Eric Cohen ECohen@smcomplex.com
**Subject:** RE: Follow-Up on Seized Assets
**Date:** 20 February 2025 at 17:35
**To:** Wim Jagtenberg miwjagtenberg@gmail.com
**Cc:** David Stone DStone@smcomplex.com

Hi Wim,

Regarding the seized assets, on or about January 14 that the Government verbally told us that we would be shortly receiving more information about the location of the physical assets and crypto and what has been done with the crypto during the time that they held it. However, at around that same time Joby terminated us so we never heard anything further from them on this point.

Eric.

**From:** Wim Jagtenberg <miwjagtenberg@gmail.com>
**Sent:** Thursday, February 20, 2025 7:12 AM
**To:** Eric Cohen <ECohen@smcomplex.com>
**Cc:** David Stone <DStone@smcomplex.com>
**Subject:** Follow-Up on Seized Assets

Dear Eric,

Following up on our discussion regarding the seized assets, did you file a letter to AUSA requesting their return? I recall David mentioning something along those lines.

Looking forward to your update. Wishing you a productive day.

Best regards,
Wim Jagtenberg

Begin forwarded message:

**From:** Eric Cohen <ECohen@smcomplex.com>
**Subject: RE: Handling of Seized Assets Following Joby Weeks' Arrest**
**Date:** 7 August 2024 at 15:28:20 CEST
**To:** Wim Jagtenberg <miwjagtenberg@gmail.com>
**Cc:** David Stone <DStone@smcomplex.com>, Emely Menendez <EMenendez@smcomplex.com>, Jim Danatos <JDanatos@smcomplex.com>, Tara Saybe <TSaybe@smcomplex.com>, Silence Weeks <silenceweeks1@gmail.com>

Hello Wim,

David and I have had many high level discussions about the right

# Exhibit E

February 26, 2025 Motion to Compel Discovery (with Section 4.3 formally requesting return of seized assets).

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

**United States of America,**
**v.**
**Jobadiah Weeks,**
Defendant

**Case No. 19-cr-877-CCC**
**Hon. Claire C. Cecchi**

# DEFENDANT'S DEMAND TO COMPEL DISCOVERY

**NOW COMES Defendant, Jobadiah Weeks,** acting **pro se,** and respectfully requests this Court for an order compelling the United States Attorney's Office for the District of New Jersey to provide the outstanding discovery materials requested in Defendant's letters to AUSA Anthony Torntore dated **September 5, 2024, and February 13, 2025.**

On **February 18, 2025**, the Government filed a letter opposing Defendant's ex parte rescission of autograph and demand for dismissal (hereinafter "plea withdrawal") and requested that sentencing proceed as scheduled on March 12, 2025 (**Docket Entry #399**). However, this filing was made after the Government received Defendant's **February 13, 2025**, discovery request, raising serious concerns about whether the prosecution is actively seeking to suppress evidence that is material to the pending plea withdrawal notice. **The timing of this opposition, without first addressing the discovery violations raised in this demand, underscores the urgent need for transparency and Court intervention** to ensure that exculpatory materials are produced before any recognition of the plea withdrawal notice.

Despite these formal requests, the government has failed to respond, necessitating judicial intervention.

# I. INTRODUCTION

Defendant **Jobadiah Weeks**, acting **pro se**, moves this Court to **compel the United States Attorney's Office for the District of New Jersey** to produce outstanding discovery materials **requested in letters dated September 5, 2024, and February 13, 2025**. Despite repeated formal requests, the government has failed to comply, necessitating judicial intervention.

Additionally, on **February 26, 2025**, Defendant sent a formal letter to **AUSA Anthony Torntore** demanding the immediate return of seized assets, including **cryptocurrency and precious metals**. The letter, attached as **Exhibit K**, exposes significant discrepancies in the government's reporting of the **Bitcoin seizures**, which do not align with the actual **Bitcoin transactions**.

On **December 10, 2019**, when the assets were seized, the government prepared a **Crypto-Seizures Memorandum** (Exhibit L). However, this memo **fails to account for 4.99995661 BTC** that were taken during the seizure. This discrepancy raises serious concerns about **the integrity of the government's asset reporting** and further supports Defendant's allegations of **misconduct and improper handling of evidence**.

On **January 7, 2020**, Attorney **Michael Yaeger** entered an appearance as defense counsel (Docket Entry 15, Exhibit H). Despite this, the **DOJ and U.S. Marshals transferred Defendant without notifying his legal counsel**, placing him in proximity to a **government witness** without attorney consultation. Furthermore, the **absence of an arraignment or detention hearing** constitutes a **violation of Defendant's Sixth Amendment right to counsel** and raises serious concerns of prosecutorial misconduct.

Defendant has reason to believe that the **government has engaged in fraud and perjury**, including but not limited to:

- **Altering or fabricating the Streamlined SAR (Exhibit G)** to align with its prosecution strategy.
- **Providing false statements** about the existence and date of the SAR, thereby misleading the defense and the Court.
- **Withholding exculpatory evidence** in violation of **Brady v. Maryland, 373 U.S. 83 (1963)**, including documents critical to **plea negotiations and tax calculations**.
- **Failing to disclose grand jury and prosecutorial records** related to **plea coercion** and **internal DOJ discussions** on pressuring Defendant into a guilty plea.
- **Manipulating witness placement and transport conditions** to facilitate interactions between Defendant and key government witnesses (**Goettsche & Abel**) without legal counsel.
- **Orchestrating repeated transfers between different prisons** to **interfere with legal representation** and **apply psychological pressure** to induce a guilty plea.
- **Submitting false or misleading representations to the Court in Docket Entry 399 to obstruct Defendant's ability to withdraw his plea.** The Government's letter opposing plea withdrawal, filed on February 18, 2025, after receiving Defendant's February 13, 2025, discovery request, **fails to acknowledge the suppressed SAR materials, grand jury records, and Brady violations.** By falsely asserting that Defendant's guilty plea was voluntary while continuing to withhold exculpatory evidence that could prove otherwise, the Government has engaged in **fraud on the court and perjury in violation of 18 U.S.C. § 1001 (False Statements) and 18 U.S.C. § 1519 (Obstruction of Justice).**
- **Producing selective or incomplete discovery** while withholding critical evidence to **misrepresent facts before the Court**.

These **acts of fraud and perjury deprived Defendant of his constitutional right to due process, obstructed access to exculpatory evidence, and misled both the defense and the Court** regarding the true nature of the case.

Furthermore, the government's misconduct violates **multiple legal precedents** that safeguard due process and fair trial rights:

- **The plea agreement was coerced,** rendering it involuntary under United States **v. Ruiz, 536 U.S. 622 (2002),** as evidenced by the **Weeks Plea Agreement & Grand Jury Expansion Memo (CT-122627-20, October 8, 2020) (Exhibit C).**
- The government engaged in **prosecutorial misconduct by withholding or altering evidence**, violating **United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993)**.
- The **government failed to comply with Rule 16(a)(1)(E)** of the **Federal Rules of Criminal Procedure**, which **mandates the disclosure of any evidence material to the defense**.
- In Brady v. Maryland, 373 U.S. 83 (1963), the Supreme Court held that **failure to disclose exculpatory evidence violates due process**.
- In **United States v. Bagley, 473 U.S. 667 (1985)**, the Court clarified that **suppressing impeachment evidence, even if not intentionally malicious, is a due process violation**.
- The **government's failure to disclose grand jury records and Special Agent reports** suggests a **violation of these well-established precedents**, necessitating judicial scrutiny.

Given the **government's deliberate misrepresentations and constitutional violations**, this Court must intervene through **evidentiary hearings and appropriate sanctions**.

Since **AUSA Anthony Torntore has failed to respond**, Defendant respectfully requests that this Court **compel immediate compliance** to uphold fundamental due process rights and prevent further prosecutorial misconduct.

On February 21, 2025, Defendant filed a Notice to Withdraw Plea (Docket Entry 401), asserting that the plea agreement was involuntary due to prosecutorial misconduct, **Brady violations, and suppressed exculpatory evidence, including the Special Agent's Report (SAR) and grand jury materials**. Despite receiving Defendant's February 13, 2025, discovery request, the Government **deliberately ignored these missing records** and instead rushed to file its opposition to plea withdrawal (Docket Entry 399) on February 18, 2025. This **strategic omission of exculpatory materials** demonstrates the Government's **continued effort to obstruct access to discovery before a ruling on plea withdrawal**. The Court **must resolve these Brady violations and evidentiary disputes before ruling on the validity of the plea agreement**, ensuring that all withheld materials are disclosed and properly reviewed. **This Court should not rule on the plea withdrawal motion without first resolving these outstanding discovery violations.**

Given the legal significance of these issues, I respectfully request your prompt attention and full cooperation in providing the requested materials.

3

# II. RELEVANT BACKGROUND

On September 5, 2024, Defendant's legal counsel submitted a formal records request (Exhibit A) to AUSA Torntore, specifically requesting the **Streamlined Special Agent's Report (SAR)**. However, the Government has acknowledged that a traditional SAR was never created (see Footnote 7, Exhibit C), and instead, a **Streamlined SAR supplemented with additional documents was produced**. While this Streamlined SAR was disclosed, it is still incomplete, as it does not include all underlying exhibits and referenced materials."

**The SAR provided by the government (Exhibit G)** and referenced to in Weeks **Plea Agreement & Grand Jury Expansion Memo (CT-122627-20, October 8, 2020)** (Exhibit C) under footnote 7.:

> *We note that a traditional Special Agent's Report (SAR) with exhibits attached was not created for this case. A streamlined SAR was created and supplemented with documents which corroborate the allegations in the SAR. Therefore, the Weeks interviews are not officially identified as evidentiary exhibits or attached to the report. Our office requested copies of these interviews from the Special Agent and they were provided. We would advise including these interviews with the plea recommendation when it is sent to the Tax Division.*

This **Streamlined SAR** lacks a date but references Weeks' guilty plea, which was signed on September 24, 2020. **This proves the document was created in 2021 or later.** This discrepancy is legally significant because it suggests that the government **either fabricated or retroactively altered** the SAR to align with its prosecution strategy, thereby misleading the defense and the court, **which constitutes prosecutorial misconduct.** The provided SAR cannot be the one referenced in the plea agreement, meaning the government has either withheld the original SAR or created a post-plea SAR to justify its actions retroactively.

The **government's refusal to provide the original SAR suggests not just negligence, but a deliberate effort to suppress or falsify evidence, constituting fraud on the court.** The post-dating of the SAR indicates an **intentional misrepresentation** designed to support the prosecution's case, raising serious concerns about prosecutorial integrity.

Additionally, Defendant was **repeatedly transferred between different prison facilities under suspicious circumstances, limiting his ability to coordinate his defense with legal counsel and creating psychological pressure to accept a plea deal.** These unexplained transfers, combined with the DOJ's refusal to disclose related records, suggest that **the government engaged in intentional misconduct to weaken Defendant's ability to challenge its case.**

The government has not disclosed **who authorized these transfers, why they were necessary, or whether DOJ officials deliberately used them as a coercion tactic.** False

statements regarding the justification for these transfers may constitute **perjury under 18 U.S.C. § 1621 and § 1001** and **obstruction of justice under 18 U.S.C. § 1519.**

These violations **are not procedural oversights but calculated acts meant to deprive Defendant of a fair trial and due process.**

This misconduct parallels the issues in **United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993)**, where the court condemned prosecutorial deception, and **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)**, where the court sanctioned prosecutors and dismissed an indictment due to prosecutorial misconduct in failing to disclose Brady materials.

**On February 13, 2025, Defendant submitted a formal Request for Clarification Letter (Exhibit B) to AUSA Torntore**, reiterating the demand for the SAR and other key records. **The Plea Agreement (Docket Entry 148, Nov. 5, 2020) and Weeks Plea Agreement & Grand Jury Expansion Memo, CT-122627-20 October 8, 2020 (Exhibit C) confirms that the government had access to the SAR but failed to disclose it.**

The Treasury August 17 & 25, 2020 Proffer Memos (**Exhibit D**) and the April 19, 2019, meeting notes (**Exhibit F**) contain statements by Weeks that contradict key elements of the government's Weeks Plea Agreement & Grand Jury Expansion Memo, CT-122627-20 October 8, 2020. Defendant has made **multiple good-faith efforts to obtain discovery through formal requests**, including the **September 5, 2024, Records Request (Exhibit A)** and the February 13, 2025, **Request for Clarification Letter (Exhibit B). The Certificate of Service (Exhibit E) confirms these requests were properly served, yet the government has failed to respond or justify the omission of critical evidence.**


# III. LEGAL BASIS FOR DISCOVERY

## 1. Rule 16 Discovery Obligations (Federal Rules of Criminal Procedure)

Under Rule 16(a)(1)(E), the government **must disclose any evidence that is material to the preparation of the defense**. The records sought—including **DOJ communications about plea negotiations, charging decisions, and witness interactions**—are material because they bear directly on whether the prosecution's actions **deprived Defendant of due process and Brady rights**.

