# Exhibit A

**Letter June 2025 to AUSA Eicher and AUSA Limbachia**

**VIA EMAIL**
AUSA Ingrid Eicher
AUSA Vinay S. Limbachia
United States Attorney's Office
District of New Jersey
970 Broad Street, 7th Floor
Newark, New Jersey 07102
Ingrid.Eicher@usdoj.gov
Vinay.Limbachia@usdoj.gov

**Subject:** Follow-Up Request for Reconciled Inventory and Chain of Custody Documentation

**Re:** Supplemental Motion for Return of Seized Assets (June 6, 2025)


Dear AUSAs Eicher and Limbachia,

This letter is submitted to ensure your office has a **final opportunity** to resolve the **outstanding inventory and custody discrepancies** before further judicial relief is sought. The factual irregularities and omissions identified here — including **missing items**, **unverified cryptocurrency storage**, and **absent chain of custody documentation** — implicate not only **Rule 41(g)**, but also **Brady** and DOJ internal evidence-handling policy, including **Justice Manual § 9-5.001 (Disclosure Obligations)** and **§ 9-13.420 (Seizure and Retention of Property)**. If not resolved immediately, I intend to present these matters directly to the Court in the form of a **supplemental motion** and/or **evidentiary hearing request**.

I write to follow up on my **June 6, 2025 Supplemental Motion for Return of Seized Assets**, which remains pending before **Judge Cecchi**. That motion documented **serious failures** in the Government's handling, documentation, and continued retention of property seized from me on **December 10, 2019** — including **cryptocurrency**, **precious metals**, and **U.S. currency** — and noted the complete absence of a **verifiable chain of custody** for seizures conducted in both **Arvada, Colorado** and **Palm Beach, Florida**.

Since filing, additional records and inventory logs released by your office have revealed **further discrepancies** that suggest a **systemic breakdown in asset tracking and custodial oversight**. These include **inconsistencies** between **evidence box records** and **1B-numbered inventories**, **duplicate entries without explanation**, and the presence of seized items (such as **business records**, **Apple MacBook Pro**, **Sandisk Extreme SD Card**, and **cryptocurrency recovery keys**) that appear nowhere in the formal inventory lists.

These failures are compounded by repeated assurances from AUSA Anthony Torntore — including in an **April 2, 2025** email — that asset return coordination was actively underway. Yet despite those representations, no property has been returned, and no documentation has been provided confirming lawful custody, forensic preservation, or authorized disposition.

1

Given the procedural and constitutional stakes, and in line with your responsibilities under DOJ policy — specifically, **Justice Manual § 9-5.001 (Disclosure Obligations)** and **§ 9-13.420 (Seizure and Retention of Property)** — I believe you are obligated to clarify the status of these assets, reconcile the conflicting records, and report any unresolved custody lapses to DOJ supervisory personnel, including the U.S. Attorney for the Southern District of Florida and the Office of Professional Responsibility.

## 1. Ethical and Supervisory Obligations

The record reflects that both AUSA **Anthony Torntore** and AUSA **Jamie Hoxie** were — or reasonably should have been — aware that:

- Evidence was mishandled or not logged;

- Key items, including **4.999 BTC** and **$7,500 in cash**, remain unaccounted for;

- Chain of custody records are incomplete, internally contradictory, or refer to unrelated seizures.

In addition, the government's own **December 10, 2019 Memorandum of Activity** confirms that multiple **physical cryptocurrency items** were seized but **never evaluated**, and that a separate review would be necessary at a later date. The report states:

> *"Other potential physical cryptocurrency assets were seized. Most of these were things like actual physical coins which contained either public or private Bitcoin keys, or both. Because of time constraints involved with the search, these items were physically seized, and no attempt was made to quantify their value, or to seize any potential funds which may be present. As such, a separate attempt should be made at a later date to determine whether there are any funds associated with these physically seized items."*

To date, there is no indication that any such follow-up was ever conducted — nor that the assets were ever evaluated, inventoried, or accounted for.

Under **DOJ internal policy**, and ethical obligations under **ABA Model Rule 3.8**, this is no longer a documentation oversight — it now constitutes a **material violation of Rule 41(g)**, **Brady**, **Giglio**, and the **Fifth Amendment**. I therefore ask:

> **Has this matter been referred to the U.S. Attorney for the Southern District of Florida, Markenzy Lapointe, or the Office of Professional Responsibility (OPR), as required when asset mismanagement or evidence loss occurs?**

## 2. Summary of Evidentiary Discrepancies Identified Post-Filing

Following the **June 6, 2025** submission of Defendant's **Supplemental Motion under Rule 41(g)**, further review of the Government's own records — including **evidence control logs**, **room-by-room site inventories**, and **1B-numbered seizure lists (Exhibit A.)** — reveals **material discrepancies** that remain unresolved. These inconsistencies **undermine the integrity** of the Government's asset tracking and reinforce the need for **immediate judicial or supervisory intervention**. Specifically:

- **Items seized according to the room-by-room evidence logs are missing from the 1B-numbered inventory**. These include, but are not limited to, *stock certificates, corporate records, handwritten notes concerning Bitcoin recovery keys, and digital storage devices* such as USB drives and SD cards.

- **The 1B-numbered inventory and control-numbered site inventories do not match**. Certain control numbers (e.g., "Box of Coins," "Possible Silver/Gold Coins") appear in the physical seizure logs but have no corresponding entry on 1B-numbered inventory. Conversely, several 1B-numbered inventory entries cannot be linked to any room-based seizure location or physical evidence box.

- **Multiple assets appear to be duplicated across entries without clarification**. For example, "Box of Coins" and "Possible Silver Coins" are each listed under more than one control number, with no explanation as to whether these refer to distinct items or are duplicative references to the same property.

- **There is no coherent mapping between items boxed from specific rooms and what appears on the formal 1B-numbered inventory**. This absence of linkage between location, control number, 1B tag, and physical description makes independent verification of the seizure trail functionally impossible.

- **At least five items listed in the 1B-numbered inventory do not appear in the room-by-room evidence inventory or seizure reports**. These unaccounted-for entries suggest either (a) documentation was fabricated after the fact to align with missing assets or (b) property was handled off-record, outside of standard protocols.

These **discrepancies**, taken together, reflect not a **clerical oversight** but a **systemic failure** of **evidence management** and **custodial documentation** — failures that **materially prejudice Defendant's ability to recover seized property** or assess the propriety of its continued retention.

## 3. Key Irregularities Raised in the Motion

The following asset handling deficiencies are now part of the record:

### 3.1   Arvada, Colorado

- **No chain of custody was ever signed by SA Vanacore or SA Rutkowski, Memorandum of Activity (Exhibit B).**

- A footnote in the **seized assets inventory** falsely refers to **Attachment C** (**Exhibit A.**) as a **Chain of Custody form** for these assets — but this document actually relates to the **Florida seizure**.

- No documentation exists showing **who received or secured the Colorado evidence**, or **where and when** it was **logged in the Denver field office**.

## 3.2    Palm Beach, Florida

The Memorandum of Activity for the Palm Beach seizure (**Exhibit B.**) details a number of items and custody steps that are **not reflected in the official inventory or chain of custody records**, in violation of DOJ policy and Rule 41(f)(1)(B).

**Chain of Custody Discrepancy:**

- The memorandum references **two sealed evidence bags** (one from the Airbnb and one from the Palm Beach County Jail), both reportedly placed in the SSA safe.

- However, the **Chain of Custody form dated December 12, 2019** reflects the transfer of **only one sealed bag**, with no mention of the second.

- Only **SSA Helmstetter** signs the form; **SA Amjad Qaqish**, who conducted the seizure and is repeatedly cited in the memorandum, does **not appear**.

**Missing or Unaccounted Property:**

- Agents seized **a cell phone, an Apple laptop computer, and two passports**, but the **Apple MacBook Pro and the bag** into which these items were placed are **absent from the 1B-numbered inventory**.

- **An SD card**, serial number **9114ZVNL C3W2**, was seized with Defendant's voluntary consent (Memorandum, ¶10) but is not listed anywhere in the inventory.

- Defendant's **Maui Jim sunglasses**, placed in the bag at his request, were acknowledged by agents but also **never logged** or inventoried.

- A **second cellphone (Huawei brand)**, seized along with the Apple iPhone, is **not referenced at all** in the custody documentation or item lists.

- The **$7,500 in U.S. currency**, recovered from Defendant's belt and sealed by jail personnel (Memorandum of Activity, ¶12), is also **completely absent** from the chain of custody form and asset logs.

These omissions involve **high-value digital devices, personal effects, and currency** — none of which have been properly recorded or explained.

This pattern of unlogged, omitted, or inconsistently recorded property strongly suggests a failure to execute and document the seizure lawfully and completely. The **growing divergence between narrative reports and custody records** raises serious concerns about the **handling, security, and potential disposition** of the evidence in question.

4

### 3.3    Missing BTC (February 2025 Motion to Compel Discovery)

- Defendant's own review of the government's records revealed that **4.99995661 BTC was transferred but never documented** in the seizure reports (**Exhibit C**).

- This discrepancy was specifically raised with AUSA **Anthony Torntore**, and formally identified in the **February 26, 2025 Motion to Compel Discovery** (**docket 402**).

- While the total amount of Bitcoin seized appears to have been **at least 8.67041881 BTC**, the government has only acknowledged **3.6704622 BTC** in its documentation.

- **To date, the government has failed to produce any forensic audit, blockchain analysis, or agent declaration** explaining what happened to the missing 4.999 BTC.

- This continuing failure, despite repeated formal requests, further undermines the integrity of the seizure process and evidentiary record.

### 3.4    Inventory Deficiencies

- The government's records include numerous vague and speculative item descriptions such as "**possible gold**," "**miscellaneous coins**," and "**currency**," which are **unverified by quantity, composition, denomination, or source**.

- Boxes are often **ambiguously labeled**, for example:

  - "**Evidence Box 6 – United States Currency**" (undefined whether coins or bills),

  - "**Evidence Box 4 – Possible gold silver copper coins and bars**,"

  - "**Evidence Box 6 – Possible silver/gold coins**,"

  - "**Item 77 – (1) Academy silver (colored) bar, 10 troy oz.**" (no serial number or assay mark noted).

- Notably, **"Evidence Box 2"** is referenced multiple times in the room-by-room seizure records — including for electronic devices and storage media such as hard drives, thumb drives, and an SD card — but it does not appear anywhere in the 1B-numbered inventory. This stands in stark contrast to other entries that are properly and specifically described, such as:

  - "**(U) Item 66 – 1 pair earrings, (3) loose .156 carat diamonds**."

- The inconsistency across the inventory suggests that some items were carefully documented while others — particularly those with potential high value — were **hastily labeled without verification**.

- This violates **Rule 41(f)(1)(B)** of the Federal Rules of Criminal Procedure, which requires that officers executing a search warrant **produce a complete and verified inventory** of all seized property, including adequate identification of what was taken.

## 4.    Cryptocurrency Storage Devices and Undisclosed Digital Wallets

The Government seized multiple digital storage devices containing cryptocurrency but has failed to produce any records verifying their contents, custody, or disposition. These omissions directly affect Defendant's ability to recover high-value digital assets and demand immediate clarification.

### 4.1    Cryptocurrency Storage Devices and Undisclosed Digital Wallets

**Missing inventory entries (Item 62, 83, 89, Control #21–22)**

In addition to inconsistencies in physical asset documentation, the seized items include multiple references to **cryptocurrency storage devices and wallets** that either remain unexplained or are entirely unlisted in the official inventory:

- **Item 62** – Bitcoin cold storage coin
- **Item 83** – 25 packages of silver (colored) Bitcoin coins (approximately 250 coins)
- coin
- **Item 88** – Trezor Bitcoin wallet hardware
- **Item 89** – Ethereum cold storage coin
- **Control #21 (site inventory)** – "USB 'Bitcoin' storage drive," "Password Recovery Cards for Bitcoin," "BTC Cryptocurrency Indicia Storage Cards," along with jewelry
- **Control #22 (site inventory)** – "BTC Cryptocurrency Indicia Storage Cards"

These items are highly sensitive digital instruments capable of holding substantial cryptocurrency. However, **no documentation has been provided to confirm their forensic imaging, access logs, blockchain tracing, or any official determination of their asset value — or whether the cryptocurrency stored on the cold storage coins was accessed, preserved, or removed by the Government**. To date, no agent declaration or forensic audit has been produced confirming their integrity or lawful disposition.

**Seized but undocumented wallets (Jaxx, cellphone)**

A **Jaxx ICO Tokens Cold Storage wallet** was stored on Defendant's **Apple MacBook Pro**, which was also seized but does **not appear in the 1B-numbered inventory or the 1B-numbered list**. This wallet contained approximately **$1 million in BTC at November 2019 values**, which corresponds to **roughly 119 BTC**, based on the average market price of **$8,400 per BTC in November 2019**. The wallet is accessible upon logging into the seized MacBook. The omission of both the wallet and the device housing it from the Government's records is material and remains unexplained. **As of June 2025, 119 BTC has an estimated market value of approximately $12,6 million**, based on an average BTC price of **$106,000**.

6

**Chain of custody issues for digital assets**

Additionally, approximately **23 BTC were stored on Defendant's cellphone wallet**, which was **seized in Palm Beach**. One of the two phones — an Apple iPhone — is mentioned in the **Memorandum of Activity**, but the **Huawei phone** is not referenced in any report. Neither phone is assigned a 1B number or appears in 1B-numbered inventory, and the Government has not disclosed whether the BTC wallet was accessed, imaged, or secured.

These irregularities directly implicate **evidentiary integrity**, **valuation of seized digital assets**, and the **completeness of the Government's record** under **Rule 41(g)** and its **Brady** disclosure obligations, as implemented in **Justice Manual § 9-5.001 (Disclosure Obligations)**.

