Docusign Envelope ID: 64C34A89-C897-4C9A-9F7B-DCD484406D4E

**UNITED STATES DISTRICT COURT**
District of New Jersey

**UNITED STATES OF AMERICA,**
Plaintiff,
v.
JOBADIAH SINCLAIR WEEKS,
Defendant.

**Criminal No.: 19-877 (CCC)**

# Supplemental Memorandum of Law Regarding Retroactivity, Count Two, and lack of Fair Notice

## Table of Content

| | |
|---|---:|
| I.  Summary of Argument | 1 |
| II. Introduction | 2 |
| III. Legal Standard | 2 |
| IV. Count Two Involves a Retroactive Use of Securities Law | 2 |
| V. No Authority Governed Mining Pools at the Time | 4 |
| VI. Government's Theory Violates Due Process | 4 |
| VII. Indictment Reveals Legal Uncertainty | 5 |
| VIII. Other Cases Show Prosecution Is Unprecedented | 5 |
| IX. Dismissal or Plea Vacatur Is Justified | 7 |
| X. The Government's Reliance on the Plea Undermines Its Position | 8 |
| XI. Questions the Government Should Answer | 9 |
| XII. Conclusion | 10 |

# I.  Summary of Argument

Count Two of the Indictment violates due process by seeking to retroactively impose criminal liability based on regulatory interpretations and enforcement practices that were unsettled or non-existent at the time of the alleged conduct. The Government's novel application of securities registration theories to mining pool memberships—without fair notice, clear statutory guidance, or consistent prosecutorial practice—renders the charge constitutionally defective.

Docusign Envelope ID: 64C34A89-C897-4C9A-9F7B-DCD484406D4E

## II.   Introduction

**Defendant (Pro Se)** respectfully submits this Supplemental Memorandum to assist the Court's consideration of issues already presented in the pending motion practice, by specifically addressing newly articulated constitutional infirmities arising from the retroactive application of securities law theories in Count Two of the Indictment (*Conspiracy to Offer and Sell Unregistered Securities*, 18 U.S.C. § 371). While aspects of **due process**, **discovery violations**, and **prosecutorial conduct** have previously been raised in prior motions, this memorandum provides additional focused legal argument addressing the **retroactive application of securities registration charges** and associated constitutional violations in Count Two.

## III. Legal Standard

The Fifth Amendment's Due Process Clause prohibits the Government from depriving individuals of liberty through criminal prosecution based on statutes or legal interpretations that fail to provide **fair notice** of what conduct is prohibited. A criminal law must be sufficiently definite so that "ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

The Supreme Court has held that "[t]he touchstone is whether the statute made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 266 (1997). When a prosecution relies on a novel or retroactive interpretation of law that was not established at the time of the alleged conduct, it constitutes an unconstitutional expansion of liability. See *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964) ("An unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law.").

Accordingly, courts may dismiss an indictment or vacate a guilty plea where the charging theory rests on vague, evolving, or retroactively applied legal standards that fail to satisfy these constitutional requirements.

# IV. Count Two Involves a Retroactive Use of Securities Law

The Government charges that Defendant and others conspired to violate federal securities registration requirements as early as 2014 by promoting mining pool memberships allegedly constituting securities offerings. This theory applies to the registration provisions of the Securities Act of 1933 (15 U.S.C. §§ 77e, 77x) to conduct that, at the time it occurred, was not addressed by any federal statute, regulation, or agency guidance governing mining pool structures.

At the time the charged conduct began:

- **No federal agency had issued formal rules, notices, or policy statements applying securities registration requirements to cooperative mining pools.**

- **The Securities and Exchange Commission's first major application of securities law to digital assets — the DAO Report — was not issued until July 2017**, years after the launch of BitClub Network ("BCN").

- **The DAO Report addressed Initial Coin Offerings (ICOs) but expressly did not address mining pool participation[1].**

The Government's charging theory thus amounts to a **retroactive application of undefined legal standards**, which violates fundamental constitutional principles of **fair notice**.

This prosecution violates the constitutional guarantee of *fair notice* under the Due Process Clause of the Fifth Amendment. As the Supreme Court has made clear, "the touchstone is whether the statute made it reasonably clear at the relevant time that the defendant's conduct was criminal." (*United States v. Lanier*, 520 U.S. 259, 266 (1997). The fair notice doctrine does not require a regulation on point, but it does require that 'a person of ordinary intelligence would reasonably understand that his conduct is criminal.). When no statute, regulation, or controlling case law prohibits a course of conduct, criminal prosecution based on that conduct is constitutionally impermissible. The Government's theory thus fails not only factually, but legally and constitutionally.

