# Exhibit A

Fact-Finding Memorandum Regarding the April 19, 2019 IRS–CI Interview and Subsequent Government Filings

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEW JERSEY**

    Plaintiff,

v.

**JOBADIAH SINCLAIR WEEKS**,

    Defendant.

United States v. Goettsche, Weeks, et al.

Case No. 2:19-cr-877 (CCC)

DEFENDANT'S FACT-FINDING MEMORANDUM

REGARDING THE APRIL 19, 2019 IRS-CI INTERVIEW AND SUBSEQUENT GOVERNMENT FILINGS

**I. INTRODUCTION AND PURPOSE**

This memorandum documents how statements from the April 19, 2019 IRS–Criminal Investigation interview entered the Government's record and were restated in subsequent internal and public filings. It is offered exclusively for factual reference and record clarification and does not seek legal relief. The memorandum expresses no argument or inference regarding intent, accuracy, or misconduct and is confined to verifiable documentary description.

1

Prior Filings Noticing This Submission

Defendant previously advised both the Court and the Government that a separate factual submission would follow to clarify the evidentiary issues underlying ECF 497 and related filings. See ECF 511 at 1 (stating that "a detailed factual memorandum identifying the record discrepancies and unsupported assertions will be filed separately"); Nov. 7–14, 2025 correspondence to the Government (noticing that factual inconsistencies in the proffer materials, Facebook quotations, and IRS-CI records would be addressed in a standalone filing); and Defendant's reply to ECF 522 at 1–2 (explaining that, consistent with ECF 508, factual issues unnecessary to the limited reply would be presented separately). In accordance with those notices, Defendant now submits this memorandum as part of his December 3, 2025 filing (Dkt. 534) to assist the Court in maintaining a complete, accurate, and well-documented record.

## II. SCOPE AND METHODOLOGY

This memorandum provides a chronological and linguistic description of the April 19, 2019 interview materials and their appearance in later government memoranda and pleadings. It identifies the origin of specific factual descriptions and traces their progression across the record. The analysis is confined to documentary sources and presents factual provenance only.

**1. Scope of the Record**

The record reviewed for this submission includes five categories of documents:

1. Primary Source:
   IRS-CI April 2019 Notes (handwritten and typed), generated contemporaneously with the interview.

2. First Derivative (Public Filing):

   Detention Opp. (ECF 24), January 15, 2020.

2

3. Second Derivative (Internal Summaries):

   Treasury / IRS-CI Memoranda dated August 17 and 25, 2020.

4. Third Derivative (Institutional Memorandum):

   IRS Chief Counsel Memorandum (Oct. 8, 2020).

5. Fourth Derivative (Later Public Filing):

   Government's Omnibus Response (ECF 417), April 22, 2025.

Each record was examined for date, authorship, signature or certification status, and textual continuity with the IRS-CI April 2019 Notes.

**2. Method of Analysis**

- Chronological tracing: identification of when and how the IRS-CI April 2019 Notes material reappears in subsequent documents.
- Textual comparison: review of recurring phrases, figures, and descriptors across all derivative records.
- Authenticity review: notation of signature, date, and certification characteristics.
- Institutional mapping: observation of how the same factual content transitioned from investigative notes to internal memoranda and ultimately to public filings.

The methodology is documentary, descriptive, and limited to the existing record.

**III. CHRONOLOGICAL RECORD SUMMARY**

This section compiles the complete chronological sequence of records originating from the April 19, 2019 IRS-CI interview and traces their subsequent appearances in later government filings.

3

**1. April 19 2019 — IRS–CI Interview (Original Source)**

On April 19, 2019, Defendant met voluntarily with IRS-CI Special Agents Leo Rovensky and Amjad Qaqish at the Ritz-Carlton Hotel in Arlington, Virginia. No summons, subpoena, or target letter had been issued, and no counsel was present. The purpose was to provide background information regarding his professional involvement with BitClub Network (BCN), related business activities, and associated historical transactions.

The discussion covered BCN's hardware procurement and commission structure, its mining operations in Georgia and Montana, and internal disputes among principals. Defendant stated that he had ceased all BCN activity approximately eight months earlier, in August 2018, and was developing a new venture called Phase Core.

The agents' handwritten and typed notes of this meeting were informal, unsigned, and undated. This record constitutes the first contemporaneous documentation of statements later referenced in subsequent government filings.

