UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

    v. Crim. No. 19-cr-877 (CCC)

JOBADIAH SINCLAIR WEEKS,

    Defendant.

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF RULE 32 OBJECTIONS,
REQUESTED CLARIFICATIONS TO THE REVISED PRESENTENCE INVESTIGATION
REPORT, AND RELATED SENTENCING ISSUES

## I. PURPOSE OF SUPPLEMENTAL FILING

I, Jobadiah Sinclair Weeks, submit this Supplemental Memorandum concerning the May 8, 2026 Revised Presentence Investigation Report ("Revised PSR"), the additional addenda incorporated therein, and disputed sentencing matters arising under Fed. R. Crim. P. 32.

This Supplemental Memorandum addresses material revisions incorporated into the Revised PSR following prior Rule 32 objections, preserves disputed sentencing issues arising from those revisions, and requests findings or determinations of non-reliance where necessary pursuant to Fed. R. Crim. P. 32(i)(3)(B).

The Revised PSR added or revised offense-characterization sections, expanded post-plea narrative discussion, added supervision-related allegations and litigation-related material, removed the three-level reduction for acceptance of responsibility under U.S.S.G. §3E1.1, increasing the advisory guideline range from 57–71 months to 78–97 months.

The disputed matters addressed in this Supplemental Memorandum concern:

(1) **Post-Plea Tax-Evasion Treatment:** sentencing reliance upon post-plea IRS materials and reconstructed tax calculations;
(2) **Guideline Enhancements:** loss attribution, victim count, and sophisticated means;
(3) **Role Attribution:** characterization of intermediary, referral, or promotional conduct as managerial, operational, or decision-making authority;
(4) **Chronology and Comparative Culpability:** later and shorter participation relative to BCN founders and principal operators for purposes of role assessment and individualized sentencing;
(5) **Supervision-Related Cocaine Allegation:** reliability and sentencing use of the alleged May 23, 2025 cocaine allegation; and

1

(6) **Acceptance of Responsibility:** treatment of post-plea litigation activity and the alleged May 23, 2025 cocaine allegation in denying §3E1.1.

This Supplemental Memorandum does not seek withdrawal of the guilty plea or relitigation of the offense of conviction. It preserves sentencing objections, Rule 32 disputes, and appellate issues arising from revisions incorporated into the Revised PSR.

II. MATERIAL CHANGES IN THE REVISED PSR

The May 8, 2026 Revised PSR materially changed the sentencing posture reflected in the January 7, 2025 PSR.

**January 7, 2025 PSR (Prior PSR)**

(1) **Acceptance Reduction:** applied a three-level reduction under U.S.S.G. §3E1.1;
(2) **Guideline Position:** reflected no Government guideline objections;
(3) **Addenda:** contained a single addendum; and
(4) **Guideline Range:** reflected a Total Offense Level of 25 and an advisory guideline range of 57–71 months.[1]

**May 8, 2026 Revised PSR**

(1) **Acceptance Removed:** removed the three-level reduction under U.S.S.G. §3E1.1 and revised the acceptance narrative.[2]
(2) **Guideline Range Increased:** increased the advisory range from 57–71 months to 78–97 months.[3]
(3) **Additional Addenda:** added multiple addenda responding to objections, post-plea conduct, and litigation activity;
(4) **Cocaine Allegation Added:** incorporated the disputed May 23, 2025 supervision-related allegation in support of revised sentencing treatment.[4]
(5) **Role Narrative Revised:** revised role characterization and offense-description sections.[5]

---

[1] See Jan. 7, 2025 PSR (reflecting a three-level reduction under U.S.S.G. §3E1.1, Total Offense Level 25, and advisory guideline range of 57–71 months).

[2] See Revised PSR Addenda; see also Exhibit A, Government correspondence dated Apr. 27, 2026 discussing "*Acceptance of Responsibility*.".