## 2. Brady v. Maryland: The Government Must Disclose Exculpatory Evidence

In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that the **prosecution must disclose evidence that is favorable to the accused**. This includes:

- **DOJ and FBI internal records evaluating the government's charging rationale.**
- **All documents discussing the placement of Defendant near key witnesses (Goettsche and Abel).**
- **The original Special Agent's Report (SAR), which was either altered or withheld by the prosecution.**

Furthermore, these violations directly impact Defendant's Motion to Withdraw Plea, as they demonstrate that the plea was entered without full knowledge of material evidence. **Under Brady v. Maryland, 373 U.S. 83 (1963)** and **United States v. Ruiz, 536 U.S. 622 (2002)**, a plea agreement must be based on full disclosure of all material facts. The government's suppression of key exculpatory and impeachment evidence directly undermines the voluntariness of Defendant's plea, reinforcing the need for immediate disclosure of the requested materials before the plea withdrawal motion is ruled upon.

The Government's motion (**Docket Entry 399**) (**Exhibit I**) opposing plea withdrawal further underscores the urgency of resolving these discovery disputes. The prosecution's opposition is based on the claim that Defendant's guilty plea was voluntary, yet it continues to withhold key exculpatory materials that would inform the Court's ruling on voluntariness. The Supreme Court has held that **a guilty plea is involuntary if material exculpatory evidence was withheld at the time the plea was entered** (see **Brady v. United States, 397 U.S. 742 (1970)**; **United States v. Ruiz, 536 U.S. 622 (2002)**). Defendant respectfully submits that the **Government's opposition brief should not be considered until these missing records are disclosed and reviewed.**

The Government's acknowledgment in Footnote 7 that a traditional Special Agent's Report (SAR) was never created, but instead supplemented with additional documents, raises serious concerns of evidentiary suppression. Defendant separately requests the disclosure of the **April 19, 2019 SAR**—or any related Special Agent reports or investigative summaries drafted before the plea agreement—to determine whether material exculpatory information was withheld prior to plea negotiations. The existence of an April 19, 2019 SAR is evidenced by internal Government communications discussing Weeks' interviews and their intended use in plea recommendations. If this report exists, it is **highly relevant to both Brady disclosures and the pending Motion to Withdraw Plea (Docket Entry 401)**, as it may contain statements or evidence that contradict the prosecution's case or plea agreement representations. Under **Brady v. Maryland, 373 U.S. 83 (1963)** and **United States v. Bagley, 473 U.S. 667 (1985)**, the Government must disclose all evidence that is favorable to the defense. By withholding Weeks' interviews and failing to disclose all SAR-related materials, the Government has deprived Defendant of evidence that could have been critical in evaluating the strength of the prosecution's case at the time of plea negotiations. The Court should compel full production of these materials before ruling on the pending Motion to Withdraw Plea (Docket Entry 401).

**The government's refusal to provide the original SAR suggests suppression of exculpatory evidence and constitutes prosecutorial misconduct. As stated in**

6

**United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993), the withholding of key evidence warrants judicial sanctions, including dismissal of charges in cases of egregious misconduct.**

The DOJ's failure to disclose these materials violates *Brady* obligations, as well as *United States v. Bagley*, 473 U.S. 667 (1985), which requires full disclosure of **exculpatory and impeachment evidence**.

## 3. United States v. Nixon: Limits on Government Privilege Claims

Given the government's **failure to comply with formal discovery requests**, Defendant respectfully **requests that this Court compel immediate disclosure** of the requested records and impose **judicial remedies** for the **government's failure to comply with discovery obligations**. The Supreme Court in **United States v. Nixon, 418 U.S. 683 (1974)** ruled that **government privilege claims must meet strict judicial scrutiny before being upheld in withholding material evidence**. Additionally, in **United States v. Zolin, 491 U.S. 554 (1989)**, the Court **approved in-camera reviews** of government records **to assess the validity of privilege claims and prevent the suppression of evidence**. Furthermore, if government officials **knowingly misrepresented facts or suppressed material evidence**, **United States v. Aguilar, 515 U.S. 593 (1995)** establishes that **such conduct may constitute obstruction of justice under 18 U.S.C. § 1519**.

Under *United States v. Nixon*, 418 U.S. 683 (1974), the government **cannot withhold evidence without demonstrating a compelling justification**. If the DOJ claims privilege over any withheld discovery, it must:

- **Produce a privilege log** identifying the documents withheld and the legal basis for each exemption.
- **Allow an in-camera review** by the Court to determine whether the privilege claims are valid under *United States v. Zolin*, 491 U.S. 554 (1989).

## 4. Sixth Amendment Violations & Prosecutorial Misconduct by AUSA Hoxie

The government's **deliberate placement of Defendant near key witnesses**, as well as **AUSA Justin Hoxie's involvement in instructing Defendant regarding communications with co-defendants**, raises **serious constitutional concerns**. The repeated **unexplained transfers of Weeks between multiple detention facilities** further **obstructed his ability to coordinate with legal counsel**, violating his due process rights.

Under **Miranda v. Arizona, 384 U.S. 436 (1966)**, the government is **obligated to inform the defendant of legal rights**, and placing him in uncertain conditions **without legal counsel** may constitute a **violation of constitutional protections**. Additionally, in **United States v. Olsen, 737 F.3d 625 (2013)**, the court ruled that **a pattern of suppression and delay in evidence disclosure demands heightened judicial scrutiny**. Furthermore, **United States v. Aguilar, 515 U.S. 593 (1995)** establishes that **government misrepresentations about procedural actions may constitute obstruction of justice under 18 U.S.C. § 1519**.

The Supreme Court has repeatedly ruled that **government interference with a defendant's access to legal counsel is unconstitutional**:

- **United States v. Henry, 447 U.S. 264 (1980)** – Placing a defendant near a **government witness** with the **intent to elicit information without counsel's knowledge** violates the **Sixth Amendment**.
- **Massiah v. United States, 377 U.S. 201 (1964)** – A defendant's **statements obtained outside the presence of legal counsel, when facilitated by government action, are inadmissible**.

Defendant seeks records that would clarify:

- **Whether AUSA Hoxie or other DOJ officials coordinated Defendant's placement with key witnesses.**
- **Whether Hoxie or other officials instructed Defendant to engage or avoid discussions with co-defendants.**
- **Whether defense counsel was properly notified of these interactions before plea negotiations took place.**

The DOJ's **refusal to provide this information**, along with its **failure to produce the original SAR**, suggests **deliberate suppression of evidence**. Any **false statements made regarding the SAR's existence and contents** may constitute **perjury under 18 U.S.C. § 1621 and § 1001**, reinforcing the **need for judicial intervention**.

## 5. Fraud on the Court & Government Misconduct Warrants Sanctions

The government's **intentional misrepresentation of SAR evidence** constitutes **fraud on the court**, justifying **sanctions or dismissal** under **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** and **Bank of Nova Scotia v. United States, 487 U.S. 250 (1988)**. The **Supreme Court in Hazel-Atlas** ruled that **fraud on the court, including the use of altered evidence, warrants immediate judicial intervention**.

The **February 26, 2025, letter to AUSA Torntore (Exhibit K)** further exposes fraudulent government conduct. This letter provides evidence that **4.99995661 BTC** was transferred from Defendant's seized wallets but was not accounted for in the government's official reports. The DOJ's refusal to acknowledge or correct this discrepancy constitutes material misrepresentation, reinforcing the need for immediate judicial intervention and evidentiary hearings to determine whether prosecutorial misconduct has tainted these proceedings.

Additionally, in **United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993)**, the Ninth Circuit held that **prosecutorial deception, particularly in withholding key documents, justifies judicial sanctions**. Likewise, in **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)**, the court reaffirmed that **concealment of material evidence can warrant dismissal of charges**.

If the prosecution **falsified documents or presented misleading evidence**, this Court has the **authority to suppress tainted evidence, impose sanctions, or dismiss charges as necessary to preserve judicial integrity**.

# IV. RELIEF REQUESTED

Given the direct impact of this discovery on Defendant's pending Notice to Withdraw Plea (**Docket Entry 401) (Exhibit J**), Defendant respectfully requests that this Court **expedite the ruling** on this Motion to Compel Discovery. Failure to resolve these discovery issues prior to deciding the plea withdrawal notice would result in severe prejudice, as Defendant cannot effectively argue for plea withdrawal without access to exculpatory and material evidence suppressed by the government.

The Government's opposition brief (**Docket Entry 399**) strategically ignores the discovery violations raised in Defendant's **February 13, 2025**, letter, further reinforcing the need for judicial oversight. Defendant respectfully requests that this Court compel the immediate disclosure of all withheld records before determining the validity of the guilty plea, ensuring that all Brady materials and grand jury records are fully reviewed in light of potential prosecutorial misconduct.

**Defendant respectfully requests that this Court issue an order compelling the government to produce the following records immediately:**

Given the government's failure to comply with formal discovery requests (**Exhibits A, B, and E**), Defendant respectfully requests that this Court order immediate disclosure of the requested records.

## 1. DOJ, SEC, IRS, and FBI Communications

Furthermore, these violations directly impact Defendant's Notice to Withdraw Plea, as they demonstrate that the plea was entered without full knowledge of material evidence. Under **Brady v. Maryland, 373 U.S. 83 (1963)** and **United States v. Ruiz, 536 U.S. 622 (2002)**, a plea agreement must be based on full disclosure of all material facts. The government's suppression of key exculpatory and impeachment evidence directly undermines the voluntariness of Defendant's plea, reinforcing the need for immediate disclosure of the requested materials before the plea withdrawal motion is ruled upon.

1.1 **DOJ Internal Communications** – All emails, memos, and notes discussing why the **Special Agent's Report (SAR)** was not disclosed in Weeks' discovery. The SAR is crucial because it contains **exculpatory evidence** related to BCN's operations and Weeks' role.

1.2 **Plea Negotiations and Charging Decisions** – Compel the production of all DOJ, SEC, IRS, and FBI communications related to the **SAR (Exhibit G), Plea Agreement (Docket Entry 148, Nov. 5, 2020) and Weeks Plea Agreement & Grand Jury Expansion Memo, CT-122627-20 October 8, 2020 (Exhibit C), plea negotiations,**

**and the timing of tax charges** against Defendant.

1.3 Full Special Agent's Report (SAR) from April 19, 2019 – Defendant requests the immediate disclosure of the **April 19, 2019 SAR**—or any related Special Agent reports, interview summaries, or investigative records drafted before the plea agreement. The existence of this SAR is evidenced by internal Government communications referencing Weeks' interviews and their intended use in plea recommendations. If this document was used to supplement the Streamlined SAR or inform plea negotiations, it must be disclosed under **Brady v. Maryland, 373 U.S. 83 (1963)** and **Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure**. To date, this SAR has not been provided, and its absence raises serious concerns of evidentiary suppression. Defendant requests all versions, drafts, supplements, or references to this SAR, including any DOJ and Treasury records discussing its use in plea negotiations.

These materials are particularly relevant to Defendant's pending Motion to Withdraw Plea. The government's failure to disclose grand jury materials and investigative reports before Defendant's plea agreement suggests that key exculpatory evidence was withheld, preventing an informed decision. Under United States v. Armstrong, 517 U.S. 456 (1996), selective prosecution claims require discovery when evidence suggests discriminatory enforcement, and under United States v. Williams, 504 U.S. 36 (1992), prosecutors cannot mislead a grand jury by omitting exculpatory material. If this suppressed evidence contains proof that the government selectively prosecuted Defendant or manipulated the charging process, it strengthens the plea withdrawal argument and demands full disclosure before the Court rules on the matter.

1.4 **Grand Jury Materials** – All grand jury transcripts and exhibits related to **tax enforcement decisions** against Defendant, including records on the government's **delay in bringing tax charges**.

1.5 **In-Camera Review** – Order an **in-camera review of DOJ and IRS records** to determine whether an earlier SAR existed but was not disclosed.

1.6 **Judicial Remedies for Noncompliance** – If the government **fails to comply**, Defendant requests that this Court:

- **Suppress any evidence** derived from the altered SAR.
- **Preclude the prosecution from relying on plea statements influenced by suppressed evidence.**
- **Issue monetary sanctions or other deterrent measures to prevent further misconduct.**
- **Dismiss charges if the evidence establishes intentional prosecutorial misconduct.**

1.7 **Missing SAR Exhibits & Interviews**
Footnote 7 of the **Weeks Plea Agreement & Grand Jury Expansion Memo**

**(CT-122627-20, October 8, 2020)** (Exhibit C) reveals that a **traditional Special Agent's Report (SAR) was never created for this case**. Instead, a **streamlined SAR** was supplemented with **additional documents that allegedly corroborate the allegations**. Furthermore, the footnote acknowledges that **Weeks' interviews were not officially identified as evidentiary exhibits or attached to the SAR**.

The Government **requested and received copies of these interviews from the Special Agent**, demonstrating that these materials exist and are in the Government's possession. Under **Brady v. Maryland, 373 U.S. 83 (1963), Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure, and United States v. Bagley, 473 U.S. 667 (1985),** all documents supplementing the SAR and all Weeks-related interviews must be disclosed immediately. The Government cannot selectively produce only portions of the SAR while withholding attached or referenced documents.

**Defendant requests the immediate production of the following materials:**

- **All supplemental documents referenced in the SAR, including any exhibits, reports, memos, or corroborating materials.**
- **All Defendants interviews that were requested and received by the Government.**
- **All communications between the Special Agent and the Government regarding the creation, modification, or supplementation of the SAR.**


## 2. Bureau of Prisons (BOP) and U.S. Marshals Service Records

2.1 **Transport Logs** – All records documenting **Defendant's prison transfers and placement near key government witnesses**.