## 4.2    Estimated Value of Seized Cryptocurrency

**Estimated Value of Seized Cryptocurrency**

| Source / Item | Crypto Type | Approx. Amount | Value in Dec 2019. @ $7,500 BTC + $134 ETH | Value in June 2025. @ $106,000 | Notes |
|---|---|---|---|---|---|
| Acknowledged BTC (Gov't Report) | BTC | 3,6704622 | ~$27,528 | $389,069 | Exhibit J |
| Unaccounted BTC | BTC | 4,9999566 | ~$37,500 | $529,995 | See Motion to Compel, Ex. E |
| Jaxx Cold Wallet | BTC | ~119 | ~$892,500 | $12,614,000 | Not inventoried |
| Cellphone Wallet (Palm Beach) | BTC | ~23 | ~$172,500 | $2,438,000 | Seized phone, wallet omitted |
| Standalone ETH (unassigned to item) | ETH | 48.916.537 | ~$6,600 | $169,208 | Source not linked to Item 89 |
| Item 88 | BTC | Unknown | — | Unknown | No balance reported or audited |
| Item 89 – Ethereum Cold Storage Coin | ETH | Unknown | — | Unknown | No balance reported or audited |
| Item 83 – Silver BTC Coins | BTC (possible) | ~250 | — | Unknown | Needs verification |
| Control #21 & #22 Devices | BTC storage/keys | Unknown | — | Unknown | No inventory or access log |

Total unverified or unacknowledged BTC = approx. 146.99995661 BTC (**~$15.6 million** as of June 2025).

This valuation was based on Mr. Weeks' best available knowledge[1] while detained, and was expressly qualified in the financial disclosure email dated **August 30, 2021**, now submitted as **Exhibit D**, as follows:

> *"Due to Jobadiah Sinclair Weeks' detention and limited access to materials, all values and amounts are best estimates."*

**Valuation Confirmed in Financial Disclosure (Exhibit D)**

---

[1] This disclaimer is not merely incidental — it reflects the systemic disadvantage imposed by pretrial detention. As Mr. Weeks had no access to his digital devices or records, any claim by the Government that he failed to provide "precise" asset values must be considered in light of this access restriction, which the Government itself created. The burden to verify, preserve, and report the status of seized cryptocurrency falls on the Government, not the detained Defendant.

The financial disclosure submitted in connection with Mr. Weeks' pretrial proceedings confirms that the cryptocurrency stored in the Jaxx cold wallet — seized by the Government but never inventoried — was valued at approximately **$1 million** as of late 2019. The filing further explains:

> "Mr. Weeks reports $1 million in 'Jaxx ICO Tokens/cold storage/staked coins.' ... Jaxx ICO Tokens refers to a cryptocurrency stored in a 'Jaxx' wallet... [and] refers to USB cold storage wallets seized by the Government... Mr. Weeks does not know the precise amount of cold storage coins. ... Based on the foregoing estimates, Mr. Weeks estimates that the assets amount to $1 million in total."

This valuation was made while Mr. Weeks was detained, with no access to his digital devices, as expressly noted in the disclosure:

> "Due to Jobadiah Sinclair Weeks' detention and limited access to materials, all values and amounts are best estimates."

**Lack of Confirmation or Audit by the Government**

Despite these clear representations and the Government's seizure of the relevant storage devices, no records have been produced confirming the **presence, value, or disposition** of the cryptocurrency stored on those devices. No forensic audit has been provided. No declaration of access or preservation has been submitted. The Government's continuing failure to confirm or account for high-value digital assets seized over five years ago is both procedurally indefensible and materially prejudicial.

## 4.3: Impairment of My Legal Defense and Prior Counsel's Inaction

In addition to the cryptocurrency valuations outlined above, I want to clarify that I have relied on digital assets — including some of the property still held by your office — to fund my legal defense. In my financial disclosure dated **August 30, 2021** (now Exhibit D), I explained that I had entered into a security agreement covering **approximately 21,301 shares of BitFury stock** to secure counsel. While those shares were not part of the Government's seizure, their pledged use shows my reliance on digital assets to afford representation.

That need became even more urgent after the Government seized multiple wallets, cold storage devices, and cryptocurrency-related records. Yet despite knowing this, **my former counsel failed to file a motion for the return of my property under Rule 41(g)**. I now believe this was based on **repeated assurances made by AUSA Anthony Torntore**, including to my lawyers and to me directly, that the return of my property was being arranged and would not require court involvement.

Those promises were never fulfilled. No property was returned. No documentation was provided. And no formal motion was filed — even though more than three years passed, and I remained without access to the very assets I needed to defend myself. This **combination of government delay and my own attorney's inaction** caused lasting harm. It limited my

ability to retain counsel, challenge charges, and prepare my defense. I am now forced to raise these issues myself, and to ask the Court to intervene where others have failed to act.

# 5. Chain of Custody Gaps – A Serious Unaddressed Failure

While the **June 6, 2025 Motion** identifies **missing Bitcoin**, **vague inventory records**, and the **disappearance of $7,500 in cash**, it did not yet raise what is now fully apparent: a **systemic and unremedied failure to document a proper chain of custody** for the assets seized on **December 10, 2019**. This issue became fully apparent only after the filing of the motion, as further review of the Government's records revealed deeper inconsistencies. Out of respect for the possibility that your office would address these issues internally, I refrained from raising them immediately. Such failures would violate DOJ's internal evidence-handling requirements under **Justice Manual § 9-13.420 (Seizure and Retention of Property)** and its disclosure obligations under **Brady** and **Giglio**, as implemented in **Justice Manual § 9-5.001 (Disclosure Obligations)**. However, unless these gaps are now clarified and remedied, should these discrepancies remain unresolved, I will have no alternative but to seek **judicial review and relief consistent with Rule 41(g)**.

This failure is no longer speculative — it is documented in the government's own materials.

## 5.1    Arvada, Colorado: No Chain of Custody at All

- The seizing agents, **SA Rutkowski and SA Vanacore**, never signed a Chain of Custody form, despite being the only agents present.
- The file (**Exhibit A.**) falsely refers to an "Attachment C" Chain of Custody form for the Arvada seizure — but this form pertains solely to the **Florida arrest**.
- No record has been produced identifying:

    - Who transported or logged the seized items,
    - Where they were stored,
    - Or when they entered official custody in Denver.

This is a **complete evidentiary void**, constituting a fatal break in the chain of custody.

## 5.2    Palm Beach, Florida: Contradictory Chain of Custody

- The Chain of Custody form, dated **December 12, 2019**, is signed **only by SSA Helmstetter** (**Exhibit A**).
- The Memorandum of Activity (point 13) explicitly states:

9

> *"The sealed evidence bags from both the Air B&B and the Palm Beach County Jail were placed in the SSA safe…"*

- Yet, the Chain of Custody form accounts for **only one sealed bag**.

- Furthermore, point 12 confirms that:

    > *"The belt and cash were put in evidence bags provided by the Palm Beach County Jail and sealed."*

- That second bag, containing **$7,500 in cash**, is never logged, transferred, or mentioned in any subsequent inventory.

This discrepancy confirms that **at least one sealed bag was never formally processed** — and is now effectively unaccounted for.

## 5.3    Document Date Discrepancy Raises Evidentiary Integrity Concerns

The Government's Chain of Custody form for the Palm Beach seizure is dated **December 12, 2019**, even though the property — including sealed evidence bags — was seized and documented on **December 10, 2019**, as confirmed in the Memorandum of Activity. This two-day discrepancy raises serious concerns about where the items were held during that time, who had access, and whether proper custody protocols were followed. No explanation has been provided for why the inventory or transfer documentation was not prepared contemporaneously, as required under **Federal Rule of Criminal Procedure 41(f)(1)(B)** and DOJ policy in **Justice Manual § 9-13.420 (Seizure and Retention of Property)**. If the form was created or backdated after the fact, this must be formally acknowledged and justified, and all interim handling records must be disclosed.

# 6. Escalation Required Due to Outstanding Issues and Internal Breakdown

Given the severity and persistence of these chain of custody failures — combined with the disappearance of high-value assets — I believe you are now **ethically and professionally obligated to report these matters to DOJ supervisory personnel**, including:

- The **U.S. Attorney for the Southern District of Florida**, Markenzy Lapointe;

- The **Professional Responsibility Officer** in your district;

- And potentially the **Office of Professional Responsibility (OPR)** in Washington.

These are not routine discrepancies. AUSA **Anthony Torntore repeatedly acknowledged the government's obligation to return the seized property**:

- Following the **March 22, 2024 letter** from my former counsel David Stone, Torntore claimed he contacted the FBI.

- He later explained that the FBI agent assigned to the matter had changed, and the process needed to restart — **and that happened again** with the next agent.

- Still later — after the matter remained unresolved — **Torntore personally emailed me on April 2, 2025**, again stating that the FBI was working on coordinating the return.

## 7.  Irregularities in Inventory Documentation and Asset Handling

Upon review of the various inventory lists produced by the Government, Defendant notes several troubling inconsistencies that call into question the adequacy and integrity of the asset tracking process:

1. **Discrepancies Between Inventories**:
   Multiple official inventory documents list overlapping, incomplete, or inconsistent entries. For example, the 1B-numbered inventory and the "Evidence Log by Control #" from the search at 11627 W. 74th Way do not fully correspond. Several seized items appear in one list but not the other, without explanation.

2. **Unlisted but Seized Items**:
   Numerous items described in the "Inventory Listing of All Items Seized at Search Warrant Site" — such as *stock certificates, corporate records, debit cards, hard drives, and handwritten notes about bitcoin* — are not found in the official 1B-numbered asset list. These are potentially critical to both the valuation of seized assets and evidentiary integrity, yet appear to have been omitted from formal seizure documentation.

3. **Internal Duplicates Within the Site Log**:
   The site inventory includes duplicate entries for assets with the same descriptions but different control numbers, such as:

   - "Corporate Records" listed under Control #2 and #4.
   - "Box of Coins" listed under both Control #13 and #16.
   - "Possible Silver Coins" listed under Control #12 and potentially overlapping with other items labeled as "Misc Coins" or "Possible Silver/Gold Coins."

4. No explanation has been provided for whether these are distinct items or repeat entries of the same physical property.

5. **Inconsistently Tracked Items**:
   Several high-value or sensitive items — such as cryptocurrency storage devices, recovery passwords, and USB drives — are inconsistently referenced or entirely absent in certain records. For example, Control #21 refers to "USB 'Bitcoin' Storage Drive" and "Password Recovery Cards" without assigning them a 1B number or appearing in 1B-numbered inventory.

6. **Undocumented Discrepancies in Seizure Sites**:
The existence of assets seized in both Colorado and Florida further complicates reconciliation. No single, consolidated inventory has been produced to account for all property seized from the Defendant's residences, persons, or travel lodgings.

**Comparative Tabel Demonstrating Discrepancies:**
To further illustrate the issues identified above, Defendant has prepared a consolidated Excel comparing (**Exhibit E**) the Government's 1B-numbered inventory and the room-by-room site inventory. This overview reveals dozens of discrepancies, including:

- Items that appear on only one list without explanation;

- Entries with no 1B number or missing item identifiers;

- Apparent duplicates across lists and control numbers; and

- Physical items (such as digital devices and stock certificates) that were seized but never formally inventoried.

This comparative table confirms that the current record cannot be reconciled without further disclosure and that key assets may have been misclassified, mishandled, or omitted entirely from the official evidence trail.

**Conclusion**
In light of these irregularities, and consistent with the Government's obligations under DOJ policy and professional responsibility standards, it is incumbent upon your office to **promptly determine, verify, and document** the full history and current status of all assets seized during the December 10, 2019 enforcement action. This includes:

- A **complete and reconciled inventory** of all seized property across all sites and jurisdictions (including Colorado and Florida);

- A **cross-referenced ledger** tying each 1B-numbered item to its corresponding control number, physical description, and evidence box;

- Clarification of all items that appear in one list but not another, or that were seized but never formally logged;

- An explanation for all **internal duplications, vague descriptions, and inconsistencies** (e.g., identical items listed under different control numbers, or boxes containing items not reflected in 1B-numbered inventory);

- A reconciliation of what was **physically boxed from each room** and how those items correlate — or fail to correlate — with both the evidence box logs and the 1B-numbered inventory;

- A clear indication of **which items were returned, retained, destroyed, or transferred**, and the legal basis for each such action.

These steps are essential to preserve the integrity of the evidence chain, protect the Defendant's property rights, and allow meaningful judicial review. The Defendant respectfully requests that this Court **order the Government to produce a full reconciled inventory and explanation of discrepancies without further delay.**

## 8. Outstanding Chain of Custody Failures Require Immediate Internal Investigation

In light of the failures detailed above, and pursuant to DOJ policy and professional responsibility obligations, I respectfully request that your office determine and disclose the current status and handling history of the seized assets by answering the following questions:

1. **Where are the seized assets currently located?**
   Are they still held at the Denver evidence facility, or were they relocated? If relocated, when, by whom, and to what destination?

2. **Was a formal chain of custody ever completed and signed by the seizing agents in Arvada (SA Rutkowski and SA Vanacore)?**
   If no such documentation exists, please formally confirm and explain this omission.

3. **Were any of the Arvada-seized assets transferred to other agencies or storage locations?**
   If so, please produce all corresponding transport logs, transfer receipts, or custodial intake records.

4. **Where is the sealed evidence bag containing the $7,500 in U.S. currency recovered at the Palm Beach County Jail?**
   If no chain of custody or inventory record exists for that bag, this must be disclosed and explained immediately.

5. **Clarify the contents and origin of the U.S. currency in Evidence Box 6, Item 17**, which is vaguely labeled "United States Currency" with no denomination, source, or total value provided. This entry cannot overlap with the **$7,500 seized at the Palm Beach County Jail**, as the latter originated in Florida and was separately sealed. If no valuation, chain of custody, or itemization exists for the Arvada currency, this must be disclosed and explained immediately.

6. **Which federal agents or agencies were — or currently are — responsible for the custody, inventory, and storage of these assets at each point in time?**
   Please provide a timeline of custodial responsibility across all stages of seizure, transfer, and storage.

7. **Were any photographs taken at the time of seizure (in Arvada or Palm Beach), during evidence boxing, or during intake at the Denver field office?**
   If so, these photographs should be produced to substantiate the asset descriptions and packaging process.

8. **When did the Denver field office first receive the Arvada-seized assets, and what documentation was created at the time of intake?**
   Please provide dated records showing receipt, logging, and verification of each item transferred to that facility.

13

9. **What is the current status of the digital devices seized in Palm Beach, including the Apple MacBook Pro and two cellphones (Apple and Huawei)?** Were these devices logged, returned, or forensically imaged? If so, by whom and when? Please provide documentation of their seizure, custody, and any access logs maintained.