Whether or not an investment meets the *Howey* definition of a security is irrelevant if no statutory, regulatory, or judicial source had identified similar structures as subject to registration requirements at the time[2].

---

[1] See Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO, SEC Release No. 81207 (July 25, 2017), available at https://www.sec.gov/litigation/investreport/34-81207.pdf. The report applied securities law to a decentralized autonomous organization (DAO) offering tokens on Ethereum, but did not reference mining operations or pool-based structures.

[2] See United States v. Lanier, 520 U.S. at 266–67 ('The canon of fair warning… bars novel construction of a criminal statute' even where statute itself has not changed).

Docusign Envelope ID: 64C34A89-C897-4C9A-9F7B-DCD484406D45

When the Government suggests that Count Two simply applies settled law to new facts, it ignores the constitutional barrier against retroactive enforcement based on previously undefined conduct.

# V. No Authority Governed Mining Pools at the Time

The following summary of regulatory actions demonstrates the absence of applicable law when Defendant engaged in the alleged conduct:

| Year | Agency | Action | Applicability to Mining Pools |
|---|---|---|---|
| 2013 | FinCEN | FIN-2013-G001 Guidance (March 18, 2013) | Addressed administrators/exchangers of convertible virtual currency; expressly excluded mining pools. |
| 2014 | IRS | Notice 2014-21 (March 25, 2014) | Addressed tax treatment of mining income; no reference to securities law or criminal enforcement. |
| 2015 | CFTC | In re Coinflip, Inc., CFTC No. 15-29 (Sept. 17, 2015) | Asserted limited derivatives jurisdiction; no authority over mining pools. |
| 2017 | SEC | DAO Report (Release No. 81207) | First SEC application of securities law to ICOs; did not address mining pools. |
| 2013–2017 | DOJ | No published guidance | DOJ issued no policies applying criminal conspiracy or securities registration statutes to mining pool promotion. |

4

# VI. Government's Theory Violates Due Process

The Supreme Court has long held that retroactive application of criminal liability where the law was previously unsettled is unconstitutional. See **Bouie v. City of Columbia**, 378 U.S. 347, 351 (1964) ("An unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an ex post facto law."); see also **United States v. Lanier**, 520 U.S. 259, 266 (1997).

Here:

- **No reasonable person — including regulators, market participants, or legal counsel — would have understood in 2014 that marketing mining pool memberships could subject participants to criminal securities registration violations.**

- **No SEC, DOJ, or FinCEN rule prohibited the conduct engaged in by BCN's founders, managers, or peripheral promoters such as Defendant at the time.**

- The Indictment's reliance on securities registration violations constitutes a **retroactive reinterpretation of existing law**, in violation of the Due Process Clause.

# VII. Indictment Reveals Legal Uncertainty

The Government's own charging instrument acknowledges that even in 2017, BitClub Network's management openly questioned whether its mining activity might implicate securities law. (See Indictment, *United States v. Goettsche et al.*, No. 19-cr-877 (D.N.J.), filed Dec. 5, 2019,    2(j): **"Bitcoin might be a security regulated by the SEC, [and] Bitcoin mining could potentially be a security."**)

This internal uncertainty — **three years after the alleged conspiracy began** — demonstrates that there was no clear governing legal framework at the inception of Defendant' alleged conduct.

# VIII. Other Cases Show Prosecution Is Unprecedented

The Government's prosecution of Defendant represents the **first known federal criminal case** charging peripheral mining pool promoters with securities registration violations. The following table summarizes contemporaneous federal crypto prosecutions:

| Case | Time Period | Conduct | Charges Filed | Disposition | Citation |
|---|---|---|---|---|---|
| Tezos (Dynamic Ledger Solutions) | 2017 | ICO fundraising (~$232M) | SEC civil action | Civil settlement, no criminal charges | SEC v. Dynamic Ledger Solutions Inc., Admin. Proc. File No. 3-19767 |
| EOS (Block.One) | 2017 | ICO fundraising (~$4B) | SEC civil action | Civil settlement, no criminal charges | In re Block.One, Admin. Proc. File No. 3-19594 |
| Ripple (XRP) | 2013–2020 | Token sales (~$1.3B) | SEC civil litigation | Civil resolution, no DOJ prosecution | SEC v. Ripple Labs Inc., No. 1:20-cv-10832 (S.D.N.Y.) |
| Ethereum | 2015 | ICO fundraising (~$18M) | No charges | No SEC or DOJ action | Public record |
| OneCoin (Ignatova) | 2014–2019 | Global Ponzi scheme | Wire fraud, securities fraud, money laundering | Full criminal prosecution | U.S. v. Ignatova et al., No. 17-cr-630 (S.D.N.Y.) |
| BitConnect (Arcaro) | 2016–2018 | Lending Ponzi scheme | Wire fraud, market manipulation, money laundering | Full criminal prosecution | U.S. v. Arcaro, No. 21-cr-255 (S.D. Cal.) |
| Silk Road (Ulbricht) | 2011–2013 | Narcotics trafficking | Narcotics, money laundering, murder-for-hire conspiracy | Full criminal prosecution | U.S. v. Ulbricht, No. 14-cr-68 (S.D.N.Y.) |
| BitClub Network (Goettsche, Weeks et al.) | 2014–2019 | Mining pool memberships | Securities registration violations, wire fraud conspiracy | Criminal prosecution of promoters | U.S. v. Goettsche et al., No. 19-cr-877 (D.N.J.) |

As demonstrated, in all comparable cases involving significantly larger amounts of capital raised, criminal charges were reserved for **Ponzi schemes, narcotics trafficking, or fraudulent ICO structures**[3]. BCN remains the only known instance where:

- **Founders and managers (such as Goettsche and Balaci) were prosecuted under both fraud and securities charges in connection with a mining pool; and**

- **Peripheral marketing participants (such as Defendant), who held no equity stake, no ownership interest, no managerial role, and no operational control, were criminally charged under securities registration theories solely for marketing membership interests.**

**To date, no subsequent federal criminal prosecution has been brought against peripheral mining pool promoters under securities registration theories. The BCN prosecution thus appears to have been the Department of Justice's first and only attempt to apply criminal securities registration charges to non-managerial marketing participants in cryptocurrency mining pools — effectively representing a novel and untested expansion of existing securities enforcement theories at the time.**

While fact patterns differ, the comparator cases show that the DOJ has consistently declined to pursue criminal securities charges against peripheral actors in mining-based structures. When the DOJ argues these cases are irrelevant, it overlooks that they reflect the known limits of securities enforcement until the novel prosecution of BCN.

Moreover, Defendant was neither a founder, owner, nor manager of BCN. He held no equity stake, exercised no operational control, and had no decision-making authority over the structure, content, or financial management of the platform. His alleged involvement was limited to peripheral marketing efforts—activities that, even if assumed true, do not satisfy the scientist or control elements typically required for criminal liability under securities laws.

At no point is Defendant alleged to have structured investment contracts, designed or issued digital assets, or participated in fundraising activities akin to those in ICO-related enforcement actions. He did not receive investor funds, manage or administer any accounts, or make decisions regarding the legal form, governance, or disclosures of the mining operation. His involvement was limited to sharing promotional materials and communicating general information created by others—actions consistent with passive or third-party affiliate behavior, not securities issuance or regulatory evasion. No regulatory authority, at the time, had deemed such peripheral promotional conduct subject to criminal securities registration liability[4]. Even under conspiracy law, the Government must show that Defendant knowingly agreed to join a criminal plan.

---

[3] Unlike the EOS, Ripple, and Ethereum cases—each of which involved token issuance through an Initial Coin Offering (ICO)—BitClub Network did not offer or sell cryptocurrency tokens to investors. Rather, it promoted access to mining pool memberships, which did not fit within any clearly defined regulatory framework at the time. This further underscores the unprecedented nature of applying securities registration theories to BCN. To date, no other criminal prosecution has charged non-managerial mining pool promoters under federal securities registration theories, further underscoring the novelty of the Government's approach in this case.

[4] See, e.g., SEC Investor Bulletin: Initial Coin Offerings, July 25, 2017; FinCEN guidance (2013–2016); and DOJ press releases in that period. None address criminal liability for marketing mining pool shares.

As the Supreme Court emphasized in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), and *United States v. Lanier*, 520 U.S. 259 (1997) (holding that conviction requires proof defendant knew both the facts and the law that made his conduct unlawful), due process requires not only clear legal notice but also a mens rea standard that ensures individuals are only punished when they **knowingly** engage in criminal conduct[5]. Here, the Government fails to allege that Defendant had actual or constructive knowledge that his conduct was unlawful under securities law—particularly where no such law had been articulated at the time.