**2. January 15, 2020 — ECF 24 (Government's Opposition to Motion to Revoke Detention)**

On January 15, 2020, the United States filed ECF No. 24, its Opposition to Defendant's Motion to Revoke Pre-Trial Detention. That filing drew its factual content from two cited sources: (a) the IRS-CI April 2019 Notes and (b) selected Facebook communications then in the Government's possession. It also introduced statements that do not appear in either contemporaneous source. One such statement was the assertion that Defendant "advised U.S. investors to use VPNs and offshore accounts to access BitClub Network." That assertion does not appear in the April 2019 notes or in the verified Facebook record (see Exhibit F to Dkt. 517-1 § II.C). The filing further described Defendant as a "promoter and broker" who earned "three-percent commissions" on hardware purchases and added references to foreign ties and

4

anti-government rhetoric. The IRS-CI April 2019 Notes, by contrast, record only that BitClub Network employed IP-based restrictions on U.S. users.

**A. Unsupported Assertions Introduced in ECF 24**

**1. Facebook Quotations**

ECF 24 cites several Facebook communications attributed to Defendant. These quotations do not appear in the verified Facebook export produced in 2025 (see Exhibit F to Dkt. 517-1 § II.C), and no producing source has been identified in the record. No Facebook metadata, export file, or investigative documentation corresponding to these quotations has been provided.

The Government has not disputed that the cited excerpts are absent from the verified Facebook corpus. Without the underlying sourcing, these quotations cannot presently be treated as verified factual assertions or incorporated into any factual narrative derived from ECF 24. Because the Government continues to rely on material traceable to ECF 24 in later filings, clarification of the Facebook sourcing issue is necessary to maintain accuracy in the factual record.

**2. "Promoter and Broker"**

The term "promoter and broker" originated in the Government's January 15, 2020 filing (ECF 24). It is not used in the IRS-CI April 2019 Notes, the verified Facebook communications, or the November 2019 indictment (which described Weeks as having "promoted" BitClub Network but did not use the term "broker"), and does not appear in any contemporaneous evidence. Later government memoranda and filings—including the August 2020 Treasury/IRS-CI summaries, the Chief Counsel Memo (October 2020), and ECF 417—repeat the phrase verbatim, indicating that ECF 24 was the point of first introduction.

5

**3. "Tax Evasion"**

The term "tax evasion" originated in ECF 24 without support in the April 2019 IRS-CI Notes or any IRS investigative memorandum. Its only subsequent appearance is in the September 21, 2020 plea agreement as Count One of a separate Information under 26 U.S.C. § 7201; the term does not appear in the November 2019 indictment, the August 2020 summaries, the Chief Counsel Memo (October 2020), or ECF 417, and was not derived from contemporaneous investigative materials. The adoption of a § 7201 charge in the plea agreement reflects a prosecutorial charging decision; the IRS investigative materials do not contain a contemporaneous finding of tax evasion.

**4. Unsworn Filing**

The filing was signed but unsworn and unaccompanied by supporting exhibits. It represents the first appearance on the public docket of material traceable to the April 2019 interview.

**3. August 17 & 25, 2020 — Treasury / IRS-CI Memoranda ("Proffer Summaries")**

Two internal memoranda dated August 17 and 25, 2020 were prepared by IRS-CI Special Agents Jonathan Helmstetter and Leo Rovensky following teleconference meetings attended by the agents, Assistant U.S. Attorneys Jamie Hoxie and Anthony Torntore, and Defendant. No signed proffer agreement was produced for those sessions.

The memoranda are unsigned and undated and introduce no new factual content beyond what had appeared in ECF 24. They repeat phrases such as "promoter and broker," "three-percent commissions," "foreign accounts," and "awareness of money-laundering structures." No transcripts or recordings exist.

These documents constitute the first internal repetition of the IRS-CI April 2019 Notes within Treasury and IRS-CI files.

6

**4. Chief Counsel Memo (October 2020)**

On October 8, 2020, the IRS Office of Chief Counsel (Criminal Tax Division, Area 1) issued the Chief Counsel Memo (October 2020), authored by Area Counsel James N. Beyer. The memorandum bears the header "CAUTION: CONTAINS GRAND JURY INFORMATION." It compiles information from the August 2020 Treasury/IRS-CI summaries, restating their content almost verbatim. The memo is unsigned and contains no exhibits or attachments. Its factual content derives indirectly from the IRS-CI April 2019 Notes via ECF 24 and the August 2020 summaries. This record reflects the institutional adoption of those statements within IRS Criminal Tax and DOJ Tax files.