[3] See May 8, 2026 Revised PSR (reflecting advisory guideline range of 78–97 months following removal of the U.S.S.G. §3E1.1 reduction).

[4] See Revised PSR Addenda; see also Exhibit A, Government correspondence dated Apr. 27, 2026 (relying upon alleged cocaine use in support of denial of acceptance of responsibility and revised sentencing treatment).

[5] See Revised PSR ¶12 and related offense-description sections (revising role characterization and offense narrative).

2

(6) **Tax-Evasion Sentencing Treatment Expanded:** incorporated revised tax-loss treatment, supporting schedules, and sentencing calculations reflected in PSR ¶¶169–181.[6]

**Conforming Changes**

- **No Obstruction Finding:** the Revised PSR states that no information indicates obstruction of justice;
- **Guilty Plea Maintained:** the guilty plea and plea admissions remain unchanged.

These revisions materially changed sentencing posture and form the basis of the disputed issues addressed in Sections A–XII.

## III. PRESERVATION OF RULE 32 DISPUTES

I preserve previously submitted Rule 32 objections and related submissions, including Dkt. 565, to the extent consistent with this Supplemental Memorandum. This filing supplements and preserves disputed sentencing issues arising from revisions incorporated into the May 8, 2026 Revised PSR. The disputed matters identified herein are submitted for findings or determinations of non-reliance pursuant to Fed. R. Crim. P. 32(i)(3)(B). [7]

## IV. ROLE ATTRIBUTION

**PSR ¶12 — Nature of Participation**

**Role Characterization.** Paragraph 12 of the Revised PSR states that I "*was a promoter of BCN.*" The characterization and scope of participation reflected in PSR ¶12 affect individualized sentencing, proportionality, and role assessment under 18 U.S.C. §3553(a).

**BitFury Brokerage and Procurement Activity.** As raised in prior Rule 32 objections, the Revised PSR does not distinguish BitFury-related brokerage and procurement activity from BCN activity.

**Communication Access Versus Authority.** Government materials reflect that communication access to BCN principals did not constitute managerial, operational, ownership, governance, or decision-making authority. Exhibit D reflects communication access, limited visibility into operational information, and repeated requests for substantiation rather than operational control.

**Objection and Requested Rule 32 Clarification.** I object to characterization of intermediary, referral, promotional, or brokerage-related procurement activity as BCN operational,

---

[6] See Revised PSR ¶¶169–181 (reflecting revised tax-loss treatment and sentencing calculations).
[7] See Dkt. 565 at 1–15, PageID 7566–7580 (preserving Rule 32 objections concerning role attribution, guideline enhancements, loss treatment, and sentencing issues).

3

managerial, ownership, governance, or decision-making authority and request clarification in the Rule 32 addendum that BitFury-related brokerage and procurement activity constituted separate non-BCN intermediary conduct.

## V. CHRONOLOGY

### PSR ¶12 — Clarification of Chronology

**Chronology.** PSR ¶12 states that BCN was created in 2014 and that I joined "*approximately one year after it was formed.*" My actual chronology bears directly on role assessment, comparative culpability, and individualized sentencing under 18 U.S.C. §3553(a), particularly in comparison to BCN founders and principal operators.

**Timing of Participation.** The August 17 and 25, 2020 Treasury memoranda and April 19, 2019 Government interview notes reflect formal BCN participation beginning in August 2015 and ending in August 2018, a chronology different from BCN founders and principal operators. See Exhibit E.

**Comparative Culpability.** My participation was later and shorter than that of BCN founders and principal operators, a consideration relevant to individualized role assessment and proportionality under 18 U.S.C. §3553(a).

**Objection and Requested Rule 32 Clarification:** As raised in prior Rule 32 objections and not reflected in the Revised PSR or addendum, I object to characterization of PSR ¶12 as comparable to BCN founders or principal operators and request clarification in the Rule 32 addendum that my participation began in August 2015 and ended in August 2018, later and shorter than that of BCN founders and principal operators.