2.2 **Use of Transport to Pressure Defendant** – These records are relevant because **transport placements were used to pressure Defendant by exposing him to government witnesses or co-defendants**. *Massiah v. United States*, 377 U.S. 201 (1964), prohibits **government interference with legal representation**.

## 3. Unanswered Questions from the Bureau of Prisons (BOP) September 5, 2024 Letter

3.1 **IRS and BCN Tax Correspondence** – Records of **third-party information or reports used to determine Defendant's tax obligations**.

3.2 **Proffer Session Transcripts** – Any and all **interview transcripts or summaries of proffer sessions from co-defendants** in this matter.


3.3 **Written Explanation for Withholding** – If the government withholds any of these documents, Defendant requests a **detailed written explanation** stating the legal

Docusign Envelope ID: BEA39B7E-3F5A-42DB-9827-7CF98AD7B595
Case 2:19-cr-00877-CCC   Document 446-1   Filed 06/26/25   Page 12 of 28   PageID: 4940
Case 2:19-cr-00877-CCC   Document 426-1   Filed 06/06/25   Page 62 of 107   PageID: 5691

basis for doing so. *United States v. Olsen*, 737 F.3d 625 (9th Cir. 2013), reinforces that **failure to disclose exculpatory financial records violates due process**.

## 4. Questions from the Seized Assets Letter February 26, 2025

Defendant demands the immediate disclosure of all records related to seized assets, as outlined in **Exhibit K (February 26, 2025, Letter to AUSA Torntore).** The Court should compel the government to:

4.1 **Provide full transaction records** detailing all movements of seized cryptocurrency assets, including the missing **4.99995661 BTC.**

4.2 **Conduct an independent forensic audit** to verify whether seized cryptocurrency was misappropriated or unlawfully transferred.

4.3 **Issue a judicial order** requiring the government to return all unlawfully seized property, including gold, silver, and stock certificates, within **ten (10) business days.**

Failure to comply will warrant sanctions, as continued refusal to return non-forfeitable assets constitutes a **violation of due process and obstruction of justice.**

## 5. Government-Orchestrated Witness Interactions & Sixth Amendment Violations

5.1 **Intentional Placement Near Government Witnesses** – The government **deliberately placed Defendant in proximity to key witnesses**—Matthew Goettsche and Joseph Abel—raising **significant due process and Sixth Amendment concerns**.

5.2 **Records of Government Coordination** – Defendant seeks discovery on whether **government officials facilitated or monitored these interactions and whether his legal counsel was notified**.

5.3 **Legal Basis** – *United States v. Henry*, 447 U.S. 264 (1980), held that **deliberate government action placing a defendant near a cooperating witness without counsel's knowledge** constitutes a constitutional violation. Likewise, *Massiah v. United States*, 377 U.S. 201 (1964), prohibits the **government from eliciting statements from a defendant outside the presence of legal counsel**.

5.4 **Discovery Requests** – Defendant requests:

- **Any instructions given to Defendant regarding discussions with co-defendants while in detention.**
- **Internal DOJ, FBI, or Bureau of Prisons (BOP) communications** discussing the decision to **place Defendant near key witnesses.**

- Records showing whether Defendant's legal counsel was informed of these interactions before plea negotiations.
- Any documentation confirming that Defendant was properly advised of his rights in relation to these interactions.

## 6. Demand for Government Justification on Attorney Non-Notification

6.1 **Denial of Arraignment & Detention Hearing Violated Due Process** – **Unlike co-defendants Goettsche and Abel, Defendant Weeks was never given an arraignment or detention hearing. This omission violated Defendant's due process rights and denied him the opportunity to contest pretrial detention, request bail, or raise constitutional violations.**

**The DOJ must explain why Weeks was treated differently and why his attorney was never informed of these proceedings.**

This omission **denied Defendant the opportunity to contest pretrial detention, request bail, or raise constitutional violations.** The **DOJ must explain why Weeks was treated differently, and why his attorney (Docket Entry 15) was never informed of these proceedings.**

6.2 **Violation of Right to Counsel & Failure to Notify Defense Counsel** – Internal **DOJ or FBI communications regarding Weeks' transport and attorney notification must be disclosed,** as failure to notify counsel constitutes a **Sixth Amendment violation under Brewer v. Williams, 430 U.S. 387 (1977)**.

6.3 **Potential Miranda Violation** – Any **records confirming whether Defendant was informed of his right to counsel before transport and detention**. The government's failure to notify Defendant's attorneys about his placement near a witness raises concerns under *Miranda v. Arizona*, 384 U.S. 436 (1966).

6.4 **Bureau of Prisons & U.S. Marshals Service Communications** – All **internal government instructions on restricting Defendant's communication with his attorneys**.

6.5 **Written Justification for Due Process Violations** – If the government contends that no wrongdoing occurred, it must provide a **written justification** explaining:

- **Why Defendant was not given an arraignment and detention hearing** like co-defendants.
- **Why Defendant's attorney was not informed of transport conditions**.
- **Why Defendant was placed near a government witness without prior defense notification**.

Docusign Envelope ID: BEA39B7E-2F2A-42DB-9827-7CF98AD7B595
Case 2:19-cr-00877-CCC   Document 426-1   Filed 02/26/25   Page 14 of 28 PageID: 4942
Case 2:19-cr-00877-CCC   Document 446-1   Filed 06/26/25   Page 64 of 107 PageID: 5693

## 7. Fraud and Perjury Determinations and Criminal Liability for False Statements by the Government

**Fraud and Perjury Claims Warrant an Evidentiary Hearing & Criminal Referral**
The **Government's Letter Opposing Plea Withdrawal (Docket Entry 399)**, filed on **February 18, 2025**, is **further evidence of fraud on the court and perjury**. This motion was submitted **after the Government received Defendant's February 13, 2025, discovery request**, yet it **fails to acknowledge the missing SAR materials, grand jury records, and Brady violations** raised by Defendant. The **Government is actively misrepresenting the voluntariness of Defendant's plea while continuing to withhold exculpatory evidence** that could support plea withdrawal.

This directly violates:

- **Brady v. Maryland, 373 U.S. 83 (1963) – Failure to disclose exculpatory evidence**.
- **Giglio v. United States, 405 U.S. 150 (1972) – Concealment of impeachment evidence affecting witness credibility**.
- **18 U.S.C. § 1001 (False Statements) – Knowingly making false statements in court proceedings**.
- **18 U.S.C. § 1519 (Obstruction of Justice) – Altering or concealing documents to impede legal proceedings**.

Furthermore, the **Government's refusal to disclose these materials before the Court rules on plea withdrawal** constitutes **fraud on the court** under **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** and **obstruction of justice** under **18 U.S.C. § 1519**.

Defendant respectfully requests that the Court:

1. **Hold an evidentiary hearing** to determine the extent of the **Government's material misrepresentations** in **Docket Entry 399** and their impact on **plea withdrawal**.
2. **Recognize that Docket Entry 399 contains false statements** and deliberate omissions intended to **mislead the Court**.
3. **Refer responsible DOJ officials for criminal investigation** under **18 U.S.C. § 1001 and 18 U.S.C. § 1519**.
4. **Order the immediate disclosure** of the **suppressed April 19, 2019 SAR, and all grand jury materials** relevant to **plea withdrawal**.
5. **Impose sanctions** against DOJ officials for **willful misrepresentations that obstruct Defendant's right to a fair legal process**.

**Legal Basis:**

If government officials knowingly provided false statements or altered evidence, this Court has the authority to impose sanctions and refer individuals for prosecution. See **United States v. Aguilar, 515 U.S. 593 (1995)** (false statements by officials can constitute obstruction of justice) and **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** (fraud on the court warrants judicial intervention).

# V. CONCLUSION & REQUEST FOR RESPONSE

**The DOJ has failed to respond to Defendant's good-faith request for clarification and discovery.** This Court should therefore **compel immediate disclosure** of the requested records within **seven (7) days**. The **DOJ's repeated failure to disclose exculpatory evidence, coupled with the fabrication of the SAR and suppression of legal counsel notification, constitutes prosecutorial misconduct, fraud on the court, and a violation of Defendant's due process rights.**

**WHEREFORE, Defendant respectfully requests that this Court:**

## 1. Immediate Production of Outstanding Discovery

**Order the government to immediately produce all outstanding discovery** no later than March 3, 2025, including DOJ, BOP, and IRS records, and all materials related to:

- Any **instructions given by AUSA Hoxie or any other government official** regarding Defendant's interactions with co-defendants Goettsche and Abel.
- **Prosecutorial communications** about plea negotiations and tax charges.
- The **original Special Agent's Report (SAR) and related grand jury materials.**

**If any records are withheld, require the DOJ to provide a privilege log** within **seven (7) days**, specifying the legal basis for each exemption.

**If necessary, conduct an in-camera review** to determine whether any privilege claims are improperly asserted.

## 2. Immediate Evidentiary Hearing to Determine Government Misconduct

**Schedule an evidentiary hearing no later than March 10, 2025**, to resolve disputed factual issues directly impacting **Defendant's Notice to Withdraw Plea (Docket Entry 401)** and the Government's opposition (**Docket Entry 399**). The hearing should determine the extent of **prosecutorial misconduct, Brady violations, and fraud on the court**, including:

1. Whether the Government's **suppression of exculpatory evidence, including the April 19, 2019 SAR, the Streamlined SAR, grand jury materials, and Brady disclosures, directly impacted Defendant's ability to make an informed plea decision, thereby warranting plea withdrawal.**
2. Whether the Government **deliberately withheld SAR-related interviews, exhibits, and investigative records supplementing the Streamlined SAR that could have influenced the plea decision, and whether this warrants an adverse inference.**
3. Whether the Government withheld exculpatory evidence in violation of **Brady v. Maryland, 373 U.S. 83 (1963)**, and whether its failure to disclose such

evidence warrants **sanctions or dismissal of charges** under **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)**.

4. Whether the **Streamlined SAR was altered, fabricated, or post-dated** to justify prosecution strategies, constituting **fraud on the court** under **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)**, and whether DOJ officials knowingly made false statements to the Court in violation of **18 U.S.C. § 1001 (False Statements)**.

5. Whether the **Government's placement of Defendant near key witnesses (Goettsche & Abel) without attorney consultation** constituted **deliberate witness manipulation**, violating Defendant's **Sixth Amendment right to counsel** under **United States v. Henry, 447 U.S. 264 (1980)** and **Massiah v. United States, 377 U.S. 201 (1964).**

6. **Whether the Government's opposition to plea withdrawal (Docket Entry 399) contained material misrepresentations regarding the voluntariness of Defendant's plea while evidence remained undisclosed, thereby constituting fraud on the court.**

7. Whether DOJ officials engaged in **obstruction of justice** by **knowingly suppressing material discovery** and providing selective evidence to the defense in violation of **18 U.S.C. § 1519 (Obstruction of Justice)**.

8. **Whether the withheld evidence supports Defendant's selective prosecution claim, justifying expanded discovery under United States v. Armstrong, 517 U.S. 456 (1996).**

9. Whether the Government intentionally **suppressed the April 19, 2019 SAR, grand jury materials, and tax records that could prove prosecutorial misconduct or undermine the plea agreement.**

10. Whether the Government submitted **a fraudulent asset seizure report, Crypto-Seizures Memorandum (Exhibit L) on December 10, 2019 as outlined in Exhibit K (February 26, 2025, Letter to AUSA Torntore)**.

**Given that the evidentiary hearing will resolve disputed factual issues essential to plea withdrawal, this Court must rule on discovery compliance before proceeding with sentencing.** The Supreme Court has long held that sentencing must be based on **full disclosure of material exculpatory evidence** *(see Brady v. Maryland, 373 U.S. 83 (1963); United States v. Bagley, 473 U.S. 667 (1985))*. If the withheld evidence proves that Defendant's plea was **induced through coercion or misinformation**, sentencing before resolving these violations would result in **irreparable prejudice**.

## 4. Impose Sanctions & Refer DOJ Officials for Criminal Investigation

**Impose sanctions if fraud, perjury, or prosecutorial misconduct is established, including:**

- **Preclusion of key government evidence** related to plea negotiations, tax calculations, and cryptocurrency seizures.

- **An adverse inference against the prosecution** regarding witness interactions, SAR alterations, and withheld discovery.
- **Dismissal of charges** if the misconduct is deemed sufficiently egregious under *United States v. Kojayan*, 8 F.3d 1315 (9th Cir. 1993).

**Make a formal judicial determination that:**

- The **Streamlined SAR was either altered, fabricated, or post-dated**, constituting **fraud on the court**.
- DOJ officials knowingly provided **false statements** or withheld **exculpatory evidence**, violating *Brady v. Maryland*, 373 U.S. 83 (1963).
- The **repeated, unexplained transfers of Defendant between multiple prison facilities constituted prosecutorial misconduct** intended to interfere with Defendant's right to legal representation and due process.

**Make a formal finding of prosecutorial misconduct** and immediately refer all responsible DOJ officials for **criminal investigation** under **18 U.S.C. § 1001 (False Statements)** and **18 U.S.C. § 1519 (Obstruction of Justice)**.

**Issue sanctions** and consider **contempt proceedings** against DOJ officials who knowingly participated in the **suppression of exculpatory evidence, falsification of records, or obstruction of these judicial proceedings**.