10. **Has the Government accessed, transferred, or imaged any cryptocurrency stored on the following physical wallets or storage items?** Please confirm whether the contents of these items were accessed, traced, or otherwise altered, and produce any forensic reports or logs of such activity:

   - **Item 62** – Bitcoin cold storage coin
   - **Item 83** – 25 packages of silver (colored) Bitcoin coins (approx. 250 coins)
   - **Item 89** – Ethereum cold storage coin
   - **Control #21** – USB 'Bitcoin' storage drive; Password Recovery Cards for Bitcoin; BTC Cryptocurrency Indicia Storage Cards
   - **Control #22** – BTC Cryptocurrency Indicia Storage Cards
   - **Jaxx ICO wallet** stored on the MacBook
   - **BTC cellphone wallet** containing ~23 BTC

If your office cannot produce **verifiable answers** or **authenticated records** for any of these questions, it raises not only **constitutional concerns** but also potential violations of DOJ policy, including **Justice Manual § 9-13.420 (Seizure and Retention of Property)**, which governs the **inventory and retention of seized property**, and **§ 9-5.001 (Disclosure Obligations)**, which mandates full disclosure of discoverable and exculpatory evidence. In such case, I respectfully request that you refer the matter to DOJ leadership, including the **U.S. Attorney for the Southern District of Florida** and the **Office of Professional Responsibility (OPR)**, as required under DOJ internal policy — including **Justice Manual § 9-27.750 (Compliance with Legal and Ethical Obligations)** and **§ 1-1.100 (Duty of Candor to the Court)** — when **systemic evidence-management failures** are discovered or suspected.

## 9. Request for Immediate Government Action Prior to Judicial Escalation

In light of the material deficiencies outlined above — including the absence of a reconciled inventory, missing high-value digital items, and unresolved chain of custody failures — and pursuant to your obligations under *Justice Manual* § 9-27.750 (*Compliance with Legal and Ethical Obligations*) and § 1-1.100 (*Duty of Candor to the Court*), I respectfully request that your office take the following corrective steps **within five (5) business days**:

**1. Inventory Reconciliation and Documentation**

- **Produce a complete, consolidated inventory** that cross-references all seized items by **1B number**, **control number**, **physical description**, and **evidence box**.

14

- **Clearly indicate** which items were **returned**, **retained**, **destroyed**, or **transferred**, and under what **legal authority or directive**.

- **Provide a list** of all seized items that remain **unaccounted for** or were **never formally logged** in the Government's official inventory systems.

## 2. Production of Chain of Custody Records

- **Disclose all chain of custody documents** related to the seizures in **Arvada** and **Palm Beach**, including any **logs**, **photographs**, and **agent sign-offs** memorializing the transfer, intake, or storage of evidence.

- **Identify the current physical location** of all remaining seized items, the **agency or facility** responsible for their custody, and the **timeline of their transfer and storage**, including dates and responsible personnel.

## 3. Specific Clarifications and Missing Property

- **Explain the current status** of **digital devices seized in Palm Beach**, including the **Apple MacBook Pro** and both **cellphones** (Apple and Huawei), and whether they remain in government custody.

- **Confirm whether the contents** of **cryptocurrency storage devices** — including **Items 62, 83, 89**, and **Control Nos. 21 and 22** — were **accessed**, **imaged**, **transferred**, or **preserved**, and under what authority or investigative purpose.

- **Identify the disposition** of the **Jaxx cold storage wallet** (estimated at **119 BTC**) and the **23 BTC cellphone wallet**, including whether any transfers or forensic actions were performed.

- **Confirm the location or loss** of the **sealed evidence bag** containing **$7,500 in cash** and the **SD card** referenced in the **Palm Beach Memorandum of Activity** (Point 10), and explain why they do not appear in any official inventory.

## 4. Identification of Responsible Agents or Units

- **Provide the names and roles** of the agents or agency units who were responsible for **asset custody at each stage** — including **seizure**, **storage**, **transfer**, and **present control**.

- **Produce declarations or written confirmations** from the **current custodial agents**, affirming the status, location, and handling of all seized property under their supervision.

Should your office be **unable to comply** or **provide verifiable documentation** of asset status, I will have no alternative but to seek **immediate judicial intervention** through **supplemental filings** and/or a request for an **evidentiary hearing**.

**Requested Relief Summary:**

15

1. **Production of a reconciled, full inventory** with matching **control numbers**, **1B tags**, and detailed **descriptions** of all seized items.

2. **Complete chain of custody logs** for both **Arvada** and **Palm Beach** seizure sites.

3. **Written clarification** regarding **missing high-value items**, including the **MacBook**, **Sandisk SD card**, **BTC storage devices**, and other items not appearing in official inventories.

4. **Declaration from a responsible agent** confirming the **current asset status** and **custody trail** for each item.

5. **Written explanation** if any records are **unavailable**, specifying **why**, **what efforts were made**, and **who is responsible** for the omission.

Absent a timely and complete response, I intend to submit a formal **Notice of Post-Filing Discrepancies** to the Court and request appropriate relief under **Rule 41(g)** — including evidentiary hearings and discovery into custodial failures and asset disposition. If your office cannot reconcile the discrepancies outlined above, it has a **legal and professional obligation** under *Justice Manual* § 9-27.750 (*Compliance with Legal and Ethical Obligations*) and § 1-1.100 (*Duty of Candor to the Court*) to disclose that fact to the Court, notify the appropriate DOJ oversight bodies, and facilitate the **return of all property for which no lawful basis of retention exists**.

I look forward to your full response.

**Sincerely,**
Jobadiah Sinclair Weeks
Pro Se
2301 Collins Avenue
Miami Beach, FL 33139
Email: silenceweeks1@gmail.com
Electronically Signed via DocuSign
June 9, 2025

16

**CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2025, a true and correct copy of the foregoing letter titled *"Follow-Up Request for Reconciled Inventory and Chain of Custody Documentation"* was served via email upon the following Assistant United States Attorneys:

- **Ingrid Eicher**
  United States Attorney's Office
  District of New Jersey
  970 Broad Street, 7th Floor
  Newark, New Jersey 07102
  Ingrid.Eicher@usdoj.gov

- **Vinay S. Limbachia**
  United States Attorney's Office
  District of New Jersey
  970 Broad Street, 7th Floor
  Newark, New Jersey 07102
  Vinay.Limbachia@usdoj.gov

Executed on this 9th day of June, 2025.

Respectfully submitted,
**Jobadiah Sinclair Weeks**
Pro Se
2301 Collins Avenue
Miami Beach, FL 33139
Email: silenceweeks1@gmail.com

17

# Exhibit A

## Room-by-room seizure logs

Used to compare against 1B-numbered inventories and show missing items

## 1B-numbered inventory

Chain of Custody Form (dated December 12, 2019) for Palm Beach Used to show only one sealed bag recorded despite two being seized

## Chain of Custody Form (dated December 12, 2019) for Palm Beach

Used to show only one sealed bag recorded despite two being seized

## SCHEDULE A

I.    Items Removed by the IRS from 11627 West 74th Way, Arvada, Colorado, on December 10, 2019, and Apparently Stored in the Denver Holding Office.[1]

| ITEM # | | DESCRIPTION |
|---|---|---|
| 1B192 | (U) Item 104 | "20 Trillion Dollar" Silver (colored) piece. |
| 1B191 | (U) Item 103 | Ron Paul 1 oz copper (colored) coin. |
| 1B190 | (U) Item 102 | Approximately 80 collector quarter dollar coins. |
| 1B189 | (U) Item 101 | (3) NTR Metals 10oz silver (colored) bars. |
| 1B186 | (U) Item 98 | Approximately 22 gold (colored) coins. |
| 1B185 | (U) Item 97 | Approximately 150 dimes. |
| 1B184 | (U) Item 96 | Approximately 72 silver (colored) coins. |
| 1B180 | (U) Item 92 | (20) 1/10 gram gold (colored) certificates in collector cases. |
| 1B179 | (U) Item 91 | 20 cannisters containing approximately 500 silver (colored) coins in plastic case. |
| 1B177 | (U) Item 89 | Ethereum cold storage coin. |
| 1B176 | (U) Item 88 | Trezor Bitcoin wallet hardware. |
| 1B175 | (U) Item 87 | Ledger HW.1 wallet hardware(cryptocurrency) |
| 1B169 | (U) Item 81 | Cash $100.00 x 34 = $3,400, $50.00 x 20 = $1,000, $2.00 x 1 = $2.00, Coins $1.00 x 8 = 8.00 for a total of $4,410.00 in US Currency. |
| 1B166 | (U) Item 78 | 23 cannisters copper (colored) coins. |
| 1B165 | (U) Item 77 | (1) Academy silver (colored) bar, 10 troy oz. |
| 1B164 | (U) Item 76 | (1) NTR 10 troy oz silver (colored) bar. |
| 1B163 | (U) Item 75 | (1) d'Anconia 1oz copper (colored) coin. |
| 1B162 | (U) Item 74 | (1) Rob Gray 1oz copper (colored) coin. |
| 1B161 | (U) Item 73 | (1) AOCS approved 1oz copper (colored) coin. |
| 1B160 | (U) Item 72 | (1) Hunk Papa Lakota 1/2oz copper (colored) coin. |
| 1B158 | (U) Item 70 | (5) 1oz Silver (colored) coins. |
| 1B155 | (U) Item 67 | (1) pouch containing 2 pair gold (colored) earrings, (1) gold (colored) ring, (1) gold (colored) necklace. |
| 1B154 | (U) Item 66 | 1 pair earrings, (3) loose .156 carat diamonds. |

---

[1] See **Attachment A** (a PDF file provided by AUSA Jamie Hoxie to defense counsel); and, **Attachment B** (an Inventory Listing of All Items Seized at Search Warrant Site).

| 1B151 | (U) Item 63 | 45 canisters containing approximately 889 silver (colored) coins. |
|---|---|---|
| 1 | Evidence Box 1 | Stock Certificates |
| 3 | Evidence Box 1 | Folder labeled "Blackchair" with documents in it; debit cards; handwritten notes on bitcoin. |
| 10 | Evidence Box 3 | Miscellaneous coins. |
| 11 | Evidence Box 3 | BTC cold storage coin. |
| 12 | Evidence Box 3 | Possible silver coins. |
| 13 | Evidence Box 4 | Box of coins. |
| 14 | Evidence Box 4 | Possible gold silver copper coins and bars. |
| 15 | Evidence Box 5 | Golden currency style bars. |
| 16 | Evidence Box 5 | Box of coins. |
| 17 | Evidence Box 6 | United States Currency |
| 18 | Evidence Box 6 | Possible silver/gold coins. |
| 19 | Evidence Box 6 | Possible silver coins. |
| 20 | Evidence Box 6 | Possible silver/gold coins. |

II.   Items Seized by the IRS Incident to Arrest on or about December 10, 2019, in West Palm Beach, Florida.[2]

| ITEM # | DESCRIPTION |
|---|---|
| 1 | One wedding band. |
| 2 | United States Currency. |

---

[2] See **Attachment C** (a Transfer of Evidence and Chain of Custody form, dated December 10, 2019).

| Item # | Description | Item Removed from Weeks residence at 11627 W. 74th Way, Arvada, CO | Date of Search | Holding Office |
|--------|-------------|---------------------------------------------------------------------|----------------|----------------|
| 1B194 | (U) from Item 66 | (1) fabric pouch with (3) rings, | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B192 | (U) Item 104 | "20 Trillion Dollar" Silver (colored) piece. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B191 | (U) Item 103 | Ron Paul 1oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B190 | (U) Item 102 | Approximately 80 collector quarter dollar coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B189 | (U) Item 101 | (3) NTR Metals 10oz silver (colored) bars. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B187 | (U) Item 99 | (1) Silver (colored) bullet 1oz.(Per Firearms instructor SA John Maglosky, this is not a real bullet.) | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B186 | (U) Item 98 | Approximately 22 gold (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B185 | (U) Item 97 | Approximately 150 dimes. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B184 | (U) Item 96 | Approximately 72 silver (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B180 | (U) Item 92 | (20) 1/10 gram gold (colored) certificates in collector cases. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B179 | (U) Item 91 | 20 cannisters containing approximately 500 silver (colored) coins in plastic case. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B178 | (U) Item 90 | 5 cards containing a bank and other value cards. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B177 | (U) Item 89 | Ethereum cold storage coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B176 | (U) Item 88 | Trezor Bitcoin wallet hardware. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B175 | (U) Item 87 | Ledger HW.1 wallet hardware(cryptocurrency) | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B171 | (U) Item 83 | 25 packages silver (colored) Bitcoin coins (approximately 250 coins). | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B169 | (U) Item 81 | Cash $100.00 x 34 = $3,400, $50.00 x 20 = $1,000, $2.00 x 1 = $2.00, Coins $1.00 x 8 = 8.00 for a total of $4,410.00 in US Currency. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B166 | (U) Item 78 | 23 cannisters copper (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B165 | (U) Item 77 | (1) Academy silver (colored) bar, 10 troy oz. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B164 | (U) Item 76 | (1) NTR 10 troy oz silver (colored) bar. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B163 | (U) Item 75 | (1) d'Anconia 1oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B162 | (U) Item 74 | (1) Rob Gray 1oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B161 | (U) Item 73 | (1) AOCS approved 1oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B160 | (U) Item 72 | (1) Hunk Papa Lakota 1/2oz copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B159 | (U) Item 71 | (1) 1909 20 franc copper (colored) coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B158 | (U) Item 70 | (5) 1oz Silver (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B157 | (U) Item 69 | (1) Clubkoin flashdrive, written recovery passwords. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B156 | (U) Item 68 | (4) 1oz gold (colored) coins & (4) 1/10oz gold (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B155 | (U) Item 67 | (1) pouch containing 2 pair gold (colored) earrings, (1) gold (colored) ring, (1) gold (colored) necklace. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B154 | (U) Item 66 | 1 pair earrings, (3) loose .156 carat diamonds. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B152 | (U) Item 64 | 1 sheet / 16 1oz Copper (colored) crackers. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B151 | (U) Item 63 | 45 canisters containing approximately 889 silver (colored) coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B150 | (U) Item 62 | Bitcoin cold storage coin. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B149 | (U) Item 61 | 40 Copper (colored) cannabis coins. | Search executed by IRS on 12/10/2019 | DN - DENVER |
| 1B148 | (U) Item 60 | (1) Black Atlantis brand multi-tool. | Search executed by IRS on 12/10/2019 | DN - DENVER |