# IX. Dismissal or Plea Vacatur Is Justified

The Government's unprecedented use of securities registration theories to prosecute conduct involving mining pool memberships—without any governing statute, agency guidance, or prosecutorial precedent at the time—renders Count Two constitutionally infirm. This retroactive and unforeseeable application of the law violates Defendant' Fifth Amendment right to due process and compels appropriate judicial relief.

Specifically, the Court may:

- **Dismiss Count Two** in its entirety on constitutional grounds, recognizing that the alleged conduct was not clearly prescribed by law when it occurred and that no reasonable actor could have foreseen criminal liability under securities laws for promoting mining pool memberships;

- **Vacate Defendant' guilty plea** as to Count Two, on the basis that it was entered without the benefit of (a) full discovery and legal clarity regarding the novel nature of the Government's theory, and (b) effective assistance of counsel capable of identifying and advising on these critical constitutional deficiencies;

- **Grant such further relief** as the Court deems just and proper to ensure that Defendant is not subjected to criminal penalties arising from a prosecution that rests on legally unsettled and retroactively asserted theories of liability.

This Court is empowered to intervene where novel and expansive charging theories result in fundamental unfairness, particularly when those theories arise from post hoc reinterpretations of the law[6]. Here, the Government's use of securities law as a tool to impose criminal liability on peripheral participants in an unregulated and undefined area of digital activity violates both the spirit and letter of due process protections under the Constitution.

---

[5] While Rehaif addressed knowledge of unlawful status in firearm possession cases, its holding on the requirement that a defendant know both the facts and the law that make his conduct criminal has been applied more broadly to due process and fair notice challenges in novel statutory contexts.
[6] *Due process applies equally to prosecutorial innovations that retroactively expand criminal exposure. See United States v. Ratzlaf*, 510 U.S. 135 (1994) (reversing conviction where ambiguity denied fair warning).

Docusign Envelope ID: 64C34A89-C897-4C9A-9F7B-DCD484406D45

When the Government argues that fair notice doctrine only restricts judicial expansion, it ignores precedent holding that ambiguity in the law cannot support criminal enforcement—no matter who applies it.

# X. The Government's Reliance on the Plea Undermines Its Position

In recent filings, including its June 18, 2025 opposition to Defendant's Motion to Terminate Release Conditions (Dkt. 449), the Government has invoked Defendant' 2021 guilty plea as evidence that Count Two is factually and legally supported. Specifically, it highlights an alleged admission that Defendant defrauded more than 10 victims out of $3.5 million in losses. See Doc. No. 148 at p. 10. However, this reliance is flawed both procedurally and constitutionally.

**First**, the plea agreement itself was entered without full discovery or disclosure of key evidentiary materials—including exculpatory data related to asset tracing, blockchain analysis, and victim attribution. In fact, the Government only provided a list of 12 unverified victims in the 2024 Presentence Report (PSR), none of whom were supported by affidavits, IRS filings, or restitution claims. Despite repeated requests, no verified victims have ever been identified or disclosed. The $3.5 million in losses referenced in the plea were agreed to under coercive conditions, and critically, the Government insisted that these were **victims personally harmed by Defendant—not alleged BCN investor victims**. Notably, this figure represents **less than 0.5% of the $722 million loss the Government has repeatedly attributed to the overall BCN scheme**. If Defendant is only alleged to be responsible for that fractional amount, based on victims not tied to BCN, it raises the question of whether the Government implicitly concedes that **Weeks bears no legal responsibility for the remaining 99.5% of alleged losses**—including those used to justify Count Two and the overarching conspiracy theory. This disparity further undercuts the integrity and scope of the Government's charging logic. Moreover, these alleged victims were neither presented to the grand jury nor substantiated in any form at the time of the indictment or plea. They did not appear in any 2020 charging documents, and their later inclusion post hoc in the PSR further underscores the retroactive and procedurally flawed nature of the Government's theory—especially given that the victims cited in the earlier filings were associated with **Mr. Abel**, not Mr. Weeks. The Government's reliance on unverified loss figures is not limited to sentencing; it undermines the factual basis for the plea and the legal integrity of Count Two.

**Second**, Count Two was charged based on a novel securities registration theory that had not been clearly articulated by any federal agency at the time of the alleged conduct. A guilty plea cannot retroactively cure a constitutional defect[7]. As the Supreme Court made clear in *United States v. Class*, 138 S. Ct. 798, 804–05 (2018), a guilty plea does not waive the right to challenge the constitutionality of the statute under which a defendant was convicted.