**5. April 22, 2025 — ECF 417 (Government's Omnibus Response)**

On April 22, 2025, the United States filed ECF No. 417, an omnibus letter-brief in opposition and response to multiple defense filings, including Dkt. Nos. 396, 400, 401, 402, 403, 404, 406, and 407. The submission, signed by Assistant U.S. Attorney Anthony Torntore of the District of New Jersey, addressed issues ranging from plea withdrawal and dismissal requests to discovery production and modification of pretrial conditions.

The filing relied on descriptive language previously introduced in earlier records, including ECF 24 and the Chief Counsel Memo (October 2020). Phrases such as "meeting in Virginia," "promoter and broker," "three-percent commissions," and "advised U.S. investors to use VPNs and offshore accounts" reappear in ECF 417 without identification of their underlying sources.

The phrase "meeting in Virginia" first appears in the Chief Counsel Memo (October 2020), while "promoter and broker" and "advised U.S. investors to use VPNs and offshore accounts" originate in ECF 24 and do not appear in the IRS-CI April 2019 Notes or in the verified Facebook record. By contrast, the "three-percent commissions" reference traces back to the

7

IRS-CI April 2019 Notes as a description of hardware-brokerage commissions. ECF 417 thus represents the latest public iteration of these narrative elements.

**6. Consolidated Observation on Record Reliability**

All records after the initial IRS-CI April 2019 Notes draw substantially from the same underlying source material, though later filings introduced additional narrative language not supported by new sworn or authenticated evidence. This sequence constitutes the complete chronological record of fact creation relevant to the April 19, 2019 interview.

**IV. FLOW AND INSTITUTIONAL ADOPTION (2019 – 2025)**

This section traces how the factual content originating from the IRS-CI April 2019 Notes was transmitted, restated, and incorporated into successive government filings and memoranda through 2025. It documents the movement of the same descriptive language and data across investigative, counsel, and litigation stages.

**1. IRS-CI April 2019 Notes → January 15, 2020 (IRS-CI Interview → ECF 24)**

The first transfer of information occurred nine months after the Ritz-Carlton interview. On January 15, 2020, the United States filed ECF No. 24, relying on material drawn primarily from the IRS-CI April 2019 Notes and certain Facebook communications then in its possession (the complete verification record is now contained in Defendant's recent filing, Dkt. 517-1, Exhibit F).

Language traceable to the 2019 notes—such as the "three-percent commissions" reference and general mentions of foreign travel—was incorporated into the detention filing. ECF 24 also introduced the term "tax evasion", which does not appear anywhere in the IRS-CI April 2019 Notes and would reappear only later in the plea agreement's separate Information count. The April 2019 notes contain no reference to VPNs, offshore accounts, or diplomatic passports;

8

those terms, along with the Government's description of a diplomatic passport found during a later 2019 seizure, were introduced for the first time in ECF 24. The filing also asserted that Defendant "advised U.S. investors to use VPNs and offshore accounts," a statement absent from both the April 2019 notes and the verified Facebook record.

The April 2019 notes state that Defendant ceased all BCN activity in August 2018. Neither ECF 24 nor the November 2019 indictment reference that cessation and both describe Defendant in terms suggesting continued operational involvement.

Although the original notes were informal and unsigned, ECF 24 incorporated limited excerpts from the April 2019 notes together with additional terminology not present in the original record. ECF 24 is therefore the first public filing to draw on material traceable to the IRS-CI April 2019 Notes.

**2. January 15, 2020 → August 17 & 25, 2020 (ECF 24 → Treasury / IRS-CI Memoranda)**

Approximately seven months later, teleconference meetings were held on August 17 and 25, 2020, attended by AUSAs Jamie Hoxie and Anthony Torntore, IRS-CI Special Agents Jonathan Helmstetter and Leo Rovensky, and Defendant. Two corresponding memoranda were prepared by Special Agents Helmstetter and Rovensky.

Each memorandum reiterates language already present in ECF 24—specifically, that Defendant acted as a "promoter and broker" who "earned three-percent commissions," and that "foreign accounts" and "VPN use," terminology first introduced in ECF 24, were involved. Notably, the August 2020 memoranda do not repeat ECF 24's reference to "tax evasion"; the IRS-CI April 2019 Notes contain no such term, and it does not appear in the August 2020 summaries. No new evidence or verification accompanied these memoranda, which remain unsigned and undated.