## VI. §7201 TAX-EVASION CLAIM AND SENTENCING TREATMENT

### PSR ¶¶169–181 — Tax-Evasion Sentencing Treatment

**Disputed Guideline Calculation.** I dispute the tax-evasion guideline calculation reflected in PSR ¶¶169–181, which relies upon post-plea IRS documents not assembled and reviewable prior to December 2024.[8]

**Pre-Plea Record.** Prior to execution of the plea agreement, the April 19, 2019 investigative materials, indictment, plea-related materials, and written plea agreement contain no presentation or explanation of criminal tax evasion under 26 U.S.C. §7201.

---

[8] See Revised PSR ¶¶169–181.

4

These materials contain no tax-evasion presentation, there was no assembled and reviewable pre-plea showing of tax due and owing, affirmative acts of evasion, and willfulness.[9]

**Post-Plea IRS Documents.** The October 8, 2020 IRS Office of Chief Counsel memorandum (Exhibit F) and later-produced undated IRS analytical report (Exhibit G) (collectively, the "*post-plea IRS documents*") were created after execution of the plea agreement.

Those post-plea IRS documents support an already executed §7201 plea and were later relied upon in the tax-loss calculations and sentencing presentation reflected in PSR ¶¶169–181 after the plea had already been executed.[10]

**Chronology.** Exhibit H sets forth the chronology of charging, plea negotiations, plea execution, and post-plea IRS treatment reflected in PSR ¶¶169–181.

**§7201 Elements.** Tax evasion under 26 U.S.C. §7201 requires proof of tax due and owing, an affirmative act of evasion, and willfulness. The post-plea IRS documents do not contain an element-by-element analysis identifying how those statutory elements were established before execution of the plea agreement.[11]

**Objection and Requested Rule 32 Clarification.** I object to reliance upon the post-plea IRS documents as substitute support for a pre-plea showing of criminal tax evasion under 26 U.S.C. §7201 and request that the Rule 32 addendum expressly reflect that:

(1) prior to execution of the plea agreement, the April 19, 2019 investigative materials, indictment, plea-related materials, and written plea agreement contained no assembled and reviewable presentation of criminal tax evasion under 26 U.S.C. §7201 and no assembled and reviewable showing of tax due and owing, affirmative acts of evasion, and willfulness;

(2) the post-plea IRS documents were created after execution of the plea agreement and were later relied upon in the tax-loss calculations and sentencing presentation reflected in PSR ¶¶169–181 for an already executed §7201 plea; and

(3) Rule 32 objections concerning tax-loss calculations and sentencing issues do not concede criminal tax evasion under 26 U.S.C. §7201.

VII. TAX CALCULATION, ATTRIBUTION, AND SUPPORTING MATERIALS

**PSR ¶¶37, 147–158, 169–181 — Tax Calculation, Attribution, and Supporting Materials**

---

[9] See Indictment, Dkt. 9 (Dec. 2019) (see Ex. H-1); Email from Simon A. Gaugush to Nat Weeks dated Aug. 12, 2020 (see Ex. H-2); Plea Agreement executed Sept. 24, 2020 (see Ex. H-3).

[10] See Ex. F; Ex. G.

[11] See 26 U.S.C. §7201; Government Letter Brief, Dkt. 417 at 1–3 (Apr. 22, 2025); Opposition to Motion for Reconsideration, Dkt. 522 at 11–13 (Nov. 19, 2025) (later litigation briefing discussing tax-evasion elements after plea execution).