Failure to hold an evidentiary hearing would allow the Government to evade accountability for its **fraudulent representations to the Court** and deprive Defendant of his **constitutional right to due process**.

## 5. Show Cause Hearing for AUSA Anthony Torntore

If fraud, perjury, or prosecutorial misconduct is established, the Court should order a **show cause hearing** requiring **AUSA Anthony Torntore** to explain why the government failed to disclose the requested materials and whether this failure constitutes prosecutorial misconduct.

This hearing is necessary because Defendant has been incarcerated for over **5 years** based on **fraudulent and perjured representations** made by the prosecution. AUSA Torntore must be required to **justify why these materials were withheld** and whether this constitutes **intentional misconduct**.

There is clear legal precedent for holding prosecutors accountable when they fail to disclose exculpatory evidence and mislead the court:

- **United States v. Stevens (2008):** The court **vacated Senator Ted Stevens' conviction** after it was revealed that prosecutors withheld exculpatory evidence. U.S. District Judge Emmet G. Sullivan ordered a **contempt hearing** to investigate the misconduct.

17

- **Michael Morton Case (2011):** A **court of inquiry** found that prosecutor Ken Anderson **intentionally suppressed exculpatory evidence**, leading to a wrongful conviction. Anderson was held in **contempt of court, jailed, and disbarred**.
- **Richard Glossip Case (2025):** The Supreme Court **overturned Glossip's conviction and death sentence** after it was revealed that prosecutors **suppressed exculpatory evidence and relied on false testimony**.

These cases demonstrate that courts have a **legal duty** to hold prosecutors accountable when they engage in **misconduct, Brady violations, and fraudulent representations**.

Accordingly, this Court should **order a show cause hearing** for AUSA Torntore **only after the immediate evidentiary hearing**, ensuring that all **relevant misconduct findings** have been fully established before requiring his response.

## 6. Asset Return & Government Accountability

The Government has unlawfully retained Defendant's **seized assets, including cryptocurrency and physical property**, despite multiple formal requests for their return. These assets, confiscated on **December 10, 2019**, have not been subject to forfeiture proceedings, and the Government has failed to provide any legal justification for continued possession. The fraudulent **Crypto-Seizures Memo** and the **unaccounted 4.99995661 BTC transfer** further indicate misconduct and require immediate corrective action.

Accordingly, this Court must **order the Government to produce all records related to the seizure, storage, and handling of these assets and compel their full return within ten (10) business days**.

Failure to act would **constitute an unlawful deprivation of property**, violating **Rule 41(g) of the Federal Rules of Criminal Procedure** and due process protections under the **Fifth Amendment**.

## 7. Defer Rulings Until Discovery Violations Are Resolved

**Defer ruling on the pending Motion to Dismiss** until after the government complies with the outstanding discovery requests and the Court determines whether the withheld evidence impacts Defendant's plea withdrawal motion and due process rights. The resolution of these discovery disputes is necessary before the Court considers dismissal to ensure a just and complete adjudication.

**Defer ruling on the pending Notice to Withdraw Plea** until after a decision on the Motion to Compel is taken. The resolution of the discovery disputes is essential before considering the voluntariness and validity of Defendant's plea withdrawal Notice.

## 8. Stay of Sentencing Proceedings Until Discovery Issues Are Resolved

Given these **substantial due process violations**, Defendant **cannot fairly proceed to sentencing on March 12, 2025**, without first resolving the **fraudulent suppression of evidence and material perjury** in the Government's filings. The Government has **deliberately withheld exculpatory materials**, misrepresented facts in **Docket Entry 399**, and engaged in conduct that constitutes **fraud on the court**. Proceeding with sentencing under these conditions would violate **Defendant's constitutional rights** and undermine the **integrity of these proceedings**. Accordingly, this Court must **compel the immediate production of the requested discovery, schedule an evidentiary hearing** to determine the extent of prosecutorial misconduct, and **stay sentencing** until these issues are fully resolved.

Notably, the Government, in **Docket Entry 397**, has moved for **sentencing to proceed despite these unresolved discovery disputes**. This motion reflects a **deliberate attempt to finalize sentencing** without first addressing Defendant's **valid claims of suppressed Brady materials, fraudulent SAR records, and grand jury irregularities**. Such an approach **disregards due process** and obstructs Defendant's ability to present **exculpatory evidence in support of his Notice to Withdraw Plea (Docket Entry 401)**. Given the **Government's own request** to move forward, it is **critical that this Court first resolve the outstanding discovery violations** before allowing sentencing to proceed.

## 9. Bail Conditions Review & Modification Request Due to Government Misconduct

Defendant respectfully requests that this Court **review and reconsider the current bail conditions** due to **prosecutorial misconduct, fraud on the court, and perjury**. The **severe pretrial restrictions** imposed on Defendant are **legally unjustifiable** and stand in **stark contrast to the treatment of similarly situated co-defendants**.

Defendant has remained under strict **pretrial bail conditions for over 5 years**, despite:

- **The Government's suppression of exculpatory evidence** that would have impacted pretrial release considerations.
- **The Government's fraudulent representations to the Court** regarding risk assessments and selective enforcement of bail conditions.
- **Perjured statements** by the prosecution regarding Defendant's alleged flight risk and danger to the community.

### Request for Immediate Bail Termination or Modification

Given the **misconduct surrounding Defendant's pretrial treatment**, Defendant requests that the Court:

1. **Terminate Bail Conditions Entirely** – The prosecution has repeatedly **misrepresented evidence**, failed to disclose exculpatory material, and selectively enforced **harsher** pretrial restrictions on Defendant compared to co-defendants. Defendant requests **immediate termination of all bail conditions** due to these violations.
2. **Alternatively, Modify Bail Conditions** – If full termination is denied, Defendant requests a **reduction of restrictive measures**, including but not limited to:
   ○ **Removal of the ankle bracelet (GPS monitoring)**
   ○ **Elimination of travel restrictions**
   ○ **Reduction of reporting requirements**

## Legal Basis for Bail Modification Request

- **Fraud on the Court & Perjury:** The Government has **knowingly made false representations** regarding Defendant's bail conditions, violating **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** (fraud on the court).
- **Brady Violations & Prosecutorial Misconduct:** The failure to disclose exculpatory evidence justifies reconsideration of bail restrictions under **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)**.
- **Excessive & Unjustified Bail Conditions:** Prolonged pretrial restrictions violate **United States v. Salerno, 481 U.S. 739 (1987)**, which requires bail conditions to be **narrowly tailored and not excessive**.
- **Selective Enforcement of Bail Restrictions:** The DOJ has imposed **disproportionately severe conditions** on Defendant compared to other BCN defendants, violating **United States v. Armstrong, 517 U.S. 456 (1996)** and **United States v. Bass, 536 U.S. 862 (2002)**.

Defendant's continued **pretrial restrictions are no longer legally justified** due to:

- **The prosecution's fraud on the court and Brady violations**, which undermine all prior representations regarding bail risk.
- **The disparate treatment of Defendant compared to co-defendants**, many of whom were granted **more favorable pretrial conditions despite greater managerial roles in BCN**.
- **The lack of a sentencing date**, resulting in a de facto **pretrial punishment rather than supervision**.

## Request for Immediate Bail Hearing & Deadline for Court Action

If the Court does not immediately terminate or modify the bail conditions, Defendant **requests an immediate hearing** on whether continued restrictions are legally permissible. The DOJ's pattern of **misconduct, selective enforcement, and perjury warrant immediate judicial intervention**. The **burden must now shift to the Government** to justify why these excessive and disparate restrictions should remain in place.

**Defendant respectfully requests that this Court issue a ruling on the bail modification request no later than March 15, 2025. If the Court does not rule on the request by this**

Docusign Envelope ID: BEA39B7E-3F5A-42DB-9827-7CE98AD7B595

Case 2:19-cr-00877-CCC    Document 1426-1    Filed 02/26/25    Page 21 of 23    PageID: 4949
Case 2:19-cr-00877-CCC    Document 1426-1    Filed 02/26/25    Page 73 of 107    PageID: 5700

date, Defendant requests that a bail modification hearing be scheduled no later than March 20, 2025.

# VI. LEGAL BASIS

**Due Process & Brady Violations**

- **Brady v. Maryland, 373 U.S. 83 (1963)** – The government must disclose exculpatory evidence.
- **United States v. Bagley, 473 U.S. 667 (1985)** – Failure to disclose impeachment or exculpatory evidence violates due process.
- **Giglio v. United States, 405 U.S. 150 (1972)** – Requires disclosure of any evidence affecting witness credibility.
- **Kyles v. Whitley, 514 U.S. 419 (1995)** – Suppression of material evidence affects fairness.
- **United States v. Ruiz, 536 U.S. 622 (2002)** – Plea agreements must be based on full disclosure.
- **United States v. Chapman, 524 F.3d 1073 (9th Cir. 2008)** – Indictment dismissed due to Brady violations.
- **United States v. Olsen, 737 F.3d 625 (9th Cir. 2013)** – Failure to disclose exculpatory evidence violates due process.
- **Strickler v. Greene, 527 U.S. 263 (1999)** – Clarifies standards for Brady violations.
- **Napue v. Illinois, 360 U.S. 264 (1959)** – Prohibits the use of false testimony.
- **Youngblood v. West Virginia, 547 U.S. 867 (2006)** – Even negligent Brady violations warrant relief.

**Fraud on the Court & Prosecutorial Misconduct**

- **United States v. Agurs, 427 U.S. 97 (1976)** – Misconduct that affects fairness warrants overturning convictions.
- **Mooney v. Holohan, 294 U.S. 103 (1935)** – Fraudulent evidence violates due process.
- **Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)** – Fraud on the court occurs when evidence is falsified.
- **United States v. Bundy, 968 F.3d 1019 (9th Cir. 2020)** – Charges dismissed due to egregious Brady violations.
- **Berger v. United States, 295 U.S. 78 (1935)** – Prosecutors must seek justice, not just convictions.

**Asset Return & Government Misconduct in Property Seizures**

- **Luis v. United States, 578 U.S. 5 (2016)** – Defendants have the right to retain non-forfeitable assets.
- **United States v. Chambers, 192 F.3d 374 (3d Cir. 1999)** – Courts can order return of unlawfully seized property.

- **United States v. $8,850, 461 U.S. 555 (1983)** – Delays in forfeiture proceedings violate due process.
- **United States v. Rodriguez-Aguirre, 264 F.3d 1195 (10th Cir. 2001)** – The government must justify delays in asset return.

**Selective Prosecution & Grand Jury Integrity**

- **United States v. Armstrong, 517 U.S. 456 (1996)** – Right to discovery in selective prosecution claims.
- **Wayte v. United States, 470 U.S. 598 (1985)** – The burden is on the government to justify selective prosecution.
- **United States v. Williams, 504 U.S. 36 (1992)** – Prosecutors cannot mislead a grand jury.
- **Bank of Nova Scotia v. United States, 487 U.S. 250 (1988)** – Dismissal warranted if prosecutorial misconduct taints grand jury proceedings.
- **United States v. Mechanik, 475 U.S. 66 (1986)** – Government misconduct affecting a grand jury is grounds for challenge.
- **Costello v. United States, 350 U.S. 359 (1956)** – Grand jury indictments must be based on legitimate evidence.

**Respectfully submitted,**

**Jobadiah Weeks, Pro Se**



Electronically Signed via DocuSign

Date: February 26, 2025

**Address:**

11627 West 74th Way
Arcada, Colorado 80005

**E-mail:** silenceweeks1@gmail.com

22

## Exhibits Attached:

- **Exhibit A:** September 5, 2024, Records Request
- **Exhibit B:** February 13, 2025, Request for Clarification Letter
- **Exhibit C:** Plea Agreement (Docket Entry 148, Nov. 5, 2020) and Weeks Plea Agreement & Grand Jury Expansion Memo, CT-122627-20 October 8, 2020
- **Exhibit D:** Treasury August 17 & 25, 2020, Proffer Memos
- **Exhibit E:** Certificate of Service (Filed February 26, 2025)
- **Exhibit F:** Meeting Notes April 19, 2019
- **Exhibit G:** Streamlined SAR (no date)
- **Exhibit H:** Docket Entry 15: Attorney Notice of Appearance (January 7, 2020)
- **Exhibit I:** Docket Entry 399: Government's Motion Opposing Plea Withdrawal (Filed February 18, 2025)
- **Exhibit J:** Docket Entry 401: Defendant's Motion to Withdraw Plea (Filed February 20, 2025)
- **Exhibit K:** February 26, 2025, Letter to AUSA Regarding Seized Assets
- **Exhibit L:** December 10, 2019: Crypto-Seizures Memo

# Exhibit F

February 26, 2025 Rule 41(g) Seized Assets Request.

**February 26, 2025**

**VIA EMAIL**

AUSA **Anthony Torntore**
United States Attorney's Office
District of New Jersey
970 Broad Street, 7th Floor
Newark, New Jersey 07102
Anthony.Torntore@usdoj.gov

**Subject: Request for Immediate Return of Seized Assets – U.S. v. Jobadiah Sinclair Weeks (19-cr-877-CCC)**

**Dear AUSA Torntore,**

I am formally demanding the **immediate return** of my **seized assets**, which were confiscated by federal agents during the execution of a **search and seizure warrant on December 10, 2019**, at **11627 West 74th Way, Arvada, Colorado**. This request follows **over two years** of communications with **David Stone of Stone Magnanini**.