# Inventory Listing of All Items Seized at Search Warrant Site

| Site Name: | Investigation Number: | Report Date: |
|---|---|---|
| 11627 W 74TH WAY | 1000293265 | Tuesday, December 10, 2019 |
| | **Starting Date and Time:** | |
| SINGLE FAMILY HOME | 12/10/2019 07:30 AM | |
| | **Ending Date and Time:** | |
| | 12/10/2019 01:30 AM | |

| **Control #:** | 1 | | **Evidence Box:** | 1 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | DRESSER | | | |
| **Description:** | Seized per Warrant | STOCK CERTIFICATES | | |

| **Control #:** | 2 | | **Evidence Box:** | 1 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | DESK | | | |
| **Description:** | Seized per Warrant | CORPORATE RECORDS | | |

| **Control #:** | 3 | | **Evidence Box:** | 1 |
|---|---|---|---|---|
| **Location:** | DINING ROOM (NE) | | **Locator Code:** | |
| **Found:** | ON TOP OF DESK | | | |
| **Description:** | Seized per Warrant | FOLDER LABELED "BLACKCHAIR" W/ DOCS IN IT; DEBIT CARDS; HANDWRITTEN NOTES ON BITCOIN | | |

| **Control #:** | 4 | | **Evidence Box:** | 1 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | DRESSER | | | |
| **Description:** | Seized per Warrant | CORPORATE RECORDS | | |

| **Control #:** | 5 | | **Evidence Box:** | 2 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | UNDER DESK | | | |
| **Description:** | Seized per Warrant | WESTERN DIGITAL MYBOOK USB HARDDRIVE (SERIAL NUMBER: WCC7K1LSFTTP) | | |

| **Control #:** | 6 | | **Evidence Box:** | 2 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | ON SHELF ABOVE DESK | | | |
| **Description:** | Seized per Warrant | GENERIC USB THUMBDRIVE (SERIAL NUMBER: Y1178-T48L-B52L-V3) | | |

| **Control #:** | 7 | | **Evidence Box:** | 2 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | IN SMALL GUN SAFE | | | |
| **Description:** | Seized per Warrant | SANDISK EXTREME SD CARD (SERIAL NUMBER: BM1235222025G) | | |

| **Control #:** | 8 | | **Evidence Box:** | 2 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | ON TOP OF DRESSER | | | |
| **Description:** | Seized per Warrant | HUAWEI CELLPONE UNKNOWN SERIAL NUMBER | | |

| **Control #:** | 9 | | **Evidence Box:** | 2 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | ON THE FLOOR BY SHELF | | | |
| **Description:** | Seized per Warrant | APPLE MACBOOK PRO (SERIAL NUMBER: W8944JH766E) | | |

| **Control #:** | 10 | | **Evidence Box:** | 3 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | CABINET | | | |
| **Description:** | Seized per Warrant | MISC COINS | | |

| **Control #:** | 11 | | **Evidence Box:** | 3 |
|---|---|---|---|---|
| **Location:** | BASEMENT HIDDEN ROOM | | **Locator Code:** | |
| **Found:** | ON TOP OF DESK | | | |
| **Description:** | Seized per Warrant | BTC COLD STORAGE COIN | | |

| **Control #:** | 12 | | **Evidence Box:** | 3 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | NEXT TO BED | | | |
| **Description:** | Seized per Warrant | POSSIBLE SILVER COINS | | |

| **Control #:** | 13 | | **Evidence Box:** | 4 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | UNDER FUTON BED | | | |
| **Description:** | Seized per Warrant | BOX OF COINS | | |

| **Control #:** | 14 | | **Evidence Box:** | 4 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | WATER TIGHT CONTAINER | | | |
| **Description:** | Seized per Warrant | POSSIBLE GOLD SILVER COPPER COINS & BARS | | |

| **Control #:** | 15 | | **Evidence Box:** | 5 |
|---|---|---|---|---|
| **Location:** | BEDROOM (S) UP JOBYS | | **Locator Code:** | |
| **Found:** | CLOSET BOX LABELED "GOLD DOLLARS" | | | |
| **Description:** | Seized per Warrant | GOLDEN CURRENCY STYLE BARS | | |

| Control #: | 16 | | Evidence Box: | 5 |
| Location: | BEDROOM (S) UP JOBYS | | Locator Code: | |
| Found: | CLLOSET | | | |
| Description: | Seized per Warrant | BOX OF COINS | | |

| Control #: | 17 | | Evidence Box: | 6 |
| Location: | BEDROOM (S) UP JOBYS | | Locator Code: | |
| Found: | CLOSET GUN SAFE | | | |
| Description: | Seized per Warrant | US CURRENCY | | |

| Control #: | 18 | | Evidence Box: | 6 |
| Location: | BEDROOM (S) UP JOBYS | | Locator Code: | |
| Found: | CLOSET HAND GUN SAFE | | | |
| Description: | Seized per Warrant | POSSIBLE SILVER/GOLD COINS | | |

| Control #: | 19 | | Evidence Box: | 6 |
| Location: | BEDROOM (S) UP JOBYS | | Locator Code: | |
| Found: | CLOSET GUN SAFE | | | |
| Description: | Seized per Warrant | POSSIBLE SILVER COINS | | |

| Control #: | 20 | | Evidence Box: | 6 |
| Location: | BEDROOM (S) UP JOBYS | | Locator Code: | |
| Found: | CLOSET HAND GUN SAFE | | | |
| Description: | Seized per Warrant | POSSIBLE SILVER/GOLD COINS | | |

| Control #: | 21 | | Evidence Box: | 6 |
| Location: | BEDROOM (S) UP JOBYS | | Locator Code: | |
| Found: | DESK, SMALL GUN SAFE | | | |
| Description: | Seized per Warrant | POSSIBLE SILVER/GOLD COINS<br>USB "BITCOIN" STORAGE DRIVE<br>PASSWORD RECOVERY CARDS FOR BITCOIN<br>RING, EARRINGS, CHAIN | | |

| Control #: | 22 | | Evidence Box: | 5 |
| Location: | BEDROOM (S) UP JOBYS | | Locator Code: | |
| Found: | DESK | | | |
| Description: | Seized per Warrant | BTC CRTYPTO CURRENCY INDICIA<br>STORAGE CARDS | | |

## Transfer of Evidence
## Chain of Custody

Date Obtained: 12/10/19    Investigation Name: JOBADIAH NEEKS

Investigation Number: █████████

Source of Items: Arrest Warrant · JOBADIAH Neeks

List the item numbers on the attached inventory which are included in this Chain of Custody.  OR: Briefly describe the property being transferred via this Chain of Custody.

Property in Sealed Evidence Bag · initialed by WEEKS
- One wedding band
- Two car key fobs + keychain
- Nametag lanyard
- Pen
- Chase Southwest Visa Card
- James Foster business card
- wristband
- US Currancy

**Keep Original with Evidence**

| From: (printed name) | To: (printed name) | Purposes: |
|---|---|---|
| Jonathan Helmstetter | Michael Galdys | Transfer |
| From: (signature) | To: (signature) | Date: 12/11/19 |
| From: (printed name) Michael Galdys | To: (printed name) SCOTT JOHNSON | Purposes: Transfer |
| From: (signature) | To: (signature) | Date: 12/11/19 1300 |
| From: (printed name) | To: (printed name) | Purposes: |
| From: (signature) | To: (signature) | Date: |
| From: (printed name) | To: (printed name) | Purposes: |
| From: (signature) | To: (signature) | Date: |
| From: (printed name) | To: (printed name) | Purposes: |
| From: (signature) | To: (signature) | Date: |

# Exhibit B

**Memorandum of Activity (Palm Beach Seizure)**
Used to highlight unacknowledged items and chain of custody issues

**Memorandum of Activity (Arvada Seizure)**
Used to highlight missing chain of custody



## DEPARTMENT OF THE TREASURY
### Internal Revenue Service
### Criminal Investigation

## Memorandum of Activity

---

| | | | |
|---|---|---|---|
| **Investigation #:** | 1000293264 | **Location:** | Residence of Jobadiah Weeks |
| **Investigation Name:** | Jobadiah Weeks | | 11627 W. 74th Way |
| | | | Arvada, CO |

| | |
|---|---|
| **Date:** | December 10, 2019 |
| **Time:** | Various |
| **Participant(s):** | Adam Rutkowski, Special Agent |
| | Victor Vanacore, Special Agent |

Attached are documents containing screenshots representative of the cryptocurrency seizures Special Agent Vanacore (witnessed by SA Rutkowski) were able to affect at the Weeks' Residence during the Search Warrant on December 10, 2019.  This document and its related attachments should be preserved as an official account of the activities associated with these seizures:

1. There were multiple assets left in the Exodus Wallet, which were not seized, as there were no seizure wallet addresses which had been provided to send the funds to. Additionally, the dollar amounts were deemed to be below the threshold after speaking with the Command Post.
   a. A Final Screenshot showing the balances in these accounts is included in the .pdf file.
   b. The Exodus wallet was restored based upon a .png picture file located on an SD card which was found during the Search Warrant on the room which had been identified as belonging to Joby Weeks.  The .png file was a picture of the backup seed phrase.
   c. The seed phrase was used to restore the Exodus Wallet onto a cold computer.
   d. After the transfers were affected by SA Vanacore, the Exodus Wallet was deleted from the Cold Computer.
   e. Any further access to the remaining funds on the Exodus Wallet can only be gained by using the .png seed phrase picture.
2. One Bitclub Club Coin Ledger Nano S was located.  Two hand-written seed phrase cards, manufactured by Ledger, were located.
   a. Attempts were made to restore the Ledger Nano S using the seed phrase. Agents were successful in that they could see the device potentially contained Bitcoin, Ethereum, Club Coin, and possibly two other assets.  However, the agents were unable to determine the quantity of these assets using the device without plugging the device into the cold computer.
   b. Agents attempted to plug the device into a cold computer using the required software, Ledger Live.
   c. It was determined that the firmware on the device needed to be updated.  Agents were unsuccessful in upgrading the firmware.

    d.  Therefore, agents used the wallet software, Electrum, to attempt recovery of the Bitcoin assets associated with each of the two seed phrases.  This attempt only provides potential access to the Bitcoin.  Access to the other potential cryptocurrencies associated with these wallets was not attempted.

    e.  For one of the two seed phrases, agents were successful in finding bitcoin.  Agents transferred this bitcoin to the seizure addresses provided in advance of the enforcement action.

3.  Access to the Bitcoin using Electrum has to be conducted by creating three separate wallets – One Legacy Wallet, a P2SH SegWit Wallet (containing bitcoin addresses starting with the number 3), and a bech32 SegWit Wallet (containing bitcoin addresses starting with "bc1".

    a.  Given time constraints while on site, agents are unsure if they tried all three methods using each seed phrase.  Also, there are additional configuration settings which must be used in order to properly gain access to any of these assets.  If the configuration settings are not put in place correctly, the assets would not appear, even if they are actually present.

    b.  Therefore, it is recommended that at a later date in time, the government use another Ledger Device to restore each of the seed phrase cards to.  Once the restore has occurred successfully, all assets available that are connected with that seed phrase (which represents a private key) should become viewable and accessible.

4.  Other potential physical cryptocurrency assets were seized.  Most of these were things like actual physical coins which contained either public or private Bitcoin keys, or both.  Because of time constraints involved with the search, these items were physically seized, and no attempt was made to quantify their value, or to seize any potential funds which may be present.  As such, a separate attempt should be made at a later date to determine whether there are any funds associated with these physically seized items.

5.  Each of the aforementioned seizures was conducted by the Seizing Agent at our Site – SA Vanacore.  SA Rutkowski and SA Vanacore were each present and watching during the entire analysis and seizure process.

6.  The attached screenshots are considered to be the evidence of the activities conducted related to the items discussed in this memorandum.

Adam Rutkowski
Special Agent

Victor Vanacore
Special Agent

    U.S. Treasury Criminal Investigation



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

## Memorandum of Activity

**Investigation #:** ▮▮▮▮▮▮▮▮                                  **Location:   See Below**
**Investigation Name:**  JOBADIAH WEEKS
**Date:**  December 10, 2019
**Time:**  Approx. 9:10 a.m. - 8:30p.m.
**Participant(s):**  JOBADIAH S. WEEKS, Arrestee
Amjad Qaqish, Special Agent
Jonathan Helmstetter, Special Agent

At approximately 9:10 a.m., JOBADIAH WEEKS was arrested by agents in the courtyard of the Marriott hotel located at 1001 Okeechobee Blvd, West Palm Beach, FL 33401.  Immediately after WEEKS was placed in handcuffs by S/A Helmstetter, S/A Helmstetter read WEEKS his Miranda Rights.  Agents seized a cell phone, an Apple laptop computer, and two passports pursuant to an FBI search warrant issued in the Southern District of Florida.  After the arrest, the following events occurred:

1. WEEKS was transported by TFO Norma Young, TFO Manny Espinosa, and IRS-CI S/A Dave Keyes to the IRS-CI office located at 1700 Palm Beach Lakes Blvd, Suite 500, West Palm Beach, FL 33401.

2. WEEKS waived his right to counsel via Form 5228 and consented to a video and audio recorded interview with S/A Amjad Qaqish and S/A J. Helmstetter. The interview lasted from approximately 9:45 a.m. to 3:24 p.m.

3. WEEKS asked agents to send a message to his friend Enzo who was supposed to meet WEEKS in West Palm Beach in the evening.  S/A CIS Jason Leighton provided S/A Helmstetter with a number for Enzo from the digital evidence seized from WEEKS of +39 366 4091068.  WEEKS told agents that Enzo was from the Vatican.  S/A Qaqish sent a message to Enzo that WEEKS would not be able to meet him.

4. Agents placed WEEKS' personal effects, which he had at the time of his arrest, in a sealed evidence bag.  WEEKS, S/A Qaqish, and S/A Helmstetter initialed the bag where it was sealed.  WEEKS agreed to have these items returned to his attorney at his court appearance.