---

[7] A plea may admit facts but does not validate unconstitutional charges. *United States v. Class*, 138 S. Ct. 798, 805 (2018)

When a charge is premised on an unforeseeable and retroactive application of law, due process violations persist regardless of a plea.

When the Government argues that the plea forecloses further challenge, it misstates the law: a guilty plea does not waive the right to challenge the constitutionality of the statute or charge.

**Third**, the Government's use of the plea as a shield against constitutional scrutiny ignores the broader procedural record. Defendant has moved to withdraw the plea on grounds directly implicating the same conduct the Government now cites. To use a contested, incomplete, and coerced plea as a foundation for continued prosecution of Count Two is not only circular—it is constitutionally impermissible.

# XI. Questions the Government Should Answer

To assist the Court's resolution of the constitutional and statutory issues presented in Count Two, Defendant respectfully submits the following questions for clarification by the Government:

1. **What formal SEC, DOJ, or FinCEN guidance—prior to July 2017—explicitly applied securities registration requirements to mining pool memberships, as opposed to Initial Coin Offerings (ICOs) or token sales?**
   *If no such guidance existed, how can the Government claim that a person of ordinary intelligence had constitutionally sufficient notice that marketing access to a mining pool might trigger criminal liability?*

2. **What legal or evidentiary basis supports the claim that Defendant had actual or constructive knowledge that his conduct was unlawful—particularly in light of the Government's own charging instrument quoting BitClub Network's management expressing legal uncertainty as late as 2017?**
   *(See Indictment    2(j), quoting concerns that "Bitcoin mining could potentially be a security.")*

3. **Has the Department of Justice ever before—or since—charged a non-managerial promoter of a mining pool with criminal securities registration violations?**
   *If so, which case? If not, does this not confirm that Count Two is unprecedented and legally unsupported by prior enforcement history?*

4. **What precedential or statutory authority supports the Government's application of ICO-related securities registration theories to BitClub Network—a mining pool that did not issue tokens or conduct an offering comparable to Tezos, EOS, or Ripple?**

*The **DAO Report** (SEC Release No. 81207, July 2017), cited herein and publicly available at https://www.sec.gov/litigation/investreport/34-81207.pdf, explicitly applied securities laws to token-based Initial Coin Offerings (ICOs), and specifically **disclaimed applicability to mining operations or pooled computing structures**. To date, neither the SEC nor the DOJ has publicly asserted that **membership-based mining programs** fall within the scope of securities registration violations under Section 5.*

5. **If, as the Presentence Report (2024) alleges, Defendant is responsible for only $3.5 million in losses—less than 0.5% of the Government's $722 million loss figure—does the Government concede that Defendant bears no legal responsibility for the remaining 99.5% of alleged BCN-related losses?**
 *If so, how can Defendant be held liable under Count Two, which presupposes a broad-based conspiracy tied to the full BCN scheme?*

# XII. Conclusion

The charging theories in Count Two reflect a **constitutionally impermissible retroactive application of evolving securities law theories** to conduct not criminalized at the time. The Government's position lacks both regulatory foundation and prior prosecutorial precedent. This prosecution exposes Defendant to criminal liability **without fair notice**, in violation of the **Due Process Clause of the Fifth Amendment**.

**Defendant respectfully requests that the Court give full consideration to these supplemental constitutional arguments as part of the pending motion practice and in any determination on plea withdrawal or appropriate relief.**

In the interest of judicial economy and fairness, Defendant respectfully submits that the Court is fully empowered to resolve the issues raised herein on the present record. No further factual development is necessary to conclude that Count Two is constitutionally defective due to the Government's retroactive and unprecedented theory of prosecution.

Accordingly, Defendant respectfully urges the Court to dismiss Count Two or vacate the plea as to that Count, both to preserve the integrity of due process and to prevent enforcement of a theory that was unforeseeable and legally unsupported at the time of the alleged conduct.

**Respectfully submitted,**

/s/ Jobadiah Weeks
**Jobadiah Sinclair Weeks**
Pro Se Defendant
2301 Collins Avenue
Miami Beach, FL 33139
Email: silenceweeks1@gmail.com
**Electronically Signed via DocuSign**

June 20, 2025

Signed by:
*Joby Weeks*
87866A420DB4490...

11