9

These memoranda represent the first internal replication of terminology appearing in ECF 24.

**3. August 2020 → Chief Counsel Memo (October 2020)**

On October 8, 2020, the IRS Office of Chief Counsel (Criminal Tax Division, Area 1) issued the Chief Counsel Memo (October 2020), authored by Area Counsel James N. Beyer. The document restates, nearly verbatim, the material contained in the August 2020 Treasury/IRS-CI summaries. It is unsigned, contains no exhibits or attachments, and bears the header "CAUTION: CONTAINS GRAND JURY INFORMATION." The memo adopts the same descriptive language—such as "promoter and broker," "three-percent commissions," "foreign accounts," and "VPN use"—but does not include ECF 24's reference to "tax evasion," which does not appear in the IRS-CI April 2019 Notes or the August 2020 summaries. No new interviews or corroborating materials are noted.

Tax evasion under 26 U.S.C. § 7201 requires (1) a tax due and owing, (2) a willful intent to evade or defeat the tax, and (3) an affirmative act designed to evade or defeat the tax. These elements were not identified in any IRS-CI record relating to Defendant.

**4. Chief Counsel Memo (October 2020) → April 22, 2025 (CT-122627-20 → ECF 417)**

Nearly five years after the Chief Counsel Memo (October 2020), the Government filed ECF No. 417 on April 22, 2025, as an omnibus response to pending defense motions (Dkts. 396 through 407). The letter-brief, signed by Assistant U.S. Attorney Anthony Torntore, re-used the descriptive framework contained in the Chief Counsel Memo (October 2020) and earlier records. Recurring phrases included "meeting in Virginia," "promoter and broker," "three-percent commissions," and "advised U.S. investors to use VPNs and offshore accounts." The filing did not include ECF 24's reference to "tax evasion," which does not appear in the

10

IRS-CI April 2019 Notes, the August 2020 summaries, or the Chief Counsel Memo (October 2020). No new sources were cited, and no authentication of the earlier materials was supplied.

ECF 417 thus reflects continued reliance on terminology drawn from earlier records, without new evidentiary support.

**5. Observed Pattern of Transmission**

The same descriptive language was restated through each stage, forming one continuous line of transmission from investigation to litigation.

**6. Institutional Sequence Overview**

| Stage | From → To | Approx. Interval | Document Type(s) | Nature of Transfer |
|---|---|---|---|---|
| 1 | Apr 2019 IRS-CI notes → Jan 2020 ECF 24 | ≈ 9 months | Internal notes → Court pleading | First public use of interview content |
| 2 | ECF 24 → Aug 2020 IRS-CI memoranda | ≈ 7 months | Court filing → Internal memoranda | Internal repetition of docket language |
| 3 | Aug 2020 memoranda → Oct 2020 CT-122627-20 | ≈ 7 weeks | Agency summaries → Counsel memorandum | Institutional adoption within IRS Criminal Tax |
| 4 | CT-122627-20 → Apr 2025 ECF 417 | ≈ 4 ½ years | Internal memorandum → Public filing | Re-use of institutional narrative in litigation |

**7. Summary of Observations**

All records after the initial IRS-CI April 2019 Notes draw substantially from the same underlying source material, although later filings introduced additional narrative terminology that did not originate from contemporaneous investigative materials and were not supported by new sworn or authenticated evidence. The same descriptive language—such as "promoter and broker," VPN and offshore-account references, awareness-of-money-laundering terminology,

11

and generalized foreign-account descriptions—reappears verbatim in derivative memoranda and later litigation filings. This sequence constitutes the complete chronological record of fact creation relevant to the April 19, 2019 interview and explains how its content became a recurring factual reference in government communications and filings through 2025.

**Record Lineage Summary (2019–2025)**

This table provides a visual summary of how descriptive material originating in the April 19, 2019 IRS-CI interview appeared across subsequent internal and public records. It is offered solely for reference and does not introduce new evidence.