**Disputed Tax-Loss Calculation.** I dispute the tax-loss calculations reflected in PSR ¶¶169–181, which relies upon categorized compensation, ownership attribution assumptions, tax-loss calculations, and Form 4549 treatment not assembled and reviewable prior to December 2024.[12]

**Probation Requested Supporting Information That Was Not Produced.** PSR ¶37 states that "*[a]dditional information regarding loss and/or credits to the investors was requested but not received from the Government.*" Requested supporting information was therefore not produced during preparation of the Revised PSR. Nevertheless, sentencing calculations reflected in PSR ¶¶169–181 continue to rely upon reconstructed tax-loss calculations, categorized compensation, and attribution assumptions.

**April 27, 2026 Government Letter Relied Upon Without Supporting Materials.** The Government's April 27, 2026 correspondence to Probation states that asserted calculations were "*calculated by the IRS based on the sources of income summarized above and in accordance with IRS procedures on Form 4549, Revenue Agent Report*" (Exhibit A). The correspondence, however, does not provide supporting schedules, tracing analysis, ownership attribution support, valuation support, or explanatory materials sufficient to evaluate how categorized compensation, ownership attribution assumptions, transaction activity, or valuation assumptions were used to calculate the tax-loss determination reflected in PSR ¶¶169–181.[13]

**BitFury / Seychelles Attribution Issues.** The October 8, 2020 IRS Office of Chief Counsel memorandum (Exhibit F) treated BitFury-related interests held through a Seychelles entity as personal taxable income attributable to me. Attribution of interests held through a separate entity raises ownership, beneficial-interest, tracing, and valuation questions relevant to whether such interests were properly treated as personal taxable income. The Revised PSR does not explain how that attribution was incorporated into the tax-loss calculations reflected in PSR ¶¶169–181.[14]

Illustrative Tax-Loss Sensitivity. Exhibit J reflects an illustrative demonstrative concerning disputed attribution assumptions, categorized compensation, Seychelles-related ownership treatment, and reconstructed tax-loss treatment reflected in PSR ¶¶169–181. Under Defendant's illustrative position, reconstructed tax exposure falls below the $3.5 million guideline threshold.

**Objection and Requested Rule 32 Clarification.** I object to the tax-loss calculations reflected in PSR ¶¶169–181 and request that the Rule 32 addendum reflect that ownership attribution, categorized compensation, and tax-loss calculations reflected in PSR ¶¶169–181 remain disputed pursuant to Fed. R. Crim. P. 32(i)(3)(B), and that supporting materials referenced in Revised PSR ¶37 were not produced during preparation of the Revised PSR.

---

[12] See Revised PSR ¶¶169–181; Ex. F; Ex. G.
[13] See Government correspondence dated Apr. 27, 2026; Revised PSR ¶37; Ex. G.
[14] See Ex. F (treating BitFury-related interests held through a Seychelles entity as personal taxable income attributable to me).

## VIII. VICTIM COUNT AND LOSS ATTRIBUTION

**PSR ¶¶110–118, 148–149 — Victim Count, Attribution, Verification, and Guideline Treatment**

**Material Reduction from Generalized Victim Narratives to the Individualized Record.** From indictment through prosecution and sentencing proceedings, Government filings repeatedly advanced generalized narratives of widespread investor harm, including approximately $722 million in losses and later a purported "*$2 billion pyramid scheme*" involving "*thousands of victims.*" (Exhibit I). Revised PSR ¶¶110–118 identify an individualized claimant record of approximately $86,600.[15]

**Limited Verified Record and Attribution to me.** Revised PSR ¶117 reflects $357,294.40 in restitution requested, yet only $86,600 reportedly verified following review of supporting materials. Of that individualized claimant record, only Victim-5 (J.T.B.) and Victim-6 (M.P.P.), totaling $65,000, can potentially be attributed to me. The Revised PSR does not explain why individualized claimant attribution is applied to me but not similarly allocated to BCN founders or operational principals.

**Failure to Account for Member Receipts, Mining Proceeds, and Offsets.** BCN mined more than approximately 92,000 BTC and 500,000 ETH during operational years, output verifiable through public blockchain records. The claimant treatment reflected in Revised PSR ¶¶110–118 does not account for mining proceeds, member receipts, distributions, offsets, or net economic position, and no claimant-specific accounting of such receipts is reflected in the Revised PSR.