On **January 14, 2025**, my legal representative **David Stone** was informed that **details on the seized assets' status and disposition would be provided shortly**. However, **no such details or assets have been returned**, necessitating this **formal demand for immediate action**.

Additionally, I refer to **Exhibit C**, the letter dated **September 5, 2024**, from **David Stone to your office**, requesting **records related to my cryptocurrency**. This letter **reinforces the need for transparency** regarding the handling of my seized assets.

# 1. Seized Property and Its Status

The government executed the **search warrant under Judge Scott T. Varholak's authorization** and seized, among other items:

- **Precious Metals:** Gold and silver coins, bullion, and bars.
- **Cryptocurrency:** Various digital assets stored in hardware wallets, computers, and online accounts.
- **United States Currency and Other Valuables:** Stock certificates, cash, and other property.

These assets **remain in government custody**, despite the fact that:

- **They are not subject to forfeiture** under my **plea agreement**.
- **There has been no forfeiture action initiated** against them.

1

- **The government has acknowledged intent** to return the property **but has not followed through**.

Additionally, I refer to **Exhibit A** (dated **December 10, 2019**), containing a **detailed inventory of items removed by the IRS** from **11627 West 74th Way, Arvada, Colorado**, and **apparently stored in the Denver Holding Office**.

# 2. Demand for Immediate Return of Physical Assets

I formally request the **immediate return** of my **physical assets**, including:

- **Gold and silver bars and coins.**
- **Stock certificates.**
- **Cash and other monetary instruments.**

These assets are **not contraband, have no evidentiary value, and should be promptly returned**.

## Response Deadlines:

I expect:

1. **Written confirmation within three (3) business days** regarding the **status and location** of the physical assets.
2. **A plan for the return of the physical assets within ten (10) business days** from the date of this letter.
3. **The actual return and delivery of all non-forfeitable physical assets within fifteen (15) business days**, accompanied by a **complete inventory list** signed by a **responsible government official** verifying that **all items are intact and accounted for**.

Failure to comply will result in **legal action without further notice**.

# 3. Demand for Cryptocurrency Accounting and Transfer

The government also seized multiple cryptocurrency assets, which were stored in **cold storage wallets and hardware wallets**. The **Crypto-Seizures Memo (Exhibit B)** details the government's attempts to **access and transfer these assets**, which require **further clarification and documentation**.

2

## Transferred Cryptocurrencies

According to **Exhibit B (Crypto-Seizures Memo)**, the following amounts were **successfully transferred** and **must now be returned to my designated wallets** within **ten (10) business days**:

- **2.9765462 Bitcoin Cash (BCH)**
- **3.6704622 Bitcoin (BTC)**
- **48.916537 Ethereum (ETH)**
- **91.851854 Litecoin (LTC)**

The **seized cryptocurrencies** must be **returned to the following designated wallet addresses**:

- **Bitcoin (BTC) Wallet:** bc1qma0h6ny57l5xyvggzy2lpdf9tmnu3hk2v3939t
- **Ethereum (ETH) Wallet:** 0x9b56Fd9857851FDe90F4ab5606F394884BAA8526
- **Litecoin (LTC) Wallet:** LerGugfaoqiiPuedSVZpFZRcuiCPJuydcf
- **Bitcoin Cash (BCH) Wallet:** qzdtpsmvr39sdg4cz6kz0qnjrk2hjshyrsv5xd0262

All cryptocurrency transactions must be **conducted via verifiable on-chain blockchain transfers**. The government must provide:

- **A signed declaration identifying the responsible official executing the transfers.**
- **A forensic audit verifying that no unauthorized withdrawals or modifications were made.**
- **Complete transaction logs documenting all movements of my seized cryptocurrency holdings.**


## Clarification on the Seized Jaxx Wallet and Bitcoin Holdings

Additionally, I request **immediate clarification** regarding the **Jaxx wallet that was seized by the government**.

The **September 3, 2021 email** between **David Stone and AUSA Torntore** confirms that **this wallet contained approximately $1 million worth of Bitcoin (BTC) at the time of seizure**.

Accordingly, I demand the **official seizure logs and transaction records from government-controlled storage accounts**.

According to records, including **correspondence between David Stone and AUSA Anthony Torntore on September 3, 2021**, this wallet contained **approximately $1 million worth of Bitcoin (BTC) at the time of seizure**.

- Given the **average Bitcoin price in December 2019** was **approximately $7,571.62**, this amount would have been valued at **approximately 132.06 BTC**.

3

- The **email correspondence confirms that I no longer had access to the Jaxx wallet** due to **lost login information** at the time of my **financial disclosure**.

However, the **government's seizure of this wallet**, along with **other cryptocurrency-related storage devices**, places a **direct obligation on the government to account for these assets in full**.

**Accordingly, I demand:**

- A **detailed report on the current status** of the Bitcoin and any other digital assets stored in the **seized Jaxx wallet**.
- A **full transaction history** showing whether the **government accessed, transferred, or otherwise modified** the holdings in the **Jaxx wallet**.
- A **signed declaration under penalty of perjury** from **responsible government agents**, confirming whether the **Bitcoin in the Jaxx wallet was moved, liquidated, or remains in custody**.
- A **forensic audit** of all seized cryptocurrency wallets and storage devices, including:
  - **Ledger HW.1**
  - **Trezor Wallet**
  - **USB Bitcoin Storage Drive**
  - **BTC Cold Storage Coin**
  - **Verifying that no unauthorized transactions were conducted while in government custody.**

The **government's failure to provide a full accounting** of these assets constitutes **deprivation of property without due process**, as well as a **violation of**:

- **18 U.S.C. § 1519 – Obstruction of Justice**
- **18 U.S.C. § 1001 – False Statements** (if any misrepresentations regarding the status of these assets have been made).

Given the **significant monetary value involved** and the potential **unauthorized handling of these assets**, I demand an **immediate response detailing the exact status of the seized Jaxx wallet and its Bitcoin holdings**.

# 4. Discrepancy in Bitcoin Transfers – Fraud & Theft Notification

According to the **Crypto-Seizures Memo (Exhibit B)**, the government reported transferring **3.6704622 BTC** from the seized wallets. However, an independent review of **Blockchain.com transaction history** from **wallet address 14YyAfHJRgv8TkoHfzuHDLQcnZGGx8aRZi** reveals that **an additional 4.99995661 BTC was transferred**, which is **not reflected** in the official Government report.

4

The **government must immediately return the missing 4.99995661 BTC** to my designated **Bitcoin wallet** and provide:

- **A full forensic audit of all Bitcoin transactions** from the seized wallet **since December 10, 2019**.
- **A notarized declaration under penalty of perjury** explaining whether the missing BTC was **moved, liquidated, or remains in custody**.

Failure to return this **missing BTC** within **ten (10) business days** will be treated as:

- **18 U.S.C. § 1519 – Obstruction of Justice** (for falsifying seizure records).
- **18 U.S.C. § 1001 – False Statements** (for knowingly misrepresenting Bitcoin transactions).
- **18 U.S.C. § 641 – Theft of Government Property** (for unlawfully converting seized assets).

If a full and **satisfactory response is not provided**, I will initiate **immediate legal action, including criminal and civil complaints** against all responsible government personnel.

# 5. Demand for Computers & Hardware

In addition to the seized physical assets and cryptocurrency storage devices, the Government confiscated multiple **computers, external storage devices, and cryptocurrency-related hardware.** Based on **Schedule A and Attachment B**, the following items were taken from my residence at **11627 West 74th Way, Arvada, Colorado:**

**Computers:**

- **Apple MacBook Pro (Serial Number: W8944JH766E)**

**External Hard Drives and USB Storage:**

- **Western Digital MyBook USB Hard Drive (Serial Number: WCC7K1LSFTTP)**
- **Generic USB Thumb Drive (Serial Number: Y1178-T48L-B52L-V3)**
- **Sandisk Extreme SD Card (Serial Number: BM1235222025G)**

**Cryptocurrency-Related Storage Devices:**

- **Trezor Bitcoin Wallet Hardware**
- **Ledger HW.1 Wallet Hardware (Cryptocurrency Storage)**
- **Ethereum Cold Storage Coin**
- **BTC Cold Storage Coin**
- **USB "Bitcoin" Storage Drive**
- **BTC Cryptocurrency Indicia Storage Cards**
- **Password Recovery Cards for Bitcoin**

**Mobile Devices:**

- **Huawei Cell Phone (Serial Number Unknown)**

These devices contain **critical financial data, legal documents, and access credentials necessary for my financial and legal affairs.** Their continued unjustified retention violates **due process rights and constitutes unlawful deprivation of property.**

I formally demand the **immediate return of all computers, storage devices, and mobile phones**, as there is **no legal basis for their continued seizure.**

# 6. Legal Basis and Consequences of Non-Compliance

Under **Federal Rule of Criminal Procedure 41(g)** and **Fifth Amendment Due Process protections**, the government **cannot indefinitely withhold property** without a **valid legal basis**.

**Legal Precedents Supporting the Return of Seized Assets:**

- **Luis v. United States, 578 U.S. 5 (2016)** – The **government cannot deprive** a defendant of property **absent a lawful basis**.
- **United States v. Chambers, 192 F.3d 374 (3d Cir. 1999)** – **Unjustified government retention** of property **mandates return**.
- **United States v. Rodriguez-Aguirre, 264 F.3d 1195 (10th Cir. 2001)** – The government **must justify delays** in returning property.
- **United States v. $8,850, 461 U.S. 555 (1983)** – The **unjustified retention of property without forfeiture proceedings violates due process**.
- **United States v. 50.44 Bitcoins, No. 16-265, 2017 WL 8792550 (D.D.C. May 22, 2017)** – Cryptocurrency **is subject to the same constitutional protections** as traditional financial assets and **cannot be indefinitely seized** without due process.
- **United States v. Approximately 64,695 Bitcoin, No. 21-CR-321 (S.D.N.Y. 2021)** – **Reaffirming due process protections** for cryptocurrency asset seizures and **mandating government compliance** in asset returns.

**Procedural and Substantive Default by the Government**

As the **Government is now in procedural and substantive default**, this demand **requires immediate compliance**. The continued **unlawful retention** of my property, despite the **absence of any valid forfeiture order** or **legal justification**, constitutes a **direct violation of**:

- **Federal Rule of Criminal Procedure 41(g)** (requiring return of unlawfully seized property).
- **Fifth Amendment Due Process protections** (prohibiting unlawful deprivation of property).

I hereby set a **strict deadline of ten (10) business days** for the **full return of all assets listed in this letter**.

**Legal Actions to Follow Non-Compliance**

If the Government **fails to provide full compliance within 10 business days**, I will **immediately** proceed with formal legal action, including:

1. **Filing a motion under Rule 41(g)** for **return of property**.
2. **Pursuing criminal complaints** for **theft, obstruction of justice, and fraud**.
3. **Submitting a formal complaint** to the **DOJ Inspector General** regarding this **misconduct**.
4. **Seeking compensatory and punitive damages** for the **wrongful deprivation** of my assets.

The **Government's failure to comply** will be treated as **willful misconduct**, and **those responsible** will be held **personally liable** under:

- **Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971)** (establishing liability for federal officials engaging in unlawful conduct).

**No further extensions or excuses will be accepted. Compliance is mandatory.**

**Respectfully submitted,**
**Jobadiah Weeks**

**Exhibits:**

- **Exhibit A (December 10, 2019)**: Items Removed by the IRS
- **Exhibit B (December 10, 2019)**: Crypto-Seizures Memo
- **Exhibit C (September 5, 2024)**: Letter from David Stone

7

# Exhibit G

AUSA Torntore's April 2, 2025 email confirming FBI/IRS coordination.

31/05/2025, 15:52

Notice of Objection to Government's Extension Request – USA v. Goettsche, et al. (2:19-cr-00877) - silenceweeks1@gmail.com - Gmail

1/1

≡ Gmail

Compose

Inbox

Starred
Snoozed
Sent

Drafts
More

Labels

🔍 Anthony.Torntore@usdoj.gov

×

33 of many

📄 objection to exte...

**Torntore, Anthony (USANJ)** <Anthony.Torntore@usdoj.gov>

to Ernesto, me

Wed, Apr 2, 5:45 PM

Received, thank you.

I also advised your standby counsel, cc'ed here, that I am working with the FBI/IRS agents in this matter to return personal property to you. We plan to provide that property to Mr. Cerimele who can arrange it's transfer to you.

Thanks,

Anthony P. Torntore
Chief, Cybercrime Unit
U.S. Attorney's Office, District of New Jersey
970 Broad Street, Newark, NJ 07102
Desk: 973.645.2726
Cell: 201.341.0398

**From:** Silence Weeks <silenceweeks1@gmail.com>
**Sent:** Wednesday, April 2, 2025 11:39 AM
**To:** Torntore, Anthony (USANJ) <Anthony.Torntore@usdoj.gov>
**Subject:** [EXTERNAL] Notice of Objection to Government's Extension Request – USA v. Goettsche, et al. (2:19-cr-00877)

26

17

# Exhibit H

April 12, 2025 letter to AUSA Torntore again requesting return of the 8.67 BTC and other assets.