5. At approximately 4:01 p.m., WEEKS consented to a search of his Facebook account, his email accounts (jobyweeks@gmail.com and jobyweeks@me.com), his cell phone (phone number 619-519-2208), his telegram account, his

**USA_19877_04004724**

WhatsApp account, and his Skype account.  WEEKS told agents that these were all located on his phone which was seized earlier in the day pursuant to the Southern District of Florida search warrant.  The Skype account is also on his laptop computer which was also seized.  WEEKS consented to this via Form RCFL-105 (Rev. 1.1).  WEEKS told agents that MATT GOETTSCHE sometimes deletes conversations and therefore he took screenshots of some of his conversation with GOETTSCHE to preserve the contents.

6.  At approximately 4:38 p.m., WEEKS consented to a search of his rental car located at the West Palm Beach Marriott.  WEEKS consented to this via Form 6884.

7.  At approximately 5:30 p.m., WEEKS consented to a search of the Air B&B where he was staying to locate, seize, and image his 2FA (2 factor authentication) cell phone.  The Air B&B was not rented in WEEKS' name but he told agents that the doors would most likely be unlocked.  Agents discussed this with AUSA Aurora Fagan and received verbal approval to conduct this consent search through Acting SSA Scott Johnson.  WEEKS would need to accompany agents to this search to confirm the location of the Air B&B as well as to identify the room where he was staying.  WEEKS gave consent to agents via Form 6884.

8.  At approximately 5:53 p.m., S/A Alisa Watkins, S/A Amjad Qaqish, S/A Jonathan Helmstetter, and WEEKS departed the IRS-CI office.  The beginning mileage was 23,356.  Acting SSA Scott Johnson was in a separate lead vehicle.

9.  At approximately 6:13 p.m., S/As Watkins, Qaqish, and Helmstetter arrived with WEEKS at his Air B&B located at 195 Pershing Way in West Palm Beach, FL.  The ending mileage was 23,361.7.  Acting SSA Johnson arrived in his vehicle at the same time.

10. At approximately 6:22 p.m., upon arrival of local marked West Palm Beach PD, agents escorted WEEKS from the vehicle and approached the Air B&B.  Upon inspection, the front doors and windows were open.  West Palm Beach Police Officer Frank Nelli, West Palm Beach Police Officer Yanko Abreu, Acting SSA Johnson, and S/A Helmstetter cleared the house prior to escorting WEEKS inside.  No one appeared to be home and the back doors were open.  WEEKS told agents that they had been doing this because there was no air conditioning and the house smelled musty.  WEEKS also told agents that no one would likely be home because they were attending the Tony Robbins event at the Convention Center until midnight.  WEEKS led Acting SSA Johnson, S/A Qaqish, and S/A Helmstetter to the upstairs back left bedroom where he was staying.  He identified the 2FA phone and provided it to agents.  S/A Qaqish also located a SD card, S/N 9114ZVNL C3W2, which WEEKS also provided consent to search.  WEEKS acknowledged this on the same Form 6884 and initialed next to the SD card serial number.  While at the Air B&B, WEEKS asked agents to put his clothing in his bag for his friend to take.  WEEKS requested that S/A Qaqish unplug his iPhone charger from the extension cord.

USA_19877_04004725

At that time, there was a small spark from an extension cord next to the bed. S/A Qaqish stepped on the spark and extinguished it.  The extension cord appeared to have been previously damaged.  WEEKS also asked agents to put his Maui Jim sunglasses, located in the kitchen, in his bag.  WEEKS identified them in the kitchen and Acting SSA Johnson and S/A Qaqish placed the sunglasses in WEEKS' bag.  Agents exited the Air B&B at approximately 6:41 p.m. and closed the outside door per WEEKS' instructions.  Photographs were taken by S/A Qaqish prior to entry and after exit.  Acting SSA Johnson took a video on his cell phone exiting the property as well.  Agents then departed the Air B&B.

11. At approximately 6:56 p.m., agents arrived at the Palm Beach County Jail – Gun Club.  The ending mileage for the vehicle was 23,365.6.  At that time, WEEKS asked to call his wife however he did not recall her number.  An attempt was made to call her at (808) 796-6694 however that was the wrong number.  WEEKS then asked to call his mother at (303) 808-7882.  WEEKS spoke with her on speaker phone with S/A Watkins, S/A Qaqish, and S/A Helmstetter via S/A Helmstetter's government cell phone.

12. While being processed at the Palm Beach County Jail, WEEKS was found to be in possession of a belt with a hidden pocket containing an undetermined amount of U.S. Currency.  When asked why WEEKS did not tell agents about this, he said "no one asked."  The belt and cash were put in evidence bags provided by the Palm Beach County Jail and sealed.

13. Agents transported the items located from the Air B&B and the Palm Beach County Jail back to the IRS-CI West Palm Beach office. It should be noted that the cell phone seized from the Air B&B had a case containing US currency, credit/debit cards, a Mexican National Electoral card and other miscellaneous cards.  The items were photographed, placed in an evidence bag, and sealed. The sealed evidence bags from both the Air B&B and the Palm Beach County Jail were placed in the SSA safe at the IRS-CI West Palm Beach office.

14. S/A Qaqish and S/A Helmstetter proceeded to the West Palm Beach Marriott where WEEKS was arrested earlier in the day for the purposes of conducting the consent search of his rental vehicle.  S/A Helmstetter was in possession of the evidence bag containing WEEKS' personal effects, including his rental car keys.  It should be noted that the number written on the consent form was located on the back of the rental car key keychain but it did not match the license plate of the car.  S/A Helmstetter photographed the vehicle prior to unlocking the car.  The key fob opened the vehicle and a rental car receipt in WEEKS' name was located in the vehicle.  It was photographed by S/A Helmstetter.  No additional items were located in the rental vehicle.  S/A Helmstetter locked the vehicle and photographed the vehicle after the consent search was completed.

15. The activity was concluded at approximately 8:30 p.m.

USA_19877_04004726

I prepared this memorandum on December 10, 2019, after refreshing my memory from notes made during and immediately after the activity with JOBADIAH WEEKS.


Jonathan Helmstetter
Special Agent


Amjad Qaqish
Special Agent

USA_19877_04004727

# Exhibit C

**Government's own seizure report acknowledging 3.6704622 BTC**

Used to confirm only a fraction of total seized BTC was documented



# DEPARTMENT OF THE TREASURY
## Internal Revenue Service
## Criminal Investigation

# Memorandum of Activity

---

**Investigation #:**        1000293264                    **Location:**    Residence of Jobadiah Weeks
**Investigation Name:**    Jobadiah Weeks                                 11627 W. 74ᵗʰ Way
                                                                          Arvada, CO

**Date:**          December 10, 2019
**Time:**          Various
**Participant(s):**    Adam Rutkowski, Special Agent
                       Victor Vanacore, Special Agent

Attached are documents containing screenshots representative of the cryptocurrency seizures Special Agent Vanacore (witnessed by SA Rutkowski) were able to affect at the Weeks' Residence during the Search Warrant on December 10, 2019.  This document and its related attachments should be preserved as an official account of the activities associated with these seizures:

1.  There were multiple assets left in the Exodus Wallet, which were not seized, as there were no seizure wallet addresses which had been provided to send the funds to.  Additionally, the dollar amounts were deemed to be below the threshold after speaking with the Command Post.
    a.  A Final Screenshot showing the balances in these accounts is included in the .pdf file.
    b.  The Exodus wallet was restored based upon a .png picture file located on an SD card which was found during the Search Warrant on the room which had been identified as belonging to Joby Weeks.  The .png file was a picture of the backup seed phrase.
    c.  The seed phrase was used to restore the Exodus Wallet onto a cold computer.
    d.  After the transfers were affected by SA Vanacore, the Exodus Wallet was deleted from the Cold Computer.
    e.  Any further access to the remaining funds on the Exodus Wallet can only be gained by using the .png seed phrase picture.
2.  One Bitclub Club Coin Ledger Nano S was located.  Two hand-written seed phrase cards, manufactured by Ledger, were located.
    a.  Attempts were made to restore the Ledger Nano S using the seed phrase.  Agents were successful in that they could see the device potentially contained Bitcoin, Ethereum, Club Coin, and possibly two other assets.  However, the agents were unable to determine the quantity of these assets using the device without plugging the device into the cold computer.
    b.  Agents attempted to plug the device into a cold computer using the required software, Ledger Live.
    c.  It was determined that the firmware on the device needed to be updated.  Agents were unsuccessful in upgrading the firmware.

    d.   Therefore, agents used the wallet software, Electrum, to attempt recovery of the Bitcoin assets associated with each of the two seed phrases.  This attempt only provides potential access to the Bitcoin.  Access to the other potential cryptocurrencies associated with these wallets was not attempted.

    e.   For one of the two seed phrases, agents were successful in finding bitcoin.  Agents transferred this bitcoin to the seizure addresses provided in advance of the enforcement action.

3.   Access to the Bitcoin using Electrum has to be conducted by creating three separate wallets – One Legacy Wallet, a P2SH SegWit Wallet (containing bitcoin addresses starting with the number 3), and a bech32 SegWit Wallet (containing bitcoin addresses starting with "bc1".

    a.   Given time constraints while on site, agents are unsure if they tried all three methods using each seed phrase.  Also, there are additional configuration settings which must be used in order to properly gain access to any of these assets.  If the configuration settings are not put in place correctly, the assets would not appear, even if they are actually present.

    b.   Therefore, it is recommended that at a later date in time, the government use another Ledger Device to restore each of the seed phrase cards to.  Once the restore has occurred successfully, all assets available that are connected with that seed phrase (which represents a private key) should become viewable and accessible.

4.   Other potential physical cryptocurrency assets were seized.  Most of these were things like actual physical coins which contained either public or private Bitcoin keys, or both.  Because of time constraints involved with the search, these items were physically seized, and no attempt was made to quantify their value, or to seize any potential funds which may be present.  As such, a separate attempt should be made at a later date to determine whether there are any funds associated with these physically seized items.

5.   Each of the aforementioned seizures was conducted by the Seizing Agent at our Site – SA Vanacore.  SA Rutkowski and SA Vanacore were each present and watching during the entire analysis and seizure process.

6.   The attached screenshots are considered to be the evidence of the activities conducted related to the items discussed in this memorandum.

Adam Rutkowski
Special Agent

Victor Vanacore
Special Agent





Case 2:19-cr-00877-CCC    Document 448-1    Filed 06/17/25    Page 38 of 97 PageID: 7398





Case 2:19-cr-00877-CCC   Document 448-1   Filed 06/17/25   Page 40 of 97 PageID: 7400









# Success!

Your Bitcoin Cash has been sent

OK

Case 2:19-cr-00877-CCC    Document 448-1    Filed 06/17/25    Page 44 of 97 PageID: 7404



 PRIVATE KEYS

# Exodus Bitcoin Private Keys

Close

| Address | Path | Balance | Private Key |
|---|---|---|---|
| 14uKvjJAYPWHXCn8SyR7k8Px7dWXTTjGaB | m/0/0 | 0 | Ky797MHpvu7Ar1eN7LhuVsEBSwFFqomip8zgJzaka1hp5gSHgPoc |
| bc1qqad2mvfn2wewd8cavn7602h9g06r6hfk0g5n6c | m/0/0 | 0 | KwVs4krgY78p81rfzn3b4ssK3kQf23ZjzCcpUhaDTVnDxpFYcvuw |
| 12UhenKVdMzkAHewusS3rBHENJjZEK8ook | m/1/0 | 0 | L2rSz6Yu7PRa3JCLmxSqMvq87Aq5ihsKmwBzNKmQfDcLUdEGEc8s |
| 13g5vsZd42uwTwsQc18dCzJ9cgxXmBCsXg | m/1/1 | 0 | L5aTKjk8FUba9VDP9bWfA9DTVEtK4imBLzYe8zghSkQtPf7KGtXS |
| 1AFZqnSRdsWmn95NHGja8kJteihmCnwJdb | m/1/2 | 0 | KwDos6dx5Vh33MVVoB6AxitkEBwMwr6ackSCcynagePaZa8ACmvM |
| 1tsjQDq1QgGjt1DVe5y9QFLJBv1RsLHg6 | m/1/3 | 0 | L2cpAXQkZmb7dU7KuaCVDCi3WMGWZmjVoYKWJppc7N8SBtafUtBq |
| 14jzSRGaXDkoUWkA99gPDJ4vSmCVD1TBTB | m/1/4 | 0 | Kyt21dydc68zg3qUrZL5W2kEUwdw6bxxck3kU1LHPNqkZMJMpur7 |
| 1F8MiVcaPM74MBaCVJAbWBTgHfYoEGYf6o | m/1/5 | 0 | L1WEQECwg5wYDZyE1WXpsxHhjQLP5bucEwufUW7MCusZtCzxj8TZ |
| 1JVTnkccSo9F1ho3qcm589nPsmx7S8gwZe | m/1/6 | 0 | KxcNNbMvNszcjmPbPGWGL2oKYrWswKcS7JRFv9nSwxrMZN5RP4gg |
| 1PcG5ndUUCpu7977PRHM8AJPv1D3BsocAG | m/1/7 | 0 | L4QWNEj8HcrBSViMmfN8TjFDoRDZE41gxKhECSFBNRDoSPrT8Hxe |
| 1NDq3gnpx71igXhhiFKCR7x3eWKbfhcc1t | m/1/8 | 0 | L4eTYbQES3KPZHzUDJMGzmEyVxEvZK8otxXqsrw1KUvxc5FyvpD4 |
| 17rwZ7mZHT1zhnnppDqTgMvSRnMRFVtuEF | m/1/9 | 0 | KxKKXmQriqNUsS3MHTBmxakGLkmDVFZVMShWPGozfzxKqrRCToRh |
| 1Bzq5h94BHK32awJchuAjWP3EtGKyEhCqf | m/1/10 | 3.67046219 | L4AcAu2Bpot5dgCmwg8PwzPm5uUAnxhvFEhGCEbc6NrDvVz2GANa |

Close













Case 2:19-cr-00877-CCC   Document 44B-1   Filed 06/17/25   Page 52 of 97   PageID: 7412



Case 2:19-cr-00877-CCC    Document 448-1    Filed 06/17/25    Page 54 of 97 PageID: 7414

EXODUS 19.12.5

Are you sure you want to

# Send 7,115.68 USD?

| | |
|---|---|
| Sending: | 48.916404894984694 ETH |
| Value: | 7,115.68 USD |
| Address: | 0x09d0FDb66e815F33A2133315dDeC9F0C2922e250 |

Back    Send

EXODUS 19.12.5



# Ethereum Token Warning

You have tokens that require Ethereum. Sending this will not leave enough Ethereum to send or exchange your tokens. Are you sure you want to proceed?