**V. LINGUISTIC CONTINUITY AND TRANSMISSION OF SOURCE PHRASES**

This section identifies how descriptive terms from the April 2019 IRS-CI Notes reappeared in later Government records, showing continuity of terminology across stages.

| Stage | Document | Date | Source Material Reflected | Notes on Transmission |
|---|---|---|---|---|
| 1 | IRS–CI Interview Notes | Apr. 19, 2019 | Original, contemporaneous notes of voluntary interview | Primary source; informal, unsigned, first appearance of factual descriptions later cited in record |
| 2 | Detention Opposition (ECF 24) | Jan. 15, 2020 | IRS–CI Notes and selected Facebook communications | First public filing referencing interview content; introduces additional descriptive terminology |
| 3 | Treasury / IRS–CI Memoranda | Aug. 17 & 25, 2020 | Content appearing in ECF 24 | Internal repetition of descriptive language; unsigned summaries prepared after teleconferences |
| 4 | IRS Chief Counsel Memorandum | Oct. 8, 2020 | Treasury / IRS–CI memoranda | Institutional adoption of narrative elements; restates August 2020 summaries |
| 5 | Government's Omnibus Response (ECF 417) | Apr. 22, 2025 | IRS Chief Counsel Memorandum and ECF 24 | Latest public filing reflecting the same descriptive terminology; no new source material identified |

## 1. Overview of Recurrent Descriptive Phrases

| # | Source Phrase / Concept | First Appearance | Subsequent Appearances | Notes on Transmission |
|---|---|---|---|---|
| 1 | "Promoter and broker" + "3 percent commissions" | ECF 24 (Jan 2020) | Treasury/IRS-CI Memos (Aug 2020) → Chief Counsel Memo (Oct 2020) → ECF 417 (Apr 2025) | 3% hardware figure originates in the April 19, 2019 IRS-CI Notes; the combined phrase "promoter and broker" is first introduced in ECF 24 and then repeated verbatim. |
| 2 | "Meeting in Virginia." | Chief Counsel Memo (Oct 2020) | ECF 417 (Apr 2025) | Becomes shorthand for the April 19, 2019 interview; reused as a factual marker. |
| 3 | "Awareness of money-laundering structures / understanding of illicit fund flows." | ECF 24 (Jan 2020) | Treasury/IRS-CI Memos (Aug 2020) → Chief Counsel Memo (Oct 2020) → ECF 417 (Apr 2025) | Phrase repeated verbatim at each stage. |
| 4 | "Anti-government views / rhetoric." | ECF 24 (Jan 2020) | Chief Counsel Memo (Oct 2020) → ECF 417 (Apr 2025) | Terminology remains consistent; origin not identified in IRS-CI Notes. |
| 5 | "Advised U.S. investors to use VPNs and offshore accounts." | ECF 24 (Jan 2020) | Treasury/IRS-CI Memos (Aug 2020) → Chief Counsel Memo (Oct 2020) → ECF 417 (Apr 2025) | Phrase retained throughout derivative records; absent from IRS-CI Notes and the verified Facebook record. |
| 6 | "Foreign financial ties / assets abroad." | ECF 24 (Jan 2020) | Chief Counsel Memo (Oct 2020) → ECF 417 (Apr 2025) | Introduced in ECF 24; repeated verbatim in later filings. |
| 7 | "Multi-level-marketing fees (MLM fees)." | Treasury/IRS-CI Memos (Aug 2020) | Chief Counsel Memo (Oct 2020) → ECF 417 (Apr 2025) | Introduced internally in 2020; partially distinguished from hardware commissions (Chief Counsel Memo). |

## 2. Representative Example of Phrase Transmission

**Hardware-commission description**

The following example illustrates how a single descriptive phrase originating in the IRS-CI April 2019 Notes was restated across later government records:

13

- **IRS-CI April 2019 Notes:** "earned about 3 percent commissions as a broker for Bitfury hardware."
- **ECF 24 (January 2020):** "Weeks earned 3 percent commissions on hardware purchases through BitClub Network."
- **IRS-CI Memoranda (August 2020):** "Weeks earned approximately 3 percent commissions on hardware purchased by members."
- **Chief Counsel Memo (October 2020):** Promoter and broker who earned 'three-percent commissions' on hardware purchases and received MLM fees."
- **ECF 417 (April 2025):** "Promoter and broker earning approximately 'three-percent commissions' on hardware purchases."

**Clarifying Note on the "Three-Percent Commissions" Figure**

The April 19, 2019 notes describe the three-percent figure solely as a hardware-brokerage commission relating to Bitfury mining-equipment sales. No reference to multilevel-marketing ("MLM") or down-line income appears in that record.