**Objection and Requested Rule 32 Clarification.** I object to claimant attribution, claimant verification, and victim-count treatment reflected in Revised PSR ¶¶110–118 and request that the Rule 32 addendum reflect that claimant-specific attribution, claimant verification, and victim count are disputed pursuant to Fed. R. Crim. P. 32(i)(3)(B), including whether claimant losses account for proceeds, distributions, offsets, or value received.

## IX. COCAINE-RELATED ALLEGATION

**PSR Addenda — Supervision-Related Allegation**

**Supervision Allegation Added to Support Denial of Acceptance.** The Revised PSR adds an allegation concerning cocaine use during pretrial supervision.[16]

---

[15] See Ex. I; Dkt. 34, Dkt. 70, Dkt. 184, and Dkt. 264 (referencing "*thousands of victims*" and large-scale investor-loss narratives).

[16] See Revised PSR Addenda; Exhibit A, Government correspondence dated Apr. 27, 2026.

**No Produced Proof.** The alleged May 23, 2025 cocaine result was raised approximately three months after the reported event during supervision proceedings, preventing contemporaneous review or counter-testing.[17]

**Independent Toxicology Testing.** Certified independent hair-follicle toxicology testing submitted through Dkt. 517 detected no cocaine or controlled substances during an extended retrospective period measured in months. The testing was obtained because no Government laboratory reports, confirmatory testing, or toxicology materials were produced.[18]

**Reliability and Rule 32 Use.** The allegation is used to deny acceptance of responsibility and aggravate sentencing despite the absence of Government laboratory reports, confirmatory testing, toxicology, or chain-of-custody materials. Under these circumstances, the allegation should not be relied upon as a sentencing factor.

**Objection and Requested Rule 32 Clarification.** I object to use of the alleged May 23, 2025 cocaine allegation to deny acceptance of responsibility or aggravate sentencing and request that the Rule 32 addendum reflect that the allegation is disputed and should not be relied upon for sentencing purposes pursuant to Fed. R. Crim. P. 32(i)(3)(B).

## X. ACCEPTANCE NARRATIVE

**PSR Addenda — Removal of Acceptance Reduction**

**Issue.** The Revised PSR removes the acceptance-of-responsibility reduction under U.S.S.G. §3E1.1 and treats the February 21, 2025 plea-withdrawal filing as supporting denial of the reduction.[19]

**Limited Objection.** I do not ask the Court to disregard the February 21, 2025 filing. I object to treating that filing as automatically dispositive of U.S.S.G. §3E1.1 or as equivalent to categorical repudiation of responsibility.

**Plea and Sentencing Objections.**  I executed the written plea agreement on September 24, 2020 and entered a guilty plea before the Court on November 5, 2020. My Rule 32 objections preserved the plea while challenging sentencing issues, including tax-evasion characterization and sentencing treatment, role attribution, reconstructed tax calculations, victim attribution, guideline enhancements, acceptance of responsibility, supervision-related allegations, and evidentiary support for enhancements.[20]

---

[17] See Dkt. 494 (requesting laboratory reports, confirmatory testing, toxicology, and related supporting materials concerning the alleged positive result).

[18] See Dkt. 517 (certified independent hair-follicle toxicology testing detecting no cocaine or controlled substances).

[19] See Revised PSR Addenda; Exhibit A, Government correspondence dated Apr. 27, 2026.

[20] See Dkt. 565 at 1, PageID 7566 (preserving the guilty plea while raising sentencing and factual disputes).