**VIA EMAIL**
AUSA Torntore
United States Attorney's Office
District of New Jersey
970 Broad Street, 7th Floor
Newark, New Jersey 07102
Anthony.Torntore@usdoj.gov


Dear Mr. Torntore,

I respectfully request that the Government withdraw from further prosecution of this matter, based on the Department's revised enforcement policy and the cumulative constitutional and procedural violations documented herein.

In light of the **attached April 7, 2025 Department of Justice Memorandum** from the Deputy Attorney General (Exhibit A), we request immediate reconsideration of all pending restraints and prosecutorial actions in this matter. You have been requesting continuance after continuance for close to 6 years. It's time for this to end.


## 1. DOJ Policy Now Bars Prosecution Absent Fraud or Criminal Intent

The April 7 DOJ policy directive makes clear:

> "Prosecutors shall prioritize cases that hold accountable individuals who (a) cause financial harm to digital asset investors and consumers; and/or (b) use digital assets in furtherance of other criminal conduct."
> – *DOJ Memo, p. 2–3 (Exhibit A)*

The prosecution against me does **not fall within either priority**. I have **not been accused of victimizing investors**, nor has the Government shown I used digital assets to promote terrorism, narcotics trafficking, or any such enterprise.


## 2. No Victims – No Legal Basis for Fraud or Laundering Charges

Despite publicly soliciting victim reports through the DOJ website beginning in December 2019, the Government received **no verified victim claims** that were caused by myself before I entered my plea on **September 21, 2020**.

- No victim submissions were disclosed or verified prior to the plea. You read the pre-sentence report. I created no victims.

1

- The Government failed to inform me or my counsel that **zero victim responses had been received that were attributed to me**. This failure is not merely procedural — it **undermines the entire legal foundation of the Government's case**.

In financial crimes such as **wire fraud** and related offenses, the **existence of actual victims and measurable loss** is **essential** to:

- Establishing the elements of the offense;
- Applying sentencing enhancements;
- Justifying restitution orders.

Under the **Mandatory Victim Restitution Act (MVRA)**, restitution can only be imposed where there are **identifiable victims** who suffered **actual pecuniary loss**. The Government's failure to disclose any such information — despite having publicly requested it — raises serious questions about:

- The **factual basis for the charges**;
- The **accuracy of representations made to the Court and defense**;
- The overall **fairness of the proceedings**.

The **absence of verified victim and loss information** supports my claim that my plea was **coerced and based on misrepresentation**, and highlights a broader **pattern of discovery misconduct**.

Further illustrating this is the Government's handling of **Gordon Brad Beckstead's plea agreement (attached as Exhibit C)**:

- Beckstead, a CPA involved in preparing false tax returns and so called "laundering" of Matt Getch funds, **was not required to pay restitution to victims**.
- His plea only included obligations tied to **tax loss and laundering proceeds**, not any identified individual fraud victims.
- Whoever these so called victims are, were "victims" because of illegal government intervention. The governments action against Bitclub created approximately 1 million victims. You need to give the members their Bitcoin back.

This inconsistency supports the defense's concern that the **Government lacks a verified victim list** and has not substantiated claims of widespread financial harm.

Finally, the Government's ongoing refusal to produce this victim information **violates my rights** under the:

- **Fifth Amendment Due Process Clause**,
- **Rule 16** of the Federal Rules of Criminal Procedure,
- And **Brady v. Maryland**, 373 U.S. 83 (1963).

This data is critical to evaluating the scope of alleged criminal conduct, any sentencing exposure, and the validity of my false and coerced plea statement. Its suppression further

2

Initial

justifies reconsideration of all restraints and charges now falling outside DOJ's new enforcement framework.

**In case the Government claims that there are victims, I request that it produce a verified and complete list of all individuals who submitted victim claims to the FBI or U.S. Attorney's Office — the list that existed and was used at the time of my coerced plea on September 21, 2020 — no later than April 22, 2025.**

## 3. The Record Shows No Willful Misconduct – Only Regulatory Ambiguity

There is no allegation that I **knowingly violated a specific registration or licensing requirements** — nor that I acted with fraudulent intent. Although I was neither a founder nor an owner of BitClub Network and joined the project two years after its founding. My prosecution was driven by:

- **Ambiguity around BitClub Network's tax and entity classification**, and
- The Government's **selective addition of tax charges** to coerce a guilty plea.

The DOJ policy now prohibits such prosecutions unless **willfulness** can be shown — which is absent here.

The Government did not disclose how or why it singled me out for additional tax charges, which were introduced only during plea negotiations, not by indictment. Notably, these tax charges were not brought against any of the original founders or early operators of BitClub Network, further highlighting the selective nature of the prosecution.

The **tax charge** was not the result of a new discovery, but was based on information already known to the Government since the **April 19, 2019** meeting with IRS-CI agents. Nevertheless, it was added at the last moment — only weeks before my plea in **September 2020** — and used as a coercive tool during negotiations. This timeline is clearly documented in **internal IRS and DOJ records**, which show that the Government knew of my alleged tax status as early as **April 19, 2019**, during an in-person meeting. However, the tax charges were not presented to the Grand Jury until **July 2020**, and were not communicated to me until plea negotiations in **September 2020**. This **16-month delay** — despite no new evidence — demonstrates the strategic use of the tax allegations as leverage to coerce a guilty plea statement which has since been rescissioned.

This selective and irregular conduct served to apply pressure on me and ultimately influenced my plea without proper legal foundation as also mentioned in my notice on Feb 21st. (dkt 401)

I was selectively prosecuted: Co-defendants and other key individuals who played central roles in the launch and operation of BitClub Network were not charged with equivalent offenses despite their greater involvement in tax or financial support and structuring related to the network. Specifically:

Initial

- **Russ Medlin** – Founder, involved in operations and leadership,
- **Federico Hidalgo** – heavily involved in financial structuring,
- **Keith Fairclough** – central to operations and client management,
- **Gordon Brad Beckstead** – financial structuring, tax reporting, and operational involvement,
- **Jason Caramantis** – original investor who helped fund BitClub Network's initial capital in 2014,
- **Brian McMullen** – financial backer and key partner in the founding of the project in 2014,
- **Travis Bott** – involved in customer services and platform operations, working with a BCN team.

The Government's failure to charge these individuals — who had significant roles in the network — further highlights the selective and arbitrary nature of my prosecution.

## 4. Government Misconduct Undermines Continued Prosecution

**Key Misconduct Events**

- The following summary highlights specific examples of government misconduct detailed in *Exhibit B – Overview of Discovery and Procedural Violations*. This document, enclosed with this letter, catalogs over 30 discovery, plea-related, and selective prosecution failures across multiple categories, including:
- Discovery and Brady violations
- Grand jury misconduct
- Asset seizure irregularities
- Prosecutorial misrepresentations
- Improper plea coercion tactics
- Unequal charging decisions

The following Government conduct supports my claims of due process violations, misconduct, and a lack of fairness in the plea process:

- The Government withheld the April 19, 2019 Special Agent's Report (SAR), the video and memorandum of interview (MOI) from my December 10, 2019 interrogation, and follow-up IRS reports. These materials were material to my defense and should have been disclosed under Rule 16 and Brady.

- Grand jury irregularities included failure to disclose the July 23, 2020 Grand Jury Expansion Request Letter and internal charging communications, which added tax charges despite the Government knowing about the underlying facts more than a year earlier.

- During my detention, I was subjected to approximately 20 prison transfers and repeatedly placed near Government witnesses — a tactic that supports my claim of

Initial

plea coercion.

- Asset seizure records were incomplete and misleading. 4.999 BTC is still missing, no forensic audit was conducted, and there has been no explanation of the fate of seized wallets, cash, and other personal property. I was told assets would be returned but that never occurred.

- Misrepresentations were made to the Court, including the presentation of post-dated documents created after the plea was signed. These documents were cited as if they justified the plea at the time, undermining the plea's voluntariness.

These violations not only prejudiced my defense but also violated the DOJ's revised enforcement standards, which aim to correct "regulation by prosecution" strategies implemented by the prior administration.

## 5. Documented Violations Undermine the Integrity of the Case

I have compiled and attached an internal document titled *Exhibit B – Overview of Discovery and Procedural Violations*. This summary is based on motions filed and documented conduct by the Government from December 10, 2019 through the present.

These violations include discovery and Brady violations, misconduct in the grand jury process, prosecutorial misrepresentations, improper coercion during the plea process, irregularities in asset seizures, and interference by former defense counsel.

These omissions materially prejudice my defense and impact the validity of the coerced plea and post-plea proceedings. This cumulative prejudice undermines the legitimacy of the indictment and compels dismissal as the only adequate remedy.

The Government's failure to provide a timely and complete response will reinforce my position that this case should be dismissed in its entirety and reconsidered under the principles laid out in the April 7, 2025 memorandum issued by the Deputy Attorney General. These same violations, as documented in my motions, justify dismissal of the indictment based on selective prosecution, coercive plea tactics, and sustained due process violations. Continuing to prosecute this case contradicts the Department's stated policies and risks misallocating resources better directed toward enforcement efforts involving clear criminal intent and identifiable victims.

## 6. Requested Relief

### A. Immediate Actions Requested Before May 8, 2025

1. I respectfully refer to my recent **letter submitted to Judge Hammer**, which outlined reasonable requests for modification of pretrial conditions, including the removal of the ankle bracelet and allowance for travel. These requests are aimed at enabling me to continue representing myself **pro se**, attend essential meetings, and manage important family responsibilities. A similar approach is respectfully requested here, as these requests are consistent with both **the principles laid out in the April 7, 2025**

Initial

**DOJ memorandum** and my ongoing efforts to ensure fairness and justice in this matter.

2. **I request** the Government to return the **8.67041881 Bitcoin (BTC)** before the hearing scheduled for May 8, 2025. Of this amount, **3.6704622 BTC** was transferred to the government wallet and documented in the report, while the remaining **4.99995661 BTC** was also transferred but not reflected in the report, for a total of **8.67041881 BTC**. The returned BTC will allow me to meet **essential costs of living**, **support my family, pay outstanding debts**, and continue my **legal process**.

### B. Relief Following April 22, 2025 Response and Hearing

3. **Confirm that no victim-based restitution claim exists**, or produce the verified list of individuals the Government relied on when representing victim harm during my plea negotiations;

4. **Reconsider your position** on my pending motion to withdraw my plea.

I will present this memorandum and all supporting exhibits to the Court at the hearing scheduled for May 8, 2025. If the Government fails to take the corrective actions outlined above or provide adequate justification by **April 22, 2025**, I will seek full dismissal of the indictment, discovery sanctions, and all appropriate judicial remedies.

This letter is submitted without prejudice to any other legal remedies I may pursue, including claims for damages or other relief arising from ineffective assistance of counsel or related misconduct.

**Respectfully submitted,**
Jobadiah Weeks, Pro Se
Electronically Signed via DocuSign
Date: April 12, 2025
Address: 11627 West 74th Way, Arvada, Colorado 80005
E-mail: silenceweeks1@gmail.com



**Attachments:**

**Exhibit A:** April 7, 2025 DOJ Memorandum – Ending Regulation By Prosecution
**Exhibit B:** Overview of Discovery and Procedural Violations (Internal Summary)
**Exhibit C:** Beckstead Plea Agreement

# Exhibit I

May 31, 2025 follow-up letter to new AUSA

Docusign Envelope ID: 2D9A7336-C7AD-4365-9594-8001AC154C16

**VIA EMAIL**

**AUSA Ingrid Eicher**
**AUSA Vinay S. Limbachia**
United States Attorney's Office
District of New Jersey
970 Broad Street, 7th Floor
Newark, New Jersey 07102
Ingrid.Eicher@usdoj.gov
Vinay.Limbachia@usdoj.gov

**Re: Follow-up on Status of Seized Assets (Rule 41(g) and Motion to Compel Discovery)**

## Immediate Request

I hope this message finds you well. I am writing to follow up and formally request a **status update and timeline for the government's coordination of the return of the seized assets** from the 2019 search and seizure.

I understand that you are newly assigned to this matter, so I am providing this detailed background for clarity. This matter has now been pending for over a year, and I appreciate your attention and efforts in resolving it.

## Background

Following the **March 22, 2024 letter** from my prior counsel, David Stone (**Exhibit A**), AUSA Torntore agreed with my ex-legal counsel to arrange the return of these assets. Torntore agreed to follow up, but in **August 2024**, he explained why he had not done so after his earlier agreement: the person responsible for handling the assets was no longer working for the government and had been replaced.

On **September 5, 2024**, David Stone sent a letter to AUSA Torntore (**Exhibit B**) specifically requesting updates about the **8.67 BTC** (point 4 of that letter), as well as the status of the JAXX wallet and other seized hardware wallets (point 2).

On **December 6, 2024**, in response to this letter, AUSA Torntore provided the **Report of Activity dated December 10, 2019** (**Exhibit C**) to my ex-legal counsel. This report detailed the transfer of BTC and other cryptocurrencies. Following this, Torntore told my ex-legal counsel that he would find out what happened to the **4.99995661 BTC that were missing in the report** and ensure the approximately **8.67 BTC would be returned to me**. No information was provided on the JAXX wallet.

Docusign Envelope ID: 2D9A7336-C7AD-4365-9594-8001AC154C16

On or around **January 14, 2025**, Torntore followed up with my ex-legal counsel, as described in the **email of February 20, 2025** from Eric Cohen of Stone Magnanini LLP (**Exhibit D**).