LEARN MORE    CONTINUE

Case 2:19-cr-00877-CCC    Document 448-1    Filed 06/17/25    Page 55 of 97 PageID: 7415















Case 2:19-cr-00877-CCC    Document 448-1    Filed 06/17/25    Page 62 of 97 PageID: 7422





Help

Tron (old)
79 TRX

Binance Coin



| | Date | Description | Amount | Balance | USD Value | USD Acquisition price | USD Capital Gains |
|---|------|-------------|--------|---------|-----------|----------------------|-------------------|
| ✔ | 2017-05-21 22:29 | | +5. | 5. | No data | | |

Case 2:19-cr-00877-CCC   Document 448-1   Filed 06/17/25   Page 66 of 97 PageID: 7426













Case 2:19-cr-00877-CCC    Document 448-1    Filed 06/17/25    Page 72 of 97 PageID: 7432

# Exhibit D

**Financial disclosure email (dated August 30, 2021)**

Supports value of $1M in cold storage crypto assets; confirms valuation during
detention

CJA-23
Rev. 5/98

# FINANCIAL AFFIDAVIT

IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT OR OTHER COURT SERVICES WITHOUT PAYMENT OF FEE

| IN UNITED STATES | ☐ MAGISTRATE | ☑ DISTRICT | ☐ APPEALS COURT or | ☐ OTHER PANEL (Specify below) | LOCATION NUMBER |
|---|---|---|---|---|---|

IN THE CASE OF

United States  v.s.  Jobadiah Weeks

FOR

AT

**PERSON REPRESENTED** (Show your full name)

Jobadiah Sinclair Weeks

| 1 ☑ Defendant—Adult |
| 2 ☐ Defendant - Juvenile |
| 3 ☐ Appellant |
| 4 ☐ Probation Violator |
| 5 ☐ Parole Violator |
| 6 ☐ Habeas Petitioner |
| 7 ☐ 2255 Petitioner |
| 8 ☐ Material Witness |
| 9 ☐ Other |

DOCKET NUMBERS
Magistrate

District Court
19-cr-877-CCC

Court of Appeals

CHARGE/OFFENSE (describe if applicable & check box →)   ☑ Felony   ☐ Misdemeanor

18 U.S.C. 371
26 U.S.C. 7201

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

**EMPLOY-MENT**

Are you now employed? ☐ Yes   ☑ No   ☐ Am Self-Employed

Name and address of employer:   N/A

IF YES, how much do you earn per month? $ 0.00

IF NO, give month and year of last employment   12/2019
How much did you earn per month? $ _____

If married is your Spouse employed?   ☑ Yes   ☐ No

IF YES, how much does your Spouse earn per month? $ 100.00

If a minor under age 21, what is your Parents or Guardian's approximate monthly income? $ _____

**ASSETS**

**OTHER INCOME**

Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources?   ☑ Yes   ☐ No

| | RECEIVED | SOURCES |
|---|---|---|
| IF YES, GIVE THE AMOUNT RECEIVED & IDENTIFY THE SOURCES | $ _____ | See Supplement |

**CASH**

Have you any cash on hand or money in savings or checking accounts?   ☐ Yes   ☑ No   IF YES, state total amount $ _____

**PROP-ERTY**

Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?   ☑ Yes   ☐ No

| | VALUE | DESCRIPTION |
|---|---|---|
| IF YES, GIVE THE VALUE AND DESCRIBE IT | $ 40,000.00 | Toyota Tundra 2014 |
| | 60,000.00 | Cadillac Escalade 2017 |
| | 2,500.00 | Yamaha motorcycle |
| | | See Supplement |

**DEPENDENTS**

MARITAL STATUS
☐ SINGLE
☑ MARRIED
☐ WIDOWED
☐ SEPARATED OR DIVORCED

Total No. of Dependents   1

List persons you actually support and your relationship to them
Liberty Weeks (daughter)

**OBLIGATIONS & DEBTS**

**DEBTS & MONTHLY BILLS**
(LIST ALL CREDITORS, INCLUDING BANKS, LOAN COMPANIES, CHARGE ACCOUNTS, ETC.)

| APARTMENT OR HOME: | Creditors | Total Debt | Monthly Paymt. |
|---|---|---|---|
| Health Insurance | | $ _____ | $ 800.00 |
| Car Insurance | | $ _____ | $ 220.00 |
| Gasoline | | $ _____ | $ 100.00 |
| See Supplement | | $ _____ | $ _____ |

I certify under penalty of perjury that the foregoing is true and correct.   Executed on (date)   10/19/20

SIGNATURE OF DEFENDANT
(OR PERSON REPRESENTED) ▶

## Supplement to Financial Affidavit[1]

### Employment

Give month and year of last employment. **2019**

How much did you earn per month?

**(1) Mannatech: $200 - $500 per month**
**(2) BitClub: mining earnings and commission payments (unknown amount, but approximately $1,000 per month**
**(3) Kanergrow: $10,000**
**(4) Zero Waste: $0 (last job; commission based; haven't sold any of the waste machines yet; had 4 – 5 memoranda of understanding with potential California buyer at time of arrest)**

### Other Income

Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources?

| Received | Sources |
|---|---|
| $200 - $500 per month | Mannatech |
| $1,000 per month | BitClub |
| $10,000 | Kanergrow |
| $1,000 per month | Turo (car rental) |
| | |
| | |
| | |
| | |

---

[1] Due to Jobadiah Sinclair Weeks' detention and limited access to materials, all values and amounts are best estimates.

1

## Property

Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? (*Continued*)

| Value | Description |
|---|---|
| $100,000 | Timeshare Property<br>Apollo Park at Vail<br>442 W. Frontage Road, Unit A306<br>Vail, Colorado 81657 |
| $86,000 | Timeshare Property<br>Grand Colorado on Peak 8<br>1627 Ski Hill Road, Unit 2333CD<br>Breckenridge, Colorado 80424 |
| $1,800,000 | Casa Carey<br>Calle Del Carey # 78<br>Acapulco, Guerrero, Mexico 39880 |
| $500,000 | Unit 117B<br>Windswept Residence Club<br>Christophe Harbour, St. Kitts |
| $600,000 | Sangre de Cristo Ranch<br>86 Hamilton Creek Road<br>Coaldale, Colorado 81222 |
| $8,000,000 | Bitfury Stock (apprx. 20,000 shares) |
| $500,000 | Bitrex, Binance, and Octagon (crypto currency) |
| $1,000,000 | Jaxx ICO Tokens/Cold Storage |
| $3,000,000 | Ownership interest in Octagon New Zealand (water company) |
| $250,000 | Ownership interest in Chai Energy (App) |

2

123831103.1

| Value | Description |
|---|---|
| $20,000 | Silver Coins (seized by the government) |
| $5,000 | Cash (seized at time of arrest) |
| 23 Bitcoins | Phone BTC Wallet |
|  |  |
|  |  |
|  |  |
|  |  |

## Obligations & Debts

List all creditors, including banks, loan companies, charge accounts, etc. (*Continued*)

Apartment or Home:

| Creditors | Total Debt | Monthly Payment |
|---|---|---|
| Phone/Internet |  | $250 |
| Food/Baby's Dietary Needs |  | $1,500 |
| Nutritional Supplements |  | $400 |
| Home Owner's Association for timeshare properties (annual) | $2,800 – 3,000 |  |
| Sangre de Cristo Ranch upkeep (annual) | $2,500 – 3,000 |  |
| Mexico house upkeep (annual) | $1,000 |  |
| Carlton Fields, P.A. | *Will disclose to the Court upon request* | |
|  |  |  |
|  |  |  |

3

123831103.1



# FINANCIAL AFFIDAVIT

CJA 23
Rev. 5/98

**IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT OR OTHER COURT SERVICES WITHOUT PAYMENT OF FEE**

IN UNITED STATES  ☒ MAGISTRATE  ☐ DISTRICT  ☐ APPEALS COURT or  ☐ OTHER PANEL (Specify below)

| IN THE CASE OF | FOR | LOCATION NUMBER |
|---|---|---|
| United States vs. Jobadiah Weeks | Bail Review Hearing | |
| | AT Zoom Hearing | |

| PERSON REPRESENTED (Show your full name) | | DOCKET NUMBERS |
|---|---|---|
| Jobadiah Weeks | 1 ☒ Defendant - Adult | Magistrate |
| | 2 ☐ Defendant - Juvenile | Hammer |
| | 3 ☐ Appellant | District Court |
| | 4 ☐ Probation Violator | NJ |
| | 5 ☐ Parole Violator | Court of Appeals |
| CHARGE OFFENSE (describe if applicable & check box ►) ☒ Felony ☐ Misdemeanor | 6 ☐ Habeas Petitioner | |
| Tax Evasion | 7 ☐ 2255 Petitioner | |
| | 8 ☐ Material Witness | |
| | 9 ☐ Other | |

## ANSWERS TO QUESTIONS REGARDING ABILITY TO PAY

**EMPLOYMENT**
Are you now employed?  ☒ Yes  ☐ No  ☐ Am Self-Employed
Name and address of employer: _____
IF YES, how much do you earn per month? $ 5000/mo
IF NO, give month and year of last employment
How much did you earn per month? $ _____
If married is your Spouse employed?  ☒ Yes  ☐ No
IF YES, how much does your Spouse earn per month? $ 500/mo
If a minor under age 21, what is your Parents or Guardian's approximate monthly income? $ _____

**ASSETS**

**OTHER INCOME**
Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources?  ☒ Yes  ☐ No
IF YES, GIVE THE AMOUNT RECEIVED & IDENTIFY THE SOURCES
RECEIVED $ _____  SOURCES See Supplement

**CASH**
Have you any cash on hand or money in savings or checking accounts?  ☒ Yes  ☐ No  IF YES, state total amount $ 3500

**PROPERTY**
Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?  ☒ Yes  ☐ No
IF YES, GIVE THE VALUE AND DESCRIBE IT

| VALUE | DESCRIPTION |
|---|---|
| $ 40,000 | Truck |
| $ 600,000 | SUV |
| $ 50,000 | Toys/Trailers |
| | See Supplement |

**OBLIGATIONS & DEBTS**

**DEPENDENTS**

| MARITAL STATUS | Total No. of Dependents | List persons you actually support and your relationship to them |
|---|---|---|
| ☐ SINGLE  ☒ MARRIED  ☐ WIDOWED  ☐ SEPARATED OR DIVORCED | 1 | Liberty Weeks Daughter |

**DEBTS & MONTHLY BILLS**
(LIST ALL CREDITORS, INCLUDING BANKS, LOAN COMPANIES, CHARGE ACCOUNTS, ETC.)

| APARTMENT OR HOME: Creditors | Total Debt | Monthly Paymt. |
|---|---|---|
| Health Insurance | $ | $ 800 |
| Car Insurance | $ | $ 220 |
| Gas | $ | $ 100 |
| See Supplement | $ | $ |

I certify under penalty of perjury that the foregoing is true and correct. Executed on (date)  8/24/2021

SIGNATURE OF DEFENDANT (OR PERSON REPRESENTED)  ►  *[signature]*



clear

## Supplement to Financial Affidavit[1]

### Employment

Give month and year of last employment. ~~2019~~ 2021

How much did you earn per month?

(1) Mannatech: $200 - $500 per month
(2) ~~BitClub: mining earnings and commission payments (unknown amount, but approximately $1,000 per month~~
(3) ~~Kanergrow: $10,000~~
(4) Zero Waste: $0 (last job; commission based; haven't sold any of the waste machines yet; had 4 – 5 memoranda of understanding with potential California buyer at time of arrest)

### Other Income

Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources?

| Received | Sources |
|---|---|
| $200 - $500 per month | Mannatech |
| ~~$1,000 per month~~ | ~~BitClub~~ |
| ~~$10,000~~ $250/mo | Kanergrow |
| ~~$1,000 per month~~ | ~~Turo (car rental)~~ |
| $3000/mo | Remedsnt/on/Scrap metal |
| $500/mo | Clear phones |
| $1000 | Coin empire license |
| | |

---

[1] Due to Jobadiah Sinclair Weeks' detention and limited access to materials, all values and amounts are best estimates.