In later documents, ECF 24 (January 2020) and the August 2020 Treasury/IRS-CI memoranda reproduced the same figure without distinction between hardware and MLM earnings. The Chief Counsel Memo (October 2020) introduced the first partial differentiation by listing hardware commissions and MLM fees separately. Subsequent filings, including ECF 417 (April 2025), revert to a single generalized description of BCN-related earnings.

### 3. Observed Pattern

1. **Consistency of Terminology.** The core expressions listed above recur across all documents with minimal alteration of syntax or meaning.
2. **Sequential Adoption.** Each new record incorporates the phrasing of its predecessor, maintaining identical descriptive language through multiple institutional layers.

14

3. **Absence of Divergent Drafting.** No subsequent memorandum or filing introduced materially different descriptive wording or new corroborating evidence.

## VI. SUMMARY OF FINDINGS

This section consolidates the factual observations developed in Sections III through V. It presents facts only and makes no request for relief.

### 1. Chronological Continuity

Between April 2019 and April 2025, five categories of Government records incorporated or restated material traceable to the April 19, 2019 IRS-CI interview:

1. IRS-CI April 2019 Notes (primary, unsigned).
2. ECF 24 (January 15, 2020).
3. Treasury / IRS-CI Memoranda (August 17 & 25, 2020).
4. Chief Counsel Memo (October 2020).
5. ECF 417 (April 22, 2025).

Across these filings, the same descriptive phrases—such as the three-percent commission figure, "promoter and broker," "meeting in Virginia," and references to VPN use, anti-government rhetoric, and foreign accounts—reappear in substantially identical form.

### 2. Nature of the Documentary Flow

Successive documents relied on the language of their predecessors. No derivative record introduced sworn statements, transcripts, or authenticated exhibits. Internal memoranda (August 2020 and October 2020) repeated phrasing from ECF 24 verbatim, and ECF 417 applied the same descriptive narrative in litigation.

15

### 3. Institutional Pattern

The April 2019 notes originated as a voluntary, pre-indictment interview record. Their language—along with terminology introduced in later filings—was progressively adopted within IRS-CI, Treasury, IRS Criminal Tax, and DOJ litigation filings.

This pattern reflects continued use of earlier descriptive terminology rather than the development of new evidentiary material.

Only the public filings (ECF 24 and ECF 417) were signed; the intervening memoranda were unsigned and uncertified.

### 4. Evidentiary Character

- **Primary source:** April 19, 2019 Interview Notes (unsigned, contemporaneous).
- **First derivative:** ECF 24 (public filing relying on the notes).
- **Second derivative:** Treasury / IRS-CI Memoranda (internal summaries).
- **Third derivative:** Chief Counsel Memo (internal, unsigned).
- **Fourth derivative:** ECF 417 (public reuse of institutional narrative).

No document beyond the 2019 notes introduces new, independent, or contemporaneously verified evidence.

### 5. Consolidated Observation

Taken together, these records reflect a single, continuous progression of descriptive terminology across multiple years of record development.

### 6. Conclusion of the Factual Record

16

Sections III through VI jointly establish the complete facts-creation record: a verified chronology of document generation, linguistic transmission, and institutional adoption. These findings supply the factual foundation for any subsequent legal analysis.

Respectfully submitted,
/s/ Jobadiah Sinclair Weeks
Pro Se Defendant
Address on file with U.S. Pretrial Services
Dated: December 5, 2025



## APPENDIX: SOURCE MATERIAL INDEX

**Source 1 — IRS–CI Interview Notes**
*Source:* Bates USA_19877_04006423–33
*Date:* April 19, 2019

**Source 2 — Government's Opposition to Motion to Revoke Detention (ECF 24)**
*Source:* United States v. Weeks, D.N.J.
*Date:* January 15, 2020

**Source 3 — Treasury / IRS–CI Memoranda**
*Source:* Summaries prepared by Special Agents Jonathan Helmstetter & Leo Rovensky
*Date:* August 17 & August 25, 2020

**Source 4 — IRS Chief Counsel Memorandum (Chief Counsel Memo – October 2020)**
*Source:* Criminal Tax Division, Area Counsel James N. Beyer
*Date:* October 8, 2020

**Source 5 — Government's Omnibus Response to Defendant's Motions (ECF 417)**
*Source:* United States v. Weeks, D.N.J.
*Date:* April 22, 2025

**Source 6 — Verified Facebook Record and Misstatement Table**
*Source:* Exhibit F to Dkt. 517-1 § II.C
*Date:* Filed in 2025 for record clarification

17