**Cooperation and Subsequent Conduct.** The Government requested cooperation, including attorney proffers and cooperation-related communications reflected in Exhibit B. After the February 2025 filing, I continued to participate in the presentence process and submitted written statements to Probation acknowledging responsibility, restitution obligations, and acceptance of consequences. I stated:

**Use of Cocaine.** The Revised PSR relied upon an alleged cocaine-related supervision event to deny acceptance of responsibility. (see Section IX)

**Individualized §3E1.1 Evaluation.** The February 21, 2025 plea-withdrawal filing should not be treated as dispositive of acceptance of responsibility under U.S.S.G. §3E1.1. Subsequent conduct included cooperation-related activity, continued participation in the presentence process, and written acknowledgment of responsibility and consequences. Acceptance of responsibility should be evaluated based upon the full post-plea record rather than a single filing.

**Requested Rule 32 Clarification:** I object to characterization that I "*sought to withdraw [my] guilty plea twice*" absent identification of the specific filings relied upon and request clarification in the Rule 32 addendum identifying the precise filing(s) and ruling(s) supporting that characterization.

## XI. GUIDELINE ENHANCEMENTS AND RULE 32 RELIABILITY

### A. Victim-count enhancement — +2 levels (Revised PSR ¶149)

**Victim Count.** The Revised PSR applies a two-level enhancement based upon a finding that "*[t]he offense involved 10 or more victims.*" Revised PSR ¶149 (applying U.S.S.G. §2B1.1(b)(2)(A)). Revised PSR ¶¶110–118 presently identify fewer than ten individualized persons.[21]

### B. Loss Enhancement Reliability and Attribution — 18-Level Enhancement (Revised PSR ¶148)

**18-Level Enhancement.** Revised PSR ¶148 applies an eighteen-level enhancement under U.S.S.G. §2B1.1(b)(1)(J) based upon a finding that loss exceeded $3,500,000 but was less than $9,500,000.[22]

**Material Difference Between Earlier Loss Narratives and the Revised PSR Record.** During prosecution and plea discussions, Government presentations referenced approximately

---

[21] See Revised PSR ¶149 and ¶¶110–118; Dkt. 565 at 1–15, PageID 7566–7580.
[22] See Revised PSR ¶148 and ¶¶147–158; Dkt. 565 at 1–15, PageID 7566–7580.

9

$722 million in investor losses. Revised PSR ¶117 reflects approximately $86,600 in verified individualized claimant submissions.[23]

**Rule 32 Reliability.** Revised PSR ¶148 applies a loss determination exceeding $3,500,000. Under Defendant's illustrative position reflected in Exhibit J, reconstructed tax-loss treatment falls below the $3.5 million threshold supporting the enhancement. See Section XII infra.

**Proportionality.** Under the Government's reconstructed categories, approximately $1,703,385.68 reflects BCN commissions from other brokered deals associated with intermediary, referral, or brokerage activity, while approximately $16,691,758.32 reflects non-BCN income treatment, disputed attribution, and reconstructed categories. Individualized proportionality therefore warrants consideration under 18 U.S.C. §3553(a).

### C. Sophisticated-Means Enhancement — +2 Levels (Revised PSR ¶150)

**+2-Level Enhancement.** Revised PSR ¶150 applies a two-level sophisticated-means enhancement under U.S.S.G. §2B1.1(b)(10)(C) based upon alleged deposits into accounts held in other persons' names or a charity account.[24]

**Supporting Record and Evidentiary Basis.** I previously objected to this enhancement. Revised PSR ¶150 relies upon allegations referenced in Dkt. 24. The verified record identifies no instruction to conceal bitcoin payments or disguise transfers as "*donations*."[25] (Exhibit K)

**Objection and Requested Rule 32 Clarification.** I object to application of the sophisticated-means enhancement reflected in Revised PSR ¶150 and request that the Rule 32 addendum reflect that the factual basis supporting the enhancement is disputed pursuant to Fed. R. Crim. P. 32(i)(3)(B).