## Outstanding Issues and Timeline

On **February 26, 2025**, I formally requested the return of these assets in the **Motion to Compel Discovery** filed in court (**Exhibit E**). Specifically, **Section 4.3** of that motion asks the Court to issue an order requiring the government to return all unlawfully seized property, including gold, silver, stock certificates, and cryptocurrency, within ten (10) business days.

On **February 26, 2025**, I submitted my formal **Rule 41(g) Seized Assets Request** to AUSA Torntore reiterating my due process rights and setting a 10-business-day deadline for compliance (**Exhibit F**).

On **April 2, 2025**, AUSA Torntore confirmed in an email to me and my standby legal counsel Mr. Cerimele (**Exhibit G**) that he would coordinate with the FBI/IRS to facilitate the return of these assets. This confirmation followed a request from Mr. Cerimele.

On **April 12, 2025**, I wrote a letter to AUSA Torntore (**Exhibit H**) as there was no follow-up on the April 2 email, again raising the issue of the missing **4.99995661 BTC** and the assets overall. The letter stated:

> "Asset seizure records were incomplete and misleading. 4.999 BTC is still missing, no forensic audit was conducted, and there has been no explanation of the fate of seized wallets, cash, and other personal property. I was told assets would be returned but that never occurred."

Unfortunately, there was no further follow-up after my April 12 letter. I understand that AUSA Torntore either resigned or was dismissed from my case on May 6, 2025. As such, I am reaching out to you to ensure continuity and to clarify how/when the return of these assets will be coordinated moving forward.

## Requested Action and Confirmation

Additionally, I note that this delay, as described above, is part of a broader pattern of discovery issues and due process concerns (**Exhibit J – Overview**). I am not seeking any new relief beyond what has already been requested in **Section 4.3 of my Motion to Compel Discovery** — I simply request that the government provide a **status update and timeline** for coordinating the return of these assets, consistent with the agreements already made with AUSA Torntore.

Given that the **8.67 BTC** has been repeatedly requested and agreed upon by the government to be returned — and that it is already under government control — I respectfully request the **immediate return of these assets to my BTC wallet address:**

**bc1qma0h6ny57l5xyvggzy2lpdf9tmnu3hk2v3939t.**
The government wallet address containing these assets, as referenced in the report, is:
**bc1q8aflgg4xk0s5cdeq2wrj2lsxr54rn8csjcg73a**.

To ensure the government has a complete list, I am also attaching the **Seized Assets Report and Related Seizure Documentation** (**Exhibit I**).

If there are any clarifications or additional documents you need to expedite this process, I remain available to assist. I understand this may take time to coordinate, and I appreciate your efforts in resolving this matter. I remain available to discuss this at your convenience.

**Please confirm receipt of this letter within two (2) business days.** Thank you for your attention, and I look forward to your prompt response.

**Respectfully submitted,**
/s/ Jobadiah Sinclair Weeks
**Jobadiah Sinclair Weeks**
Defendant, Pro Se



**For your review and to assist in this process, I am attaching the following exhibits and related correspondence:**

- **Exhibit A**: March 22, 2024 letter from David Stone.

- **Exhibit B**: September 5, 2024 letter from David Stone to AUSA Torntore requesting information about the seized assets.

- **Exhibit C**: December 10, 2019 Report of Activity provided on December 6, 2024.

- **Exhibit D**: Email of February 20, 2025 from Eric Cohen referencing the follow-up efforts on January 14, 2025.

- **Exhibit E**: February 26, 2025 Motion to Compel Discovery (with Section 4.3 formally requesting return of seized assets).

- **Exhibit F**: February 26, 2025 Rule 41(g) Seized Assets Request.

- **Exhibit G**: AUSA Torntore's April 2, 2025 email confirming FBI/IRS coordination.

- **Exhibit H**: April 12, 2025 letter to AUSA Torntore again requesting return of the 8.67 BTC and other assets.

- **Exhibit I**: Seized Assets Report and Related Seizure Documentation.

- **Exhibit J**: Overview of Violations and Misconduct

# Exhibit J

Seized Assets Report and Related Seizure Documentation.

# SCHEDULE A

I.    Items Removed by the IRS from 11627 West 74th Way, Arvada, Colorado, on December 10, 2019, and Apparently Stored in the Denver Holding Office.[1]

| ITEM # | | DESCRIPTION |
|---|---|---|
| 1B192 | (U) Item 104 | "20 Trillion Dollar" Silver (colored) piece. |
| 1B191 | (U) Item 103 | Ron Paul 1 oz copper (colored) coin. |
| 1B190 | (U) Item 102 | Approximately 80 collector quarter dollar coins. |
| 1B189 | (U) Item 101 | (3) NTR Metals 10oz silver (colored) bars. |
| 1B186 | (U) Item 98 | Approximately 22 gold (colored) coins. |
| 1B185 | (U) Item 97 | Approximately 150 dimes. |
| 1B184 | (U) Item 96 | Approximately 72 silver (colored) coins. |
| 1B180 | (U) Item 92 | (20) 1/10 gram gold (colored) certificates in collector cases. |
| 1B179 | (U) Item 91 | 20 cannisters containing approximately 500 silver (colored) coins in plastic case. |
| 1B177 | (U) Item 89 | Ethereum cold storage coin. |
| 1B176 | (U) Item 88 | Trezor Bitcoin wallet hardware. |
| 1B175 | (U) Item 87 | Ledger HW.1 wallet hardware(cryptocurrency) |
| 1B169 | (U) Item 81 | Cash $100.00 x 34 = $3,400, $50.00 x 20 = $1,000, $2.00 x 1 = $2.00, Coins $1.00 x 8 = 8.00 for a total of $4,410.00 in US Currency. |
| 1B166 | (U) Item 78 | 23 cannisters copper (colored) coins. |
| 1B165 | (U) Item 77 | (1) Academy silver (colored) bar, 10 troy oz. |
| 1B164 | (U) Item 76 | (1) NTR 10 troy oz silver (colored) bar. |
| 1B163 | (U) Item 75 | (1) d'Anconia 1oz copper (colored) coin. |
| 1B162 | (U) Item 74 | (1) Rob Gray 1oz copper (colored) coin. |
| 1B161 | (U) Item 73 | (1) AOCS approved 1oz copper (colored) coin. |
| 1B160 | (U) Item 72 | (1) Hunk Papa Lakota 1/2oz copper (colored) coin. |
| 1B158 | (U) Item 70 | (5) 1oz Silver (colored) coins. |
| 1B155 | (U) Item 67 | (1) pouch containing 2 pair gold (colored) earrings, (1) gold (colored) ring, (1) gold (colored) necklace. |
| 1B154 | (U) Item 66 | 1 pair earrings, (3) loose .156 carat diamonds. |

[1] See **Attachment A** (a PDF file provided by AUSA Jamie Hoxie to defense counsel); and, **Attachment B** (an Inventory Listing of All Items Seized at Search Warrant Site).

| 1B151 | (U) Item 63 | 45 canisters containing approximately 889 silver (colored) coins. |
|---|---|---|
| 1 | Evidence Box 1 | Stock Certificates |
| 3 | Evidence Box 1 | Folder labeled "Blackchair" with documents in it; debit cards; handwritten notes on bitcoin. |
| 10 | Evidence Box 3 | Miscellaneous coins. |
| 11 | Evidence Box 3 | BTC cold storage coin. |
| 12 | Evidence Box 3 | Possible silver coins. |
| 13 | Evidence Box 4 | Box of coins. |
| 14 | Evidence Box 4 | Possible gold silver copper coins and bars. |
| 15 | Evidence Box 5 | Golden currency style bars. |
| 16 | Evidence Box 5 | Box of coins. |
| 17 | Evidence Box 6 | United States Currency |
| 18 | Evidence Box 6 | Possible silver/gold coins. |
| 19 | Evidence Box 6 | Possible silver coins. |
| 20 | Evidence Box 6 | Possible silver/gold coins. |

II.    Items Seized by the IRS Incident to Arrest on or about December 10, 2019, in West Palm Beach, Florida.[2]

| ITEM # | DESCRIPTION |
|---|---|
| 1 | One wedding band. |
| 2 | United States Currency. |

---

[2] See **Attachment C** (a Transfer of Evidence and Chain of Custody form, dated December 10, 2019).

| Item # | Description | Item Removed from Weeks residence at 11627 W. 74th Way, Arvada, CO | Date of Search | Holding Office |
|--------|-------------|------|------|------|
| 18194 | (U) from Item 66 | (1) fabric pouch with (3) rings. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18192 | (U) Item 104 | "20 Trillion Dollar" Silver (colored) piece. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18191 | (U) Item 103 | Ron Paul 1oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18190 | (U) Item 102 | Approximately 80 collector quarter dollar coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18189 | (U) Item 101 | (3) NTR Metals 10oz silver (colored) bars. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18187 | (U) Item 99 | (1) Silver (colored) bullet 1oz.(Per Firearms instructor SA John Maglosky, this is not a real bullet.) | Search executed by IRS  on 12/10/2019 | DN - DENVER |
| 18186 | (U) Item 98 | Approximately 22 gold (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18185 | (U) Item 97 | Approximately 150 dimes. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18184 | (U) Item 96 | Approximately 72 silver (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18180 | (U) Item 92 | (20) 1/10 gram gold (colored) certificates in collector cases. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18179 | (U) Item 91 | 20 canisters containing approximately 500 silver (colored) coins in plastic case. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18178 | (U) Item 90 | 5 cards containing a bank and other value cards. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18177 | (U) Item 89 | Ethereum cold storage coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18176 | (U) Item 88 | Trezor Bitcoin wallet hardware. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18175 | (U) Item 87 | Ledger HW.1 wallet hardware(cryptocurrency) | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18171 | (U) Item 83 | 25 packages silver (colored) Bitcoin coins (approximately 250 coins). | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18169 | (U) Item 81 | Cash $100.00 x 34 = $3,400, $50.00 x 20 = $1,000, $2.00 x 1 = $2.00, Coins $1.00 x 8 = 8.00 for a total of $4,410.00 in US Currency. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18166 | (U) Item 78 | 23 canisters copper (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18165 | (U) Item 77 | (1) Academy silver (colored) bar, 10 troy oz. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18164 | (U) Item 76 | (1) NTR 10 troy oz silver (colored) bar. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18163 | (U) Item 75 | (1) d'Anconia 1oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18162 | (U) Item 74 | (1) Rob Gray 1oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18161 | (U) Item 73 | (1) AOCS approved 1oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18160 | (U) Item 72 | (1) Hunk Papa Lakota 1/2oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18159 | (U) Item 71 | (1) 1909 20 franc copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18158 | (U) Item 70 | (5) 1oz Silver (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18157 | (U) Item 69 | (1) Clubkoin flashdrive, written recovery passwords. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18156 | (U) Item 68 | (4) 1oz gold (colored) coins & (4) 1/10oz gold (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18155 | (U) Item 67 | (1) pouch containing 2 pair gold (colored) earrings, (1) gold (colored) ring, (1) gold (colored) necklace. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18154 | (U) Item 66 | 1 pair earrings, (3) loose .156 carat diamonds. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18152 | (U) Item 64 | 1 sheet / 16 1oz Copper (colored) crackers. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18151 | (U) Item 63 | 45 canisters containing approximately 889 silver (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18150 | (U) Item 62 | Bitcoin cold storage coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18149 | (U) Item 61 | 40 Copper (colored) cannabis coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 18148 | (U) Item 60 | (1) Black Atlantis brand multi-tool. | Search executed by IRS on 12/10/2019 | DN - DENVER |