123831103.1



## Property

Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? *(Continued)*

| Value | Description |
|---|---|
| $100,000 | Timeshare Property<br>Apollo Park at Vail<br>442 W. Frontage Road, Unit A306<br>Vail, Colorado 81657 |
| $86,000 | Timeshare Property<br>Grand Colorado on Peak 8<br>1627 Ski Hill Road, Unit 2333CD<br>Breckenridge, Colorado 80424 |
| $1,800,000 | Casa Carey<br>Calle Del Carey # 78<br>Acapulco, Guerrero, Mexico 39880 |
| $500,000 | Unit 117B<br>Windswept Residence Club<br>Christophe Harbour, St. Kitts |
| $600,000 | Sangre de Cristo Ranch<br>86 Hamilton Creek Road<br>Coaldale, Colorado 81222 |
| $8,000,000 | Bitfury Stock (apprx. ~~20,000~~ shares) 21301 |
| $500,000 | Bitrex, Binance, and ~~Octagon~~ (crypto currency) *unclaimed property* |
| $1,000,000 | Jaxx ICO Tokens/Cold Storage / *Staked Coins* |
| $3,000,000 | Ownership interest in Octagon New Zealand (water company) |
| ~~$250,000~~ $3000 | ~~Ownership interest in Chai Energy (App)~~ *PAY pay / Venmo / Sofi / Cash* |

2



| Value | Description |
|---|---|
| $20,000 | Silver Coins (seized by the government) |
| ~~$5,000~~  $500 | Cash ~~(seized at time of arrest)~~ |
| ~~23 Bitcoins~~  $5000 | Phone BTC Wallet |
| $1,250,000 | Ownership interest in Incirl, Inc. |
| $310,000 (at least) | CBD Business – Steven Snyder |
| Exodus tithe wallet | $20,000 |
| BAD loans + Investments | $5,000,000 |

## Obligations & Debts

List all creditors, including banks, loan companies, charge accounts, etc. (Continued)

Apartment or Home:

| Creditors | Total Debt | Monthly Payment |
|---|---|---|
| Phone/Internet | | $250 |
| Food/Baby's Dietary Needs | | $1,500 |
| Nutritional Supplements | | $400 |
| Home Owner's Association for timeshare properties (annual) | $2,800 – 3,000 | |
| Sangre de Cristo Ranch upkeep (annual) | $2,500 – 3,000 | |
| Mexico house upkeep (annual) | ~~$1,000~~  $5000 | |
| Carlton Fields, P.A. | Will disclose to the Court upon request | |
| Rent @ Ranch | $5000/mo | |

123831103.1

| From: | David Stone |
|---|---|
| To: | David Stone |
| Subject: | RE: Weeks Financial Affidavit |
| Date: | Friday, March 18, 2022 3:21:47 PM |

-----Original Message-----
From: David Stone <DStone@stonemagnalaw.com>
Sent: Friday, September 3, 2021 7:46 PM
To: Torntore, Anthony (USANJ) <Anthony.Torntore@usdoj.gov>
Cc: Hoxie, Jamie (USANJ) <Jamie.Hoxie@usdoj.gov>; Matthew L. Schwartz <mlschwartz@BSFLLP.com>; David Boies <DBoies@BSFLLP.com>
Subject: RE: Weeks Financial Affidavit

Tony, please see our answers to your questions below:

1.      Mr. Weeks reports $5 million in "bad loans and investments." Please provide a full accounting for these "loans and investments" as required under the conditions of Mr. Weeks' release;

Mr. Weeks has retained and is currently corresponding with accountants and tax attorneys to determine the precise amount of bad loans and investments. He has told us that the $5 million number contained on his financial disclosure was his best estimate given the fact that he is not an accountant and does not have access to documents that will supplement this disclosure. The number may actually be substantially higher depending on how these transactions are treated and whether he is repaid. Of the $5 million, Mr. Weeks recalls investing approximately $1 million in a failed oil deal with an individual named Gavin Dixon, and approximately $4 million was invested in Phase 5 Energy which Mr. Weeks understands is bankrupt. Mr. Weeks also made personal loan of approximately 1.2 M to assist with real estate construction of a development called Liberty. This has not been repaid either. Once Mr. Weeks locates the documentation on these loans, we will provide it to you.

2.      Mr. Weeks reports $20,000 that appears to be held in an "Exodus tile wallet." Please provide an accounting of the various cryptocurrencies making up this $20,000 figure;

As a preliminary matter, the item in question is an "Exodus tithe wallet" This is a wallet Mr. Weeks created with bitcoin that was disclosed on his financial statement to make charitable donations to the church he attends every sunday and numerous other charities. The wallet originally had $100,000 and Mr. Weeks has already donated $80,000. The remaining $20,000 is what Mr. Weeks reports on his financial disclosure. Mr. Weeks has identified the benefactor charity for it.

3.      Mr. Weeks reports $1000 in monthly income related to a "coin empire license." Please provide additional details regarding this license and the source of the income being earned by Mr. Weeks related to the license;

Mr. Weeks has helped invent a new technology wherein he etches the particular computer code associated with Bitcoin or other cryptocurrencies onto the side of actual copper, silver or gold coins. What this does is to create a

physical manifestation of digital currency. Rather than an individual storing cryptocurrency on an external hard drive in digital format, the relevant information is etched into a coin for the owner to carry. This avoids potential dangers to an external hard drive such as water or other environmental damage. Mr. Weeks has licensed this technology to Coin Empire, a public cryptocurrency exchange platform and receives royalties for its use.

4.    Mr. Weeks reports $500 in monthly income related to "clear phones." Please provide additional details regarding the source of this income.

In contrast to the Government's assertions in its motion to revoke Mr. Weeks' bail that Mr. Weeks' purposely obtained a ClearPHONE to perpetrate unlawful conduct, Mr. Weeks was asked to be a beta tester of ClearPHONE, which is a new secure smartphone which protects the user from spyware or malware. As part of his beta testing Mr. Weeks is permitted to refer other beta testers for the program and has received a small fee for doing so. As of the date of his disclosure Mr. Weeks has received $500 in such fees. This $500 is in a crypto currency, and loaded to the ClearPAY app, on the phone.

In its motion the government mentions two other types of wallets. Mr. Weeks only has a Klever wallet which contains the Tron that he used to stake coin. He downloaded the Klever wallet off the internet which to his knowledge was not prohibited by any of the condition of his release.

5.    Mr. Weeks reports $1 million in "Jaxx ICO Tokens/cold storage/staked coins." Please provide a breakdown for the various coins/tokens/cryptocurrencies making up this $1 million figure.

"Jaxx ICO tokens" and "staked" refer to forms of cryptocurrency that Mr. Weeks has either stored in cryptocurrency wallets or staked on cryptocurrency exchange platforms. Specifically, Jaxx ICO Tokens refers to a cryptocurrency that is stored in a "Jaxx" wallet. However, Mr. Weeks has no access to the Jaxx wallet because he had lost his login information. As a result, he is estimating as to the value. His estimate also refers to USB cold storage wallets seized by the Government to which Mr. Weeks no longer has access. Also seized were "cold storage" coins which are the coins that have cryptocurrency information etched into the side referenced in the response to inquiry #3. Mr. Weeks does not know the precise amount of cold storage coins. In addition, Mr weeks had staked various coins on exchanges but Mr. Weeks does not have access to them due to the restrictions on his internet access. However, based on the foregoing estimates, Mr. Weeks estimates that the assets amount to $1 million in total.

---

From: Torntore, Anthony (USANJ) [Anthony.Torntore@usdoj.gov]
Sent: Friday, August 27, 2021 4:03 PM
To: David Stone
Cc: Hoxie, Jamie (USANJ); Matthew L. Schwartz; David Boies
Subject: RE: Weeks Financial Affidavit

Thanks – you as well.

Anthony P. Torntore
Assistant U.S. Attorney
U.S. Attorney's Office, District of New Jersey
970 Broad Street, Newark, NJ 07102
Desk: 973.645.2726
Cell: 201.341.0398

From: David Stone <DStone@stonemagnalaw.com>

Sent: Friday, August 27, 2021 4:03 PM
To: Torntore, Anthony (USANJ) <ATorntore@usa.doj.gov>
Cc: Hoxie, Jamie (USANJ) <JHoxie@usa.doj.gov>; Matthew L. Schwartz <mlschwartz@BSFLLP.com>; David Boies <DBoies@BSFLLP.com>
Subject: RE: Weeks Financial Affidavit

we will discuss and get back to you. Have a good weekend.

From: Torntore, Anthony (USANJ) [mailto:Anthony.Torntore@usdoj.gov]
Sent: Friday, August 27, 2021 3:44 PM
To: David Stone <DStone@stonemagnalaw.com<mailto:DStone@stonemagnalaw.com>>
Cc: Hoxie, Jamie (USANJ) <Jamie.Hoxie@usdoj.gov<mailto:Jamie.Hoxie@usdoj.gov>>; Matthew L. Schwartz <mlschwartz@BSFLLP.com<mailto:mlschwartz@BSFLLP.com>>; David Boies <DBoies@BSFLLP.com<mailto:DBoies@BSFLLP.com>>
Subject: FW: Weeks Financial Affidavit

Hi David,

We received the attached images of an updated financial affidavit from pre-trial services.  After review, we are requesting additional information:

1. Mr. Weeks reports $5 million in "bad loans and investments."  Please provide a full accounting for these "loans and investments" as required under the conditions of Mr. Weeks' release;
2. Mr. Weeks reports $20,000 that appears to be held in an "Exodus tile wallet."  Please provide an accounting of the various cryptocurrencies making up this $20,000 figure;
3. Mr. Weeks reports $1000 in monthly income related to a "coin empire license."  Please provide additional details regarding this license and the source of the income being earned by Mr. Weeks related to the license;
4. Mr. Weeks reports $500 in monthly incomer related to "clear phones."  Please provide additional details regarding the source of this income.
5. Mr. Weeks reports $1 million in "Jaxx ICO Tokens/cold storage/staked coins."  Please provide a breakdown for the various coins/tokens/cryptocurrencies making up this $1 million figure.
6. Mr. Weeks previously reported an ownership interest in "Chai Energy (App)" worth $250,000.  That has been crossed out and replaced with $3,000 in "PayPal/Venmo/Sofi/Cash."  Please provide an explanation for the disposal of the previously held Chai Energy asset.

Thanks,

Tony

Anthony P. Torntore
Assistant U.S. Attorney
U.S. Attorney's Office, District of New Jersey
970 Broad Street, Newark, NJ 07102
Desk: 973.645.2726
Cell: 201.341.0398

From: David Hernandez <David_Hernandez@njpt.uscourts.gov<mailto:David_Hernandez@njpt.uscourts.gov>>
Sent: Friday, August 27, 2021 2:51 PM
To: Torntore, Anthony (USANJ) <ATorntore@usa.doj.gov<mailto:ATorntore@usa.doj.gov>>; Hoxie, Jamie (USANJ) <JHoxie@usa.doj.gov<mailto:JHoxie@usa.doj.gov>>
Subject: Weeks Financial Affidavit

Please see attached.

David E. Hernandez
Senior U.S. Pretrial Services Officer

Intensive Supervision Specialist
U.S. Pretrial Services Agency
District of New Jersey
(973) 645-2377 - office
(973) 645-2282 - fax

"Confidentiality Notice: This message is the property of the United States Pretrial Services Agency for the District of New Jersey. It may be legally privileged and/or confidential and is intended solely for the use of the addressee. If the reader of this message is not the intended recipient, you are hereby notified that any unauthorized disclosure, dissemination, distribution, copying, or taking any action in reliance on the information contained herein is strictly prohibited. If you have received this message in error, please immediately notify the sender and delete this message."

| From: | David Stone |
|---|---|
| To: | David Stone |
| Subject: | FW: Weeks - Update to Financial Status |
| Date: | Tuesday, March 8, 2022 11:14:00 AM |

**From:** David Stone
**Sent:** Thursday, January 6, 2022 1:32 PM
**To:** anthony torntore (Anthony.Torntore@usdoj.gov) <anthony.torntore@usdoj.gov>; 'David Hernandez' <David_Hernandez@njpt.uscourts.gov>
**Cc:** Michael Clore <MClore@stonemagnalaw.com>; David Stone <DStone@stonemagnalaw.com>; mlschwartz@bsfllp.com; Tara Saybe <TSaybe@stonemagnalaw.com>
**Subject:** Weeks - Update to Financial Status

Tony,

Pursuant to the conditions of his release, Mr. Weeks hereby provides the Government with an update to his financial status as follows:

As required by the amended conditions of his release, Mr. Weeks no longer makes any use of the Internet, via computer, smartphone, or other internet-enabled device. As a result, he no longer receives any income from online activity. Accordingly, Mr. Weeks has not sold any ClearPHONES or received any income from Coin Empire, which has yet to be launched.

Otherwise, Mr. Weeks had earned approximately $8000 in income from renting out portions of his Colorado ranch through AirBnb. In addition, Mr. Weeks has completed and filed his 2020 tax returns.

Apart from the update as to Mr. Weeks' financial status provided above, Mr. Weeks has spent the time since the amendment of the conditions of his release, diligently raising his young daughter, attending church services, and engaging in charitable activities, including feeding the homeless and rescuing more than 70 animals from the animal sanctuary on which they resided.

Please advise whether this email update is sufficient or if the Government prefers an update in a more formal format. Furthermore, should you have any additional questions or concerns regarding this matter, please do not hesitate to contact me.

Respectfully,

David S. Stone
Senior Managing Partner
STONE & MAGNANINI LLP
100 Connell Drive, Suite 2200
Berkeley Heights, NJ 07922
(973) 218-1111 (main)

This transmission in intended only for the use of the addressee and may contain information that is privileged, confidential and exempt from disclosure under applicable law.  If you are not the intended recipient, or the employee of agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.

To ensure compliance with requirements imposed by the IRS, we inform you that, unless explicitly provided otherwise, any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

If you have received this communication in error, please notify us immediately via e-mail at Postmaster@stonemagnalaw.com or by telephone at 1-973-218-1111.  Thank you.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

<table>
<tr><td>UNITED STATES OF AMERICA<br><br>v.<br><br>JOBADIAH SINCLAIR WEEKS</td><td>Hon. Claire C. Cecchi, U.S.D.J.<br>Hon. Michael A. Hammer, Maj.<br><br><br>Criminal No. 19-877 (CCC)</td></tr>
</table>

**SUPPLEMENT UNDER CONDITIONS OF RELEASE BY**
**JOBADIAH SINCLAIR WEEKS**

Defendant Jobadiah Sinclair Weeks's conditions of release require him to provide updates to the Government on his finances. Dkt. No. 220 (Order Modifying Conditions of Release ("Amended Conditions")) at 1-2. Pursuant to those obligations of release, Weeks states, certifies, and swears the following:

1.  As required by the Amended Conditions, Weeks no longer makes any use of the Internet, via computer, smartphone, or other internet-enabled device. As a result, he no longer receives any income from online activity. Accordingly, since the last supplement Mr. Weeks has not sold any ClearPHONES or received any income from Coin Empire, which has yet to be launched.

2.  Since the last report, the Weeks have earned approximately $10000 in income from renting out portions of his Colorado ranch on Airbnb.

3.  Weeks has entered into a security agreement to provide for his counsel in this Action. The security agreement covers approximately 21,301 shares of BitFury stock which has previously been disclosed.

4.  Otherwise, Weeks has spent the time since the Amended Conditions entered diligently raising his young daughter, attending church services, and engaging in charitable activities, including feeding the homeless and rescuing more than 70 animals from an animal sanctuary.

_Jobadiah Weeks_                                                    30 March 2022
SIGNATURE OF DEFENDANT JOBADIAH SINCLAIR WEEKS     |     DATE

{00142614;v1}

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

UNITED STATES OF AMERICA

v.

JOBADIAH SINCLAIR WEEKS

Hon. Claire C. Cecchi, U.S.D.J.
Hon. Michael A. Hammer, Maj.