### D. Consolidated Rule 32 Objection — Guideline Enhancements

I object to the factual basis supporting the victim-count enhancement reflected in Revised PSR ¶149, the eighteen-level loss enhancement reflected in Revised PSR ¶148, and the sophisticated-means enhancement reflected in Revised PSR ¶150.

## XII. GUIDELINE EFFECT OF DISPUTED SENTENCING ISSUES

---

[23]  See Ex. I; Dkt. 34, Dkt. 70, Dkt. 184, and Dkt. 264 (referencing "*thousands of victims*" and large-scale investor-loss allegations).

[24] See Revised PSR ¶150; see also Dkt. 24.

[25] See Dkt. 24; Memorandum on Record Misstatements and Clarifications Relating to Government's January 15, 2020 Bail Filing (Dkt. 24), Section II(F), at 6; Ex. K (identifying no verified instruction to conceal bitcoin payments or disguise transfers as "*donations*" and reflecting only a single "Antarctica trip" memo concerning a private expedition-related transfer).

**Illustrative Guideline Effect (Defendant's Position).** The following summary illustrates the guideline effect of disputed sentencing issues reflected in the Revised PSR and is submitted solely to show the significance of Rule 32 disputes. This section does not concede criminal tax evasion under 26 U.S.C. §7201, disputed enhancements, or disputed sentencing calculations.

| Disputed Issue | Revised PSR Treatment | Defendant's Position | Illustrative Offense-Level Effect | Section |
|---|---|---|---|---|
| Tax-Loss Treatment / PSR ¶¶169–181 | Higher tax-loss band | Disputed attribution assumptions, Government estimates, BitFury stock treatment, Seychelles attribution, categorized compensation, and reconstructed income affect the asserted tax-loss band | −2 levels if below $3.5M threshold | Section VII |
| Victim Count (PSR ¶149) | +2 for 10 or more victims | Revised PSR ¶¶110–118 identifies fewer than ten individualized victims | −2 levels | Sections VIII & XI(A) |
| Sophisticated Means (PSR ¶150) | +2 levels | Factual basis and characterization disputed | −2 levels | Section XI(C) |
| Acceptance of Responsibility (§3E1.1) | −3 removed | Post-plea litigation activity and disputed cocaine allegation should not eliminate acceptance reduction | +3-level reduction restored | Section X |
| Cocaine Allegation | Used to deny acceptance and aggravate sentencing characterization | Unsupported allegation lacking laboratory proof or adversarial review | Direct effect on §3E1.1 determination | Section IX |

**Illustrative Combined Effect.** Under Defendant's position, the disputed sentencing issues reflected in the Revised PSR would result in an illustrative reduction of approximately nine offense levels.

**Rule 32 Preservation.** Nothing in this section concedes criminal tax evasion under 26 U.S.C. §7201, disputed enhancements, or disputed sentencing calculations. The disputed matters remain preserved pursuant to Fed. R. Crim. P. 32(i)(3)(B).

11

XIII. RULE 32 FINDINGS AND APPELLATE PRESERVATION

Pursuant to Fed. R. Crim. P. 32(i)(3)(B), I respectfully request that the Court either make findings concerning the disputed sentencing matters identified herein or determine that resolution of particular disputes is unnecessary because the Court will not rely upon those matters at sentencing.

I request that the Revised PSR and/or Rule 32 addendum reflect that:

(1) **Victim Count Enhancement (Revised PSR ¶149):** Revised PSR ¶¶110–118 presently identify fewer than ten individualized claimants, and the factual basis supporting the finding that the offense involved "*10 or more victims*" is disputed;

(2) **Loss Enhancement (Revised PSR ¶148):** Revised PSR ¶¶110–118 identify an individualized claimant record including approximately $86,600 reportedly verified and approximately $65,000 potentially attributable to me, and the factual basis supporting the eighteen-level enhancement based upon loss exceeding $3,500,000 is disputed;