# Inventory Listing of All Items Seized at Search Warrant Site

| Site Name: | Investigation Number: | Report Date: |
|---|---|---|
| 11627 W 74TH WAY | 1000293265 | Tuesday, December 10, 2019 |
| | **Starting Date and Time:** | |
| SINGLE FAMILY HOME | 12/10/2019 07:30 AM | |
| | **Ending Date and Time:** | |
| | 12/10/2019 01:30 AM | |

| **Control #:** | 1 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | DRESSER | | |
| **Description:** | Seized per Warrant    STOCK CERTIFICATES | | |

| **Control #:** | 2 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | DESK | | |
| **Description:** | Seized per Warrant    CORPORATE RECORDS | | |

| **Control #:** | 3 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | DINING ROOM (NE) | **Locator Code:** | |
| **Found:** | ON TOP OF DESK | | |
| **Description:** | Seized per Warrant    FOLDER LABELED "BLACKCHAIR" W/ DOCS IN IT; DEBIT CARDS; HANDWRITTEN NOTES ON BITCOIN | | |

| **Control #:** | 4 | **Evidence Box:** | 1 |
|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | DRESSER | | |
| **Description:** | Seized per Warrant    CORPORATE RECORDS | | |

| **Control #:** | 5 | **Evidence Box:** | 2 |
|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | UNDER DESK | | |
| **Description:** | Seized per Warrant    WESTERN DIGITAL MYBOOK USB HARDDRIVE (SERIAL NUMBER: WCC7K1LSFTTP) | | |

| **Control #:** | 6 | **Evidence Box:** | 2 |
|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | ON SHELF ABOVE DESK | | |
| **Description:** | Seized per Warrant    GENERIC USB THUMBDRIVE (SERIAL NUMBER: Y1178-T48L-B52L-V3) | | |

| | | | |
|---|---|---|---|
| **Control #:** | 7 | **Evidence Box:** | 2 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | IN SMALL GUN SAFE | | |
| **Description:** | Seized per Warrant    SANDISK EXTREME SD CARD (SERIAL NUMBER: BM1235222025G) | | |

| | | | |
|---|---|---|---|
| **Control #:** | 8 | **Evidence Box:** | 2 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | ON TOP OF DRESSER | | |
| **Description:** | Seized per Warrant    HUAWEI CELLPONE UNKNOWN SERIAL NUMBER | | |

| | | | |
|---|---|---|---|
| **Control #:** | 9 | **Evidence Box:** | 2 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | ON THE FLOOR BY SHELF | | |
| **Description:** | Seized per Warrant    APPLE MACBOOK PRO (SERIAL NUMBER: W8944JH766E) | | |

| | | | |
|---|---|---|---|
| **Control #:** | 10 | **Evidence Box:** | 3 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | CABINET | | |
| **Description:** | Seized per Warrant    MISC COINS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 11 | **Evidence Box:** | 3 |
| **Location:** | BASEMENT HIDDEN ROOM | **Locator Code:** | |
| **Found:** | ON TOP OF DESK | | |
| **Description:** | Seized per Warrant    BTC COLD STORAGE COIN | | |

| | | | |
|---|---|---|---|
| **Control #:** | 12 | **Evidence Box:** | 3 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | NEXT TO BED | | |
| **Description:** | Seized per Warrant    POSSIBLE SILVER COINS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 13 | **Evidence Box:** | 4 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | UNDER FUTON BED | | |
| **Description:** | Seized per Warrant    BOX OF COINS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 14 | **Evidence Box:** | 4 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | WATER TIGHT CONTAINER | | |
| **Description:** | Seized per Warrant    POSSIBLE GOLD SILVER COPPER COINS & BARS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 15 | **Evidence Box:** | 5 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | CLOSET BOX LABELED "GOLD DOLLARS" | | |
| **Description:** | Seized per Warrant    GOLDEN CURRENCY STYLE BARS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 16 | **Evidence Box:** | 5 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | CLLOSET | | |
| **Description:** | Seized per Warrant    BOX OF COINS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 17 | **Evidence Box:** | 6 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | CLOSET GUN SAFE | | |
| **Description:** | Seized per Warrant    US CURRENCY | | |

| | | | |
|---|---|---|---|
| **Control #:** | 18 | **Evidence Box:** | 6 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | CLOSET HAND GUN SAFE | | |
| **Description:** | Seized per Warrant    POSSIBLE SILVER/GOLD COINS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 19 | **Evidence Box:** | 6 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | CLOSET GUN SAFE | | |
| **Description:** | Seized per Warrant    POSSIBLE SILVER COINS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 20 | **Evidence Box:** | 6 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | CLOSET HAND GUN SAFE | | |
| **Description:** | Seized per Warrant    POSSIBLE SILVER/GOLD COINS | | |

| | | | |
|---|---|---|---|
| **Control #:** | 21 | **Evidence Box:** | 6 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | DESK, SMALL GUN SAFE | | |
| **Description:** | Seized per Warrant    POSSIBLE SILVER/GOLD COINS USB "BITCOIN" STORAGE DRIVE PASSWORD RECOVERY CARDS FOR BITCOIN RING, EARRINGS, CHAIN | | |

| | | | |
|---|---|---|---|
| **Control #:** | 22 | **Evidence Box:** | 5 |
| **Location:** | BEDROOM (S) UP JOBYS | **Locator Code:** | |
| **Found:** | DESK | | |
| **Description:** | Seized per Warrant    BTC CRTYPTO CURRENCY INDICIA STORAGE CARDS | | |

## Transfer of Evidence
## Chain of Custody

Date Obtained: 12/10/19    Investigation Name: JOSADIAH WEEKS

Investigation Number: ▮▮▮▮▮▮▮

Source of Items: Arrest Warrant · JOSADIAH Weeks

List the item numbers on the attached inventory which are included in this Chain of Custody.  OR: Briefly describe the property being transferred via this Chain of Custody.

Property in Sealed Evidence Bag initialed by WEEKS
- One wedding band
- Two car key fobs + keychain
- Namebag lanyard
- Pen
- Chase Southwest Visa Card
- James Foster business card
- wristband
- US Currency

## Keep Original with Evidence

| From: (printed name) | To: (printed name) | Purposes: |
|---|---|---|
| Jonathan Helmstetter | Michael Galdys | Transfer |
| From: (signature) | To: (signature) | Date: 12/11/19 |

| From: (printed name) Michael Galdys | To: (printed name) SCOTT JOHNSON | Purposes: Transfer |
|---|---|---|
| From: (signature) | To: (signature) | Date: 12/11/19  1300 |

| From: (printed name) | To: (printed name) | Purposes: |
|---|---|---|
| From: (signature) | To: (signature) | Date: |

| From: (printed name) | To: (printed name) | Purposes: |
|---|---|---|
| From: (signature) | To: (signature) | Date: |

| From: (printed name) | To: (printed name) | Purposes: |
|---|---|---|
| From: (signature) | To: (signature) | Date: |

# Exhibit K

2e Memorandum of Activity December 10, 2019



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

## Memorandum of Activity

---

**Investigation #:**                                                      **Location:**   **See Below**
**Investigation Name:**   JOBADIAH WEEKS
**Date:**   December 10, 2019
**Time:**   Approx. 9:10 a.m. - 8:30p.m.
**Participant(s):**   JOBADIAH S. WEEKS, Arrestee
Amjad Qaqish, Special Agent
Jonathan Helmstetter, Special Agent


At approximately 9:10 a.m., JOBADIAH WEEKS was arrested by agents in the courtyard of the Marriott hotel located at 1001 Okeechobee Blvd, West Palm Beach, FL 33401.  Immediately after WEEKS was placed in handcuffs by S/A Helmstetter, S/A Helmstetter read WEEKS his Miranda Rights.  Agents seized a cell phone, an Apple laptop computer, and two passports pursuant to an FBI search warrant issued in the Southern District of Florida.  After the arrest, the following events occurred:

1.  WEEKS was transported by TFO Norma Young, TFO Manny Espinosa, and IRS-CI S/A Dave Keyes to the IRS-CI office located at 1700 Palm Beach Lakes Blvd, Suite 500, West Palm Beach, FL 33401.

2.  WEEKS waived his right to counsel via Form 5228 and consented to a video and audio recorded interview with S/A Amjad Qaqish and S/A J. Helmstetter.  The interview lasted from approximately 9:45 a.m. to 3:24 p.m.

3.  WEEKS asked agents to send a message to his friend Enzo who was supposed to meet WEEKS in West Palm Beach in the evening.  S/A CIS Jason Leighton provided S/A Helmstetter with a number for Enzo from the digital evidence seized from WEEKS of +39 366 4091068.  WEEKS told agents that Enzo was from the Vatican.  S/A Qaqish sent a message to Enzo that WEEKS would not be able to meet him.

4.  Agents placed WEEKS' personal effects, which he had at the time of his arrest, in a sealed evidence bag.  WEEKS, S/A Qaqish, and S/A Helmstetter initialed the bag where it was sealed.  WEEKS agreed to have these items returned to his attorney at his court appearance.

5.  At approximately 4:01 p.m., WEEKS consented to a search of his Facebook account, his email accounts (jobyweeks@gmail.com and jobyweeks@me.com), his cell phone (phone number 619-519-2208), his telegram account, his

USA_19877_04004724

WhatsApp account, and his Skype account.  WEEKS told agents that these were all located on his phone which was seized earlier in the day pursuant to the Southern District of Florida search warrant.  The Skype account is also on his laptop computer which was also seized.  WEEKS consented to this via Form RCFL-105 (Rev. 1.1).  WEEKS told agents that MATT GOETTSCHE sometimes deletes conversations and therefore he took screenshots of some of his conversation with GOETTSCHE to preserve the contents.

6. At approximately 4:38 p.m., WEEKS consented to a search of his rental car located at the West Palm Beach Marriott.  WEEKS consented to this via Form 6884.

7. At approximately 5:30 p.m., WEEKS consented to a search of the Air B&B where he was staying to locate, seize, and image his 2FA (2 factor authentication) cell phone.  The Air B&B was not rented in WEEKS' name but he told agents that the doors would most likely be unlocked.  Agents discussed this with AUSA Aurora Fagan and received verbal approval to conduct this consent search through Acting SSA Scott Johnson.  WEEKS would need to accompany agents to this search to confirm the location of the Air B&B as well as to identify the room where he was staying.  WEEKS gave consent to agents via Form 6884.

8. At approximately 5:53 p.m., S/A Alisa Watkins, S/A Amjad Qaqish, S/A Jonathan Helmstetter, and WEEKS departed the IRS-CI office.  The beginning mileage was 23,356.  Acting SSA Scott Johnson was in a separate lead vehicle.

9. At approximately 6:13 p.m., S/As Watkins, Qaqish, and Helmstetter arrived with WEEKS at his Air B&B located at 195 Pershing Way in West Palm Beach, FL.  The ending mileage was 23,361.7.  Acting SSA Johnson arrived in his vehicle at the same time.

10. At approximately 6:22 p.m., upon arrival of local marked West Palm Beach PD, agents escorted WEEKS from the vehicle and approached the Air B&B.  Upon inspection, the front doors and windows were open.  West Palm Beach Police Officer Frank Nelli, West Palm Beach Police Officer Yanko Abreu, Acting SSA Johnson, and S/A Helmstetter cleared the house prior to escorting WEEKS inside.  No one appeared to be home and the back doors were open.  WEEKS told agents that they had been doing this because there was no air conditioning and the house smelled musty.  WEEKS also told agents that no one would likely be home because they were attending the Tony Robbins event at the Convention Center until midnight.  WEEKS led Acting SSA Johnson, S/A Qaqish, and S/A Helmstetter to the upstairs back left bedroom where he was staying.  He identified the 2FA phone and provided it to agents.  S/A Qaqish also located a SD card, S/N 9114ZVNL C3W2, which WEEKS also provided consent to search.  WEEKS acknowledged this on the same Form 6884 and initialed next to the SD card serial number.  While at the Air B&B, WEEKS asked agents to put his clothing in his bag for his friend to take.  WEEKS requested that S/A Qaqish unplug his iPhone charger from the extension cord.

USA_19877_04004725

At that time, there was a small spark from an extension cord next to the bed. S/A Qaqish stepped on the spark and extinguished it.  The extension cord appeared to have been previously damaged.  WEEKS also asked agents to put his Maui Jim sunglasses, located in the kitchen, in his bag.  WEEKS identified them in the kitchen and Acting SSA Johnson and S/A Qaqish placed the sunglasses in WEEKS' bag.  Agents exited the Air B&B at approximately 6:41 p.m. and closed the outside door per WEEKS' instructions.  Photographs were taken by S/A Qaqish prior to entry and after exit.  Acting SSA Johnson took a video on his cell phone exiting the property as well.  Agents then departed the Air B&B.

11. At approximately 6:56 p.m., agents arrived at the Palm Beach County Jail – Gun Club.  The ending mileage for the vehicle was 23,365.6.  At that time, WEEKS asked to call his wife however he did not recall her number.  An attempt was made to call her at (808) 796-6694 however that was the wrong number.  WEEKS then asked to call his mother at (303) 808-7882.  WEEKS spoke with her on speaker phone with S/A Watkins, S/A Qaqish, and S/A Helmstetter via S/A Helmstetter's government cell phone.

12. While being processed at the Palm Beach County Jail, WEEKS was found to be in possession of a belt with a hidden pocket containing an undetermined amount of U.S. Currency.  When asked why WEEKS did not tell agents about this, he said "no one asked."  The belt and cash were put in evidence bags provided by the Palm Beach County Jail and sealed.

13. Agents transported the items located from the Air B&B and the Palm Beach County Jail back to the IRS-CI West Palm Beach office. It should be noted that the cell phone seized from the Air B&B had a case containing US currency, credit/debit cards, a Mexican National Electoral card and other miscellaneous cards.  The items were photographed, placed in an evidence bag, and sealed. The sealed evidence bags from both the Air B&B and the Palm Beach County Jail were placed in the SSA safe at the IRS-CI West Palm Beach office.

14. S/A Qaqish and S/A Helmstetter proceeded to the West Palm Beach Marriott where WEEKS was arrested earlier in the day for the purposes of conducting the consent search of his rental vehicle.  S/A Helmstetter was in possession of the evidence bag containing WEEKS' personal effects, including his rental car keys.  It should be noted that the number written on the consent form was located on the back of the rental car key keychain but it did not match the license plate of the car.  S/A Helmstetter photographed the vehicle prior to unlocking the car.  The key fob opened the vehicle and a rental car receipt in WEEKS' name was located in the vehicle.  It was photographed by S/A Helmstetter.  No additional items were located in the rental vehicle.  S/A Helmstetter locked the vehicle and photographed the vehicle after the consent search was completed.

15. The activity was concluded at approximately 8:30 p.m.

I prepared this memorandum on December 10, 2019, after refreshing my memory from notes made during and immediately after the activity with JOBADIAH WEEKS.


Jonathan Helmstetter
Special Agent


Amjad Qaqish
Special Agent

**USA_19877_04004727**