Criminal No. 19-877 (CCC)

**SUPPLEMENT UNDER CONDITIONS OF RELEASE BY**
**JOBADIAH SINCLAIR WEEKS**

Defendant Jobadiah Sinclair Weeks's conditions of release require him to provide updates to the Government on his finances. Dkt. No. 220 (Order Modifying Conditions of Release ("Amended Conditions")) at 1-2. Pursuant to those obligations of release, Weeks states, certifies, and swears the following:

1.      As required by the Amended Conditions, Weeks no longer makes any use of the Internet, via computer, smartphone, or other internet-enabled device. As a result, he no longer receives any income from online activity. Accordingly, since the last supplement Mr. Weeks has not sold any ClearPHONES or received any income from Coin Empire, which has yet to be launched.

2.      Since the last report, the Weeks have earned approximately $10000 in income from renting out portions of his Colorado ranch on Airbnb.

3.      Weeks has entered into a security agreement to provide for his counsel in this Action. The security agreement covers approximately 21,301 shares of BitFury stock which has previously been disclosed.

4.      Otherwise, Weeks has spent the time since the Amended Conditions entered diligently raising his young daughter, attending church services, and engaging in charitable activities, including feeding the homeless and rescuing more than 70 animals from an animal sanctuary.

_Jobadiah Weeks_                                                      30 March 2022
SIGNATURE OF DEFENDANT JOBADIAH SINCLAIR WEEKS          DATE

{00142614;v1}

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOBADIAH SINCLAIR WEEKS | Hon. Claire C. Cecchi, U.S.D.J.<br>Hon. Michael A. Hammer, Maj.<br><br><br>**Criminal No. 19-877 (CCC)** |

## SUPPLEMENT UNDER CONDITIONS OF RELEASE BY
## JOBADIAH SINCLAIR WEEKS

Defendant Jobadiah Sinclair Weeks's conditions of release require him to provide updates to the Government on his finances. Dkt. No. 220 (Order Modifying Conditions of Release ("Amended Conditions")) at 1-2. As discussed with Counsel, this supplement updates the supplement dated March 30, 2022. Pursuant to those obligations of release, Weeks states, certifies, and swears the following:

1. Since the last supplement, Mr. Weeks has not sold any ClearPHONES or received any income from Coin Empire, which has yet to be launched.

2. Since the last supplement, The Weeks have earned approximately $10,000 from renting out portions of his Colorado ranch on Airbnb.

3. Otherwise, Weeks has spent the time since the Amended Conditions entered diligently raising his young daughter, attending church services, and engaging in charitable activities, including feeding the homeless and rescuing more than 70 animals who now call the animal sanctuary their home.

**I certify under penalty of perjury that the foregoing is true and correct:**

| | |
|---|---|
| *Jobadiah Weeks* | 05/04/2023 |

AUTOGRAPH OF JOBADIAH SINCLAIR WEEKS          DATE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> JOBADIAH SINCLAIR WEEKS | Hon. Claire C. Cecchi, U.S.D.J. <br> Hon. Michael A. Hammer, U.S.M.J.. <br><br><br> Criminal No. 19-cr-877 (CCC) |

**SUPPLEMENT UNDER CONDITIONS OF RELEASE BY**
**JOBADIAH SINCLAIR WEEKS**

Defendant Jobadiah Sinclair Weeks's conditions of release require him to provide updates to the Government on his finances. Dkt. No. 220 (Order Modifying Conditions of Release ("Amended Conditions")) at 1-2. Pursuant to those obligations of release, Weeks states, certifies, and swears the following:

1.    As required by the Amended Conditions, Weeks no longer makes any use of the Internet, via computer, smartphone, or other internet-enabled device. As a result, he no longer receives any income from online activity. Accordingly, Mr. Weeks has not sold any ClearPHONES or received any income from Coin Empire, which has yet to be launched.

2.    Weeks has previously entered into a security agreement and pledged certain shares to provide for his counsel fees in this Action. Counsel and Mr. Weeks are actively attempting to sell or leverage his BitFury related shares to obtain funds for legal fees and to pay health expenses of Mr. Weeks' wife.

3.    Since the Amended Conditions were entered, Mr. Weeks has been diligently raising his young daughter, attending church services, and engaging in charitable activities, including feeding the homeless and rescuing more than 70 animals from an animal sanctuary.

**I certify under penalty of perjury that the foregoing is true and correct:**

| | |
|---|---|
| *Jobadiah Weeks* | 01/11/2024 |
| SIGNATURE OF DEFENDANT JOBADIAH SINCLAIR WEEKS | DATE |

# Exhibit E

**Comparative Excel sheet showing discrepancies between lists**

Demonstrates items that appear on one list but not another, missing identifiers, etc.

| Control # | Evidence Box | Location | Found | Description |
|---|---|---|---|---|
| 1 | Evidence Box 1 | BEDROOM (S) UP JOBYS | DRESSER | STOCK CERTIFICATES |
| 2 | Evidence Box 1 | BEDROOM (S) UP JOBYS | DESK | CORPORATE RECORDS |
| 3 | Evidence Box 1 | DINING ROOM (NE) | ON TOP OF DESK | FOLDER LABELED "BLACKCHAIR" W/ DOCS IN IT |
| 4 | Evidence Box 1 | BEDROOM (S) UP JOBYS | DRESSER | CORPORATE RECORDS |
| 5 | Evidence Box 2 | BEDROOM (S) UP JOBYS | UNDER DESK | WESTERN DIGITAL MYBOOK USB HARDDRIVE (SERIAL NUMBER: WCC7K1 LSFTTP) |
| 6 | Evidence Box 2 | BEDROOM (S) UP JOBYS | ON SHELF ABOVE DESK | GENERIC USB THUMBDRIVE (SERIAL NUMBER: Y1178-T48L-B52L-V3) |
| 7 | Evidence Box 2 | BEDROOM (S) UP JOBYS | IN SMALL GUN SAFE | SANDISK EXTREME SD CARD (SERIAL NUMBER: BM1235222025G) |
| 8 | Evidence Box 2 | BEDROOM (S) UP JOBYS | ON TOP OF DRESSER | HUAWEI CELLPONE UNKNOWN SERIAL NUMBER |
| 9 | Evidence Box 2 | BEDROOM (S) UP JOBYS | ON THE FLOOR BY SHELF | APPLE MACBOOK PRO (SERIAL NUMBER: W8944JH766E) |
| 10 | Evidence Box 3 | BEDROOM (S) UP JOBYS | CABINET | MISC COINS |
| 11 | Evidence Box 3 | BASEMENT HIDDEN ROOM | ON TOP OF DESK | BTC COLD STORAGE COIN |
| 12 | Evidence Box 3 | BEDROOM (S) UP JOBYS | NEXT TO BED | POSSIBLE SILVER COINS |
| 13 | Evidence Box 4 | BEDROOM (S) UP JOBYS | UNDER FUTON BED | BOX OF COINS |
| 14 | Evidence Box 4 | BEDROOM (S) UP JOBYS | WATER TIGHT CONTAINER | POSSIBLE GOLD SILVER COPPER COINS&BARS |
| 15 | Evidence Box 5 | BEDROOM (S) UP JOBYS | CLOSET BOX LABELED "GOLD DOLLARS" | GOLDEN CURRENCY STYLE BARS |
| 16 | Evidence Box 5 | BEDROOM (S) UP JOBYS | CLLOSET | BOX OF COINS |
| 17 | Evidence Box 6 | BEDROOM (S) UP JOBYS | CLOSET GUN SAFE | US CURRENCY |
| 18 | Evidence Box 6 | BEDROOM (S) UP JOBYS | CLOSET HAND GUN SAFE | POSSIBLE SILVER/GOLD COINS |
| 19 | Evidence Box 6 | BEDROOM (S) UP JOBYS | CLOSET GUN SAFE | POSSIBLE SILVER COINS |
| 20 | Evidence Box 6 | BEDROOM (S) UP JOBYS | CLOSET HAND GUN SAFE | POSSIBLE SILVER/GOLD COINS |
| 21 | Evidence Box 6 | BEDROOM (S) UP JOBYS | DESK, SMALL GUN SAFE | POSSIBLE SILVER/GOLD COINS USB "BITCOIN" STORAGE DRIVE PASSWORD RECOVERY CARDS FOR BITCOIN RING, EARRINGS, CHAIN |
| 22 | Evidence Box 5 | BEDROOM (S) UP JOBYS | DESK | BTC CRTYPTO CURRENCY INDICIA STORAGE CARDS |

| Evidence Box | Item # | Description | | | |
|---|---|---|---|---|---|
| Evidence Box 1 | 1 | Stock Certificates | | | |
| Evidence Box 1 | 3 | Folder labeled ‚ÄúBlackchair‚Äù with documents in it | | | |
| Evidence Box 2 | | | | | |
| Evidence Box 3 | 10 | Miscellaneous coins. | | | |
| Evidence Box 3 | 11 | BTC cold storage coin. | | | |
| Evidence Box 3 | 12 | Possible silver coins. | | | |
| Evidence Box 4 | 13 | Box of coins. | | | |
| Evidence Box 4 | 14 | Possible gold silver copper coins and bars. | | | |
| Evidence Box 5 | 15 | Golden currency style bars. | | | |
| Evidence Box 5 | 16 | Box of coins. | | | |
| Evidence Box 6 | 17 | United States Currency | | | |
| Evidence Box 6 | 18 | Possible silver/gold coins. | | | |
| Evidence Box 6 | 19 | Possible silver coins. | | | |
| Evidence Box 6 | 20 | Possible silver/gold coins. | | | |

| | Item ID | Item Number | Description | List Origin | |
|---|---|---|---|---|---|
| 0 | 1B148 | Item 60 | (1) Black Atlantis brand multi-tool | Only in Sheet 2 | |
| 1 | 1B149 | Item 61 | 40 Copper (colored) cannabis coins | Only in Sheet 2 | |
| 2 | 1B150 | Item 62 | Bitcoin cold storage coin | Only in Sheet 2 | |
| 3 | 1B151 | Item 63 | 45 canisters containing approximately 889 silver (colored) coins | | |
| 4 | 1B152 | Item 64 | 1 sheet / 16 1oz Copper (colored) crackers | Only in Sheet 2 | |
| 5 | 1B153 | | | | |
| 6 | 1B154 | Item 66 | 1 pair earrings, (3) loose .156 carat diamonds. | | |
| 7 | 1B155 | Item 67 | (1) pouch containing 2 pair gold (colored) earrings, (1) gold (colored) ring, (1) gold (colored) necklace. | | |
| 8 | 1B156 | Item 68 | (4) 1oz gold (colored) coins & (4) 1/10oz gold (colored) coins | Only in Sheet 2 | |
| 9 | 1B157 | Item 69 | (1) Clubkoin flashdrive, written recovery passwords | Only in Sheet 2 | |
| 10 | 1B158 | Item 70 | (5) 1oz Silver (colored) coins. | | |
| 11 | 1B159 | Item 71 | (1) 1909 20 franc copper (colored) coin | Only in Sheet 2 | |
| 12 | 1B160 | Item 72 | (1) Hunk Papa Lakota 1/2oz copper (colored) coin. | | |
| 13 | 1B161 | Item 73 | (1) AOCS approved 1oz copper (colored) coin. | | |
| 14 | 1B162 | Item 74 | (1) Rob Gray 1oz copper (colored) coin. | | |
| 15 | 1B163 | Item 75 | (1) d'Anconia 1oz copper (colored) coin. | | |
| 16 | 1B164 | Item 76 | (1) NTR 10 troy oz silver (colored) bar. | | |
| 17 | 1B165 | Item 77 | (1) Academy silver (colored) bar, 10 troy oz. | | |

| | | | | | |
|---|---|---|---|---|---|
| 18 | 1B166 | Item 78 | 23 cannisters copper (colored) coins. | | |
| 19 | 1B167 | | | | |
| 20 | 1B168 | | | | |
| 21 | 1B169 | Item 81 | Cash $100.00 x 34 = $3,400, $50.00 x 20 = $1,000, $2.00 x 1 = $2.00, Coins $1.00 x 8 = 8.00 for a total of $4,410.00 in US Currency. | | |
| 22 | 1B170 | | | | |
| 23 | 1B171 | Item 83 | 25 packages silver (colored) Bitcoin coins (approximately 250 coins) | Only in Sheet 2 | |
| 24 | 1B172 | | | | |
| 25 | 1B173 | | | | |
| 26 | 1B174 | | | | |
| 27 | 1B175 | Item 87 | Ledger HW.1 wallet hardware(cryptocurrency) | | |
| 28 | 1B176 | Item 88 | Trezor Bitcoin wallet hardware. | | |
| 29 | 1B177 | Item 89 | Ethereum cold storage coin. | | |
| 30 | 1B178 | Item 90 | 5 cards containing a bank and other value cards | Only in Sheet 2 | |
| 31 | 1B179 | Item 91 | 20 cannisters containing approximately 500 silver (colored) coins in plastic case. | | |
| 32 | 1B180 | Item 92 | (20) 1/10 gram gold (colored) certificates in collector cases. | | |
| 33 | 1B181 | | | | |
| 34 | 1B182 | | | | |
| 35 | 1B183 | | | | |
| 36 | 1B184 | Item 96 | Approximately 72 silver (colored) coins. | | |
| 37 | 1B185 | Item 97 | Approximately 150 dimes. | | |

| 38 | 1B186 | Item 98 | Approximately 22 gold (colored) coins. | |
|---|---|---|---|---|
| 39 | 1B187 | Item 99 | (1) Silver (colored) bullet 1oz. | Only in Sheet 2 |
| 40 | 1B188 | | | |
| 41 | 1B189 | Item 101 | (3) NTR Metals 10oz silver (colored) bars. | |
| 42 | 1B190 | Item 102 | Approximately 80 collector quarter dollar coins. | |
| 43 | 1B191 | Item 103 | Ron Paul 1 oz copper (colored) coin. | |
| 44 | 1B192 | Item 104 | "20 Trillion Dollar" Silver (colored) piece. | |
| 45 | 1B193 | | | |
| 46 | 1B194 | Item 66 | (U) from Item 66 (1) fabric pouch with (3) rings | Only in Sheet 2 |