(3) **Tax-Loss Calculation (PSR ¶¶169–181):** ownership attribution assumptions, categorized compensation treatment, reconstructed tax-loss calculations, and reliance upon the post-plea IRS documents and April 27, 2026 Government correspondence to Probation are disputed;

(4) **Sophisticated-Means Enhancement (Revised PSR ¶150):** the factual basis supporting application of U.S.S.G. §2B1.1(b)(10)(C) is disputed; and

(5) **Rule 32 Preservation:** the sentencing issues and guideline enhancements reflected in Revised PSR ¶¶148–150 and ¶¶169–181 remain disputed pursuant to Fed. R. Crim. P. 32(i)(3)(B).


XIV. SENTENCING CONTEXT UNDER 18 U.S.C. §3553(a)

**Sentencing Context.** The sentencing presentation reflected in Revised PSR ¶¶169–181 and related Government submissions places substantial emphasis on categorized compensation treatment, ownership attribution assumptions, disputed income treatment, and tax-related sentencing calculations.[26]

**Nature of the Conduct Reflected in the Sentencing Record.** The disputed sentencing record concerns categorized compensation, ownership attribution, valuation assumptions, disputed income treatment, and tax-related sentencing calculations reflected in Revised PSR ¶¶169–181 and related Government submissions. The sentencing presentation therefore turns substantially on attribution, valuation, and characterization issues rather than contemporaneously assembled financial records or directly observed conduct.[27]

**Individualized Sentencing Consideration.** Advisory guideline treatment reflected in the Revised PSR relies substantially upon disputed attribution assumptions, Government-estimated

---

[26] See Revised PSR ¶¶169–181; Government correspondence dated Apr. 27, 2026.
[27] See Revised PSR ¶¶169–181; Ex. F; Ex. G; Government correspondence dated Apr. 27, 2026.

values, disputed claimant attribution, and tax-related guideline calculations. The Court should therefore consider whether the resulting sentencing presentation overstates the seriousness of the conduct reflected in the sentencing record for purposes of 18 U.S.C. §3553(a).[28]

**Rule 32 Preservation.** This submission does not seek withdrawal of the plea or relitigation of the offense of conviction. It preserves sentencing objections, Rule 32 disputes, and individualized sentencing considerations arising from the Revised PSR and related addenda.

LIST OF EXHIBITS

**Exhibit A** — Government Correspondence to U.S. Probation Regarding Presentence Objections

**Exhibit B** — Selected Contemporaneous Billing Entries Reflecting Government-Initiated Cooperation, Proffer Activity, and Plea / Financial Discussions (2020)

**Exhibit C** — Chronology of Participation Reflected in Government Records

**Exhibit D** — Government Records Reflecting Functional Relationship to BCN Principals

**Exhibit E** — BCN Participation and Cessation Chronology

**Exhibit F** — IRS Office of Chief Counsel Memorandum (October 8, 2020)

**Exhibit G** — Later-Produced IRS Analytical Report Concerning Income Characterization and Reconstructed Tax Loss

**Exhibit H** — Chronology of Charging, Tax-Evasion Characterization, and Sentencing Methodology (2019–2026)

**Exhibit H-1** — Relevant Excerpts of Indictment (Dkt. 9)

**Exhibit H-2** — August 12, 2020 Plea Communication Referencing "*Tax Charge*"

**Exhibit H-3** — Plea Agreement Excerpts Concerning Count Two and §7201 Information

**Exhibit I** — Government Victim and Loss Narratives in Charging and Sentencing Filings

**Exhibit J** — illustrates disputed attribution assumptions and reconstructed tax-loss treatment.

---

[28] See 18 U.S.C. §3553(a).

Respectfully submitted,

/s/ Jobadiah Sinclair Weeks
Jobadiah Sinclair Weeks
Defendant, Pro Se
Address on file with U.S. Pretrial Services
Dated: May 29, 2026

Signed by:

Joby Weeks

87866A420DB4490...

14